# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

THE TORONTO-DOMINION BANK,

            Plaintiff,

    v.

PLAID INC.,

            Defendant.

Civil Action No. _____

*Document Electronically Filed*

## COMPLAINT FOR TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, <u>FALSE ADVERTISING, AND UNFAIR COMPETITION</u>

Plaintiff The Toronto-Dominion Bank, by its undersigned attorneys, alleges as follows, upon actual knowledge with respect to its itself and its own acts, and upon information and belief as to all other matters:

## <u>THE PARTIES</u>

1.    Plaintiff The Toronto-Dominion Bank ("TD") is a Chartered Bank, organized and existing under the laws of Canada, with its U.S. headquarters at 1701 Route 70 East, Cherry Hill, New Jersey, 08034.

2.    Upon information and belief, Plaid Inc. is a Delaware corporation with its headquarters at 85 Second Street, Suite 400, San Francisco, California 94105.

## <u>NATURE OF THE ACTION</u>

3.    This is an action for trademark counterfeiting, trademark infringement, false designation of origin, false advertising, and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq*. and New Jersey statutory and common law.

4.     TD brings this action because Defendant Plaid Inc. has created a user interface ("UI") for financial services applications that uses TD's TD and TD BANK trademarks, logo, and green color scheme to replicate TD's genuine login page and to dupe consumers into believing they are entering their sensitive personal and financial information in the bank's trusted and secure platform.  In reality, however, consumers are unwittingly giving their login credentials to Defendant, who takes the information, stores it on its servers, and uses it to mine consumers' bank records for valuable data (e.g., transaction histories, loans, etc.), which Defendant monetizes by selling to third parties.  Defendant's unscrupulous practices are the subject of a separate consumer class action for invasion of privacy and other wrongs.

## JURISDICTION AND VENUE

5.     This action arises under the federal Trademark Act, 15 U.S.C. § 1051, *et. seq.*, and under New Jersey statutory and common law.  This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).  This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because TD and Defendant reside in different states—namely New Jersey and California, respectively—and the amount in controversy exceeds $75,000 exclusive of interest and costs.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over TD's state law claims because those claims are substantially related to TD's federal Lanham Act claims.

6.     This Court has personal jurisdiction over Defendant and venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) and (c) because TD is being harmed in this District; Defendant is conducting business in this District; and Defendant is using the unlawful TD mark, logo, and green color scheme in this District.

## TD, ITS SERVICES, AND ITS FAMOUS TRADEMARKS

7.      TD is a diversified financial services company that offers a broad spectrum of financial products and services to consumers, small businesses, and commercial clients.

8.      With approximately 89,000 employees and deep community roots dating back more than 150 years, TD is one of the ten largest and best-known banks in the United States.  TD offers a broad array of retail, small business, and commercial banking and other financial products and services to millions of customers through its extensive network of approximately 1,300 physical locations in the U.S. alone.

9.      TD has used the name and trademark TD in the U.S.—alone and/or with other word and/or design elements, including BANK—since at least as early as September 1969 to identify its various financial services (the "TD Marks").

10.     TD has obtained a number of federal trademark registrations for its TD and TD BANK marks (among others) for a variety of financial and computer/software goods and services, including:

| Mark | Reg. No. Reg. Date | Products/Services |
|------|--------------------|--------------------|
| **TD** | 1649009 06-25-1991 | Various banking and financial services in Class 36. |
| **TD** | 3037995 01-03-2006 | Various banking and financial services in Class 36. |
| **TD** | 3041170 01-10-2006 | Various banking and financial services in Class 36. |
| TD | 3041792 01-10-2006 | Various financial services in Class 36. |
| TD | 4388813 08-20-2013 | Various banking and financial goods in Classes 9 and 16. |

3

| Mark | Reg. No. Reg. Date | Products/Services |
|---|---|---|
| | | Various financial and banking services in Classes 35, 36, 38, and 41, including online banking services and online banking account services featuring account information reporting, automated clearing house, wire transfer and stop payment services; online mortgage banking, consumer and commercial lending services, investment brokerage, and stock brokerage services; banking services and online banking services, namely, providing customers with online access to account information, account management and reports, and electronic transactions via the Internet and computer networks. |
|  | 4388814 08-20-2013 | Various banking and financial goods and services in Classes 9 and 16.<br><br>Various financial and banking services in Classes 35, 36, 38, and 41, including online banking services and online banking account services featuring account information reporting, automated clearing house, wire transfer and stop payment services; online mortgage banking, consumer and commercial lending services, investment brokerage, and stock brokerage services; banking services and online banking services, namely, providing customers with online access to account information, account management and reports, and electronic transactions via the Internet and computer networks. |
|  | 4332605 05-07-2013 | Various banking and financial goods in Classes 9 and 16.<br><br>Various financial and banking services in Classes 35, 36, 38, and 41, including online banking services and online banking account services featuring account information reporting, automated clearing house, wire transfer and stop payment services; online mortgage banking, consumer and commercial lending services, investment brokerage, and stock brokerage services; banking services and online banking services, namely, providing customers with online access to account information, account management and reports, and electronic transactions via the Internet and computer networks. |
| TD BANK | 3788055 05-11-2010 | Various banking and financial services in Class 36. |

| Mark | Reg. No.<br>Reg. Date | Products/Services |
|---|---|---|
| **TD Bank** | 3854367<br>09-28-2010 | Banking services in Class 36. |
| **TD Bank** | 3845809<br>09-07-2010 | Banking services in Class 36. |
| **TD Bank** | 3979909<br>06-21-2011 | Various banking and financial services in Class 36. |

These registrations are all incontestable.  Printouts of the registrations, taken from the U.S.

Patent and Trademark Office's online database, are attached as Exhibit A.

11.     In addition to the TD Marks, consumers identify TD and its services by the color

green, which has been TD's corporate color for decades and has been continuously and

prominently used with, in, and throughout TD's marks, website, advertisements, promotions,

branches, and app (see examples below).







12.     TD customers can access their accounts online via TD's website and mobile app. There, consumers can view and manage their accounts, deposit checks, pay bills, transfer and send money, and more.

13.     When consumers access their TD accounts online, they are presented with a login screen with the TD name, mark, and logo—presented in green—where they enter their name and password, i.e.:

 

*Website Login Screen*                    *App Login Screen*

14.     TD uses multiple industry-accepted security practices, including firewalls, encryption, and multilayered authentication controls, to safeguard its customers' privacy and the security of their financial information entered online and through TD's mobile apps.  Day in and day out, consumers trust and rely on these and other measures to protect their identities, hard-earned money, and sensitive and valuable financial information.

15.     For years, TD has extensively advertised, marketed, and promoted its TD-branded services through a variety of high profile national and local media, including television, radio,

Internet, direct mail, and print advertisements.  In just the last two years alone, TD spent around 30 million annually on certain advertising activities.

16.     TD has also promoted itself, its marks, and its services through various high-profile sponsorships of athletics, arts and entertainment, community events, and more, including the Boston Bruins professional NHL team, Boston Celtics professional NBA team, Somerset Patriots minor league baseball team, Greenville Drive minor league baseball team, Mayor's Cup pro cycling race, U.S. Olympic Biathlon teams, Kimmel Center, TD James Moody Jazz Festival, TD Stage at the Peace Center, annual TD Five Boro Bike Tour in New York, and annual TD Beach to Beacon 10K.

17.     TD owns the naming rights to multiple sports and entertainment venues, including New Jersey's TD BANK BALLPARK, Boston's TD GARDEN, Florida's TD BALLPARK, and the College of Charleston's TD ARENA (depicted below):









18.     As a result of its tremendous success, TD has received extensive media coverage, including in widely circulated media, such as *Businessweek*, *Forbes*, *Investor's Business Daily*, *Business Insider*, *Wall Street Journal*, *American Banker*, *Huffington Post*, *Washington Post*, *BuzzFeed*, *CNN*, *CNBC*, *New York Times*, *PBS*, *Fox News*, and *Yahoo! Finance*.

19.     Over the years, TD has also received numerous corporate and business awards, including:

- *Fortune 500* list of America's largest companies
- *Fortune's* Great Places to Work: Finance and Insurance
- *Reader's Digest* list of Most Trusted Brand Award in the Bank/Trust Company Category
- *Forbes'* list of World's Best Banks
- *Forbes'* list of Best Employers for Diversity
- *American Banker's* Most Powerful Women in Banking
- *J.D. Power's* highest-ranked bank in U.S. Retail Banking Satisfaction Study
- *Forbes'* list of Best Employers for New Grads
- *National LGBT Chamber of Commerce* "Best of the Best: Corporation for Inclusion"

20.     The TD mark has become well-known and famous by virtue of extensive public exposure and the tremendous success of TD's products and services.

## DEFENDANT AND ITS WRONGFUL ACTS

21.     Defendant, a financial technology ("fintech") company, offers a financial technology infrastructure product, consisting of software and a UI that connects third-party applications ("apps") to consumers' bank accounts, without ever having the consumers login to the accounts.

22.     Defendant's Plaid product is used in several popular payment and investment apps, including *Venmo*, *Coinbase*, Square's *Cash App*, and *Stripe*, each of which allows consumers to send and receive money from their TD and other financial accounts.

23.     When connecting a third-party app to consumers' bank accounts, Defendant's Plaid product uses an authentication process that differs from, and bypasses, the customary authentication process.

24.     Typically, when consumers access their bank accounts via a third-party webpage or app, this is done via an "OAuth" process that redirects the consumers from the original third-party webpage or app directly to their bank's own webpage or app.  Once there, consumers enter

their login credentials and are then redirected back to the original third-party webpage or app. Behind the scenes, the bank returns a "token" that allows the original webpage or app to access the consumer's bank identification as necessary and authorized by the consumer, but without giving the third-party webpage or app provider access to the consumer's login information.

25.     Instead of redirecting consumers from the third-party app to their bank's website or app, the Plaid product's authentication sidesteps the "OAuth" process by creating "dummy" screens that replicate the banks' login pages, giving consumers the impression that they have been transported to their bank's website or app and are logging into their account.  In reality, consumers are giving their credentials to Defendant, who then uses the information to log into the banks' systems while the consumer remains in the third-party app.

26.     For example, a consumer using *Venmo* who wants to connect to their TD account is presented with a "selection" screen that displays the TD Marks among other bank names and logos, e.g.:



*Defendant's Plaid UI Selection Screen on Venmo*

27.     Once a consumer using *Venmo* selects TD BANK, the consumer is presented with a "credential" screen, which purposefully imitates the look and feel of TD's login page and prompts consumers to enter their user name and password:



*Defendant's Plaid UI Credential Screen on Venmo*

28.     After receiving the consumer's login credentials, the Plaid UI presents a "loading" screen, which also uses TD's name, mark, logo, and green color scheme to make users believe they are interacting directly with the bank's real webpage or app:



*Defendant's Plaid UI Loading Screen on Venmo*

29.     On information and belief, the Plaid UI takes consumers through these or similar steps and presents consumers with screens using TD's name, mark, logo, and green color scheme on all third-party apps that use Defendant's Plaid product.

30.     After taking consumers' login credentials, Defendant sends the information to its servers, where it is kept and used to collect data from all accessible accounts (e.g., checking, savings, and credit card)—not just the specific account a customer may have intended to connect to the third-party app.

31.     Defendant tracks "typically 24 months of transaction data, including geolocation, merchant, and category information," which it stores and analyzes using machine learning.  (See https://plaid.com/products/transactions/.)  This valuable personal financial information is then offered and sold to third-party apps.  (See https://plaid.com/pricing/.)

32.     According to an individual identified as a former Plaid programmer, Defendant "develop[ed] methodologies for bypassing the anti-scraping measures on several banking websites" and "ignore[ed] banks' refusals" to grant Defendant access to bank customers' information.  (See https://news.ycombinator.com/item?id=17692291.)

33.     Defendant has boasted that "[o]ver a quarter of people with US bank accounts" and "tens of millions of users" have connected financial accounts using Plaid.  (See https://plaid.com/overview-privacy/; https://plaid.com/documents/plaid-for-financial-institutions.pdf.)

34.     Defendant has conceded that it is able to obtain consumers' sensitive financial information by using TD's and other banks' "branding elements" because they give "end-users []
a greater sense of security and familiarity when they recognize their institution's look-and-feel."
(See https://blog.plaid.com/improved-search/.)

35.     Defendant has also touted that the "native experience" of consumers entering login credentials for "personal financial data without ever leaving the original app" "increase[es] user conversion."  (See https://fin.plaid.com/articles/demystifying-screenless-exchange/.)

36.     On April 17, 2020, TD sent a letter to Defendant accusing Defendant of trademark infringement and unfair competition, and demanding that Defendant promptly cease its use of TD's marks and branding.

37.     On May 1, 2020, Defendant responded to TD denying liability and refusing to stop using TD's name, mark, logo, and green color scheme.

38.     On May 4, 2020, a consumer class action lawsuit was filed against Defendant, *Cottle v. Plaid Inc.*, No. 3:20-cv-03056 (N.D. Cal. filed May 4, 2020), alleging that Defendant deceptively and fraudulently collects, stores, aggregates, and monetizes consumers' sensitive financial credentials and transactions in violation of consumers' privacy, the Computer Fraud and Abuse Act, and other laws.

## **INJURY TO TD AND THE PUBLIC**

39.     Defendant's use of TD's name, mark, and green color scheme to mimic TD's genuine login pages is likely to confuse and deceive people into believing that they have been forwarded to TD's website or app and that they are providing their login credentials to TD—not to Defendant or anyone else.

40.     Defendant's unauthorized use of TD's name, mark, and green color scheme is likely to cause confusion, mistake, and deception as to the source or origin of Defendant, its business, and/or its commercial activities with TD.

41.     Defendant's unauthorized use of TD's name, mark, and green color scheme has damaged and irreparably injured and, if permitted to continue, will further damage and

14

irreparably injure TD, TD's name and marks, TD's reputation and goodwill, and the public's interest in being free from confusion, mistake, and deception.

42.     Defendant intentionally used TD's name, mark, and green color scheme to trick people into believing that they were at TD's site or app in order to obtain their valuable and private financial information.  As a result, Defendant acted knowingly, willfully, in reckless disregard of TD's rights, and in bad faith.

43.     TD and the public have no adequate remedy at law.

### FIRST CLAIM FOR RELIEF

**Federal Trademark Counterfeiting Under**
**Sections 32(1)(b), 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d)**

44.     TD repeats and realleges each and every allegation set forth in paragraphs 1 through 43 of this Complaint.

45.     Defendant has used and continues to use a counterfeit of TD's federally registered TD Marks (including Reg. Nos. 4388813, 4388814,  and 4332605) in connection with the sale, offering for sale, and distribution of online financial services in violation of Sections 32(1)(b), 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d).

### SECOND CLAIM FOR RELIEF

**Federal Trademark Infringement Under**
**Section 32(a) of the Lanham Act,**
**15 U.S.C. § 1114(1)**

46.     TD repeats and realleges each and every allegation set forth in paragraphs 1 through 45 of this Complaint.

47.     Without TD's consent, Defendant used and continues to use in commerce reproductions, copies, and colorable imitations of TD's registered TD and TD BANK marks in connection with the offering, distribution, and advertising of services, which is likely to cause

confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

### THIRD CLAIM FOR RELIEF

**Federal Trademark Infringement, False Designation
of Origin, and Unfair Competition Under
Section 43(a)(1)(A) of the Lanham Act,
15 U.S.C. § 1125(a)(1)(A)**

48.     TD repeats and realleges each and every allegation set forth in paragraphs 1 through 47 of this Complaint.

49.     Defendant's actions described above are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant, Defendant's services/goods, and/or Defendant's commercial activities by or with TD, and thus constitute trademark infringement, false designation of origin, and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

### FOURTH CLAIM FOR RELIEF

**False Advertising
Section 43(a)(1)(B) of the Lanham Act,
15 U.S.C. § 1125(a)(1)(B)**

50.     TD repeats and realleges each and every allegation set forth in paragraphs 1 through 49 of this Complaint.

51.     The aforesaid acts of Defendant constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial advertising and promotion misrepresent the nature, characteristics, and qualities of TD's and Defendant's goods, services, and/or commercial activities.

### FIFTH CLAIM FOR RELIEF

**Trademark Counterfeiting Under
N.J. Stat. § 56:3-13.16**

52.     TD repeats and realleges each and every allegation set forth in paragraphs 1 through 51 of this Complaint.

53.     TD's TD Marks are protected at common law.

54.     Defendant's actions described above constitute use without TD's consent of reproductions, counterfeits, copies, or colorable imitations of TD's Marks in connection with Defendant's sale, distribution, offering for sale, and advertising in New Jersey of goods or services that is likely to cause confusion or mistake or to deceive as to the source of origin of the goods or services.

55.     Defendant's actions constitute a violation of N.J. Stat. § 56:3-16.

### SIXTH CLAIM FOR RELIEF

**Unfair Competition Under
N.J. Stat. § 56:4-1**

56.     TD repeats and realleges each and every allegation set forth in paragraphs 1 through 55 of this Complaint.

57.     Defendant's actions described above constitute the misappropriation for Defendant's own use of TD's name, brand, trademarks, reputation, and goodwill in violation of N.J. Stat. § 56:4-1.

### SEVENTH CLAIM FOR RELIEF

**Trademark Infringement, Unfair Competition, False Designation of Origin,
and Misappropriation
Under New Jersey Common Law**

58.     TD repeats and realleges each and every allegation set forth in paragraphs 1 through 57 of this Complaint.

59.     Defendant's actions described above are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant, Defendant's services/goods, and/or Defendant's commercial activities by or with TD, and thus constitute common-law trademark infringement, unfair competition, false designation of origin, and misappropriation of TD's Marks and goodwill under the common law of New Jersey.

## JURY DEMAND

60.     Pursuant to Fed. R. Civ. P. 38, TD respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, TD respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to the following:

A.     An Order declaring that Defendant's uses of the TD Marks knowingly and willfully infringe TD's TD Marks and green color scheme, constitute counterfeiting of TD's registered marks, and constitute unfair competition, as detailed above.

B.     An Order enjoining Defendant, its officers, directors, employees, agents, subsidiaries, distributors, dealers, app partners, related companies, and all persons in active concert or participation with any of them:

1.     From using, registering, or seeking to use or register any name, mark, trade name, company name, domain name, source identifier, or designation comprised of or containing TD, the color green, or any similar term(s) in any manner likely to cause confusion with TD and/or its marks or to otherwise injure TD and/or its reputation;

18

2.      From representing, by any means whatsoever, directly or indirectly, that Defendant, its services/goods, and/or its activities originate from, are sponsored by, or are associated, affiliated, or connected with TD in any way;

3.      From creating login and other screens, materials, or imagery that mimic or purport to be real TD screens, materials, or imagery; and

4.      From assisting, aiding, and/or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs B(1) through (3) above.

C.      An Order requiring Defendant to immediately retract and destroy all products, packaging, signage, advertisements, promotional materials, stationary, forms, and/or materials and things that contain or bear TD, or any other name, mark, trade name, company name, source identifier, or designation that contains or is confusingly similar to TD's marks.

D.      An Order directing that, within thirty (30) days after the entry of the injunction, Defendant file with this Court and serve on TD's attorneys a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

E.      An Order requiring Defendant to account for and pay to TD all profits arising from Defendant's unlawful acts, and increasing such profits, for payment to TD in accordance with 15 U.S.C. § 1117 and other applicable laws.

F.      An Order requiring Defendant to pay statutory damages in accordance with 15 U.S.C. § 1117(c) of up to $2,000,000 for each type of service sold, offered for sale, or distributed by Defendant under the TD Marks.

G.      An Order requiring Defendant to pay TD actual damages, in an amount to be determined (but exceeding $75,000), caused by the foregoing acts, and trebling such damages in

accordance with 15 U.S.C. § 1117, N.J. Stat. §§ 56:3-13.16 and other applicable laws.

H.     An Order requiring Defendant to pay TD all of its litigation expenses, including

reasonable attorneys' fees and costs under 15 U.S.C. § 1117, N.J. Stat. §§ 56:3-13.16, New

Jersey common law, and other applicable laws.

I.     An Order requiring Defendant to pay TD punitive damages in an amount to be

determined due to the foregoing willful acts.

J.     Other relief as the Court may deem appropriate.

Dated: October 14, 2020                  /s/ Samuel V. Eichner
                                         Samuel V. Eichner (Bar No. 902302012)
                                         Douglas A. Rettew (*pro hac vice* to be filed)
                                         Jessica L. Hannah (*pro hac vice* to be filed)
                                         FINNEGAN, HENDERSON, FARABOW,
                                           GARRETT & DUNNER LLP
                                         901 New York Avenue, NW
                                         Washington, D.C. 20001-4413
                                         (202) 408-4000 (phone)
                                         (202) 408-4400 (fax)
                                         Email: samuel.eichner@finnegan.com
                                         Email: doug.rettew@finnegan.com
                                         Email: jessica.hannah@finnegan.com