HERRERA KENNEDY LLP
Shawn M. Kennedy (SBN 218472)
skennedy@herrerakennedy.com
Bret D. Hembd (SBN 272826)
bhembd@herrerakennedy.com
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Tel: (949) 936-0900
Fax: (855) 969-2050

HERRERA KENNEDY LLP
Nicomedes Sy Herrera (SBN 275332)
nherrera@herrerakennedy.com
Laura E. Seidl (SBN 269891)
lseidl@herrerakennedy.com
1300 Clay Street, Suite 600
Oakland, CA 94612
Tel: (510) 422-4700
Fax: (855) 969-2050

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Rachel Geman (Pro Hac Vice)
rgeman@lchb.com
Rhea Ghosh (Pro Hac Vice)
rghosh@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel: (212) 355-9500
Fax: (212) 355-9592

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008

BURNS CHAREST LLP
Warren T. Burns (Pro Hac Vice)
wburns@burnscharest.com
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002

BURNS CHAREST LLP
Christopher J. Cormier (Pro Hac Vice)
ccormier@burnscharest.com
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 577-3977
Fax: (469) 444-5002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE PLAID INC. PRIVACY LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Master Docket No.: 4:20-cv-03056-DMR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:       Sept. 30, 2021<br>Time:       1:00 p.m.<br>Courtroom:  via videoconference only<br>Judge:      The Hon. Donna M. Ryu |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  LITIGATION HISTORY ................................................................................... 2

    A.   Procedural History ................................................................................... 2

    B.   Discovery ................................................................................................. 2

    C.   Settlement ................................................................................................ 3

III. SUMMARY OF SETTLEMENT TERMS ......................................................... 3

    A.   Class Definition ....................................................................................... 3

    B.   Monetary Relief ...................................................................................... 4

    C.   Injunctive Relief ...................................................................................... 5

        1.   Data Deletion from Plaid Systems ............................................... 5

        2.   User Control Over Data Through Plaid Portal .............................. 6

        3.   Clear Disclosures at the Time of Account Connection ................. 6

        4.   Minimizing the Data Plaid Stores ................................................ 7

        5.   Enhancing Disclosures About What Plaid Is and Does ............... 7

    D.   Notice and Settlement Administration Costs ........................................... 8

    E.   Attorneys' Fees and Costs, and Service Awards for Class Representatives ........... 8

    F.   Proposed Schedule of Events .................................................................. 9

IV.  ARGUMENT ..................................................................................................... 9

    A.   The Court Will Be Able to Certify the Proposed Settlement Class ..................... 10

        1.   The Requirements of Rule 23(a) Are Satisfied ........................... 11

            a.   Numerosity Is Satisfied .................................................. 11

            b.   Commonality Is Satisfied ............................................... 11

            c.   Typicality Is Satisfied .................................................... 12

            d.   Adequacy of Representation Is Satisfied ........................ 12

        2.   Class Certification Is Appropriate Under Rule 23(b)(3) .............. 13

            a.   Common Questions of Law or Fact Predominate Over Individual Issues ............................................................ 14

            b.   Class Treatment Is a Superior Method of Adjudication ............... 14

    B.   The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate ...... 15

        1.   The *Churchill* Factors Weigh In Favor of Approving the Settlement ...... 15

            a.   First Through Third *Churchill* Factors .......................... 16

            b.   Fourth *Churchill* Factor: Amount of Class Recovery ................. 17

            c.   Fifth *Churchill* Factor: Extent of Discovery & Arm's-Length Negotiations ..................................................... 19

            d.   Other *Churchill* Factors ............................................... 20

**TABLE OF CONTENTS**
(continued)

Page

2. The Rule 23(e) Factors Support Approving the Settlement ...................... 21

   a. The Class Representatives and Class Counsel Have
      Adequately Represented the Class ................................................. 22

   b. The Agreement Was Negotiated at Arm's Length ....................... 22

   c. The Substantial Relief Provided for the Class Is Adequate
      and Appropriate for This Case ..................................................... 23

      i. The Costs, Risks, and Delay from Trial and Appeal
         Show that the Recovery Contained in the Settlement
         Is Adequate ...................................................................... 23

      ii. The Proposed Method of Distributing Relief on
          Behalf of the Class Is Effectiv ......................................... 23

      iii. Any Award of Attorneys' Fees Will Not Prevent the
           Court from Finding that the Relief Provided to the
           Class Is Adequate .............................................................. 27

      iv. There Are No Other Agreements Required to Be
          Identified Under Rule 23(e)(3) ........................................... 28

   d. The Agreement Treats Class Members Equitably Relative to
      Each Other .................................................................................. 28

3. The Northern District's Procedural Guidance Weighs In Favor of
   Approving the Settlement ................................................................. 28

   a. Identity of Settlement Class ........................................................ 28

   b. Release of Claims........................................................................ 31

   c. Class Recovery............................................................................ 32

   d. Allocation Plan............................................................................ 33

   e. Submission of Claim Forms........................................................ 33

   f. Reversions .................................................................................. 33

   g. Settlement Administrator ............................................................ 33

   h. Notice ......................................................................................... 35

   i. Opt-Outs .................................................................................... 35

   j. Objections .................................................................................. 36

   k. Attorneys' Fees .......................................................................... 36

   l. Incentive Awards ........................................................................ 36

   m. CAFA Notice .............................................................................. 36

   n. Past Distributions ....................................................................... 37

V. CONCLUSION ................................................................................................. 37

# TABLE OF AUTHORITIES

**Page**

## CASES

*Carlotti v. ASUS Computer Int'l*,
No. 18-03369, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) .......................................... passim

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010) ........................................................................................ 31

*Churchill Vill., L.L.C. v. GE*,
361 F.3d 566 (9th Cir. 2004) ......................................................................................... passim

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ............................................................................................ 32

*Custom LED, LLC v. eBay, Inc.*,
No. 12-350, 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ................................................ 32

*Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*,
956 F.3d 589 (9th Cir. 2020) .............................................................................................. 19

*Diamond Multimedia Sys., Inc. v. Superior Ct.*,
19 Cal. 4th 1036 (1999) ...................................................................................................... 31

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .............................................................................. 10, 11, 13, 14

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) .............................................................................................. 32

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ....................................................................................... 32

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .............................................................................................. 22

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 17-md-02777, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ......................................... 36

*In re Google LLC Street View Electronic Comms. Litig.*,
No. 10-md-021784, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ................................. 18, 19

*In re Hyundai and Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .......................................................................................... 9, 10, 14

*In re Lenovo Adware Litig.*,
No. 15-md-02624, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ....................................... 18

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ....................................................................................... 18

*In re Qualcomm Antitrust Litig.*,
328 F.R.D. 280 (N.D. Cal. 2018) ....................................................................................... 31

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) ................................................................................ 16

*Lane v. Facebook*,
696 F.3d 811 (9th Cir. 2012) ................................................................................ 4, 17, 18, 19

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ............................................................................................ 19

**TABLE OF AUTHORITIES**
(continued)

Page

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................................ 30

*McDonald v. Bass Pro Outdoor World, LLC*,
   No. 13-889, 2014 WL 3867522 (S.D. Cal. Aug. 5, 2014) ................................. 14

*Moreno v. Capital Bldg. Maint. & Cleaning Servs.*,
   No. 19-07087, 2021 WL 1788447 (N.D. Cal. May 5, 2021) .............................. 10

*Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 17

*Norwest Mortgage, Inc. v. Superior Ct.*,
   72 Cal. App. 4th 214 (1999) .............................................................................. 31

*O'Connor v. Uber Techs., Inc.*,
   No. 13-03826, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ........................... 28

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................ 15

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ............................................................................ 12

*Perkins v. LinkedIn Corp.*,
   No. 13-04303, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ......................... 18, 19

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) ...................................................................... 11

*Rodriguez* v. *W. Publi'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ....................................................................... 17, 22

*See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   No. 2672, 2017 WL 672727 (N.D. Cal. Feb. 16, 2017) ............................... passim

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................ 21

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ............................................................................ 15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................... 11

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ...................................................................... 12, 14

*Young v. LG Chem Ltd.*,
   783 F. App'x 727 (9th Cir. 2019) ...................................................................... 19

**STATUTES**

18 U.S.C. § 1030 ...................................................................................................... 2

18 U.S.C. §§ 2701 *et seq.* ......................................................................................... 2

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................................. 2, 18

Cal. Penal Code § 502 ............................................................................................... 2

Civil Code § 334 ..................................................................................................... 18

MEMO ISO MTN FOR PRELIM APP OF SETTLEMENT
                                                           CASE NO. 4:20-CV-03056-DMR

1

**TABLE OF AUTHORITIES**
(continued)

2
                                                                                                                    **Page**
3
### RULES
4
2018 Amendment Advisory Committee Notes .......................................................................... 10, 15

Fed. R. Civ. P. 23(a)(1) ............................................................................................................ 11

Fed. R. Civ. P. 23(a)(3) ............................................................................................................ 12

Fed. R. Civ. P. 23(a)(4) ............................................................................................................ 12

Fed. R. Civ. P. 23(b)(3) ...................................................................................................... 13, 14

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................. 23, 26

Fed. R. Civ. P. 23(e) .......................................................................................................... passim

Fed. R. Civ. P. 23(g) ................................................................................................................ 13
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.    INTRODUCTION

After more than a year of hard-fought litigation and five months of arm's-length settlement negotiations including two mediations with the Hon. Jay Gandhi (ret.) serving as mediator, Plaintiffs have reached an excellent settlement with Plaid that is fair, reasonable, and adequate, handily warranting preliminary approval.

This proposed nationwide class action settlement resolves claims against Plaid for invasion of privacy/intrusion into private affairs, unjust enrichment, deceit, and violations of California Constitution (Article I, Section I) and California's Anti-Phishing Act of 2005 ("CAPA"), Cal. Bus. & Prof. Code § 22948 *et seq.* Plaid is a service used by a variety of mobile and web-based applications ("apps")—such as apps that allow users to transfer money—to connect to app users' financial accounts. Plaintiffs allege[2] that, in connection with this process, Plaid misled and violated the privacy of the proposed Class Members by obtaining data from their financial accounts without authorization, and by obtaining their bank login information through its user interface (known as "Plaid Link") which Plaintiffs allege was designed to have the look and feel of the user's own bank account login screen. *See* CAC ¶¶ 37-40.

The proposed Settlement provides substantial relief to the Class, including a non-reversionary $58 million cash fund, and injunctive relief that addresses the complained-of conduct, including by requiring Plaid to maintain certain changes to the design of its standard interface, make more fulsome disclosures to consumers, and delete transactional banking data for consumers whose apps did not request that data. This injunctive relief will help ensure that Class members have informed control of their private financial data, and it will provide important protections for consumers across the country who increasingly rely on modern fintech apps to do business, transfer and invest funds, and otherwise manage their finances electronically. At the same time, the proposed Settlement will eliminate the risk and uncertainty of continued

---

[1] Unless otherwise noted, capitalized terms have the same meanings as in the Settlement Agreement ("Agreement").

[2] For purposes of this Motion, references and discussion regarding Plaid's conduct are based on the allegations in the Consolidated Amended Class Action Complaint ("CAC") (Dkt. 61).

1  proceedings in this Court.

2  In light of the risks of continuing and protracted litigation—with its associated risks,

3  including the specter of no recovery for the proposed Class—the Agreement deserves preliminary

4  approval because it provides the immediate benefits of substantial monetary and injunctive relief.

5  **II.**   **LITIGATION HISTORY**

6  **A.**   **Procedural History**

7  On May 4, 2020, Plaintiffs James Cottle and Frederick Schoeneman commenced the

8  action *Cottle et al. v. Plaid Inc.*, No. 4:20-cv-03056-DMR ("Cottle Action"). On July 29, 2020,

9  the Court consolidated the Cottle Action with four related actions (collectively, the "Action"), and

10  appointed interim class counsel under Federal Rule of Civil Procedure 23(g). (Dkt. 51, 57.) On

11  August 5, 2020, consolidated Plaintiffs filed the CAC in the Action. (Dkt. 61.)

12  On September 14, 2020, Plaid filed a motion to dismiss the CAC. (Dkt. 78.) On April 30,

13  2021, the Court granted in part Plaid's motion, dismissing with prejudice Plaintiffs' claims for

14  declaratory and injunctive relief and their claims under the Stored Communications Act, 18

15  U.S.C. §§ 2701 *et seq.*; Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*;

16  Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and Computer Data and Access Fraud Act,

17  Cal. Penal Code § 502, and sustaining Plaintiffs' invasion of privacy/intrusion into private affairs

18  and unjust enrichment claims for a nationwide class, as well as their deceit, California

19  Constitution, and CAPA claims for a California class. (Dkt. 125.)[8]

20  **B.**   **Discovery**

21  Plaintiffs sought and received significant discovery from Plaid both before and during

22  settlement discussions, then sought and received confirmatory discovery after reaching agreement

23  on settlement terms with Plaid. Class Counsel served—and Plaid responded to—57 document

24  requests, 21 interrogatories, and 51 requests for admissions. Kennedy Decl., ¶ 7. Plaintiffs also

25  commenced third-party discovery, having subpoenaed and started discussions with certain banks.

26  *Id.* Discovery issues were highly contested and resulted in numerous telephonic and written meet-

27  and-confers over the course of the Action. *Id.*, ¶¶ 5-9.

28  In response to formal and informal discovery requests, Plaid provided information,

internal documents, and data that shed light on the nature and function of Plaid's software and business practices during the class period, its finances, and the size and scope of the potential class, among other things. *Id.*, ¶ 6. This allowed Class Counsel to negotiate a fully-informed settlement that maximizes the financial recovery available to the Class and provides important injunctive relief designed to remediate the practices underlying the alleged misconduct going forward while avoiding litigation risks that were brought to light in the process.

## C.   Settlement

Between February and July 2021, the Parties engaged in lengthy and contentious arm's-length negotiations to resolve the claims in the Action. Kennedy Decl., ¶ 10. On February 16, 2021, the Parties engaged in a full-day mediation session with the Hon. Jay Gandhi (ret.). *Id.*, ¶ 10. Prior to the mediation, the Parties prepared detailed mediation briefs outlining their positions on the strengths and weaknesses of the case and participated in a technology tutorial session with Judge Gandhi. *Id.* The Parties went into the mediation with substantially different positions relating to appropriate settlement terms and did not resolve the Action at the initial mediation. *Id.*, ¶ 11. For the next several months, while the Parties continued to litigate, they continued to engage in the mediation process with Judge Gandhi, who helped bridge the gap between the Parties' positions. *Id.*, ¶ 12. These negotiations included another mediation session on April 13, 2021. *Id.*, ¶ 13.

On June 7, 2021, Judge Gandhi made a mediator's proposal for a class-wide settlement for $58 million subject to the parties' negotiation and agreement of injunctive relief terms; that recommendation was accepted by all Parties in a double-blind process on June 11, 2021. *Id.*, ¶ 14. Over the next six weeks, the Parties negotiated the terms of a long-form settlement agreement, including injunctive relief. *Id.* These negotiations ultimately resulted in the Agreement, which was executed on July 30, 2021. *Id.*, ¶ 14, Ex. A.

## III.   SUMMARY OF SETTLEMENT TERMS

### A.   Class Definition

The Agreement provides for a settlement class (the "Class") of all United States residents who own or owned one or more "Financial Accounts" from January 1, 2013 to the date

preliminary approval of the Settlement is granted. "Financial Account" is defined to mean a financial institution account (1) that Plaid accessed using the user's login credentials and connected to a mobile or web-based fintech application that enables payments (including ACH payments) or other money transfers or (2) for which a user provided financial account login credentials to Plaid through Plaid Link. *See* Kennedy Decl., Ex. A, ¶ 19.

## B. <u>Monetary Relief</u>

Plaid has agreed to pay $58,000,000 to create a non-reversionary Settlement Fund for the benefit of Class Members, who will receive a claims-made pro rata payment after the deduction of settlement-related costs, including the expenses of the settlement administrator and the costs of notice to the Class, any named plaintiff service awards, attorneys' fee award and expense reimbursements, and any other costs approved by the Court. *Id.*, Ex. A, ¶¶ 71-78.

Further, unclaimed funds (if any) will go through a second distribution. In the event that either the initial or secondary distributions are not economically feasible, Plaintiffs propose that the funds be distributed by *cy pres*, to Privacy Rights Clearinghouse (PRC) and Consumer Reports (CR).  The work of these organizations has the requisite nexus to this action, the goals of the underlying statutes and claims, and the interests of this Class.  *See Lane v. Facebook*, 696 F.3d 811, 819-820 (9th Cir. 2012).  Specifically:

**Privacy Rights Clearinghouse (PRC)**, is "a nonprofit organization protecting privacy for all by empowering individuals and advocating for positive change," which "strive[s] to provide clarity on complex topics by publishing extensive educational materials." PRC also amplifies voices often underrepresented in policy discussions in its work championing strong privacy protections, including in connection with financial privacy regulations.[3]

**Consumer Reports (CR)** has a ninety year history of testing products to provide consumers with unbiased information about the risks they face in the marketplace.  In recent years, CR has expanded its efforts to the digital marketplace, evaluating the privacy implications of digital technologies to provide consumers with information about security and privacy risks

---

[3] https://privacyrights.org/about; *see also*, *e.g.*, https://privacyrights.org/resources/using-peer-peer-payments-more-safely; https://privacyrights.org/resources/use-mobile-financial-services-consumers-comments-consumer-financial-protection-bureau

and further corporate accountability.  CR's Digital Lab, an initiative addressing data privacy and security issues faced by consumers in a marketplace fueled by personal data, enables CR to design and implement tests to rate technology products, services, and platforms on their collection, use, and protection of consumer data, and to educate and empower consumers and to galvanize the industry to bring better, safer, products and services to market.[4]

## C.  Injunctive Relief

Plaid has agreed to implement meaningful business practice changes designed to remediate alleged privacy violations, improve user control over their private login information and financial data, and safeguard their privacy going forward. As detailed in the following sections, Plaid has agreed to (1) delete certain data from its systems; (2) inform Class Members of their ability to manage the connections made between their financial accounts and chosen applications using Plaid and delete data stored in Plaid's systems; (3) continue to include certain disclosures and features in Plaid's standard Link flow; (4) minimize the data Plaid stores; (5) enhance disclosures in Plaid's End User Privacy Policy about the categories of data Plaid collects, how Plaid uses data, and privacy controls Plaid has made available to users; and (6) continue to host a dedicated webpage with detailed information about Plaid's security practices. These requirements will apply for at least three years within the United States.

### 1.  Data Deletion from Plaid Systems

Plaid will, within the applicable timeframes, delete data from its systems that was retrieved as part of Plaid's "Transactions" product—which can include information about financial account activity, such as the amount, time, and place of deposits, withdrawals, transfers, or purchases—for users that Plaid can reasonably determine did not connect an account to an application that requested Transactions data. *See* Kennedy Decl., Ex. A, ¶ 63. Thus, if a consumer exclusively connected an application (or applications) that did not ask Plaid to collect Transactions data, but Plaid retrieved that data anyway, then Plaid will delete that data from its systems.[5]

---

[4] https://digital-lab.consumerreports.org/
[5] The data will not be deleted if the user currently has an active connection to other applications that requested that Plaid retrieve that data.

In addition, Plaid will delete data from its systems for users that Plaid is aware it has no valid means to authenticate with the bank. *Id.* This means, for example, if Plaid determines that the password it obtained for a particular bank account has changed, or that the account has been closed, Plaid will delete the associated account data from its systems.

### 2. <u>User Control Over Data Through Plaid Portal</u>

Plaid will provide a prominent reference and link to Plaid Portal (currently located at my.plaid.com) on its website homepage (www.plaid.com) along with a plain-language description of the user controls available on Plaid Portal. By creating a Plaid Portal account, users, including Class Members, can view and manage the connections that have been made between apps and their financial accounts using Plaid. Class Members can also delete their financial data stored in Plaid's systems. *See* Kennedy Decl., Ex. A, ¶¶ 58-59.

Plaid will also make reasonable commercial efforts to send periodic email reminders to Plaid Portal account holders generally describing the user controls available in Plaid Portal, including, to the extent technically feasible, the ability to disconnect applications from financial accounts, and delete financial data stored in Plaid's systems. *Id.*

### 3. <u>Clear Disclosures at the Time of Account Connection</u>

To ensure clarity on Plaid's role in the financial account connection process, and to ensure that users clearly understand who they are sharing certain information with and for what purposes, Plaid will ensure that its standard Link flow includes and/or continues to include the following:

The credentials pane, meaning the pane where users enter their financial account username and password, explains that the user's credentials are being "provided to Plaid."

The background color of the credential pane will not utilize the color scheme associated with a specific financial institution for that financial institution.

The consent pane, meaning the pane where users agree to Plaid's End User Privacy Policy and that Plaid will connect their application to their financial institution, continues to (a) refer expressly to Plaid and explain that Plaid is used to link the user's accounts; (b) include a conspicuous link to Plaid's End User Privacy Policy; and (c) require the user to agree to Plaid's

End User Privacy Policy by taking clear affirmative action (*e.g.*, by clicking "Continue").

*See id.*, Ex. A, ¶ 56.

### 4. Minimizing the Data Plaid Stores

Plaid will minimize the data it stores from users' financial accounts as follows:

With respect to data retrieved from users' financial accounts, subject to certain limitations such as for compliance with applicable law, Plaid will only store the categories of data for the Plaid product(s) that the user's application specifically requests from Plaid or that are necessary for Plaid to offer its services, unless the user has expressly consented to the retrieval of additional data fields.

Plaid will use its best efforts to continue to inform the applications that use Plaid about its "/item/remove endpoint," which is a means for those applications to inform Plaid that a user has terminated their account with the application, which then terminates the application's access to data from Plaid and may lead to data deletion from Plaid's systems (if such data is not actively used by another application).

*See id.*, Ex. A, ¶¶ 60-62.

### 5. Enhancing Disclosures About What Plaid Is and Does

In addition to the disclosures and controls discussed above, Plaid will enhance its End User Privacy Policy (EUPP) to provide more detailed information about Plaid's data collection, storage, use, sharing, and deletion practices. The enhanced EUPP will:

Provide more detail about the categories of personal information Plaid collects from users' financial accounts for each Plaid generally available product, including a plain-language list of the category or categories of personal information Plaid collects and a plain-language statement of the general reasons it is collected.

Provide more detail about how Plaid uses data, including by providing, for each category of personal information that Plaid collects about users, the categories of uses for which Plaid collects the information and the categories of parties with whom Plaid shares personal information (if any) (*e.g.*, the developer of the user's application).

Provide a plain-language explanation of Plaid's deletion and retention practices related to

personal information collected from users' financial accounts.

Provide a dedicated section explaining in plain-language terms the privacy controls Plaid has made available to users (*e.g.*, "Privacy Control Section"), regardless of whether those controls are guaranteed by any legal right.

*See id.*, Ex. A, ¶ 53.

### D.    Notice and Settlement Administration Costs

All settlement notice and administrative costs will be paid from the Settlement Fund, except that in the event such costs exceed approximately $5.5 million (which the Parties do not presently anticipate), Plaid will pay for up to $500,000 of such additional administrative costs directly to the third-party administrator. *See id.*, ¶ 17 n.2. Class Members will be notified through a program led by a highly experienced, well-regarded, third-party administrator, Angeion Group LLC ("Angeion"), by the methods ordered by the Court. The proposed Notice Program, described in the Declaration of Steven Weisbrot of Angeion, takes advantage of state-of-the-art notification methods and is designed to reach an extremely high percentage of the Class under governing standards. The content of the proposed Long Form Notice, which communicates Class Members' rights and options under the Settlement in plain, easily understood language, is attached as Exhibit C to the Settlement Agreement (Kennedy Decl. Ex. A).

### E.    Attorneys' Fees and Costs, and Service Awards for Class Representatives

Class Counsel will request attorneys' fees of no more than 25% of the $58 million Settlement Fund plus the reimbursement of actual, out-of-pocket expenses. A fee and expense petition will be filed with the Court at least 35 days in advance of the objection deadline and the Long Form Notice will inform the Class Members of the prospective fee and expense request. Plaid may object to any fee and expense request if it so desires. Any reduction in Class Counsel's requested fee would not revert to Plaid.

Class Counsel will also seek service awards for Class Representatives to be paid from the Settlement Fund, in an amount up to $5,000 each. *See* Kennedy Decl. Ex. A, ¶ 112. Each proposed Class Representative has contributed to the prosecution of the Action, including by providing information about their experiences for their complaints, participating in a thorough

vetting process undertaken by Class Counsel, preserving relevant documents and ESI, responding to discovery requests, staying informed about the litigation, and responding to Class Counsel's requests for information. *See id.*, ¶ 26. Should the Court award less than any amount requested as a Service Award, the difference in the amount sought and the amount ultimately awarded shall remain in the Settlement Fund for the benefit of the Class. *See id.*, Ex. A, ¶ 113.

The Agreement is neither dependent nor conditioned upon the Court approving the aforementioned payments, nor upon the Court awarding the particular amounts sought. *See id.*, Ex. A, ¶ 114.

### F.    Proposed Schedule of Events

Consistent with the provisions of the Agreement, Plaintiffs propose the following schedule for the various Settlement-related events:

| Event | Date |
|---|---|
| Deadline to substantially complete notice pursuant to Notice Plan ("Notice Date") | 70 days after entry of the Court's Preliminary Approval Order or November 12, 2021, whichever is later |
| Deadline for Class Counsel's motions for final approval and for attorneys' fees, costs, and service awards | 70 days after entry of the Court's Preliminary Approval Order |
| Objection / Exclusion Deadline | 35 days after Notice Date |
| Deadline for Parties to file a written response to any comment or objection filed by a Class Member | 50 days after Notice Date |
| Claims Deadline | 90 days after Notice Date |
| Final Approval Hearing | Not less than 160 days after entry of the Preliminary Approval Order, or as soon thereafter as is convenient for the Court |

## IV.    ARGUMENT

The Ninth Circuit maintains a "strong judicial policy" that favors settlement, particularly "where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (quotation omitted). In the preliminary approval context, the Court must determine whether it "will likely be able to" certify the class for settlement purposes and finally approve the proposed settlement as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). The court need not ask whether the proposed settlement is ideal or the best possible; it

determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998). "At the preliminary approval stage, the court's role is to assess whether the settlement falls within the range of possible approval." *Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, No. 19-07087, 2021 WL 1788447, at *4 (N.D. Cal. May 5, 2021) (Ryu, J.) (quotation omitted).

As outlined below, preliminary approval of the Agreement is easily warranted. The Court will likely be able to certify the settlement class at the final approval stage pursuant to Rule 23(a) and Rule 23(b)(3). The Court also will likely be able to finally approve the proposed Agreement—calling for a substantial monetary settlement and injunctive relief—as fundamentally fair, reasonable, and adequate. Thus, the Court should grant Plaintiffs' motion for preliminary approval of the class action settlement described herein and direct notice to the Class.

### A.     The Court Will Be Able to Certify the Proposed Settlement Class

Rule 23(e)(1) provides that preliminary approval should be granted (and notice disseminated) where the Court "will likely be able to" certify the class for settlement purposes. Fed. R. Civ. P. 23(e); *see also id.* 2018 Amendment Advisory Committee Notes. Class certification is a two-step process: first, Plaintiffs must establish numerosity, commonality, typicality, and adequacy under Rule 23(a). Second, Plaintiffs must establish that one of the bases for certification in Rule 23(b) is met.

"'[I]n deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class or subclasses.'" *Carlotti v. ASUS Computer Int'l*, No. 18-03369, 2019 WL 6134910, at *17 (N.D. Cal. Nov. 19, 2019) (Ryu, J.) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019)). "'[T]he aspects of Rule 23(a) and (b) that are important to certifying a settlement class are those designed to protect absentees by blocking unwarranted or overbroad class definitions. The focus is on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives.'" *Id.* (quoting *In re Hyundai*, 926 F.3d at 558).

Plaintiffs contend, and Plaid does not dispute for settlement purposes only, that the

proposed Class meets the requirements for class certification under Rule 23(a) and Rule 23(b)(3).

### 1.   The Requirements of Rule 23(a) Are Satisfied

#### a.   Numerosity Is Satisfied

The numerosity requirement is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed rule, numerosity is generally presumed when the potential number of class members reaches forty. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here, Class Members number in the tens of millions and easily satisfy the numerosity requirement. *See* Kennedy Decl., ¶ 25.

#### b.   Commonality Is Satisfied

Rule 23(a)(2) requires that there be one or more questions common to the class. *See Hanlon*, 150 F.3d at 1018.  "The common question 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Carlotti*, 2019 WL 6134910, at *17 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Here, Plaintiffs readily meet this standard, as many significant common questions of law and fact exist, including the following:

(1)   Whether Plaid invaded reasonable expectations of privacy through improper, illegal, or offensive conduct;

(2)   Whether Plaid omitted or concealed material facts from Class Members that it had a duty to disclose;

(3)   Whether Plaid gave effective notice of its privacy policy under an objectively reasonable consumer standard;

(4)   Whether Plaid's End User Privacy Policy discloses Plaid's alleged conduct;

(5)   Whether Plaid obtained consent to obtain, store, and use Class Members' banking credentials or private financial information;

(6)   Whether Plaid's software induced Class Members to provide "identifying information" within the meaning of CAPA by representing itself to be a business, without the authority or approval of the business; and

(7)   Whether Class Members were "adversely affected" within the meaning of CAPA by Plaid's collection of their financial institution login credentials or by Plaid's subsequent use of their login information to access, use and provide their private banking data to Plaid's clients.

All Class Members' claims will be resolved by answering these common legal questions. Indeed, Class Members' claims arise from a common course of alleged conduct: that Plaid allegedly obtained without permission their confidential login information through an interface that was designed to have the look and feel of the user's bank account login screen and that Plaid obtained more financial and other data than was authorized or needed by a user's application. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672, 2017 WL 672727, at *13 (N.D. Cal. Feb. 16, 2017) (finding commonality satisfied where the class representative claims "arise from Volkswagen's common course of conduct"). Thus, commonality is satisfied.

### c.    Typicality Is Satisfied

The typicality requirement is satisfied when the representative parties' claims are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality "assure[s] that the interest of the named representative aligns with the interests of the class.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and quotations omitted). "Under this 'permissive' rule, 'representative claims are "typical" if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'" *In re Volkswagen*, 2017 WL 672727, at *13 (quoting *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)).

Here, Plaintiffs' claims stem from the same course of conduct and pattern of alleged wrongdoing as the claims of the Class Members. Plaintiffs and the Class Members all had their confidential login information collected by Plaid by means of an interface that Plaintiffs allege improperly mimicked the look and feel of bank login screens, or had certain transactional information and data collected by Plaid without proper permission. Plaintiffs' claims are typical because they were subject to the same conduct as the other Class Members and are alleged to have suffered the same injury as a result. *See Volkswagen*, 2017 WL 672727, at *13.

### d.    Adequacy of Representation Is Satisfied

The adequate representation requirement is satisfied when the representative party is able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also* Fed.

1   R. Civ. P. 23(g). "Courts engage in a dual inquiry to determine adequate representation and ask:

2   '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class

3   members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on

4   behalf of the class?'" *Carlotti*, 2019 WL 6134910, at *18 (quoting *Volkswagen*, 2017 WL

5   672820, at *7)). Both requirements are satisfied here.

6         First, Class Counsel have extensive experience litigating, trying and settling class actions,

7   including consumer cases, throughout the country. (*See* Dkt. 51-1, 51-2, & 51-3.) At the outset of

8   this action, the Court approved Class Counsel as Interim Co-Lead Counsel due to their

9   qualifications, experience, and commitment to the successful prosecution of this case. (*See* Dkt.

10  57.) Since then, Class Counsel have vigorously litigated the Action and had sufficient information

11  at their disposal before entering into settlement negotiations, allowing Class Counsel to

12  adequately assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of

13  settlement against the risks of further litigation. *See* Kennedy Decl., ¶ 26. Thus, Class Counsel

14  have fairly and adequately protected the interests of all Class Members and will continue to do so.

15        Second, Plaintiffs' interests are aligned with, and are not antagonistic to, the interests of

16  the other Class Members. Specifically, Plaintiffs and the Class Members are equally interested in

17  obtaining relief for Plaid's alleged statutory and common law violations, and for ensuring that

18  Plaid reforms its business practices. *See Hanlon*, 150 F.3d at 1021 (adequacy satisfied where

19  "each . . . plaintiff has the same problem").

20                    **2.    Class Certification Is Appropriate Under Rule 23(b)(3)**

21        Rule 23(b)(3) requires the Court to find that (1) questions of law or fact common to class

22  members predominate over any questions affecting only individual members, and (2) a class

23  action is superior to other available methods for fairly and efficiently adjudicating the

24  controversy. *See* Fed. R. Civ. P. 23(b)(3). "Certification under Rule 23(b)(3) is appropriate

25  'whenever the actual interests of the parties can be served best by settling their differences in a

26  single action.'" *Carlotti*, 2019 WL 6134910, at *18 (quoting *Hanlon*, 150 F.3d at 1022).

27

28

### a. **Common Questions of Law or Fact Predominate Over Individual Issues**

Rule 23(b)(3) requires a finding that common issues of law or fact predominate over any issues unique to individual class members. "The Ninth Circuit has noted that predominance is 'readily met'" in cases such as this alleging consumer fraud. *Id.* (quoting *In re Hyundai*, 926 F.3d at 559); *see also McDonald v. Bass Pro Outdoor World, LLC*, No. 13-889, 2014 WL 3867522, at *5 (S.D. Cal. Aug. 5, 2014) (standardized conduct and policy that violated statutory privacy rights supported a finding of predominance in privacy class action).

Here, common questions of the kind noted above predominate because there are few, if any, individualized factual issues, and because the core facts involve Plaid's uniform conduct that allegedly harmed all Class Members. Specifically, Plaintiffs allege that Plaid utilized an interface embedded in certain fintech apps to collect their and the other Class Members' private login information, and this conduct uniformly injured Plaintiffs' and the other Class Members' legally protected interests under CAPA and other state and federal statutes. Plaintiffs also allege that Plaid uniformly injured Plaintiffs' and the other Class Members' protected privacy interests through this conduct. Thus, Plaid engaged in the same alleged illegal conduct "in the same manner against all Class Members." *Hanlon*, 150 F.3d at 1022 (internal quotations omitted).

Moreover, the Class Members do not have a strong interest in bringing individual cases, including because the maximum amount of recovery for an individual Class Member would likely be a fraction of the cost of bringing a lawsuit, and there are no apparent individual issues to weigh against the many common issues. *See Carlotti*, 2019 WL 6134910, at *18-19. Because Plaid's alleged conduct applies "to all of the Class Members' claims" and Plaintiffs allege "a common and unifying injury" as a result of Plaid's alleged illegal conduct, the predominance requirement is met. *Volkswagen*, 2017 WL 672727, at *14.

### b. **Class Treatment Is a Superior Method of Adjudication**

Whether a class action is the superior method for the adjudication of claims "requires the court to determine whether maintenance of [the] litigation as a class action is efficient and whether it is fair." *Wolin*, 617 F.3d at 1175-76. Specifically, "[a] class action is the superior

method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Furthermore, a class action is superior where, as here, classwide litigation of common issues "reduce[s] litigation costs and promote[s] greater efficiency." *Id.* at 1234.

Here, there is no realistic alternative to a class action due to the size of the Class, and most members would find the cost of litigating individual claims to be prohibitive, especially considering the risk factors of the case. *See* Section IV.B.1.a, *infra*. If individual lawsuits were asserted against Plaid, each Class Member "would be required to prove the same wrongful conduct to establish liability and thus would offer the same evidence." This would also leave open "the possibility of inconsistent rulings and results." *Volkswagen*, 2017 WL 672727, at \*14.

Consequently, this Court "will likely be able to" certify the class for settlement purposes under Rule 23(e).

**B.      The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate**

Preliminary approval is appropriate where the court "will likely be able to" finally approve the settlement under Amended Rule 23(e)(2). Fed. R. Civ. P. 23(e); *see also id.* 2018 Amendment Advisory Committee Notes. In addition to the Rule 23(e)(2) factors, this Court has stated that it will look to "the fairness factors set forth in *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004)," as well as the Northern District of California's Procedural Guidance for Class Action Settlements, when deciding whether to grant preliminary approval of a class settlement. *Carlotti*, 2019 WL 6134910, at \*3. "'The relative degree of importance to be attached to any particular factor will depend upon . . . the unique facts and circumstances presented by each individual case.'" *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). All of these factors strongly support the proposed Settlement.

**1.      The *Churchill* Factors Weigh In Favor of Approving the Settlement**

According to *Churchill*, a court should balance such factors as: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Carlotti*, 2019 WL 6134910, at *3 (quoting *Churchill*, 361 F.3d at 575).

### a. First Through Third *Churchill* Factors

The first three *Churchill* factors "are addressed together and require the court to assess the plaintiff's likelihood of success on the merits and the range of possible recovery versus the risks of continued litigation and maintaining class action status through the duration of the trial." *Id.* at *4 (quotation omitted). "These factors weigh in favor of approving settlement when the defendant has 'plausible defenses that could have ultimately left class members with a reduced or non-existent recovery.'" *Id.* (quoting *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015)).

Although Plaintiffs are confident in the strength of their claims and their ability to ultimately prevail at trial, they nevertheless recognize that this novel litigation is inherently risky. Given the substantial recovery obtained for the Class, and the uncertainties that would accompany continued litigation, there is little question that the proposed Settlement provides an adequate remedy on behalf of the Class Members.

First, there are risks at class certification. Class certification (a practical, procedural decision) is not all or nothing, and thus in addition to the risk of a denial is the risk (or specter) of a smaller class. This is a large class affecting conduct over many years, implicating multiple apps and financial institutions.  While Plaintiffs maintain that there is a core continuity of practices involving relatively simple issues, Plaid (like other defendants) would strenuously oppose class certification based on what it considers differences or changes, such as over time or between and among the apps or banks.

Second, there is a risk that Plaid might prevail in motion practice on merits issues, whether pre-trial, at trial, or on appeal, resulting in substantial delay or no relief for Class Members. Plaid also would raise multiple defenses to seek to avoid liability under the relatively-untested CAPA, including the filing of a motion for summary judgment on the grounds that the

1  statute targets only certain types of activity that does not apply to a business like Plaid, and that

2  many or all Class Members were not adversely affected by its business practices and thus lacked

3  standing and/or could not establish harm/damages. (*See generally* Dkt. 78, 111.)

4  Third, as to remedies, in the absence of a class-wide claim with attendant statutory

5  damages such as Plaintiffs' CAPA claim (or their now-dismissed SCA claim), the value of the

6  Class's claims would undoubtedly be impacted. While Plaintiffs believe they would prevail on

7  any such motion, success is not guaranteed. *See Rodriguez* v. *W. Publi'g Corp.*, 563 F.3d 948,

8  966 (9th Cir. 2009) (noting that the elimination of "[r]isk, expense, complexity, and likely

9  duration of further litigation" weighed in favor of approving settlement).  In addition, the parties

10  would likely dispute appropriate restitution.

11  The above risks, and others, which could result in the Class getting no relief or

12  significantly less relief, show that the Settlement is more than adequate when balanced against the

13  proposed $58 million recovery and the proposed injunctive relief.

14  **b.     Fourth *Churchill* Factor: Amount of Class Recovery**

15  This factor favors approval. When considering the fourth *Churchill* factor (the amount of

16  recovery offered in settlement), "'it is well-settled law that a proposed settlement may be

17  acceptable even though it amounts to only a fraction of the potential recovery that might

18  be available to the class members at trial.'" *Carlotti*, 2019 WL 6134910, at *5 (quoting *Nat'l*

19  *Rural Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)). Indeed, the

20  Court's assessment of the reasonableness of a negotiated settlement amount at this stage is

21  "delicate balancing, gross approximations and rough justice." *Rodriguez*, 563 F.3d at 965

22  (internal quotation marks omitted). "In reality, parties, counsel, mediators, and district judges

23  naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs'

24  or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present

25  value." *Id.*  A district court is not required "to find a specific monetary value corresponding to

26  each of the plaintiff class's statutory claims and compare the value of those claims to the

27  proffered settlement award." *Lane* v. *Facebook, Inc.*, 696 F.3d at 823.

28  Here, the Agreement includes a very significant monetary recovery and robust injunctive

relief for the Class that falls well within the range of reasonableness. The monetary benefit alone compares very favorably to what plaintiffs have obtained in other comparable privacy class settlements. Moreover, the value of the numerous business practice changes provides additional substantial value to the Class. *See, e.g., Lane,* 696 F.3d at 826 (in nationwide class action alleging defendant gathered class members' personal information and online activities without consent in violation of the Electronic Communications Privacy Act, the Computer Fraud and Abuse Act, the Video Privacy Protection Act, and California's CLRA and Computer Crime Law, approving cy pres-only fund of $9.5 million and injunctive relief that ended the alleged misconduct); *Perkins v. LinkedIn Corp.*, No. 13-04303, 2016 WL 613255, at *18 (N.D. Cal. Feb. 16, 2016) (in nationwide class action alleging violations of California's UCL, common law right of publicity, and Civil Code § 334, approving fund of $13 million and injunctive relief terms consisting of improved disclosures, provision of additional information about defendants' relevant practices, and implementation of process where users could stop receiving unrequested communications); *In re Google LLC Street View Electronic Comms. Litig.*, No. 10-md-021784,  2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (in nationwide class action alleging violations of the Federal Wiretap Act, California's wiretap statute, and California Business and Professions Code § 17200, approving cy pres-only fund of $13 million and injunctive relief consisting of defendant's agreement to not collect the relevant data from class members without notice or consent for five years); *In re Lenovo Adware Litig.*, No. 15-md-02624, 2019 WL 1791420, at *10 (N.D. Cal. Apr. 24, 2019) (in nationwide class action alleging violations of California's UCL, CLRA, Computer Crime Law, Invasion of Privacy Act, the Computer Fraud and Abuse Act, and trespass, approving $8.3 million fund where defendant separately entered into consent decree with the FTC and certain states to remedy the conduct at issue); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015).(in nationwide class action alleging violations of California's UCL and breach of contract, approving fund of $1.25 million and injunctive relief to remedy the alleged misconduct)

While Plaid faced potential liability for statutory damages of $5,000 per violation of

CAPA plus common law privacy-related damages and restitution[6], a "'proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved.'" *Young v. LG Chem Ltd.*, 783 F. App'x 727, 737 (9th Cir. 2019) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)). Bearing this reality in mind, courts frequently have approved settlements providing monetary relief to class members amounting to either small fractions of the total hypothetical damages available or nothing at all, particularly when rarely-tested statutory damages provisions, such as in this case, are involved. *See, e.g., Lane*, 696 F.3d at 823-25 (approving cy pres settlement where class members asserting one of the statutory claims stood to recover possible statutory damages of $2,000); *Perkins*, 2016 WL 613255, at *18  (approving settlement where each class member submitting a valid claim form stood to receive about $20 while the available statutory damages of $750 per class member could have attached); *Google Street View*, 2020 WL 1288377, at *16 (approving cy pres settlement where each class member stood to recover up to $10,000 in statutory damages); *Google Buzz Privacy*, 2011 WL 7460099, at *5 (approving cy pres settlement where each class member stood to recover up to $10,000 in statutory damages under the SCA).

Through the months-long, arm's-length negotiation process, helped by the extensive efforts of a highly-respected mediator, the Parties arrived at a reasonable settlement by considering, among other things, historical privacy class action settlements, the likelihood of recovery on Plaintiffs' claims, and the potential size of the recovery.   As related to Class Member recovery, Plaintiffs have been advised by the claims administration firm, that based on a variety of factors, including the notice program being implemented, the size of the class, the potential relief available to class members, and their review of data from similar cases, that the estimated claims rate in this matter is likely to be between 1% and 4%. *See* Section IV.B.1.b., *supra*.

### c.   Fifth *Churchill* Factor: Extent of Discovery & Arm's-Length Negotiations

For the fifth *Churchill* factor (the extent of discovery completed and the stage of the

---

[6] *See generally Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 599-601 (9th Cir. 2020).

proceedings), this Court has noted that "[c]lass settlements are presumed fair when they are reached following sufficient discovery and genuine arms-length negotiation." *Carlotti*, 2019 WL 6134910, at *6 (quotation and citation omitted). "[A]s long as the parties have sufficient information to make an informed decision about settlement, formal discovery is not a necessary ticket to the bargaining table." *Id.* (quotations omitted).

During the course of the Action, Class Counsel sought and received extensive discovery from Plaid through formal written discovery requests and numerous informal document, data, and other information requests during settlement negotiations. *See* Kennedy Decl., ¶ 7. Plaid ultimately provided responses to 57 document requests, 21 interrogatories, and 51 requests for admissions. *Id.* Plaid produced over 12,000 pages of documents, including internal policies and procedures, agreements, correspondence, investigatory materials, client lists, and detailed financial information. *Id.*

In addition, a substantial portion of the investigation pertinent to the Action took place before the initial complaint was filed in the Cottle Action. *See Carlotti*, 2019 WL 6134910, at *7. Class Counsel spent months investigating Plaid's software and business practices and engaged an expert to analyze various aspects of Plaid's software before filing a detailed and thorough complaint. *See* Kennedy Decl., ¶ 4. Plaintiffs therefore had the necessary information to properly assess the value of the Class's claims and the value of this Agreement to the Class. Based upon that analysis, and recognizing the substantial risks of continued litigation, Class Counsel reasonably concluded that this Settlement is in the best interest of the Class Members.

Importantly, the Settlement was the result of months of arm's-length negotiations between experienced counsel in a process overseen by a highly-respected mediator, the Hon. Jay C. Gandhi (ret.). *Id.,* ¶¶ 10-17. That process included two separate, all-day mediation sessions and extended, tough negotiations following each session. *Id.* As a result, the proposed Settlement should be "presumed fair." *Carlotti*, 2019 WL 6134910, at *6.

### d.    **Other *Churchill* Factors**

The sixth *Churchill* factor (the experience and views of counsel) likewise supports preliminary approval of the Proposed Settlement. As discussed above in Section IV.A.1.d, Class

Counsel, who have extensive experience litigating and settling consumer class actions throughout the country, have committed significant time, expertise, and resources to vigorously litigating this action. Based on their collective experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while avoiding costs, delays and uncertainties of continued litigation. *See* Kennedy Decl., ¶¶ 18-23.

The final *Churchill* factors are either irrelevant to this action (presence of the government) or should be left to final approval process (reaction of class members). *See Carlotti*, 2019 WL 6134910, at *7. On the latter factor, however, it is worth noting that all 11 named Plaintiffs support the Settlement. *See* Kennedy Decl., ¶ 26.

## 2. The Rule 23(e) Factors Support Approving the Settlement

Rule 23(e) requires the Court to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Carlotti*, 2019 WL 6134910, at *7-8 (quoting Fed. R. Civ. P. 23(e)). The Ninth Circuit has recognized, however, that judicial review "takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Here, the proposed Settlement, negotiated by competent and experienced counsel who

1   vigorously represented the interests of the Class, satisfies Rule 23(e).

2          **a.      The Class Representatives and Class Counsel Have Adequately**
3                 **Represented the Class**

4          Plaintiffs' interests are aligned with, and are not antagonistic to, the interests of the Class

5   Members. *See* Section IV.A.1.d, *supra*. Each Class Representative has cooperated fully with

6   Class Counsel in representing the proposed Class, staying informed about the case, keeping in

7   touch with Class Counsel, and submitting information and providing formal discovery. *See*

8   Kennedy Decl., ¶ 26. Class Counsel, by the same token, have vigorously represented the Class for

9   well over a year and ultimately obtained significant monetary and injunctive relief. *See generally*

10  Kennedy Decl., and Exhibits.

11         **b.      The Agreement Was Negotiated at Arm's Length**

12         The Ninth Circuit "'put[s] a good deal of stock in the product of an arms-length, non-

13  collusive, negotiated resolution' in approving a class action settlement." *Carlotti*, 2019 WL

14  6134910, at *8 (quoting *Rodriguez*, 563 F.3d at 965). Courts consider three factors when looking

15  for collusion or other conflicts of interest: "'(1) when counsel receive a disproportionate

16  distribution of the settlement or when the class receives no monetary distribution but class

17  counsel are amply rewarded'; (2) when the payment of attorneys' fees is 'separate and apart from

18  class funds'; and (3) when the parties arrange for benefits that are not awarded to revert to the

19  defendants rather than being added to the class fund.'" *Id.* (quoting *In re Bluetooth Headset*

20  *Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

21         None of these factors is present here. Each Class Member who submits a valid claim form

22  will receive *pro rata* compensation from the Settlement Fund, and all Class Members will receive

23  the benefit of valuable injunctive relief moving forward. Class Counsel anticipates seeking

24  attorneys' fees of no more than the Ninth Circuit benchmark of 25% of the Settlement Fund plus

25  reimbursement of actual, out-of-pocket expenses. *See* Section III.E, *supra*. There is no clear

26  sailing provision. And no amount of the Settlement Fund will revert to Plaid. As a result, the

27  Settlement is the "product of serious, informed, non-collusive negotiations." *Carlotti*, 2019 WL

28  6134910, at *9 (quotation omitted).

c. **The Substantial Relief Provided for the Class Is Adequate and Appropriate for This Case**

The Rule 23(e)(2)(C)(i)-(iv) factors show that the relief for the Class is fair, reasonable and adequate, supporting the conclusion that the Court will likely grant final approval.

i. **The Costs, Risks, and Delay from Trial and Appeal Show that the Recovery Contained in the Settlement Is Adequate**

Notwithstanding Plaintiffs' confidence in the merits of their claims, continued prosecution of this Action entails genuine and potentially case-dispositive risks at each stage of the litigation, from class certification and summary judgment to trial and appeal. *See* Section IV.B.1.a, *supra*. Compounding those risks are the substantial costs and potential for delay were Plaintiffs to proceed to trial and perhaps appeal. This factor thus supports preliminary approval.

ii. **The Proposed Method of Distributing Relief on Behalf of the Class Is Effective**

"Rule 23 requires the court to consider 'the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.'" *Carlotti*, 2019 WL 6134910, at *9 (quoting Fed. R. Civ. P. 23(e)(2)(C)(ii)). "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quotations omitted). "[T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

As detailed below and in the accompanying Weisbrot Declaration, Angeion has designed a detailed and comprehensive Notice Program that provides the best notice to Class Members that is practicable under the circumstances, including by providing individual direct notice to all reasonably identifiable Class Members via email or mail, combined with a strategic media campaign comprised of state-of-the-art digital advertising, social media advertising, search engine marketing, sponsored listings on two leading class action settlement websites and engagement on social media.

**Direct Notice**

Pursuant to the Notice Program, Angeion will provide direct notice by sending individual notice via email or mail to all potential Class Members whose direct contact information (*i.e.*, email address or mailing address) has been identified by Plaid through its records. *See* Weisbrot Decl., ¶ 15. Angeion will employ a number of methods to ensure that email notice is made available to as many Class Members as possible, including by linking to operative documents, updating email addresses, and re-sending emails that erroneously failed to deliver due to sensitive servers. *See id.*, ¶¶ 16-20. It also will target Class Members whose email notice could not be delivered through a custom social media campaign utilizing Facebook and Instagram. *See id.*, ¶ 21. Angeion also will send a postcard notice via first-class U.S. mail, postage pre-paid, to Class Members who did not have an email address, but for whom Plaid was able to identify a mailing address. *See id.*, ¶ 22. It will attempt to re-send notices returned by the USPS with or without forwarding addresses. *See id.*, ¶¶ 23-25. This direct notice campaign applies to about 2/3 of all Class Members. *See* Kennedy Decl., ¶ 24; Weisbrot Decl., ¶ 14.

**Media Notice**

Programmatic Display Advertising

Angeion also will provide media notice to Class Members using a form of internet advertising known as programmatic display advertising, which is the leading method of buying digital advertisements in the U.S. Weisbrot Decl., ¶ 27. Using the settlement Class definition, Angeion designed this media notice campaign to arrive at an appropriate Target Audience. *See id.*, ¶¶ 28-29. It will use a variety of targeting methods and software to maximize the success of this campaign. *See id.*, ¶¶ 30-34.

Social Media Notice

The Notice Program also includes a sophisticated social media campaign designed to leverage the characteristics of the Target Audience. *See id.*, ¶¶ 35-38. This campaign will use a mix of Facebook and Instagram ads, again employing a variety of methods to maximize exposure to Class Members. *See id.*, ¶¶ 36-37. Together, the social media campaign and programmatic display advertising portions of the Notice Program are designed to deliver approximately 326

million impressions. *See id.*, ¶ 38.

Other Digital and Social Media

The Notice Program also includes a paid search campaign to help drive Class Members who are actively searching for information about the Settlement to the dedicated Settlement Website. *See id.*, ¶ 39. Angeion also will cause the Settlement to be listed and promoted through two leading class action settlement websites, www.topclassactions.com and www.classaction.org. *See id.*, ¶¶ 40-41. It also will monitor public Twitter traffic for discussion of the settlement and will provide information or respond to questions via Twitter on an ad hoc basis as appropriate. *See id.*, ¶ 42.

Reach and Frequency

Together, the digital media and social media portions of the Notice Program are designed to deliver an approximate 80.40% reach with an average frequency of 3.62 times each. This reach is separate and apart from the direct notice efforts, sponsored listings, engagement on social media, dedicated website and toll-free telephone line, all of which are difficult to measure in terms of reach percentage but will nonetheless provide awareness and diffuse news of the Settlement to Class Members. *See id.*, ¶ 46. This reach percentage and the number of exposure opportunities meet or exceed the guidelines as set forth in the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide. *See id.*, ¶ 45.

**Response Mechanisms**

Under the Notice Program, Angeion will also create a case-specific website where Class Members can view general information about this class action Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. The website will be user-friendly and make it easy for Class Members to find information about the case, including a customized video which will be displayed on the website. The website will also have a "Contact Us" page where Class Members can send an email with any additional questions to a dedicated email address. Likewise, Class Members will be able to submit a Claim Form directly via the website. *See id.*, ¶ 43.

In addition, Angeion will implement a toll-free hotline devoted to the Action to further

apprise Class Members of the rights and options pursuant to the Settlement. The toll-free hotline will utilize an interactive voice response system to provide Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week. *See id.*, ¶ 44.

### The Notice Contents Are Clear and Provide the Best Practicable Notice

The proposed Notice forms used by Angeion are designed to be "noticed," reviewed, and understood by Class Members. The notice's design follows the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. The notice forms contain plain-language summaries of key information about the rights and options of Class Members pursuant to the Settlement. *See id.*, ¶ 47.

Moreover, the contents of the proposed Long Form Notice satisfy the requirements of Rule 23(c)(2)(B) because the notice "clearly and concisely" states:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Volkswagen*, 2017 WL 672727, at *20 (quoting Fed. R. Civ. P. 23(c)(2)(B)). *See generally* Kennedy Decl., Ex. C (Long Form Notice) to Ex. A (Settlement Agreement). The Long Form Notice "provide[s] a summary of the Settlement and clearly explain[s] how Class Members may object to or opt out of the Settlement, as well as how Class Members may address the Court at the final approval hearing." *Volkswagen*, 2017 WL 672727, at *20 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") *Id.* (quoting *Churchill,* 361 F.3d at 575); *see generally* Kennedy Decl., Ex. C to Ex. A.

In sum, the Notice Plan represents a cross section of media specifically chosen by the Notice Administrator to target likely Class Members and attain a wide and cost-effective reach. The format and language of the Long Form Notice has been drafted so that it is in plain language, is easy to read, and will be readily understood by the Class Members. This satisfies the

1    requirements of Rule 23 and due process.

2           The Notice Program will be overseen by a highly qualified and experienced class action

3    notice and claims administrator in Angeion. Its President, Steven Weisbrot, believes the proposed

4    Notice Program is "the best notice that is practicable under the circumstances and fully comports

5    with due process and Rule 23." *See* Weisbrot Decl., ¶ 50. As a result, this factor favors

6    preliminary approval. *See Carlotti*, 2019 WL 6134910, at *9-10 (approving notice program

7    designed by Mr. Weisbrot that was expected to reach 76.75% of the target audience with an

8    average frequency of 3.03 times). Plaintiffs request that the Court direct that the Notice Program

9    described herein be effectuated.

10                              **The Reasonable Claims Process**

11          The proposed Settlement also includes a reasonable process for Class Members to make

12   claims, opt out of the Class, or object to the Settlement. Using plain language, the Long Form

13   Notice informs Class Members that:

14          •       They are entitled to claim a cash payment under the Settlement by filing a claim
15                  form online through the Settlement Website or receiving and mailing a paper form;

16          •       They are entitled to object to any aspect of the Settlement by filing an objection in
                    writing; and

17          •       They may exclude themselves from the Settlement by sending a letter by mail to
18                  the Settlement Administrator.

19   *See* Kennedy Decl., Ex. C to Ex. A at 1-2. Class Members who receive direct notice (expected to

20   be two out of every three Class Members) will be provided with a claim number that allows these

21   Class Members to submit a claim through a streamlined process that requires very minimal

22   information; other claimants will be able to file a claim by providing basic information to verify

23   they are potential Class Members. *See id.*, Ex. A (Claim Form) to Ex. A (Settlement Agreement).

24   This claims process is reasonable and will not be burdensome to Class Members. *See Carlotti*,

25   2019 WL 6134910, at *11.

26          **iii.    Any Award of Attorneys' Fees Will Not Prevent the
                       Court from Finding that the Relief Provided to the Class
27                     Is Adequate**

28          As stated above, Class Counsel anticipates a request for attorneys' fees of no more than

1   25% of the $58 million Settlement Fund plus reimbursement of expenses. *See* Section \_\_\_\_,

2   *supra*. Because the relief obtained for the Class is substantial by any metric, a request for

3   attorney's fees in this amount is justified. *See O'Connor v. Uber Techs., Inc.*, No. 13-03826, 2019

4   WL 1437101, at *14 (N.D. Cal. Mar. 29, 2019) ("In determining whether an attorneys' fee award

5   is justified, the Court must evaluate the results obtained on behalf of the class.").

6   

**iv.    There Are No Other Agreements Required to Be Identified Under Rule 23(e)(3)**

7

8      Pursuant to Rule 23(e)(3), there are no other agreements that would modify any term of

9   the Agreement.[7]

10  

**d.    The Agreement Treats Class Members Equitably Relative to Each Other**

11

12     The Proposed Settlement is designed to benefit all Class Members by providing equal

13  access to a Settlement Fund and providing meaningful injunctive relief. *See* Section III.B., *supra*.

14  

**3.    The Northern District's Procedural Guidance Weighs In Favor of Approving the Settlement**

15

16     This Court has indicated that it will consider, for purposes of preliminary approval of a

17  class action settlement, the Northern District of California's procedural guidance for the

18  settlement of class actions ("Guidelines"), although they do not carry the weight of law. *Carlotti*,

19  2019 WL 6134910, at *13. The Guidelines likewise support preliminary approval.

20  

**a.    Identity of Settlement Class**

21     "The Guidelines require the parties to state 'any differences between the settlement class

22  and the class proposed in the operative complaint and an explanation as to why the differences are

23  appropriate in the instant case.'" *Id.* (quoting Guideline § 1(a)).

24     The Settlement Class differs from the proposed litigation classes in the CAC in several

25  ways. The CAC defined the proposed litigation classes as follows:

26

27

28  [7] Plaintiffs have an agreement, subject to Court approval, to retain Angeion to serve as the Notice Administrator. Plaintiffs do not understand this type of agreement to be the subject of Rule 23(e)(3)'s disclosure requirement.

1
2
3
4

> A nationwide class consisting of all natural persons whose accounts at a financial institution were accessed by Plaid using login credentials obtained through Plaid's software incorporated in a mobile or web-based fintech app that enables payments (including ACH payments) or other money transfers, at the time such persons resided in the United States, from January 1, 2013 to the present (the "Nationwide Class"); and

5
6
7
8

> A California class consisting of all natural persons whose accounts at a financial institution Plaid accessed using login credentials obtained through Plaid's software incorporated in a mobile or web-based fintech app that enables payments (including ACH payments) or other money transfers, at the time such persons resided in the State of California, from January 1, 2013 to the present (the "California Class").

9   CAC, ¶¶ 247-48.

10        The Agreement provides for the following settlement Class:

11
12
13

> [A]ll natural persons who reside in the United States and who own or owned one or more Financial Accounts at the time such persons resided in the United States from January 1, 2013 to date preliminary approval of the settlement is granted.

14   Kennedy Decl., Ex. A, ¶ 19. "Financial Account" is defined as:

15
16
17
18
19

> [A] financial institution account (1) that Plaid accessed using the user's login credentials and connected to a mobile or web-based fintech application that enables payments (including ACH payments) or other money transfers or (2) for which a user provided financial account login credentials to Plaid through Plaid Link. Notwithstanding the foregoing, a Financial Account does not include an account that was connected, or for which credentials were provided, exclusively through an OAuth Process or Managed OAuth Process.

20   *Id.*, ¶ 32. Managed OAuth Process means a process through which Plaid obtains login credentials

21   in order to secure an access token pursuant to a formal agreement with the applicable financial

22   institution and does not store those login credentials; OAuth Process means a process through

23   which Plaid redirects an end user to the financial institution's domain to enter their login

24   credentials and does not obtain login credentials for the end user. *Id.*, ¶¶ 33, 38.

25        Certain differences between the proposed litigation classes and the Settlement Class

26   reflect Class Counsel's determination, based upon information learned through formal and

27   informal discovery, that (1) certain challenged aspects of Plaid's interface and conduct apply to

28   the users of a broader set of fintech apps and services than those enabling payments and money

transfers; and (2) the "OAuth Process" and "Managed OAuth Process" that Plaid employed with certain financial institutions at certain points in time should be excluded from the Class. *See* Kennedy Decl., ¶ 23. The Settlement Class is thus broader in that it includes a broader group of users who provided credentials to Plaid and narrower in that it excludes users who connected to their accounts, or provided their credentials, using a different process than what was alleged in the CAC.

The other difference between the proposed litigation classes and the Settlement Class is that the CAC included claims on behalf of both a nationwide class and a California class, while the Agreement includes only a single nationwide class. This change reflects Class Counsel's determination, based upon information learned through discovery as well as a thorough analysis of the relevant caselaw and underlying Constitutional principles, that Plaid's business practices justify application of CAPA to a nationwide class of app users.[8]

The Ninth Circuit has recognized, and its lower district courts have affirmed, that plaintiffs can achieve class certification for violations of California laws on behalf of foreign residents where (1) the defendant is based in California and the relevant misconduct originated or primarily occurred in California, (2) such that there are sufficient aggregate contacts with California for each class member and thus that applying California law would not offend due process, and (3) the interests of the foreign states do not outweigh the interests of California in having its law applied. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-91 (9th Cir. 2012).

Extraterritorial application of CAPA to a nationwide class is appropriate here because Plaid's headquarters are in California, all its key decisionmakers are based there, and the decisions and acts related to the practices at issue occurred in California. California thus has sufficient contacts with Class Members across the country. Finally, there is no valid reason that the laws of foreign states, who have no interest in protecting a foreign defendant but do have an

---

[8] As to the common-law claims, Plaintiffs alleged that they properly could be pursued by the nationwide class based on the Due Process Clause and the Full Faith and Credit Clause of the U.S. Constitution in light of California's significant contacts to the claims of all class members, California's strong and overriding interest in regulating Plaid's conduct, and California's choice of law rules. (CAC, ¶¶ 236-38.) This also is relevant to the analysis of the potential extraterritorial application of the California statutory claims.

obvious interest in affording their own residents the ability to achieve the maximum protection and compensation possible, should apply instead. CAPA itself contains no limitation regarding its application to non-California residents (*see*, *e.g.*, § 22948.3, stating that any adversely affected "individual" may bring an action), and the legislative history of the statute strongly suggests that the Legislature was concerned with phishing originating in California, rather than solely targeting residents of the State. (Dkt. 108-7, at 3, statement from Bill author expressing concern that "15% of all phishing scams **originate in** California") (emphasis added).

Accordingly, Plaintiffs' CAPA claims should apply extraterritorially, and should be included for settlement purposes on behalf of a nationwide class. *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (certifying nationwide class under California's UCL, False Advertising Act, CLRA, and common law fraud, deceit and/or misrepresentation: "Defendants are headquartered in California and their misconduct allegedly originated in California. With such significant contacts between California and the claims asserted by the class, application of the California consumer protection laws would not be arbitrary or unfair to defendants."); *Norwest Mortgage, Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 224-25 (1999) ("state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California") (citing *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal. 4th 1036 (1999)); *see also In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 312-15 (N.D. Cal. 2018) (certifying nationwide class asserting claims under California's Cartwright Act because the sole defendant was based in the state, the relevant misconduct occurred largely within the state, and "other states do not have an interest in barring their own citizens from recovering damages" from a foreign defendant whose misconduct occurred largely if not exclusively outside of those states).

### b.    Release of Claims

"The Guidelines require the court to look at 'any differences between the claims to be released and the claims certified for class treatment and an explanation as to why the differences are appropriate in the instant case.'" *Carlotti*, 2019 WL 6134910, at *14 (quoting Guideline § 1(d)).

1    The Agreement provides that Plaintiffs and Class members will release "Plaid and any and

2    all of its present or former predecessors, successors, assigns, parents, subsidiaries, affiliates,

3    directors, officers, employees, agents, representatives, and attorneys, and any and all of the

4    parents', subsidiaries', and affiliates' present and former predecessors, successors, assigns,

5    directors, officers, employees, agents, representatives, and attorneys" from "any and all actions,

6    causes of action, claims, demands, liabilities, obligations, damages (including, without limitation,

7    punitive, exemplary and multiple damages), penalties, sanctions, losses, debts, contracts,

8    agreements, attorneys' fees, costs, expenses, and rights of any nature and description whatsoever,

9    whether based on federal, state, or local statutes, common law, regulations, rules or any other law

10   of the United States or foreign jurisdiction, known or unknown, fixed or contingent, suspected or

11   unsuspected, in law or in equity, arising from or related to allegations in the Action that were

12   asserted or could have been asserted in the Action." *See* Kennedy Decl., Ex. A, ¶ 45.

13       The released claims differ from the claims asserted in the CAC insofar as the Release

14   applies to claims arising out of or relating to the allegations in the CAC that could have been, but

15   were not, asserted against the Released Parties. The scope of the Release is consistent with

16   governing standards in this Circuit. *See e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D.

17   299, 327 (N.D. Cal. 2018) (approving class settlement release of claims "related to or arising

18   from any of the facts alleged in any of the Actions"); *Custom LED, LLC v. eBay, Inc.*, No. 12-

19   350, 2013 WL 6114379, at *4 (N.D. Cal. Nov. 20, 2013) (approving release of claims "arising out

20   of or relating in any way to any of the legal, factual, or other allegations made in the Action, or

21   any legal theories that could have been raised based on the allegations of the Action."). *See also*

22   *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (claims appropriately included in scope

23   of release can include any claim "based on the identical factual predicate as that underlying the

24   claims in the settled class action"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th

25   Cir. 1992) (same, noting that released claims need not have been asserted or necessarily

26   presentable in the underlying class action).

27           ### c.    Class Recovery

28       "The Guidelines require parties to explain '[t]he anticipated class recovery under the

settlement, the potential class recovery if plaintiffs had fully prevailed on each of their claims, and an explanation of the factors bearing on the amount of the compromise.'" *Carlotti*, 2019 WL 6134910, at *14 (quoting Guideline § 1(e)). The $58 million Settlement Fund and meaningful injunctive relief represents an excellent recovery for the Class. *See* Section IV.B.1.b., *supra*.

### d.  **Allocation Plan**

"The parties should explain 'the proposed allocation plan for the settlement fund.'" *Carlotti*, 2019 WL 6134910, at *14 (quoting Guideline § 1(f)). The Agreement provides for a fair and equal allocation of the Settlement Fund among all Class Members submitting valid claim forms. *See* Section III.B., *supra*.

### e.  **Submission of Claim Forms**

"If there is a claim form, the parties should provide 'an estimate of the number and/or percentage of class members who are expected to submit a claim in light of the experience of the selected claims administrator and/or counsel from other recent settlements of similar cases, the identity of the examples used for the estimate, and the reason for the selection of those examples.'" *Carlotti*, 2019 WL 6134910, at *14 (quoting Guideline § 1(g)). Based upon discussions with Angeion, Class Counsel estimates that 1-4% of Class Members will submit a claim.

### f.  **Reversions**

"'[I]n light of Ninth Circuit case law disfavoring reversions,' the parties should state 'whether and under what circumstances money originally designated for class recovery will revert to any defendant, the potential amount or range of amounts of any such reversion, and an explanation as to why a reversion is appropriate in the instant case.'" *Carlotti*, 2019 WL 6134910, at *14 (quoting Guideline § 1(h)). As discussed above, no portion of the Settlement Fund will revert to Plaid.

### g.  **Settlement Administrator**

"'In the motion for preliminary approval, the parties should identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed,

1   and the lead class counsel's firms' history of engagements with the settlement administrator over

2   the last two years. The parties should also address the anticipated administrative costs, the

3   reasonableness of those costs in relation to the value of the settlement, and who will pay the

4   costs.'" *Carlotti*, 2019 WL 6134910, at *15 (quoting Guideline § 2).

5         Class Counsel chose Angeion as the settlement administrator after a competitive selection

6   process involving the solicitation of proposals from three well-known and experienced settlement

7   administration firms. Kennedy Decl., ¶ 27. The choice of Angeion was driven by the experience

8   of its principals, the sophisticated and tailored nature of its proposal (especially for reaching Class

9   Members through digital media), and the overall cost-effectiveness of its proposal. *Id.*

10         The settlement administration costs will be paid directly from the Settlement Fund, except

11   that in the event such costs exceed approximately $5.5 million (which the Parties do not

12   anticipate), Plaid has agreed to pay for up to $500,000 of such additional administrative costs

13   directly to the Class Administrator. See Kennedy Decl., ¶ 17 n.2.

14         Class Counsel have worked with Angeion in the past as it administered the settlements in

15   the following cases:

16         a.     Angeion currently serves as the claims administrator in *Fiat Chrysler*

17   *Dodge Jeep Ecodiesel Litigation*, 17-MD-02777-EMC;

18         b.     Angeion served as settlement administrator in three related cases alleging

19   violation of child privacy laws by online game and app producers, including *McDonald, et al. v.*

20   *Kiloo Aps, et al.*, Case No. 17-4344 (N.D. Cal.);

21         c.     Angeion served as settlement administrator in a TCPA class

22   action, *Grogan et al. v. Aaron's Inc.*, Case No. 18-02821 (N.D. Ga.);

23         d.     Angeion served as settlement administrator in a class action lawsuit

24   involving claims of unlawful conspiracy to fix, raise, maintain, and stabilize the of prices of

25   promotional products, *Kjessler v. Zaappaaz, Inc., et al.*, No. 18-0430 (S.D. Tex.); and

26         e.     Angeion is the proposed settlement administrator (motion for preliminary

27   approval pending) in a series of consumer protection class actions against an electronic health

28   record software developer, *Altamonte Pediatric Associates, P.A. v. Greenway Health, LLC*, No.

1   20-00604 (M.D. Fla.); *Pulmonary Associates of Charleston PLLC, et al. v. Greenway Health,*

2   *LLC, et al.*, No. 19-00167 (N.D. Ga.), and *Valley Ob-Gyn Clinic, P.C. v. Greenway Health, LLC*,

3   et al., No. 20-00220 (N.D. Ga.).

4          Angeion is also the proposed settlement administrator (motion for preliminary approval

5   pending) in a consumer protection class action against Tesla, *Rasmussen v. Tesla, Inc.*, 19-04596

6   (N.D. Cal.).

7          Appointment of Angeion is appropriate as settlement administrator because Class Counsel

8   believes it will adequately and professionally discharge its duties. Kennedy Decl., ¶ 29.

9                                  **h.    Notice**

10          The Guidelines provide that the parties "'should ensure that the class notice is easily

11   understandable, taking into account any special concerns about the education level or language

12   needs of the class members'" and "list certain information that should appear in the notice, such

13   as (1) contact information for class counsel; (2) website address for the settlement site; and (3)

14   information on how to access the case docket on PACER." *Carlotti*, 2019 WL 6134910, at *15

15   (quoting Guideline § 3). "In addition, '[t]he notice distribution plan should rely on U.S. mail,

16   email, and/or social media as appropriate to achieve the best notice that is practicable under the

17   circumstances, consistent with Federal Rule of Civil Procedure 23(c)(2).'" *Id.*

18          The Notice Program appropriately relies upon a combination of U.S. mail, email, and

19   social media to achieve the best notice practicable under the circumstances. *See* Section

20   IV.B.2.c.ii., *supra*. The information required by Guideline § 3 is listed in both the Long Form

21   Notice and the email notice. The postcard to be sent to some Class Members pursuant to the

22   Notice Program directs recipients to the settlement website, which also contains the required

23   information.

24                                  **i.    Opt-Outs**

25          "'The notice should instruct class members who wish to opt out of the settlement to send a

26   letter, setting forth their name and information needed to be properly identified and to opt out of

27   the settlement, to the settlement administrator and/or the person or entity designated to receive opt

28   outs. It should require only the information needed to opt out of the settlement and no extraneous

information. The notice should clearly advise class members of the deadline, methods to opt out, and the consequences of opting out.'" *Carlotti*, 2019 WL 6134910, at *15 (quoting Guideline § 4).

Here, the proposed Long Form Notice contains all the required instructions, and the email and postcard notices refer recipients to the settlement website, which also contains the Long Form Notice.

### j.       Objections

"'The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. All objections will be scanned into the electronic case docket and the parties will receive electronic notices of filings. The notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The notice should clearly advise class members of the deadline for submission of any objections.'" *Carlotti*, 2019 WL 6134910, at *16 (quoting Guideline § 5).

Here, the proposed Long Form Notice contains all the required information, and the email and postcard notices provide the objection date and refer recipients to the settlement website, which also contains the required information.

### k.       Attorneys' Fees

Class Counsel anticipate seeking attorneys' fees of no more than 25% of the $58 million Settlement Fund and reimbursement of expenses. *See* Section III.E, *supra*.

### l.       Incentive Awards

Class Counsel will seek service awards for Class Representatives in an amount up to $5,000 each. "'The request of $5,000 is reasonable as that amount is the presumptive incentive award in [the Northern District of California].'" *Carlotti*, 2019 WL 6134910, at *16 (quoting *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 17-md-02777, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019)).

### m.       CAFA Notice

"'The parties should address whether CAFA notice is required and, if so, when it will be given.'" *Id.* (quoting Guidelines § 10). The Agreement provides that, "[i]n coordination with the

Settlement Administrator, Plaid will provide CAFA Notice of the settlement to the appropriate federal and state officials not later than ten (10) calendar days after the Agreement is filed with the Court." Kennedy Decl., Ex. A, ¶ 72.

### n.    Past Distributions

Pursuant to the Guidelines, Plaintiffs provide information regarding a selection of their past experience, results, and distributions in comparable class settlements. *See Carlotti*, 2019 WL 6134910, at *16-17 (quoting Guidelines ¶ 11); Kennedy Decl., ¶ 3, Ex. B. As these materials establish, Class Counsel are seasoned and well-regarded litigators familiar with the settlement procedures involved in complex class actions. *Id.* Counsel have successfully negotiated settlements funds similar those anticipated in this case in a wide range of cases, including cases involving complex consumer protection, financial practices, and data privacy claims. *Id.*

The Settlement now before the Court will utilize similar notice and outreach methods and claim administration for Class Members as those employed Class Counsel in prior cases. *Id.* Therefore, Class counsel is able to reasonably predict with confidence that the much of the funds available to Class Members will be paid out in this case, and to the extent any money remains after the Class is paid, it will be directed towards the interests of the Class and the causes advanced in this litigation. *Id.*

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and enter an order consistent with the proposed form filed herewith.

Dated: August 5, 2021                    Respectfully submitted,

HERRERA KENNEDY LLP

By: */s/ Shawn Kennedy*
       Shawn M. Kennedy

       Shawn M. Kennedy (SBN 218472)
       skennedy@herrerakennedy.com
       Bret D. Hembd (SBN 272826)
       bhembd@herrerakennedy.com
       4590 MacArthur Blvd., Suite 500
       Newport Beach, CA 92660

1
                                  Telephone: (949) 936-0900
                                  Fax: (855) 969-2050

2

3
                                  HERRERA KENNEDY LLP
                                  Nicomedes Sy Herrera (SBN 275332)
                                  nherrera@herrerakennedy.com

4
                                  Laura E. Seidl (SBN 269891)
                                  lseidl@herrerakennedy.com

5
                                  1300 Clay Street, Suite 600
                                  Oakland, CA 94612

6
                                  Telephone: (510) 422-4700
                                  Fax: (855) 969-2050

7

8
                         By: */s/ Rachel Geman*
                                  Rachel Geman

9

10
                                  LIEFF CABRASER HEIMANN &
                                  BERNSTEIN, LLP
                                  Rachel Geman (*Pro Hac Vice*)

11
                                  rgeman@lchb.com
                                  Rhea Ghosh (Pro Hac Vice)

12
                                  rghosh@lchb.com
                                  250 Hudson Street, 8th Floor

13
                                  New York, NY 10013-1413
                                  Tel: (212) 355-9500

14
                                  Fax: (212) 355-9592

15
                                  LIEFF CABRASER HEIMANN &
                                  BERNSTEIN, LLP

16
                                  Michael W. Sobol (SBN 194857)
                                  msobol@lchb.com

17
                                  Melissa Gardner (SBN 289096)
                                  mgardner@lchb.com

18
                                  275 Battery Street, 29th Floor
                                  San Francisco, CA 94111-3339

19
                                  Tel: (415) 956-1000
                                  Fax: (415) 956-1008

20
                                  BURNS CHAREST LLP

21

22
                       By: */s/ Christopher Cormier*
                                  Christopher J. Cormier

23
                                  Christopher J. Cormier (*Pro Hac Vice*)
                                  ccormier@burnscharest.com

24
                                  4725 Wisconsin Avenue, NW
                                  Washington, DC 20016

25
                                  Tel: (202) 577-3977
                                  Fax: (469) 444-5002

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURNS CHAREST LLP
Warren T. Burns (*Pro Hac Vice*)
wburns@burnscharest.com
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002

*Interim Co-Lead Class Counsel*