HERRERA KENNEDY LLP
Shawn M. Kennedy (SBN 218472)
skennedy@herrerakennedy.com
Bret D. Hembd (SBN 272826)
bhembd@herrerakennedy.com
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Tel: (949) 936-0900
Fax: (855) 969-2050

HERRERA KENNEDY LLP
Nicomedes Sy Herrera (SBN 275332)
nherrera@herrerakennedy.com
Laura E. Seidl (SBN 269891)
lseidl@herrerakennedy.com
1300 Clay Street, Suite 600
Oakland, CA 94612
Tel: (510) 422-4700
Fax: (855) 969-2050

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Rachel Geman (Pro Hac Vice)
rgeman@lchb.com
Rhea Ghosh (Pro Hac Vice)
rghosh@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel: (212) 355-9500
Fax: (212) 355-9592

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008

BURNS CHAREST LLP
Warren T. Burns (Pro Hac Vice)
wburns@burnscharest.com
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002

BURNS CHAREST LLP
Christopher J. Cormier (Pro Hac Vice)
ccormier@burnscharest.com
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 577-3977
Fax: (469) 444-5002

*Interim Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE PLAID INC. PRIVACY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Master Docket No.: 4:20-cv-03056-DMR<br><br>**DECLARATION OF SHAWN M. KENNEDY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: Sept. 30, 2021<br>Time: 1:00 p.m.<br>Courtroom: via videoconference only<br>Judge: The Hon. Donna M. Ryu |

I, SHAWN M. KENNEDY, hereby declare as follows:

1. I am a partner of the law firm of Herrera Kennedy LLP, Interim Co-Lead Counsel along with Lieff, Cabraser, Heimann & Bernstein, LLP ("Lieff Cabraser"), and Burns Charest, LLP in the above-captioned action. I am a member in good standing of the Bar of the State of California and am admitted to practice before this Court. I have personal knowledge of the statements contained in this declaration and, if called to testify, I could and would testify competently to them. I submit this declaration in support of the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

2. Pursuant to the terms of the Settlement, Plaid has agreed to establish a $58 million Settlement Fund and implement meaningful changes to its business practices and policies. I and the other Class Counsel believe these commitments are substantial and will provide fair, adequate, and reasonable benefits to the Class in exchange for the Releases provided in settlement of this litigation.

3. With respect to appointment under Federal Rule of Civil Procedure 23(g), Rachel Geman of Lieff Cabraser, Christopher Cormier of Burns Charest, and I, and our respective firms, are well-qualified to serve as Class Counsel for settlement purposes in this litigation, and have contributed significantly to the development and prosecution of this case. I refer to proposed Class Counsel as "Class Counsel" herein. Background information on Class Counsel, including our experience in class and complex litigation, privacy litigation, and litigation involving the financial sector, can be found in our respective individual declarations previously filed in this matter.[1] *See Dkt.* 51 and exhibits attached thereto as 51-1, 51-2, and 51-3. We have collectively litigated, managed, and negotiated successful resolutions of cases involving comparable clients, claims, classes, and settlements comparable to the claims involved in the present Action. *Id.* Based on our collective experience, we are capable of serving the interests of the class through the settlement phase of this litigation. *Id.* A representative summary of prior settlements and distributions in recent cases comparable to this action is attached hereto as **Exhibit B**.

---

[1] For developments in Lieff Cabraser's Digital Privacy and Data Security Practice Group that post-dated the earlier filed declaration, see https://www.lieffcabraser.com/category/digital-privacy/.

**PRE-LITIGATION INVESTIGATION**

4. The original complaint in this Action (*Cottle et al. v. Plaid Inc.*, No. 4:20-cv-03056-DMR, filed May 4, 2020) was the product of several months of investigatory work that I and other Class Counsel undertook in early 2020. Our investigation involved locating and reviewing hundreds (or thousands) of videos, message board posts, web pages, government submissions to government regulators, podcasts, marketing materials, articles, and other publications. Through that investigation, we were able to gather information about Plaid's historical and current business practices, as well as the nature of its software and the privacy violations alleged in the complaint. To get a fuller understanding of how Plaid's software worked, Class Counsel engaged a subject matter consultant to analyze various aspects of the software, including the nature of the software templates provided to Plaid clients and the security involved in transmitting login information through Plaid Link.

**CONSOLIDATED PLEADINGS AND DISCOVERY**

5. After the original complaint was filed, Class Counsel worked cooperatively with counsel representing clients in subsequently-filed complaints against Plaid. Class Counsel organized a proposed leadership structure that we, along with other counsel, presented to the Court. Following our appointment as Interim Class Counsel (and theirs as a Plaintiffs' Steering Committee), Class Counsel vetted clients and prepared a Consolidated Amended Complaint.

6. After the Consolidated Amended Complaint ("CAC") was filed, Plaintiffs sought and received significant discovery from Plaid. This discovery took place both before and during discussions that led to the Settlement. Plaintiffs then sought and received confirmatory discovery after reaching agreement on settlement terms with Plaid. In response to both formal and informal discovery requests, Plaid provided information, internal documents, and data that shed light on the nature and function of Plaid's software and business practices during the class period, its finances, and the size and scope of the potential class, among other things.

7. Class Counsel served—and Plaid responded to—57 document requests, 21 interrogatories, and 51 requests for admissions. Plaid produced over 12,000 pages of documents, including internal policies and procedures, agreements, correspondence, investigatory materials,

1  client lists, and detailed financial information. Plaintiffs also commenced third-party discovery,
2  having subpoenaed and started discussions with certain banks.

3      8.    A number of disputed issues arose in connection with formal discovery. Those
4  issues were highly contested. Over the course of several months, the Parties were able to narrow or
5  reach agreement on those issues, including through dozens of telephonic and written meet-and-
6  confers.

7      9.    Class Counsel, working with the Plaintiffs' Steering Committee, also responded to
8  defensive discovery. Class Counsel also engaged a forensics consultant for assistance with future
9  defensive discovery.

10  **SETTLEMENT**

11      10.    Between February and July 2021, the Parties engaged in lengthy and contentious
12  arm's-length negotiations to resolve the claims in the Action. On February 16, 2021, the Parties
13  engaged in a mediation session with the Hon. Jay Gandhi (ret.). Prior to the mediation, the Parties
14  prepared detailed mediation briefs outlining their positions on the strengths and weaknesses of the
15  case, and participated in a technology tutorial session with Judge Gandhi. Plaintiffs also retained
16  and worked with a financial analyst.

17      11.    The Parties went into the mediation with substantially different positions relating to
18  appropriate settlement terms and did not resolve the Action at the initial mediation session.

19      12.    For the next several months, while the Parties continued to litigate, they continued
20  to engage in the mediation process with Judge Gandhi, who helped bridge the gap between the
21  Parties' positions.

22      13.    The Parties held another mediation session on April 13, 2021. Before and after that
23  mediation session, the Parties engaged in extensive communications with each other and Judge
24  Gandhi regarding points of contention and additional information required to move discussions
25  forward.

26      14.    On June 7, 2021, Judge Gandhi made a mediator's proposal for a class-wide
27  settlement for $58 million subject to the parties' negotiation and agreement of injunctive relief
28  terms. That recommendation was accepted by all Parties in a double-blind process on June 11,

2021. Over the next six weeks, the Parties negotiated the terms of a long-form settlement agreement, including injunctive relief. These negotiations ultimately resulted in the Settlement Agreement, which was executed on July 30, 2021. Attached hereto as **Exhibit A** is a true and correct copy of the Settlement Agreement.

15.     The negotiations of the Settlement Agreement were intense and included multiple lengthy telephone conferences and extensive email correspondence, as well as the exchange of multiple drafts of the proposed Settlement Agreement and related materials.

16.     During the negotiation process, the Parties were at many times far apart and often at odds. The mediator's direct resolution of disputes was required, at times, to prevent the discussions from collapsing altogether.

17.     In negotiating the Settlement Agreement, the Parties did not engage in substantive negotiation about or reach any agreement concerning the amount of attorneys' fees that should be awarded, reimbursement of expenses, or class representative service awards (all of which will be subject to future application to and approval by the Court.[2]

## CLASS COUNSEL'S ROLE AND ANALYSIS

18.     Class Counsel vigorously have led all aspects of case investigation, management, prosecution, and resolution in this Action. These efforts include, among other things: the investigation, preparation, and filing of the 105-page CAC; briefing the motion to stay discovery and the motion to dismiss; discovery; work with consultants; document analysis; multiple mediation sessions; negotiation of the Settlement Agreement; work on Settlement-related issues (including consultation with the PSC on allocation); and collection of confirmatory discovery after reaching agreement on settlement terms with Plaid.

19.     Class Counsel had a wealth of information at their disposal before entering into settlement negotiations, allowing Class Counsel to adequately assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of settlement against the risks of further litigation.

---

[2] All settlement notice and administrative costs will be paid from the Settlement Fund, except that in the event such costs exceed approximately $5.5 million (which the Parties do not presently anticipate), the Parties have agreed that Plaid will pay for up to $500,000 of such additional administrative costs directly to the third-party administrator.

20.     In addition to certain risks inherent in litigating against a relatively young start-up, there were risks as to certification and ultimate liability. Plaid has vigorously denied Plaintiffs' allegations of wrongdoing, and, absent settlement, Plaintiffs anticipate Plaid would defend this action aggressively at multiple procedural steps prior to trial, including opposing class certification and moving for summary judgment. While Plaintiffs strongly believe in the merits of their case, they recognize uncertainties that presents at least some element of risk at multiple, critical junctures in this Action. For example, all the claims carrying statutory penalties were dismissed except for California's Anti-Phishing Act ("CAPA") claim. Cal. Bus. & Prof. Code § 22948 *et seq*. As to CAPA, the law is in its relative infancy in the context of the interpretation of that claim.

21.     The outcome of continued litigation, including trial and likely appeals, is far from certain, could add years to this litigation, and would entail significant expense. In contrast, the Settlement provides significant, immediate benefits to the Class.

22.     Based on our collective experience, I and the other Class Counsel believe Plaid's commitments are substantial and will provide fair, reasonable, and adequate benefits to the Class, while reducing the expenditure resources and eliminating the risk of uncertain litigation outcomes.

23.     Certain differences between the proposed litigation classes reflected in the CAC and the Settlement Class reflect Class Counsel's determination, based upon information learned through formal and informal discovery, that (1) the challenged aspects of Plaid's software and conduct apply to the users of a broader set of fintech apps and services than those enabling payments and money transfers; and (2) the "OAuth Process" and "Managed OAuth Process" that Plaid employed with certain financial institutions at certain points in time should be excluded from the Class. The Settlement Class is thus broader in that it includes users of more fintech apps and narrower in that it excludes users who connected to their accounts using a different process than was described in the CAC.

**THE PROPOSED CLASS AND CLASS REPRESENTATIVES**

24.     Class Counsel estimates that the Settlement Class reflected in the Settlement Agreement includes approximately 98 million individuals. Class Counsel derived that estimate

from both current data provided by Plaid and assumptions from an internal analysis performed by Plaid of its data in 2020.

25. Based on our significant experience in complex consumer class action litigation and our observations during the course of this case, it is Class Counsel's professional opinion that the Class Representatives willingly, constructively, and effectively contributed to the prosecution of the claims on behalf of the Class. Each proposed Class Representative has contributed to the prosecution of the Action and fully cooperated with Class Counsel, the PSC, and other counsel for Plaintiffs. They have participated in a thorough vetting process undertaken by Class Counsel, stayed informed about the case, preserved relevant documents and ESI, responded to discovery requests, and responded to Class Counsel's requests for information for the benefit of the Class.

26. Each Class Representative was informed about the terms of the Settlement Agreement before it was signed, approves its terms, and supports its approval by the Court. Each has expressed continued willingness to protect the Class until the Settlement is approved and its administration completed.

**SELECTION OF ANGEION AS SETTLEMENT ADMINISTRATOR**

27. Class Counsel chose Angeion Group, LLC ("Angeion") as the settlement administrator for this Action after a competitive selection process involving the solicitation of proposals from three well-known and experienced settlement administration firms. The choice of Angeion was driven by the experience of its principals, the sophisticated and tailored nature of its proposal (especially for reaching Class Members through a digital media campaign), and the overall cost-effectiveness of its proposal.

28. Appointment of Angeion as settlement administrator is appropriate because Class Counsel believes it will adequately and professionally discharge its duties. Angeion's qualifications, along with the notice plan, are set out in the Declaration of Steven Weisbrot submitted concurrently with this Motion.

\* \* \*

29. Class Counsel have vigorously represented the Class for well over a year and ultimately obtained significant monetary and injunctive relief for Class Members. We remain fully committed to dedicating the necessary resources and collaborating for the benefit of the Class.

\*   \*   \*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 5th day of August, 2021, in Newport Beach, California.

/s/ Shawn M. Kennedy
Shawn M. Kennedy