# EXHIBIT A

HERRERA KENNEDY LLP
Shawn M. Kennedy (SBN 218472)
skennedy@herrerakennedy.com
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Tel: (949) 936-0900
Fax: (855) 969-2050

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Rachel Geman (Pro Hac Vice)
rgeman@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel: (212) 355-9500
Fax: (212) 355-9592

BURNS CHAREST LLP
Christopher J. Cormier (Pro Hac Vice)
ccormier@burnscharest.com
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 577-3977
Fax: (469) 444-5002

COOLEY LLP
Michael G. Rhodes (SBN 116127)
rhodesmg@cooley.com
Whitty Somvichian (SBN 194463)
wsomvichian@cooley.com
Kyle C. Wong (SBN 224021)
kwong@cooley.com
Lauren J. Pomeroy (SBN 291604)
lpomeroy@cooley.com
Ellie Barczak (SBN 329180)
ebarczak@cooley.com
Cameron J. Clark (SBN 313039)
cclark@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Tel:  (415) 693-2181
Fax: (415) 693-2222

*Attorneys for Defendant PLAID INC.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| IN RE PLAID INC. PRIVACY LITIGATION | Master Docket No.: 4:20-cv-03056-DMR |
| | **CLASS ACTION SETTLEMENT AGREEMENT** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Hon. Donna M. Ryu |

Plaintiffs Caroline Anderson, James Cottle, Rachel Curtis, David Evans, Logan Mitchell,

Alexis Mullen, Jordan Sacks, Frederick Schoeneman, Gabriel Sotelo, Jeffrey Umali, and

Nicholas Yeomelakis, on their own behalf and on behalf of the Class Members, and Defendant

Plaid Inc. ("Plaid") hereby enter into this Class Action Settlement Agreement pursuant to Fed. R. Civ. P. 23, subject to the approval of the Court.

## RECITALS

1.     WHEREAS on May 4, 2020, Plaintiffs James Cottle and Frederick Schoeneman filed a Complaint and commenced the action *Cottle et al. v. Plaid Inc.*, No. 4:20-cv-03056-DMR ("Cottle Action");

2.     WHEREAS on July 29, 2020, the Court granted a stipulation to consolidate the Cottle Action with four subsequently-filed related actions (collectively the "Action"), and to appoint interim Class Counsel under Federal Rule of Civil Procedure 23(g) (Dkt. 51, 57);

3.     WHEREAS on August 5, 2020, consolidated Plaintiffs Caroline Anderson, James Cottle, Rachel Curtis, David Evans, Logan Mitchell, Alexis Mullen, Jordan Sacks, Frederick Schoeneman, Gabriel Sotelo, Jeffrey Umali, and Nicholas Yeomelakis filed the Consolidated Amended Class Action Complaint (Dkt. 61);

4.     WHEREAS on September 14, 2020, Plaid filed a motion to dismiss the Consolidated Amended Class Action Complaint (Dkt. 78);

5.     WHEREAS on April 30, 2021, the Court granted in part Plaid's motion to dismiss, dismissing Plaintiffs' claims for declaratory and injunctive relief, as well as their claims under the Stored Communications Act, 18 U.S.C. §§ 2701 et seq., Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and Computer Data and Access Fraud Act, Cal. Penal Code § 502 with prejudice, and denied Plaid's motion to dismiss as to Plaintiffs' invasion of privacy/intrusion into private affairs and unjust enrichment claims for a nationwide class, and their deceit, California Constitution (Article I, Section I), and California Anti-Phishing Act of 2005 claims for a California class (Dkt. 125);

6.      WHEREAS counsel for the Parties conducted arm's length negotiations with the assistance of a third-party neutral, the Honorable Jay Gandhi (Ret.), with respect to a resolution of the claims in the Action, including a full-day mediation session on February 16, 2021, a half-day mediation session on April 13, 2021, and further negotiations with the assistance of the mediator following each session;

7.      WHEREAS, as a result of those efforts, on June 11, 2021, the parties reached agreement on certain material settlement terms;

8.      WHEREAS on June 16, 2021, the parties filed a stipulation to stay all non-settlement proceedings in the Action, pending finalization and execution of a long form settlement agreement, which was granted on June 17, 2021 (Dkt. 132, 133);

9.      WHEREAS this Agreement shall not be construed or deemed to be evidence of or an admission, presumption or concession on the part of Plaid of any fault, liability, or wrongdoing as to any facts or claims asserted in this action (or any infirmity in the defenses it has asserted or could assert in the Action), or any other actions or proceedings, and shall not be interpreted, construed, offered, or received in evidence or otherwise used against Plaid in any other action or proceeding, whether civil, criminal or administrative;

10.      WHEREAS the Parties recognize that continued prosecution of this litigation would be protracted and expensive, and the results uncertain;

11.      WHEREAS Plaintiffs have conducted discovery relating to the basis for the claims alleged in the Action and Class Counsel conclude that while they continue to believe they have meritorious claims, in light of the substantial benefits the Agreement confers on the Class Members, the applicable law, the uncertainties in the outcome of the Action, and the expense and length of time necessary to prosecute the Action through trial and possible appeals, that the terms

of the Agreement are fair, adequate, and reasonable, and that it is in Class Members' interest that the Action be fully and finally settled against Plaid on the terms set forth herein.

12.     WHEREAS Plaid denies any and all allegations of wrongdoing, and maintains that it is clear and transparent about its role in enabling consumers to safely connect their financial accounts to the apps and services of their choosing. Plaid contends that it has iterated and enhanced its business practices over time, and has distinguished itself with industry-leading practices that empower consumers with control and transparency over the data they share across the thousands of applications Plaid supports. Further, Plaid maintains that it has not and does not sell or rent data to third parties, and employs robust information security practices to protect consumers. Plaid believes that its time, resources, and energy are better spent continuing to focus on enabling its customers to provide the apps and services that users need and want to manage their financial lives, and given that, Plaid thinks it is beneficial to fully and finally settle and terminate this Action in the manner specified and in accordance with the terms of this Agreement.

NOW THEREFORE, the Parties, by and among themselves, and through their respective attorneys, hereby STIPULATE AND AGREE as follows:

## **DEFINITIONS**

13.     "Agreement" means this Class Action Settlement Agreement.

14.     "Action" means *In re Plaid Inc. Privacy*, No. 4:20-cv-03056-DMR (N.D. Cal.) and all cases consolidated and/or related thereto.

15.     "Approved Claim" means a Claim Form, submitted by a Class Member that (a) is submitted timely and in accordance with the directions on the Claim Form and the provisions of this Agreement; (b) is fully completed and executed by the Class Member with all of the

information requested in the Claim Form; (c) is signed by the Class Member; and (d) is verified by the Settlement Administrator.

16.     "Authorized Claimant" means a Class Member who submits an Approved Claim.

17.     "Claims Deadline" means the date by which a Claim Form must be postmarked or received to be timely.

18.     "Claim Form" means the document substantially in the form attached hereto as Exhibit A.

19.     "Class" means all natural persons who reside in the United States and who own or owned one or more Financial Accounts at the time such persons resided in the United States from January 1, 2013 to the date preliminary approval of the settlement is granted.

20.     "Class Counsel" means Christopher Cormier, Burns Charest LLP; Shawn Kennedy, Herrera Kennedy LLP, and Rachel Geman, Lieff, Cabraser, Heimann & Bernstein, LLP.

21.     "Class Members" means all members of the Class, except the following: (a) Plaid and any and all of its predecessors, successors, assigns, parents, subsidiaries, affiliates, directors, officers, employees, agents, representatives, and attorneys, and any and all of the parents', subsidiaries', and affiliates' present and former predecessors, successors, assigns, directors, officers, employees, agents, representatives, and attorneys; (b) any judicial officer presiding over the Action, or any member of his or her immediate family or of his or her judicial staff; and (c) any Excluded Class Member.

22.     "Class Representatives" or "Plaintiffs" means Caroline Anderson, James Cottle, Rachel Curtis, David Evans, Logan Mitchell, Alexis Mullen, Jordan Sacks, Frederick Schoeneman, Gabriel Sotelo, Jeffrey Umali, and Nicholas Yeomelakis.

23.     "Cost and Fee Award" means any attorneys' fees and reimbursement of actual out-of-pocket expenses awarded by the Court to Class Counsel for work performed by Class Counsel and Plaintiffs' Steering Committee Firms, as well as any other firm that performed approved work on behalf of Plaintiffs.

24.     "Court" means the United States District Court for the Northern District of California.

25.     "Cy Pres Recipient" means an organization approved by the Court to receive cy pres funds from non-distributable residual funds in the Escrow Account, as described in Section E.

26.     "Effective Date" means the first date after which the following events and conditions have occurred:  (a) the Court has entered a Final Judgment; and (b) the Final Judgment has become final in that the time for appeal or writ has expired or, if any appeal and/or petition for review is taken and the settlement is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired.  If the Final Judgment is set aside, materially modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the judgment shall not be a Final Judgment.

27.     "Escrow Account" means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms agreed upon with Class Counsel.

28.     "Excluded Class Member" means any Class Member who has timely exercised their right to be excluded from the Class.

29.     "Exhibits" means the exhibits to this Agreement.

30.     "Final Approval Hearing" means a hearing scheduled by the Court to determine the final fairness of the settlement embodied in this Agreement and whether to certify the class

for purposes of judgment on the proposal, provided that the Court grants preliminary approval and orders the Notice of Class Action Settlement, as provided for herein.

31.      "Final Judgment" means the Final Judgment and Order of Dismissal, as entered by the Court, substantially in the form attached hereto as Exhibit B.

32.      "Financial Account" means a financial institution account (1) that Plaid accessed using the user's login credentials and connected to a mobile or web-based fintech application that enables payments (including ACH payments) or other money transfers or (2) for which a user provided financial account login credentials to Plaid through Plaid Link. Notwithstanding the foregoing, a Financial Account does not include an account that was connected, or for which credentials were provided, exclusively through an OAuth Process or Managed OAuth Process.

33.      "Managed OAuth Process" means a process through which Plaid obtains login credentials in order to secure an access token pursuant to a formal agreement with the applicable financial institution and does not store those login credentials.

34.      "Net Settlement Fund" means the Settlement Fund less all amounts approved by the Court for distribution to any person or entity other than the Class Members and less any Service Award the Court may order for lead Class Representatives.

35.      "Notice Date" means the date by which the notice called for by the Notice Plan is substantially completed, which shall be either (a) November 12, 2021; or (b) a date no later than seventy (70) days after entry of the Preliminary Approval Order, whichever occurs later.

36.      "Notice of Class Action Settlement" means the form of written notice of the proposed Class Action Settlement, as approved by the Court in the Preliminary Approval Order, substantially in the form attached hereto as Exhibit C.

37.     "Notice Plan" means the plan for publishing notice to Class Members, which is attached as Exhibit D.

38.     "OAuth Process" means a process through which Plaid redirects an end user to the financial institution's domain to enter their login credentials and does not obtain login credentials for the end user.

39.     "Objection/Exclusion Deadline" means the date by which a written objection to the settlement or an exclusion request must be filed with the Court or postmarked to be timely, which shall be a date no later than thirty-five (35) days after the Notice Date.

40.     "Parties" means the Class Representatives and Plaid.

41.     "Plaid" means defendant Plaid Inc.

42.     "Plaid's Counsel" means Cooley LLP.

43.     "Plaid Link" means a consumer facing interface developed by Plaid, as incorporated in mobile or web-based applications or services, that guides an end user through the process of linking a financial institution account to the application or service via Plaid.

44.     "Preliminary Approval Order" means the Court's order determining it will be likely to certify the Class at final approval, approving and directing notice, and setting the Final Approval Hearing, substantially in the form attached hereto as Exhibit E.

45.      "Released Claims" means any and all actions, causes of action, claims, demands, liabilities, obligations, damages (including, without limitation, punitive, exemplary and multiple damages), penalties, sanctions, losses, debts, contracts, agreements, attorneys' fees, costs, expenses, and rights of any nature and description whatsoever, whether based on federal, state, or local statutes, common law, regulations, rules or any other law of the United States or foreign jurisdiction, known or unknown, fixed or contingent, suspected or unsuspected, in law or in

equity, arising from or related to allegations in the Action that were asserted or could have been asserted in the Action by the Releasing Parties against the Released Parties.

46.     "Released Parties" means Plaid and any and all of its present or former predecessors, successors, assigns, parents, subsidiaries, affiliates, directors, officers, employees, agents, representatives, and attorneys, and any and all of the parents', subsidiaries', and affiliates' present and former predecessors, successors, assigns, directors, officers, employees, agents, representatives, and attorneys.

47.     "Releasing Parties" means Plaintiffs and Class Members, regardless of whether such Class Members submit claims, and all of their present, former, and future heirs, executors, administrators, representatives, agents, attorneys, predecessors-in-interest, successors, assigns, and legatees.

48.     "Service Award" means any amount awarded by the Court to the Class Representatives following the written motion or application for such award.

49.     "Settlement Administrator" means the third-party class action administrator as appointed by the Court in the Preliminary Approval Order.

50.     "Settlement Amount" means $58,000,000.00 in United States currency.

51.     "Settlement Website" means the website containing Notice and other settlement documents maintained by the Settlement Administrator.

## SETTLEMENT CONSIDERATION

52.     In consideration for the releases set forth below, and the dismissal with prejudice of the Action, Plaid shall provide the following settlement benefits to Class Members.

**A.     Injunctive Relief: Business Practice Changes**

**1.     Website and End User Privacy Policy (EUPP)**

53.     Plaid will enhance the following disclosures in its EUPP:

a.      Provide additional detail about the categories of personal information Plaid collects from users' financial accounts for each Plaid product. In particular, for each Plaid product, excluding products in development, Plaid will provide (a) a plain-language list of the category or categories of personal information Plaid collects and (b) a plain-language statement providing the general reason(s) Plaid collects the category or categories of personal information identified in (a).

b.      Provide additional detail about how Plaid uses data. In particular, Plaid will include a table that specifies, for each category of personal information that Plaid collects about users, (a) the categories of sources of the personal information; (b) the categories of uses for which Plaid collects the personal information; and (c) the categories of parties, if any, with whom Plaid shares personal information (e.g., the developer of the user's application).

c.      Provide a plain-language explanation of Plaid's deletion and retention practices related to personal information collected from users' financial accounts, which, at a minimum, will include a description of Plaid's deletion practices when Plaid is notified that the data requested by an application is no longer being used by any Plaid customer.

d.      Provide a dedicated section explaining in plain-language terms the privacy controls Plaid has made available to users (e.g., "Privacy Control Section"), regardless of whether those controls are guaranteed by any legal right (e.g., GDPR, CCPA).  In this dedicated section, Plaid will include plain-language instructions to users that explain how to navigate to the Data Protection Rights section of the EUPP and how users can exercise those rights, as applicable.

e.      If Plaid publicly launches a product previously in development or implements changes to an existing product and the newly launched or changed product is not

already explicitly described in the EUPP, then Plaid shall update its EUPP on at least an annual basis to add such details outlined in paragraph 53(a) of its newly launched or changed products. In no event shall Plaid publicly launch a product that involves the collection or use of data not otherwise captured by the general terms of its EUPP.

54.     Plaid will ensure that Plaid's website includes and/or continues to include the following:

a.     A prominent reference to Plaid Portal (currently available at my.plaid.com) on its website homepage, including a link to the Plaid Portal and a plain-language description of the user controls available on Plaid Portal.

b.     A dedicated webpage with detailed information about Plaid's security practices described in plain language (currently available at https://plaid.com/how-we-handle-data/).

## 2.    Implemented Changes

55.     Plaid confirms it continuously makes updates to its business practices, including the following changes that were implemented or finalized, in part, after the filing of the initial class action complaint in this litigation on May 4, 2020:

a.     The launch of certain consumer education pages about Plaid's practices on Plaid's website, such as https://plaid.com/how-we-handle-data/; https://plaid.com/why-is-plaid-involved/; and https://plaid.com/discover-apps/.

b.     The addition of the following language to the credentials pane of Plaid's standard Link flow for relevant products: "By providing your [financial institution name] credentials to Plaid, you're enabling Plaid to retrieve your financial data."

c.       The addition of a link entitled "Why is Plaid involved?" to the institution selection pane of Plaid's standard Link flow. The link opens to the following text: "Plaid lets you connect your financial accounts to apps and services. This is a service provided by Plaid.  The connection Plaid provides to your financial account(s) does not imply affiliation with any financial institution."

### 3.       Plaid Link

56.    Plaid will ensure that Plaid's standard Link flow includes and/or continues to include the following:

a.       The consent pane for Plaid's standard Link flow continues to 1) refer expressly to Plaid and explain that Plaid is used to link the user's accounts, 2) include a conspicuous link to the EUPP, and 3) require the user to agree to Plaid's privacy policy by taking clear affirmative action (e.g., by clicking "Continue"). For the avoidance of doubt, the standard Link flow is the uniform set of panes for Plaid Link that Plaid offers to all customers. It does not include flows involving an OAuth Process or Managed OAuth Process, or flows where the customer designs or controls the consent pane.

b.       The credential pane for Plaid's standard Link flow explains that the user's credentials are being "provided to Plaid."

c.       The background color of the credential pane for Plaid's standard Link flow does not utilize the color scheme associated with a specific financial institution for that financial institution. For the avoidance of doubt, and as permitted under applicable law and agreements with financial institutions, the foregoing does not preclude Plaid from using the logo for a financial institution on the credential pane in Plaid Link even if that logo includes the color associated with a specific financial institution, or from using a general color scheme on the

- 12 -

credential pane in Plaid Link that applies regardless of which non-OAuth financial institution a user selects.

        d.      For the avoidance of doubt, the foregoing provisions do not apply to financial institutions with which Plaid has entered into a binding Data Access Agreement ("DAA") with conflicting requirements. In such situations, Plaid will adhere to the terms of the binding DAA. Plaid affirms that the terms within its existing DAAs would not prohibit it from fulfilling its obligations in Paragraph 56(a).

57.      Plaid will take reasonable commercial efforts to ensure that Plaid customers using Plaid's standard Link flow continue to comply with the above aspects of Plaid Link, except that the above requirements will not apply where Plaid is operating as a service provider to its customers.

### 4.    Plaid Portal

58.      Plaid agrees that the class notice will prominently:

        a.      Disclose that users can create a Plaid Portal account;

        b.      Explain the user controls available through Plaid Portal; and

        c.      Provide the URL for Plaid Portal.

59.      Plaid will take reasonable commercial efforts to send periodic email reminders to Plaid Portal account holders generally describing the user controls available in Plaid Portal, which at a minimum, and to the extent technically feasible, should enable users to disconnect apps from their financial accounts and delete financial data stored in Plaid's systems.

### 5.    Data Minimization

60.      With respect to data retrieved from users' financial accounts, Plaid will only store the categories of data for the Plaid product(s) that the user's application specifically requests

from Plaid or that are necessary for Plaid to offer its services, unless the user has expressly consented to the retrieval of additional data fields.

61.     For the avoidance of doubt, the foregoing does not restrict Plaid's ability to store data for debugging, security, privacy (e.g., the storage of privacy notices or compliance with Paragraph 59 above), support, and other such purposes, or as required for compliance with applicable law, provided that Plaid will not disclose any such categories of data to customers that the customer did not previously request from Plaid (as specified in Paragraph 60).

62.     Plaid will use its best efforts to continue to inform its customers about its /item/remove endpoint, which terminates the customer's access to data, and may lead to data deletion (if such data is not actively used by another customer).

## 6.     Data Deletion

63.     Plaid will, within the time periods specified in Paragraphs 64-66, delete the following data, to the extent not already deleted:

a.     Data retrieved as part of Plaid's Transactions product for users that Plaid can reasonably determine did not connect an account to an app that requested Transactions data. For the avoidance of doubt, the foregoing does not require Plaid to delete data retrieved as part of another Plaid product for which the user currently has an active connection. To illustrate, if a user connects an app that requests data from Plaid's Auth API and Plaid collects that requested data for that app, such data will not be deleted even if it overlaps with other data that would otherwise be covered by the first sentence of this section.

b.     In accordance with its internal data deletion policies, data for users for whom Plaid is aware that it no longer has valid means that can be used to authenticate with the bank.

### 7.    Applicable Time Frames

64.    Except as provided herein, where a provision above contemplates a change to Plaid's existing practice, the change will be implemented within 180 days from the Effective Date of this settlement (the "Implementation Date") and will continue for a period of three years from the Implementation Date.

a.    Plaid agrees to take reasonable commercial efforts to begin implementation of the changes described in Paragraph 60 by no later than the end of 2022 and these changes will continue for a period of three years thereafter.

65.    Where a provision above relates to the continuation of an existing Plaid practice, the commitment will continue for three years commencing from the Effective Date.

66.    Plaid confirms it does not presently intend to change the agreed business practices after the three-year periods referenced above, but a defined time limitation is appropriate and necessary given the anticipated ongoing evolution of Plaid's technology and the overall ecosystem in which Plaid operates.

### 8.    Other Terms and Considerations

67.    Within the three-year effective periods of Paragraphs 64-66, Plaid shall have discretion to modify any of the practices referenced above if required by state, federal, local, court, and/or agency statute, mandate, regulation, regulatory guidance, industry standards for open banking (set by recognized standards setting organizations, including FDX or similarly situated organizations) or court order. Within the three-year effective periods of Paragraphs 64-66, where a modification of a practice, as permitted by the foregoing sentence, would directly conflict with a commitment under this Agreement, Plaid will provide notice to Plaintiffs via Class Counsel before the modification goes into effect.

- 15 -

68.     For the avoidance of doubt, nothing contained herein should prevent Plaid from making changes to other practices not addressed in this Agreement.

69.     The provisions of this agreement shall only be effective for Plaid's products and services offered in the United States.

70.     Within thirty (30) days after the Implementation Date, Plaid shall provide a declaration to Class Counsel certifying Plaid's compliance with, and describing the status of its implementation of, provisions enumerated in Paragraphs 53-66 above. On an annual basis thereafter and until the expiration of Plaid's obligations, Plaid shall provide to Class Counsel an updated declaration and report that describes any change in the status of implementation.

**B.     <u>Monetary Relief</u>**

71.     Plaid agrees to pay and shall deposit in the Escrow Account, as set forth below, the total amount of Fifty-Eight Million U.S. Dollars ($58,000,000.00) as a non-reversionary cash Settlement Fund.

72.     Within ten (10) days after entry of the Preliminary Approval Order, Plaid shall deposit into the Escrow Account that portion of the Settlement Fund projected to be adequate to pay for the costs of the Notice Plan and CAFA Notice based on reasonable estimates of the Settlement Administrator.

73.     Within ten (10) days after the later of the Court's Order granting any Cost and Fee Award or entry of Final Judgment, Plaid shall deposit the full amount of such Cost and Fee Award into the Escrow Account, whether or not the Effective Date has occurred.

74.     Within ten (10) days after the Effective Date, Plaid shall deposit the balance of the Settlement Fund into the Escrow Account.

75.     The Settlement Fund shall be a court-approved Qualified Settlement Fund ("QSF") for federal tax purposes pursuant to Treas. Reg. § 1.468B-1. Plaid shall be the

"transferor" to the QSF within the meaning of Section 1.468B-1(d)(1) of the Treasury Regulations with respect to the Settlement Fund. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations, responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Section 1.468B-2(l)(2) of the Treasury Regulations or any other applicable law on or with respect to the QSF. Plaid shall provide to the Settlement Administrator any documentation required for the Settlement Administrator to facilitate obtaining QSF status for the Settlement Fund pursuant to Treas. Reg. §1.468B-l. All taxes on income or interest generated by the Settlement Fund, if any, shall be paid out of the Settlement Fund.

76.     The Escrow Account shall be maintained at The Huntington National Bank, which is a depository institution insured by the Federal Deposit Insurance Corporation which has total assets of at least $500 million and a short-term deposit rating of at least P-1 (Moody's) or A-1 (Standard & Poors).  Funds in the Escrow Account shall be invested in the following types of accounts and/or instruments and no other: (i) demand deposit accounts and/or (ii) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less.

77.     In no event shall Plaid's financial obligation under this Agreement exceed the amount of the Settlement Fund as provided for in this Section.

**C.     <u>Distribution of the Settlement Fund</u>**

78.     The Settlement Fund shall be distributed as follows:

a.      All of the following shall be paid from the Settlement Fund: any amounts approved by the Court for Cost and Fee Award(s) and Service Award(s); Escrow Account tax liabilities and tax expenses; costs of providing Notice under the Class Action Fairness Act

("CAFA Notice"), 28 U.S.C. § 1715; and any costs relating to the implementation of the settlement, including without limitation costs charged by the Settlement Administrator in disseminating Notice to Class Members in accordance with the Notice Plan, processing Claim Forms, objections, and requests for exclusion, administering payments to Authorized Claimants, establishing and maintaining the Settlement Website and Escrow Account, and otherwise performing the services it is obligated to perform under this Agreement. The remaining amount, plus any interest or investment income earned on sums deposited into the Escrow Account, shall constitute the Net Settlement Fund.

      b.      The Net Settlement Fund shall be distributed *pro rata* to Authorized Claimants by the Settlement Administrator within sixty (60) days after the Effective Date, or such other date as the Court may set.  The calculation, allocation, and distribution processes shall work as follows:

      i.      First, the number of shares for distribution in the Net Settlement Fund shall be calculated by calculating the sum of all Approved Claims submitted by Class Members.

      ii.      Second, the Settlement Administrator shall determine the dollar amount to be allocated for each share of the settlement fund by dividing the Net Settlement Fund by the number of Approved Claims

      iii.      Third, the Settlement Administrator shall distribute to each Authorized Claimant a monetary payment value equal to one share of the Net Settlement Fund. For each Authorized Claimant, the Settlement Administrator shall pay Authorized Claims using the method designated by the Authorized Claimant, *i.e.*, by physical check, ACH (Automated Clearing House) transfer, or deposit to a designated PayPal or Venmo account.

iv.      Authorized Claimants who receive a physical check shall have ninety (90) days after the date of issuance to cash the check.  Any funds from checks not cashed within that ninety (90) day period, funds from checks returned as undeliverable, and funds from failed ACH, PayPal, or Venmo transfers shall revert to the Settlement Fund.  If, in consultation with the Settlement Administrator, the Parties determine that any such reverted funds can be distributed *pro rata* to other Authorized Claimants, or a subset of Authorized Claimants, such as those who requested payment by electronic means, in a way that is economically feasible, such funds shall be distributed accordingly, within forty-five (45) days after the ninety (90)-day period during which checks issued in the initial distribution are valid.  If, in consultation with the Settlement Administrator, the Parties determine that a *pro rata* distribution to Authorized Claimants, or a subset thereof, is not economically feasible, then any such reverted funds shall be distributed by the Settlement Administrator *pro rata* to the Cy Pres Recipient(s) within forty-five (45) days after the ninety (90)-day period during which checks issued in the first distribution are valid.  In no event shall any such reverted funds constitute abandoned or unclaimed property.

79.      Notwithstanding paragraph 78, if the number of Authorized Claimants results in an initial *pro rata* payment amount per Authorized Claimant that the Parties, in consultation with the Settlement Administrator and the mediator, believe is not economically feasible to distribute to Authorized Claimants, Class Counsel will submit for Court approval as part of the Final Judgment an alternative plan of distribution under which the Settlement Administrator will distribute the Net Settlement Fund *pro rata* to the Cy Pres Recipient(s).

**D.      Claims Administration**

80.      The Claims Deadline shall be set as a date no later than ninety (90) days after the Notice Date.  Class Members shall have until the Claims Deadline to submit a Claim Form,

substantially in the form attached hereto as Exhibit A.  The Claim Form shall be available for submission in electronic and paper format.

81.     Each Class Member may submit only one Claim Form, regardless of how many Financial Accounts they may own, and therefore each Class Member is limited to only one Approved Claim.

82.     The Settlement Administrator shall review all claims to determine their validity and shall employ reasonable procedures to screen claims for abuse or fraud.  The Settlement Administrator may reject any claim that is not submitted by a Class Member; is a duplicate of another claim; is reasonably suspected to be fraudulent; or is submitted after the Claims Deadline. Plaid agrees to provide reasonable cooperation and assistance to the Settlement Administrator upon request of the Settlement Administrator in connection with determining the validity of claims submitted by Class Members, including where data potentially needed to validate claims cannot be transmitted directly to the Settlement Administrator due to security or other reasons.  Late claims may be considered if deemed appropriate by the Settlement Administrator in consultation with Class Counsel, or if ordered by the Court.

83.     The Settlement Administrator shall determine whether a Claim Form submitted by a Class Member is an Approved Claim and shall reject Claim Forms that fail to comply in any material respect with the instructions in the Notice Plan or the terms of this Agreement.  Before rejecting a claim, the Settlement Administrator will notify the claimant and give the claimant two weeks from the date of notice to correct any deficiency.

E.      **Cy Pres Recipients**

84.     No later than seven (7) days before the Court holds a hearing on preliminary approval of this Agreement, Class Counsel shall identify one or more Cy Pres Recipients to recommend to the Court for approval and shall comply with the requirements set forth in the

Northern District of California guidance[1] on cy pres awards. The Cy Pres Recipient(s) shall be independent organizations with a track record of addressing consumer privacy concerns on web-based or mobile applications and/or in connection with the information stored in personal financial accounts, directly or through grants. Such organization(s), as a condition of receiving settlement funds, shall commit to use the funds to promote the protection of online privacy and/or financial privacy. Before submitting their proposed Cy Pres Recipients to the Court, Class Counsel will disclose them to Plaid.

85.     Each Cy Pres Recipient shall agree that, if approved by the Court, it shall provide a report to the Parties within one hundred eighty (180) days after the Effective Date and on a periodic basis not to exceed one hundred eighty (180) days thereafter, describing how it has used any cy pres funds and how it intends to use any remaining funds. Class Counsel shall be responsible for ensuring that such reports are posted on the Settlement Website.

86.     Plaid shall not exercise any control or influence over any Cy Pres Recipient's expenditure of any cy pres funds.

## **RELEASES**

87.      The Parties agree that should the Court grant final approval of the settlement and enter the Final Judgment, such Final Judgment shall include a provision retaining the Court's jurisdiction over the Parties to enforce the terms of this Agreement.

88.     Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them, whether or not such Releasing Party has made a claim under the settlement.  This Agreement

---

[1] Currently set forth at https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

shall be the sole and exclusive remedy for any and all Released Claims against the Released Parties. In entering into this Release, the Releasing Parties acknowledge that they assume the risk of any mistake of fact or law. If they, or any of them, should later discover that any fact which they relied upon in entering into this Agreement is not true, or that their understanding of the facts or law was incorrect, they shall not be entitled to modify, reform, or set aside this Agreement, in whole or in part, by reason thereof.

89.     Upon the Effective Date, the Plaintiffs and each and every Class Member shall be bound by this Agreement, and each of them shall be enjoined from commencing or prosecuting any action in any court or tribunal asserting any of the Released Claims, either directly, representatively, derivatively or in any other capacity, against any of the Released Parties.

90.     Except as explicitly provided herein, nothing in this Agreement abrogates, supersedes, modifies, or qualifies in any way any of the contractual terms and conditions applicable in the ordinary course of business to any relationship that may exist between Plaid and the Class Representatives or Class Members.

91.     Nothing in paragraphs 88 and 89 of this Agreement shall be a bar to a claim, complaint, action, or proceeding for breach of this Agreement.

92.     The Releasing Parties acknowledge that they have consulted with legal counsel and are familiar with the provisions of California Civil Code Section 1542, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

93.     The Releasing Parties, being aware of California Civil Code Section 1542, expressly waive any rights they may have under that statute as well as under any other statute or

common law principles of similar effect with respect to the claims released in paragraphs 88 and 89, arising out of or relating to the Action. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but that it is their intention to finally and forever settle and release the Released Claims.

## NOTICE OF CLASS ACTION SETTLEMENT

94.     The Parties agree to provide notice of the settlement to Class Members in accordance with the Notice Plan attached as Exhibit D. The Parties shall agree on the form and content of notices contemplated in the Notice Plan, which must be consistent with the Notice of Class Action Settlement attached hereto as Exhibit C.

95.     The Settlement Administrator shall be responsible for disseminating notice pursuant to the Notice Plan and for operating the Settlement Website. Any material deviation from the Notice Plan must be approved by the Parties and the Court.

96.     All costs associated with the Notice Plan, including the fees and costs of the Settlement Administrator, shall be paid from the Settlement Fund. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the settlement.

## APPROVAL OF SETTLEMENT & SETTLEMENT IMPLEMENTATION

97.     Preliminary Approval Hearing. The Class Representatives will move for preliminary approval of the settlement, submit this Agreement and Exhibits with the motion, and request that the Court hold a hearing on preliminary approval of the settlement. The Class Representatives will submit a proposed Order Granting Preliminary Approval of Class Action Settlement substantially in the form attached hereto as Exhibit E.

98.  <u>Compliance with the Class Action Fairness Act</u>.  In coordination with the Settlement Administrator, Plaid will provide CAFA Notice of the settlement to the appropriate federal and state officials not later than ten (10) calendar days after the Agreement is filed with the Court.

99.  <u>Procedure for Objecting to Class Action Settlement</u>.

a.  Any Class Member who is not an Excluded Class Member may object to the settlement.  Class Members who wish to object to the settlement must make a written statement objecting to the settlement.  Such written statement must be filed at any location of the United States District Court for the Northern District of California or sent to the Settlement Administrator at the address specified in the Notice of Class Action Settlement, Exhibit C, no later than the Objection/Exclusion Deadline set by the Court in its Preliminary Approval Order.

b.  Any objection must contain: (i) the objector's full name and mailing address, email address, or telephone number, and personal signature, (ii) the objector's basis for believing they are a Class Member, (iii) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying counsel by name, address, and phone number, and (iv) a clear and concise statement of the grounds for their objection.

c.  The date of the postmark on the envelope containing the written statement objecting to the settlement shall be the exclusive means used to determine whether an objection and/or intention to appear has been timely submitted.  In the event a postmark is illegible, the date of mailing shall be deemed to be three (3) days prior to the date the Settlement Administrator received the written statement.  Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections

and shall be forever barred from making any objection to the Agreement and the proposed

settlement by appearing at the Final Approval Hearing, appeal, collateral attack, or otherwise.

100.  <u>No Solicitation of Settlement Objections</u>.  At no time shall any of the Parties or

their counsel seek to solicit or otherwise encourage Class Members to submit written objections

to the settlement, or encourage an appeal from the Court's Final Judgment.  None of the Parties

shall initiate unsolicited contact with any Class Member for any purpose prohibited under this

Agreement.

101.  <u>Final Settlement Approval Hearing and Entry of Final Judgment</u>.  A Final

Approval Hearing shall be conducted to determine final approval of the settlement.  Upon final

approval of the settlement by the Court at or after the Final Approval Hearing, the Parties shall

present a Final Judgment and Order of Dismissal to the Court for its approval and entry,

substantially in the form attached hereto as Exhibit B.

102.  <u>Termination</u>.  The Parties shall have the right to terminate this Agreement if any

of the following events occurs:

a.  The Court does not enter an order granting preliminary approval of the

settlement, as provided herein;

b.  The Court does not enter an order granting final approval of the

settlement, as provided herein;

c.  The Court does not enter a Final Judgment that is materially the same as

the form attached hereto as Exhibit B;

d.  The Court requires material alteration of any provision of the Agreement

for the settlement to be approved, including without limitation, the releases set forth in

paragraphs 88-89 and 92-93, the Notice Plan set forth in paragraph 94 and Exhibit D, or the provisions in Section A; or

      e.      All conditions for the Effective Date do not occur.

103.    <u>Notice of Termination</u>.  A party shall provide written notice of an intent to terminate this Agreement to counsel for the other party within thirty (30) calendar days after receiving notice that any of the foregoing events of Termination has occurred.

104.    <u>Effect of Termination</u>.  In the event that this Agreement is voided, terminated, or cancelled, or fails to become effective for any reason whatsoever, then the Parties shall be deemed to have reverted to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and they shall proceed in all respects as if this Agreement, its Exhibits, and any related agreements or orders, had never been executed or entered.

105.    In the event this Agreement is terminated pursuant to the specified terms enumerated in paragraph 102, the Settlement Administrator shall, within fourteen (14) days of receiving notice of the termination date, pay to Plaid all funds deposited in the Escrow Account by Plaid together with any interest or other income earned thereon, less (i) any taxes paid or due with respect to such income, (ii) any reasonable administrative expenses actually incurred and paid or payable from the Settlement Fund as authorized in this Agreement, and (iii) any Cost and Fee Award paid prior to termination pursuant to paragraph 109 (which shall be repaid to Plaid by Class Counsel as specified in paragraph 109).

106.    Notwithstanding any provision herein, in the event this Agreement is not approved by any court, or terminated for any reason, or the settlement set forth in this Agreement is declared null and void, or in the event that the Effective Date does not occur, Class Members, Class Representatives, and Class Counsel shall not in any way be responsible or liable for any

administration expenses, taxes with respect to the Settlement Fund, or any expenses, including costs of notice and administration associated with this Settlement or this Agreement, except that each Party shall bear its own attorneys' fees and costs and Plaid's future payment obligations shall cease.

107.    In the event one or more appeals are filed from the Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the settlement shall be stayed pending final resolution of the appeal or other appellate review.  Nothing, however, shall prohibit Plaid from fulfilling any of its obligations above, if in the exercise of its sole discretion it chooses to do so.

### ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

108.    If Preliminary Approval is granted, no later than thirty-five (35) days before the Objection/Exclusion Deadline, Class Counsel shall submit a motion for approval of a Cost and Fee Award, for attorneys' fees in an amount not to exceed 25% of the Settlement Fund, plus reimbursement out of the Settlement Fund of actual out-of-pocket expenses incurred by Class Counsel and Plaintiffs' counsel in the Action.  The Parties have not discussed the issue or amount of attorneys' fees in their negotiations of this Settlement and Plaid reserves all rights in connection with Class Counsel's anticipated request for attorneys' fees.

109.    The Settlement Administrator shall pay from the Settlement Fund any Cost and Fee Award approved by the Court to a trust account maintained by Lieff, Cabraser, Heimann & Bernstein, LLP.  Such attorneys' fees and costs shall be paid in the amount approved by the Court within seven (7) days after the funds are deposited into the Escrow Account, whether or not the Effective Date has occurred. In the event the Effective Date does not occur, Class Counsel agree to repay the attorneys' fees and costs, plus interest at the rate earned by the Settlement Fund, to Plaid.  Plaid shall have responsibility for the payment of any taxes due on

interest repaid to Plaid from the Escrow Account.  Any such repayment shall be made within fourteen (14) days of Class Counsel receiving written notice that Plaid is terminating the settlement because the Effective Date has not occurred.  Each Class Counsel's law firm receiving any portion of a Fee Award, as a condition of receiving such payment, agrees that the law firm is subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.  If Class Counsel fails to repay any portion of the Fees Award as required by this paragraph, the Court shall, upon application by Plaid and notice to Class Counsel, issue such orders as appropriate to compel compliance by Class Counsel and their respective law firms, and shall, if circumstances warrant, award reasonable attorneys' fees and expenses incurred by Plaid in connection with the enforcement of this paragraph.

110.    Should the Court award a Cost and Fee Award less than the amount sought in Class Counsel's petition, the difference between the amount sought and the amount awarded shall remain in the Settlement Fund, and, after any appeal from or motion for reversal or modification of the Court's Cost and Fee Award is resolved or the deadline for filing an appeal or motion for reconsideration regarding the amount of any Cost and Fee Award has expired without the filing of an appeal or motion, such funds shall be distributed pursuant to paragraph 109 of this Agreement.

111.    Class Counsel shall have the sole and absolute discretion to allocate the Cost and Fee Award amongst Class Counsel and any other attorneys.  Plaid shall have no liability or other responsibility for allocation of any Cost and Fee Award.

112.    The Parties agree that the Class Representatives may apply to the Court for a Service Award to each of the Class Representatives, each of which shall not exceed $5,000, for their services as class representatives.  The Parties agree that the decision whether or not to

award any such payment, and the amount of that payment, rests in the exclusive discretion of the Court.  Class Representatives understand and acknowledge that they may receive no monetary payment, and their agreement to the settlement is not conditioned on the possibility of receiving monetary payment.

113.    The Settlement Administrator, within ten (10) days after the Effective Date, shall pay from the Settlement Fund the amount of any Court-approved Service Award(s) for the Class Representatives via check, to be sent care of Class Counsel.  Should the Court award less than the amount sought in the petition, the difference between the amount sought and the amount awarded shall remain in the Settlement Fund to be distributed pursuant to paragraph 78 of this Agreement.

114.    It is not a condition of the settlement that any Cost and Fee Award or Service Award be approved by the Court.  Any order or proceeding relating to the amount of any Cost and Fee Award and/or Service Award, or any appeal from or reversal or modification thereof, shall not operate to modify, terminate, or cancel the settlement, or affect or delay Final Judgment.

## ADDITIONAL PROVISIONS

115.    Best Efforts.  The Parties agree to cooperate in good faith and use their best efforts to effectuate all of their respective obligations under the Agreement, including obtaining preliminary and final settlement approval, and all steps that may be necessary in order to reach the Effective Date, and to do so as quickly and efficiently as practicable.  In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the settlement, or on any supplemental provisions that may become necessary to effectuate the terms of the settlement embodied in this Agreement, the Parties shall mediate the disagreement before

Hon. Jay Gandhi (Ret.). The Parties shall not seek the Court's intervention until they have exhausted the mediation process.

116.   <u>Limited Admissibility of Agreement</u>. This Agreement is made in compromise of a dispute. Regardless of whether the Court approves this Agreement, neither this Agreement nor anything that any of the Parties stated or did during the negotiation of this Agreement will be construed or used in any manner as an admission of liability or evidence of either party's fault, liability or wrongdoing. On the contrary, the Parties expressly deny any liability or wrongdoing whatsoever. Notwithstanding the foregoing restrictions in this paragraph, Plaid may file this Agreement and Final Judgment (if and when such Final Judgment is entered) in any action that may be or has been brought against it in order to support a defense, counterclaim or crossclaim.

117.   <u>Notices</u>. Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the date of electronic mailing. Postal mailing will be provided as well, addressed as follows:

<u>To Class Counsel</u>

Rachel Geman
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
rgeman@lchb.com

Shawn M. Kennedy
HERRERA KENNEDY LLP
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
skennedy@herrerakennedy.com

Christopher J. Cormier
BURNS CHAREST LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
ccormier@burnscharest.com

To Plaid's Counsel

Michael G. Rhodes
Whitty Somvichian
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
rhodesmg@cooley.com
wsomvichian@cooley.com

118.   Privacy.  The Parties and all counsel agree that all orders and agreements

regarding the preservation and confidentiality of documents and information remain in effect,

including without limitation the Stipulated Protective Order entered on November 9, 2020 in the

Action (Dkt. 107), and all Parties and counsel remain bound to comply with them.  Nothing

contained in this Agreement or any order of the Court related to this Agreement, nor any act

required to be performed pursuant to this Agreement is intended to constitute, cause, or effect

any waiver (in whole or in part) of any attorney-client privilege, work product protection or any

other privilege or protective doctrine afforded by law.

119.   Exhibits.  The terms of this Agreement include the terms set forth in the attached

Exhibits, which are incorporated by this reference as though fully set forth herein.  Exhibits to

this Agreement are an integral part of the settlement.

120.   Captions or Headings.  The captions or headings of paragraphs in this Agreement

are inserted for convenience, reference, and identification purposes only, and shall neither

control, define, limit, nor affect any provisions of this Agreement.

121.   Defined Terms.  Terms defined in this Agreement shall have their defined

meanings whenever and wherever they occur herein (including in Exhibits).

122.   Materiality.  The Parties have negotiated all of the terms and conditions of this

Agreement at arm's length.  All terms, conditions, and Exhibits in their exact form have been

individually negotiated and bargained for at arm's length, are material and necessary to this Agreement, and have been relied upon by the Parties in entering into this Agreement.

123.  Stay of Proceedings.  To the extent approved by the Court, the Parties agree to continue to stay all proceedings in the Action, except such proceedings necessary to implement and complete the settlement, pending the entry of Final Judgment.

124.  Amendment or Modification.  Any amendment to this Agreement must be in writing, signed by the Parties, and expressly state that it is amending this Agreement.

125.  Waiver of Compliance.  No party shall be treated as having waived any rights by not exercising (or delaying the exercise of) any rights under this Agreement.  Moreover, a waiver of any breach of this Agreement by any Party shall not be deemed to be a waiver by any Party of any other breach of this Agreement.

126.  Entire Agreement.  This Agreement sets out all terms agreed between the Parties and supersedes all previous or contemporaneous agreements between the Parties relating to its subject matter.  In entering into this Agreement neither party has relied on, and neither party shall have any right or remedy based on, any statement, representation or warranty (whether made negligently or innocently), except those expressly set out in this Agreement.

127.  Authorization to Enter Agreement.  The Parties warrant and represent they are authorized to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement, to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.

128.  Parties' Knowledge and Advice of Counsel.  Each party enters into this Agreement with the opportunity to seek the advice of counsel and executes and delivers this Agreement being fully informed as to its terms, content, and effect.

129.   <u>No Third Party Beneficiaries</u>.  This Agreement does not confer any benefits on any third party other than Class Members for whom a direct benefit is specifically provided hereunder.

130.   <u>Agreement Binding on Successors in Interest</u>.  This Agreement shall be binding on and inure to the benefit of the respective heirs, successors, and assigns of the Parties.

131.   <u>Assignment</u>.  This Agreement, including any of the rights and duties of any party hereto under the Agreement, may not be assigned without prior written approval by the other party.

132.   <u>No Additional Persons with Financial Interest</u>.  Plaid shall not be liable for any additional attorneys' fees and expenses of any Class Member's counsel, including any potential objectors or counsel representing a Class Member, other than what is expressly provided for in this Agreement.

133.   <u>Jurisdiction of the Court</u>.  The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement, including all Class Members, and over the interpretation, implementation, administration and enforcement of this Agreement.

134.   <u>No Construction Against Any Party</u>.  The terms of this Agreement have been negotiated at arm's length among knowledgeable Parties represented by experienced counsel. The Parties agree that the normal rules of construction that any ambiguity in a document is construed against the drafting party shall not apply to the interpretation or enforcement of this Agreement, as the Parties each participated in the drafting of this Agreement. The Parties expressly waive the presumption of California Civil Code section 1654 that uncertainties in a contract are interpreted against the party who caused the uncertainty to exist.

135. <u>Extensions of Time</u>.  The Parties may agree upon a reasonable extension of time for any deadline or date reflected in this Agreement, without further notice (subject to Court approval as to dates set by the Court).

136. <u>Fees Not a Penalty</u>.  No consideration or amount or sum paid, credited, offered, or expended by Plaid in its performance of this Agreement constitutes a penalty, fine, punitive damages, or other form of assessment for any alleged claim against Plaid.

137. <u>Collateral Attack</u>.  This Agreement shall not be subject to collateral attack by any Class Members at any time on or after the Effective Date.

138. <u>Counterparts</u>.  The Parties may execute this Agreement in counterparts, including facsimile, PDF, and other electronic copies, which taken together will constitute one instrument.

139. <u>Governing Law and Venue</u>.

a.      ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT WILL BE GOVERNED BY CALIFORNIA LAW, WITHOUT REGARD TO OR APPLICATION OF CALIFORNIA'S CONFLICT OF LAWS RULES, AND WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL COURTS OF SAN FRANCISCO COUNTY, CALIFORNIA, USA; THE PARTIES CONSENT TO PERSONAL JURISDICTION IN THOSE COURTS.

b.      If a party files any claim, complaint, action, or proceeding alleging a breach of this Agreement, the successful or prevailing party will be entitled to recover its attorneys' fees and other costs, in addition to any other relief to which the party may be entitled. Any action or proceeding to enforce the Agreement shall, pursuant to the Court's retention of jurisdiction with respect to the settlement, be brought in this Court.

140.   <u>Signatures</u>.  Each person executing this Agreement warrants that such person has the full authority to do so.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

APPROVED AND AGREED TO BY THE PLAINTIFFS:

Dated: _____ July 30 _____, 2021

Name _____ Shawn M. Kennedy _____

Dated: _____ July 30 _____, 2021

Name _____ Christopher J. Cormier _____

Dated: _____ July 30 _____, 2021

Name _____ Rachel Geman _____

APPROVED AND AGREED TO BY DEFENDANT:

Dated: _____, 2021     PLAID INC.

By: _____

Title: _____

- 35 -

140. <u>Signatures</u>.  Each person executing this Agreement warrants that such person has the full authority to do so.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

APPROVED AND AGREED TO BY THE PLAINTIFFS:

Dated: _____, 2021    _____
                                     Name

Dated: _____, 2021    _____
                                     Name

Dated: _____, 2021    _____
                                     Name

APPROVED AND AGREED TO BY DEFENDANT:

Dated: _____July 30_____, 2021     PLAID INC.

                                     By: __Meredith Fuchs_____
                                         47DD5EE4D30D444...

                                     Title: __General Counsel_____

- 35 -

# EXHIBIT A

**MAIN ONLINE CLAIMS FILING PAGE:**

# In re Plaid Inc. Privacy Litigation

Case No. 4:20-cv-03056-DMR

United States District Court for the Northern District of California Oakland Division

HOME   **SUBMIT A CLAIM**   IMPORTANT DOCUMENTS   FAQS   CONTACT US

If you received a personalized notice in the mail or via email with a **Notice ID** and **Confirmation Code**, please enter the codes you were provided below.

Please remember to enter the full Notice ID exactly as it appears on your personalized Notice, (i.e. 12345678).

Notice ID

Confirmation Code

Submit

**OR**

If you did not receive a personalized Notice in the mail or via email, click below to complete a Claim Form.

Click Here

**ONLINE CLAIMS FILING (I <u>HAVE</u> A NOTICE ID):**

# In re Plaid Inc. Privacy Litigation
Case No. 4:20-cv-03056-DMR
United States District Court for the Northern District of California Oakland Division

HOME   SUBMIT A CLAIM   IMPORTANT DOCUMENTS   FAQS   CONTACT US

If you received a personalized notice in the mail or via email with a **Notice ID** and **Confirmation Code**, please enter the codes you were provided below.

Please remember to enter the full Notice ID exactly as it appears on your personalized Notice, (i.e. 12345678).

Notice ID

Confirmation Code

Submit

<u>OR</u>

If you did not receive a personalized Notice in the mail or via email, click below to complete a Claim Form.

Click Here

# In re Plaid Inc. Privacy Litigation
Case No. 4:20-cv-03056-DMR
United States District Court for the Northern District of California Oakland Division

HOME   SUBMIT A CLAIM   IMPORTANT DOCUMENTS   FAQS   CONTACT US

**Your claim must be submitted online by [DEADLINE DATE].** You may only submit one Claim Form. If you have any questions, please contact the Settlement Administrator by email at [EMAIL ADDRESS] or by mail at *Plaid Inc. Privacy Litigation*, c/o Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

**I. YOUR CONTACT INFORMATION AND MAILING ADDRESS**

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this form.

TEST

First Name *

CLAIMANT

Last Name *

Street Address *

City *

State *

Zip Code *

Email Address *

Confirm Email Address *

* Required Fields

## II. PAYMENT SELECTION

Please select **one** of the following payment options:

○ **PayPal**

○ **Venmo**

○ **Physical Check** - Payment will be mailed to the address provided above.

## III. ATTESTATION UNDER PENALTY OF PERJURY

By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that I am the person identified above and the information provided in this Claim Form is true and correct, and that nobody has submitted another claim in connection with this Settlement on my behalf.

|                          | Your signature |
|--------------------------|----------------|
| 08/04/2021               | Date           |

Submit

**ONLINE CLAIMS FILING (I <u>DO NOT HAVE</u> A NOTICE ID):**

# In re Plaid Inc. Privacy Litigation
Case No. 4:20-cv-03056-DMR
United States District Court for the Northern District of California Oakland Division

HOME   SUBMIT A CLAIM   IMPORTANT DOCUMENTS   FAQS   CONTACT US

If you received a personalized notice in the mail or via email with a **Notice ID** and **Confirmation Code**, please enter the codes you were provided below.

Please remember to enter the full Notice ID exactly as it appears on your personalized Notice, (i.e. 12345678).

OR

If you did not receive a personalized Notice in the mail or via email, click below to complete a Claim Form.

Click Here

Notice ID

Confirmation Code

Submit

# In re Plaid Inc. Privacy Litigation
Case No. 4:20-cv-03056-DMR
United States District Court for the Northern District of California Oakland Division

HOME   SUBMIT A CLAIM   IMPORTANT DOCUMENTS   FAQS   CONTACT US

**Your claim must be submitted online by [DEADLINE DATE].** You may only submit one Claim Form. If you have any questions, please contact the Settlement Administrator by email at [EMAIL ADDRESS] or by mail at *Plaid Inc. Privacy Litigation,* c/o Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

Submission of this Claim Form does not guarantee payment. Your Claim Form must be approved by the Settlement Administrator.

**I. YOUR CONTACT INFORMATION AND MAILING ADDRESS**

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this form.

First Name *

Last Name *

Street Address *

City *

State *

Zip Code *

Email Address *

Confirm Email Address *

Notice ID (optional - if you received notice of the Settlement by email or mail, please provide the Notice ID from above your name in the Notice you received)

* Required Fields

## II. OTHER INFORMATION

In this Settlement, you may be a Class Member if you own or owned an account at a financial institution that was connected to a mobile or web-based payments app or service through Plaid and/or for which account credentials were provided through Plaid Link, between January 1, 2013 and [date of preliminary approval], as further explained and defined in the Class notice materials, which you should review carefully.

If, based on the information provided in the Class notice materials, you believe you are a Class Member, please provide the following information about at least one, and up to eight, of the connections between your financial account(s) and mobile or web-based app(s) or service(s). Please include only one financial institution, app or service, and date, per row:

| | Name of Financial Institution (such as Bank or Credit Union) where you Own/Owned a Financial Account | Name of App or Service You Connected to Your Financial Institution Account | Approximate Date (Month/Year) of Connection to your Financial Account |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |

## III. PAYMENT SELECTION

Please select **one** of the following payment options:

○ **PayPal**

○ **Venmo**

○ **Physical Check** - Payment will be mailed to the address provided above.

## IV. ATTESTATION UNDER PENALTY OF PERJURY

By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that I am the person identified above and the information provided in this Claim Form is true and correct, and that nobody has submitted another claim in connection with this Settlement on my behalf.

_____ Your signature

| 08/04/2021 | Date

[ Submit ]

**OBTAINING A PAPER CLAIM FORM TO SUBMIT BY MAIL (IMPORTANT DOCUMENTS PAGE):**

# In re Plaid Inc. Privacy Litigation

Case No. 4:20-cv-03056-DMR

United States District Court for the Northern District

| HOME | SUBMIT A CLAIM | IMPORTANT DOCUMENTS | FAQS |

## Important Documents

Claim Form – I have a Notice ID

Claim Form – I do not have a Notice ID

**PAPER CLAIM FORM TO SUBMIT BY MAIL (I <u>HAVE</u> A NOTICE ID):**

# In re Plaid Inc. Privacy Litigation

Case No. 4:20-cv-03056-DMR

United States District Court for the Northern District

| HOME | SUBMIT A CLAIM | IMPORTANT DOCUMENTS | FAQS |

## Important Documents

Claim Form – I have a Notice ID

Claim Form – I do not have a Notice ID

<table>
<tr><td>

**Your claim must be
submitted online or
postmarked by:**

**[DEADLINE]**

</td><td>

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*IN RE PLAID INC. PRIVACY LITIGATION, CASE NO. 4:20-MD-03056*
***WWW.PLAIDSETTLEMENT.COM***

</td><td>

**PPL-PQ**

</td></tr>
</table>

## CLAIM FORM INSTRUCTIONS

1. You may submit your Claim Form online at www.PlaidSettlement.com or by U.S. Mail to the following address: *Plaid Inc. Privacy Litigation*, c/o Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

2. You must complete the entire Claim Form. Please type or write your responses legibly.

3. If your Claim Form is incomplete or missing information, the Settlement Administrator may contact you for additional information. If you do not respond by the deadline provided by the Settlement Administrator, the Settlement Administrator will be unable to process your claim, and you will waive your right to receive money under the Settlement.

4. You may only submit one Claim Form.

5. If you have any questions, please contact the Settlement Administrator by email at [EMAIL ADDRESS], by telephone at [PHONE NUMBER], or by mail at the address listed above.

6. **You must notify the Settlement Administrator if your contact or payment information changes. If you do not, even if you submit a valid claim under the Settlement, you may not receive your payment.**

7. **DEADLINE -- Your claim must be submitted online by [DEADLINE DATE]. Claim Forms submitted by mail must be postmarked no later than [DEADLINE DATE].**

<table>
<tr><td>

**Your claim must be submitted online or postmarked by: [DEADLINE]**

</td><td>

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*IN RE PLAID INC. PRIVACY LITIGATION, CASE NO. 4:20-MD-03056*
***WWW.PLAIDSETTLEMENT.COM***
**Claim Form**

</td><td>

**PPL-PQ**

</td></tr>
</table>

## I.  YOUR CONTACT INFORMATION AND MAILING ADDRESS

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this form.

|  |  |
|---|---|
|  |  |
| **First Name** | **Last Name** |

**Street Address**

| | | |
|---|---|---|
| **City** | **State** | **Zip Code** |

**Email Address**

**If you received Notice about the Settlement by email or mail, you have been identified as a Class Member. In order for the Settlement Administrator to relate the app(s) you used in connection with Plaid, in the below field, please provide the Notice ID located above your name/ address on the Notice you received. Please be sure to include the full Notice ID, including any letters or numbers that may appear.**

**Notice ID**

## II.  PAYMENT SELECTION

Please select **one** of the following payment options:

☐ **PayPal** - Enter your PayPal email address: _____

☐ **Venmo -** Enter the mobile number associated with your Venmo account: __ __ __-__ __ __-__ __ __ __

☐ **Physical Check -** Payment will be mailed to the address provided above.

## III.  ATTESTATION UNDER PENALTY OF PERJURY

By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that I am the person identified above and the information provided in this Claim Form is true and correct, and that nobody has submitted another claim in connection with this Settlement on my behalf.

_____
Your signature

_____
Your name

Date: _____
          MM        DD        YYYY

**PAPER CLAIM FORM TO SUBMIT BY MAIL (I <u>DO NOT HAVE</u> A NOTICE ID):**

# In re Plaid Inc. Privacy Litigation

Case No. 4:20-cv-03056-DMR

United States District Court for the Northern District

HOME    SUBMIT A CLAIM    IMPORTANT DOCUMENTS    FAQS

## Important Documents

Claim Form – I have a Notice ID

Claim Form – I do not have a Notice ID

<table>
<tr><td>

**Your claim must
be submitted
online or
postmarked by:
[DEADLINE]**

</td><td>

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*IN RE PLAID INC. PRIVACY LITIGATION, CASE NO. 4:20-MD-03056*
**WWW.PLAIDSETTLEMENT.COM**

</td><td>

**PPL-GN**

</td></tr>
</table>

## CLAIM FORM INSTRUCTIONS

1. You may submit your Claim Form online at www.PlaidSettlement.com or by U.S. Mail to the following address: *Plaid Inc. Privacy Litigation*, c/o Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

2. You must complete the entire Claim Form. Please type or write your responses legibly.

3. If your Claim Form is incomplete or missing information, the Settlement Administrator may contact you for additional information. If you do not respond by the deadline provided by the Settlement Administrator, the Settlement Administrator will be unable to process your claim, and you will waive your right to receive money under the Settlement.

4. You may only submit one Claim Form.

5. If you have any questions, please contact the Settlement Administrator by email at [EMAIL ADDRESS], by telephone at [PHONE NUMBER], or by mail at the address listed above.

6. Submission of this Claim Form does not guarantee payment.  Your Claim Form must be approved by the Settlement Administrator.

7. **You must notify the Settlement Administrator if your contact or payment information changes. If you do not, even if you submit a valid claim under the Settlement, you may not receive your payment.**

8. **DEADLINE -- Your claim must be submitted online by [DEADLINE DATE]. Claim Forms submitted by mail must be postmarked no later than [DEADLINE DATE].**

<table>
<tr><td>

**Your claim must be submitted online or postmarked by: [DEADLINE]**

</td><td>

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*IN RE PLAID INC. PRIVACY LITIGATION, CASE NO. 4:20-MD-03056*
***WWW.PLAIDSETTLEMENT.COM***
**Claim Form**

</td><td>

**PPL-GN**

</td></tr>
</table>

## I. YOUR CONTACT INFORMATION AND MAILING ADDRESS

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this form.

**First Name**

**Last Name**

**Street Address**

**City**

**State**

**Zip Code**

**Email Address**

**Notice ID (optional)**

## II. OTHER INFORMATION

In this Settlement, you may be a Class Member if you own or owned an account at a financial institution that was connected to a mobile or web-based payments app or service through Plaid and/or for which account credentials were provided through Plaid Link, between January 1, 2013 and [date of preliminary approval], as further explained and defined in the Class notice materials, which you should review carefully.

If, based on the information provided in the Class notice materials, you believe you are a Class Member, please provide the following information about at least one, and up to eight, of the connections between your financial account(s) and mobile or web-based app(s) or service(s).  Please include only one financial institution, app or service, and date, per row:

| | Name of Financial Institution (such as Bank or Credit Union) where you Own/Owned a Financial Account | Name of App or Service You Connected to Your Financial Institution Account | Approximate Date (Month/Year) of Connection to your Financial Account |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |

## III.  PAYMENT SELECTION

Please select **<u>one</u>** of the following payment options:

☐ **PayPal** - Enter your PayPal email address: _____

☐ **Venmo -** Enter the mobile number associated with your Venmo account: __ __ __-__ __ __-__ __ __ __

☐ **Physical Check -** Payment will be mailed to the address provided above.

## IV.  ATTESTATION UNDER PENALTY OF PERJURY

By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that I am the person identified above and the information provided in this Claim Form is true and correct, and that nobody has submitted another claim in connection with this Settlement on my behalf.

_____          Date: _____
Your signature                                                                         MM          DD          YYYY

_____
Your name

# EXHIBIT B

HERRERA KENNEDY LLP
Shawn M. Kennedy (SBN 218472)
skennedy@herrerakennedy.com
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Tel: (949) 936-0900
Fax: (855) 969-2050

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Rachel Geman (Pro Hac Vice)
rgeman@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel: (212) 355-9500
Fax: (212) 355-9592

BURNS CHAREST LLP
Christopher J. Cormier (Pro Hac Vice)
ccormier@burnscharest.com
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 577-3977
Fax: (469) 444-5002

COOLEY LLP
Michael G. Rhodes (SBN 116127)
rhodesmg@cooley.com
Whitty Somvichian (SBN 194463)
wsomvichian@cooley.com
Kyle C. Wong (SBN 224021)
kwong@cooley.com
Lauren J. Pomeroy (SBN 291604)
lpomeroy@cooley.com
Ellie Barczak (SBN 329180)
ebarczak@cooley.com
Cameron J. Clark (SBN 313039)
cclark@cooley.com
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Tel:  (415) 693-2181
Fax: (415) 693-2222

*Attorneys for Defendant PLAID INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE PLAID INC. PRIVACY LITIGATION | Case No. 4:20-cv-03056-DMR |
| | **[PROPOSED] ORDER FOR FINAL JUDGMENT AND DISMISSAL** |
| _____ | |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | |

1    It is hereby ADJUDGED and DECREED THAT:

2         1.    This Court previously granted preliminary approval of the Class Action Settlement

3    Agreement in this consolidated action, dated [   ] (the "Settlement Agreement").  Terms and

4    phrases in this Judgment have the same meanings as used in the Settlement Agreement.

5         2.    The Court hereby dismisses the Action against Plaid Inc. (the "Action") with

6    prejudice, without fees or costs to any party except as provided for in the Settlement Agreement

7    or any other orders of this Court relating to the Settlement Agreement.

8         3.    This Court has jurisdiction over the subject matter of this Action and over all

9    parties to the Action, including all members of the Class, pursuant to 28 U.S.C. § 1332(d) because

10   the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one

11   Class member is a citizen of a state different from Plaid.

12        4.    The Court certifies, for purpose of the approved settlement only, the Action as a

13   class action pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on

14   behalf the Class, defined in the Settlement Agreement as "all natural persons who reside in the

15   United States and who own or owned one or more Financial Accounts at the time such persons

16   resided in the United States from January 1, 2013 to date preliminary approval of the settlement is

17   granted."  Excluded from the Class are: (1) Plaid and any and all of its predecessors, successors,

18   assigns, parents, subsidiaries, affiliates, directors, officers, employees, agents, representatives,

19   and attorneys, and any and all of the parents', subsidiaries', and affiliates' present and former

20   predecessors, successors, assigns, directors, officers, employees, agents, representatives, and

21   attorneys, (2) any judicial officer presiding over the Action, or any member of his or her

22   immediate family or of his or her judicial staff, and (3) any Class Member who has timely

23   exercised their right to be excluded from the Class.

24        5.    The persons on the attached Addendum have submitted a valid, timely request for

25   exclusion from the Class and are hereby excluded.

26        6.    Pursuant to Federal Rule of Civil Procedure 23(c)(3), all persons within the Class,

27   other than those excluded above, are bound by this Judgment.

28

2

7.  The Court finds and concludes that the Class Representatives have standing under Article III of the United States Constitution.

8.  The Court finds that the Notice provided to the Class pursuant to the Settlement Agreement and the order granting Preliminary Approval (i) constitutes the best practicable notice under the circumstances; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their right to object to the Settlement or exclude themselves from the Class, and to appear at the Final Approval Hearing; (iii) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court.

9.  The Court approves the Settlement as fair, reasonable, and adequate and in the best interests of the Class Members under Rule 23(e).  The Court has specifically considered the factors relevant to class settlement approval and finds and concludes that:

   a.  the Class Representatives and Class Counsel have adequately represented the Class;

   b.  the Settlement Agreement was negotiated at arms' length and without collusion;

   c.  the relief provided for the Class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of distributing relief to the class; (iii) the terms of fees and expenses proposed by Class Counsel in their accompanying Motion for Attorneys' Fees, Reimbursement of Expenses, and Plaintiff Service Awards; and (iv) the absence of any relevant agreement made in connection with the Settlement; and

   d.  the Settlement Agreement treats Class Members equitably relative to each other.

10.  The Court has also considered  factors including, *inter alia*, the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of

1   maintaining class action status throughout trial; the relief provided for in the Settlement; the

2   extent of discovery completed and stage of the proceedings; the experience and views of Class

3   Counsel and the involvement of a respected mediator in the negotiation of the Settlement; and the

4   reaction of Class Members to the proposed settlement, and finds and concludes that these factors

5   weigh in favor of approving the Settlement. *See Churchill Village, L.L.C. v. General Elec.*, 361

6   F.3d 566 (9th Cir. 2004).

7         11.    The Court has also scrutinized the Settlement and negotiation history for any signs

8   of potential collusion (*see*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th

9   Cir. 2011)), and finds that the Settlement is not the product of collusion. This finding is supported

10  by, among other things: the fact that the Settlement was negotiated by experienced, well-qualified

11  counsel with the help of an experienced mediator; the Settlement provides substantial benefits to

12  Class Members; the benefits provided to Class Members are appropriate under the circumstances

13  of this case; and the parties have made no "clear sailing" arrangement regarding attorneys' fees.

14        12.    Accordingly, the Court directs the Parties to consummate the Settlement

15  Agreement according to its terms.  Plaid is ordered to effectuate the injunctive relief agreed to in

16  the Settlement Agreement in accordance with the timetables set forth in the Settlement

17  Agreement.

18        13.    Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed

19  to have, and by operation of this Judgment shall have fully, finally, and forever released,

20  relinquished, and discharged all Released Claims against the Released Parties.  These releases of

21  claims and the Settlement Agreement will be binding on Class Members and Releasing Parties.

22  All Class Members are hereby permanently barred and enjoined from filing, commencing,

23  prosecuting, intervening in, or participating (as class members or otherwise) in any lawsuit or

24  other action in any jurisdiction based on or arising out of any of the Released Claims against the

25  Released Parties.

26        14.    Without affecting the finality of this Judgment in any way, this Court hereby

27  retains continuing jurisdiction as to all matters relating to administration, consummation,

28

**[PROPOSED] ORDER FOR FINAL JUDGMENT**
**AND DISMISSAL**
**NO. 4:20-CV-3056-DMR**

1  implementation, enforcement, and interpretation of the Settlement Agreement and this Judgment,

2  and for any other necessary purpose.

3         15.     The Court hereby directs entry of this Judgment pursuant to Federal Rule of Civil

4  Procedure 58 based upon the Court's finding that there is no just reason for delay of enforcement

5  or appeal of this Judgment notwithstanding the Court's retention of jurisdiction to oversee

6  implementation and enforcement of the Settlement Agreement.

7         **IT IS SO ORDERED**.

8

9

10  Dated: _____          _____

11                                                         Honorable Donna M. Ryu

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER FOR FINAL JUDGMENT
AND DISMISSAL
NO. 4:20-CV-3056-DMR

# EXHIBIT C

United States District Court for the Northern District of California

# Notice of Class Action Settlement

# In re Plaid Inc. Privacy Litigation

## Important Information – Read Carefully.

<u>This is a Court approved Legal Notice. This is not an advertisement.</u>

A Settlement has been proposed in class action litigation against Plaid Inc. ("Plaid"). Approximately 5,000 mobile and web-based applications ("apps") use Plaid to enable users to connect the app to the users' bank account(s). This class action alleges Plaid took certain improper actions in connection with this process. The allegations include that Plaid: (1) obtained more financial data than was needed by a user's app, and (2) obtained log-in credentials (username and password) through its user interface, known as "Plaid Link," which had the look and feel of the user's own bank account login screen, when users were actually providing their login credentials directly to Plaid. Plaid denies these allegations and any wrongdoing and maintains that it adequately disclosed and maintained transparency about its practices to consumers.

You may be a Class Member if you are a United States resident and you connected a financial account to an app between January 1, 2013 and [[date of preliminary approval]]. More specifically, you are a Class Member if you own or owned one or more "Financial Accounts" (defined in Question 7) that Plaid accessed using your login credentials and connected to a mobile or web-based app that enables payments or other money transfers; or for which you provided Financial Account login credentials to Plaid through Plaid Link; between January 1, 2013 and [[date of preliminary approval].

To confirm whether specific apps or services that connected to your financial account(s) used Plaid for account connections, you can run a search on the Settlement website at **www.plaidsettlement.com/page**.

Under the Settlement, Plaid has agreed to minimize the data it stores going forward, to delete certain previously retrieved data, and to improve and maintain certain already-implemented enhancements to Plaid Link. Class Members are also able to view and manage the connections they've made between their financial accounts and chosen applications using Plaid, and delete data stored in Plaid's systems by creating a Plaid Portal account, at my.plaid.com.

In addition, the Settlement establishes a $58 million Settlement Fund, to be used for cash payments to Class Members who submit valid claims for compensation, after deducting the costs of the settlement administration, court-approved attorneys' fees and expenses, and Service Awards for eleven Class Representatives. The amount of monetary payments issued to Class Members will depend on the number of valid claims received. In exchange for the benefits the Settlement provides, Class Members will release any and all claims they may have (whether known or unknown) regarding the allegations in the Complaint.

**This Settlement affects your legal rights even if you do nothing.**

**Questions?  Go to www.plaidsettlement.com/page or call ___.**

- 1 -

The Court will decide whether to approve the proposed Settlement. If approved, the Settlement will resolve the litigation entitled *In re Plaid Inc. Privacy Litigation*, Case No. 4:20-md-03056, which is pending before Judge Donna M. Ryu in the Northern District of California.

The class action settlement approval process may take several months, or more if there is an appeal.

## Please Read this Notice Carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **FILE A CLAIM FOR COMPENSATION** | You may file a Claim in order to receive a monetary payment from the Settlement Fund. Filing a Claim is the only way to receive a payment from this settlement<br>For detailed information about how to file a Claim, see Question 16. | Deadline: [Month] [Day], [Year] |
| **EXCLUDE YOURSELF FROM THIS SETTLEMENT** | You can exclude yourself from the Settlement by informing the Settlement Administrator that you want to "opt-out" of the Settlement. If the Settlement becomes final, this is the only option that allows you to retain your rights to individually sue for claims relating to the allegations in the Complaint. You will not receive a payment from the Settlement if you exclude yourself. | Deadline: [Month] [Day], [Year] |
| **OBJECT TO OR COMMENT ON THE SETTLEMENT** | You may object to the Settlement by writing to the Court about why you don't think the Settlement should be approved.<br>You can also write the Court to provide comments or reasons why you support the Settlement.<br>For detailed information about how to object to or comment on the Settlement, see Question 23. | Deadline: [Month] [Day], [Year] |
| **GO TO THE FINAL APPROVAL HEARING** | You may, but are not required to, attend the Final Approval Hearing where the Court may hear arguments concerning the approval of the Settlement. If you wish to speak at the Final Approval Hearing, you must state your intention to do so in your written objection or comment. | Deadline: [Month] [Day], [Year] |
| **DO NOTHING** | If you do nothing before the deadline to comment, object, or exclude yourself, and if the Settlement becomes final, you will be part of the Settlement Class and bound by the Settlement and give up your rights to sue for claims relating to any or all allegations in the Plaintiffs' complaint in this case. | Deadline: [Month] [Day], [Year] |

**This Settlement affects your legal rights even if you do nothing.**

**Questions?  Go to www.plaidsettlement.com/page or call ___ .**

# What this Notice Contains

**Page**

**BACKGROUND INFORMATION**................................................................**1**

    1.    Why is there a notice? ............................................1

    2.    What is this litigation about? ..................................1

    3.    Who is the defendant in the lawsuit? .....................1

    4.    Why is this a class action?....................................2

    5.    Why is there a settlement? ....................................2

**CLASS MEMBERSHIP**........................................................................**2**

    6.    Who is part of the Settlement?..............................2

    7.    What does "Financial Account" mean in the Settlement? ....................3

    8.    What is Plaid Link? ...............................................3

    9.    How do I know whether I am a member of the Class?.........................3

**THE LAWYERS FOR CLASS MEMBERS** .............................................**4**

    10.    Do I have a lawyer in the case?...........................4

    11.    How will Class Counsel be paid?...........................4

**BENEFITS FOR CLASS MEMBERS**....................................................**5**

    12.    What nonmonetary benefits does the Settlement provide?....................5

    13.    What monetary benefits does the Settlement provide? .........................8

    14.    Will all Class Members who file claims receive the same amount? .......8

    15.    How do I control who has access to my data?.......................9

**HOW TO FILE A CLAIM**.......................................................................**9**

    16.    How do I file a claim for compensation? .................9

    17.    Can I submit multiple claims if I have more than one Financial Account that I connected through Plaid? ................9

    18.    Can I submit multiple claims if I connected more than one app or service to my Financial Account? ............9

    19.    What happens if my claim is not accepted?.........................10

    20.    When and how will I receive the benefits I claim from the Settlement?10

    21.    What happens if my contact information changes after I submit a Claim?.........................10

**This Settlement affects your legal rights even if you do nothing.**

**Questions?  Go to www.plaidsettlement.com/page or call ____.**

# What this Notice Contains
## (continued)

Page

**LEGAL RIGHTS RESOLVED THROUGH THE SETTLEMENT** .............................. **10**

22.    What am I giving up to stay in the Settlement Class? .......................... 10

**OBJECTING TO THE SETTLEMENT** ...................................................... **11**

23.    If I don't like the Settlement, how do I tell the Court? ........................... 11

24.    What is the difference between objecting and excluding myself? ........ 12

25.    Do I need to attend the Final Approval Hearing if I file an objection? .. 12

**FINAL APPROVAL HEARING** ................................................................ **12**

26.    When and where will the Court decide whether to approve the
       Settlement? ............................................................................ 12

27.    Do I have to come to the hearing? ...................................................... 12

28.    May I speak at the hearing? ................................................................ 13

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ............................... **13**

29.    How do I exclude myself from the Settlement? .................................... 13

30.    If I do not exclude myself, can I sue Plaid for the same thing later? .... 13

31.    If I exclude myself, am I still represented by Class Counsel? .............. 14

**DOING NOTHING** ................................................................................ **14**

32.    What happens if I do nothing? ............................................................. 14

**GETTING MORE INFORMATION** .......................................................... **14**

33.    How do I get more information? ........................................................... 14

**This Settlement affects your legal rights even if you do nothing.**

**Questions?  Go to www.plaidsettlement.com/page or call ____.**

# BACKGROUND INFORMATION

## 1.    Why is there a notice?

A Court authorized this notice because you have a right to know how the proposed Settlement may affect your rights. This notice explains the nature of the litigation, the general terms of the proposed Settlement, and what it may mean to you. This notice also explains the ways you may participate in, or exclude yourself from, the Settlement.

## 2.    What is this litigation about?

The complaint in this case alleges that Plaid took certain improper actions by obtaining log-in credentials to user's financial accounts through a user interface called Plaid Link that the complaint alleges was designed to have the look and feel of the user's bank account login screen, when in fact the username and password were actually being provided to Plaid, and obtaining more financial and other data than was authorized or needed by a user's app.  The time period at issue is January 1, 2013 to [[date of preliminary approval]].

Plaid enables connections between a user's financial account and approximately 5,000 mobile and web-based apps that consumers use to make payments, transfer money, pay bills, manage their personal finances, make investments, and apply for loans, among other finance-related activities. For examples of the types of apps that use Plaid, you can review Plaid's website at www.plaid.com (including https://plaid.com/discover-apps/) or you can refer to Paras. __ and ___ of the Plaintiffs' Consolidated Amended Complaint, available at [www.plaidsettlement.com/page].

To confirm whether specific apps or services that connected to your financial account(s) used Plaid for the account connections, you can run a search on the Settlement website at **www.plaidsettlement.com/page**.

The lawsuit was brought on behalf of the individuals who allegedly believed based on the design of Plaid Link that they were providing login credentials directly to their banks, and/or whose accounts at financial institutions Plaid accessed using the user's login credentials and connected to a web-based or mobile payment or money transfer app. Plaid denies any wrongdoing and all of the allegations in the lawsuit; no court or other entity has made any findings against Plaid nor any determination that the law has been violated.

The current complaint filed in this litigation, which describes the specific legal claims alleged by the Plaintiffs and the relief sought, is available on the Settlement Website, at www.plaidsettlement.com. You can also find a copy of the Court's order on Plaid's motion to dismiss the Plaintiffs' legal claims, which sustained some claims and dismissed others, on the Settlement Website at [www.plaidsettlement.com/page].

## 3.    Who is the defendant in the lawsuit?

The Defendant is Plaid Inc., a financial technology corporation. Plaid is a Delaware corporation with its principal place of business in San Francisco, California. You can learn more about Plaid at www.plaid.com.

## 4.     Why is this a class action?

In a class action, one or more people file a lawsuit to assert legal claims on behalf of themselves and other persons who have experienced the same or similar circumstances. Here, eleven people who are proposed Class Members filed class action complaints and serve as named Plaintiffs and "Class Representatives" in the consolidated amended lawsuit. In this capacity, they represent the interests of all the Class Members.

Even if you have not filed your own lawsuit against Plaid regarding the allegations described in this notice, if you are a Class Member, this Settlement still affects you because the Settlement applies to all Class Members.

## 5.     Why is there a settlement?

The Court has not decided in favor of Plaintiffs or Plaid on the ultimate merits of Plaintiffs' claims. Instead, both sides agreed to a settlement. Settlements avoid the costs and uncertainty of a trial and appeals, while providing benefits to Class Members when the Settlement becomes final. Class Representatives and the attorneys for the Class ("Class Counsel," *see* Question 10) believe that the Settlement is in the best interests of the Class Members.

# CLASS MEMBERSHIP

## 6.     Who is part of the Settlement?

You are a Class Member, and you are affected by this Settlement, if you are a United States resident and:

> (1) own or owned one or more "Financial Accounts" (see definition in Question #2);
>
> (2) Plaid (a) accessed your Financial Account; or (b) obtained your Financial Account login credentials, between January 1, 2013 and [date of preliminary approval]; and
>
> (3) You were a United States resident at the time (2)(a) or (b) occurred.  See Questions 7, 8, and 9 for more information about these terms.

The following entities and individuals are **not** Class Members:

- Plaid and any and all of its predecessors, successors, assigns, parents, subsidiaries, affiliates, directors, officers, employees, agents, representatives, and attorneys, and any and all of the parents', subsidiaries', and affiliates' present and former predecessors, successors, assigns, directors, officers, employees, agents, representatives, and attorneys;

- Any judicial officer presiding over the Action, or any member of his or her immediate family or of his or her judicial staff; and

- Any individual who meets the class definition and who timely and validly excludes themselves from the Settlement.

## 7.   What does "Financial Account" mean in the Settlement?

"Financial Account" means any checking, savings, loan, or other account at a financial institution (1) that Plaid accessed using the user's login credentials and connected to a mobile or web-based fintech application that enables payments (including ACH payments) or other money transfers or (2) for which a user provided financial account login credentials to Plaid through Plaid Link. A Financial Account does not include an account that was connected, or for which credentials were provided, exclusively through an OAuth Process or Managed OAuth Process.

"Managed OAuth Process" means a process through which Plaid obtains login credentials in order to secure an access token pursuant to a formal agreement with the applicable financial institution and does not store those login credentials.

"OAuth Process" means a process through which Plaid redirects an end user to the financial institution's domain to enter their login credentials and does not obtain login credentials for the end user.

## 8.   What is Plaid Link?

"Plaid Link" means a consumer facing interface developed by Plaid, as incorporated in mobile or web-based applications or services, that guides an end user through the process of linking a financial institution account to the application or service via Plaid.

The Complaint in this case alleges that Plaid authenticates app users' bank accounts through methods that are different from other methods of authenticating bank accounts because it is "instant," and does not require "micro-deposits" where the user returns to verify the amount of small deposits made to their accounts in order to verify that they own the account.  In a Plaid Link interface, the user is prompted to input their bank username and password in order to verify the account.

You can see examples of historical versions of Plaid Link on the Settlement website, at [_____], and at pages 9-10 of the Complaint, available on the Settlement website, at [_____].  You can also check whether apps or services that you connected to your financial account used Plaid for the connection by searching on the Settlement website at [_____].

## 9.   How do I know whether I am a member of the Class?

If you received a Notice of this Settlement by mail or email, you have been identified by the Settlement Administrator as a Class Member. If you did not receive a Notice by mail or email, you may still be a Class Member.

You can check whether apps or services that you connected to your financial account used Plaid for the connection on the Settlement website, by searching for the app or service that you used, at [_____]. You can see examples of historical versions of Plaid Link on the Settlement website, at [_____], and at pages 9-10 of the Complaint, available on the Settlement website, at [_____].

-3-

If you are still not sure whether you are a Class Member, you may visit the FAQ's section of the Settlement website, at [_____], contact the Settlement Administrator by mail at [_____], or call the Settlement Administrator's toll-free number at 800-[_____] for more information that may help you determine whether or not you are a Class Member.

# THE LAWYERS FOR CLASS MEMBERS

## 10.  Do I have a lawyer in the case?

If you are a Class Member, you have a lawyer in this case. The Court appointed as "Class Counsel" the law firms Burns Charest LLP; Herrera Kennedy LLP; and Lieff Cabraser Heimann & Bernstein LLP to represent the Class Members. If you want to be represented by your own lawyer, you may hire one at your own expense.

You may contact Class Counsel using the following information:

> Rachel Geman
> LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
> 250 Hudson Street, 8th Floor
> New York, NY 10013-1413
> rgeman@lchb.com
>
> Shawn M. Kennedy
> HERRERA KENNEDY LLP
> 4590 MacArthur Blvd., Suite 500
> Newport Beach, CA 92660
> skennedy@herrerakennedy.com
>
> Christopher J. Cormier
> BURNS CHAREST LLP
> 4725 Wisconsin Avenue, NW, Suite 200
> Washington, DC 20016
> ccormier@burnscharest.com

## 11.  How will Class Counsel be paid?

Class Counsel will apply to the Court to be paid from the Settlement Fund, and any payment will be made only in the amount that is approved by the Court.

Class Counsel will ask the Court to award up to $14.5 million for attorneys' fees from the Settlement Fund (25% of the Settlement Fund). Class Counsel will also ask the Court to approve Service Awards of up to $5,000 each for the eleven Class Representatives named in the complaint as an award for their service to the Settlement Class as Plaintiffs and Class Representatives ($55,000 in total) out of the Settlement Fund. In addition, Class Counsel also will ask the Court to reimburse them out of the Settlement Fund for the expenses they reasonably incurred and will incur in litigating this case on behalf of Class Members (including amounts charged by the Settlement Administrator for settlement administration).

The amount of the Settlement Fund that remains after the payment of all Court-approved attorneys' fees, Service Awards, and reimbursement of expenses will be distributed to Class

Members who have submitted valid claims for compensation and have not timely excluded themselves from the Settlement in a manner approved by the Court.

Class Counsel and Plaid have not discussed the issue or amount of attorneys' fees in their negotiations of this Settlement; Plaid has the right to oppose Class Counsel's application for fees, reimbursement of expenses, and Service Awards to Class Representatives, and Class Members have the right to object. The Court will decide the attorneys' fees and expenses and Service Awards to be paid. Any attorneys' fees, expenses, or Service Awards approved by the Court will be paid from the $58 million Settlement Fund.

Class Counsel's application for attorneys' fees, expenses, and Service Awards will be made available on the Settlement Website at [＿＿＿＿＿] before the deadline for you to comment on or object to the Settlement. You can also request a copy of the application by contacting the Settlement Administrator at [＿＿＿＿＿].

## BENEFITS FOR CLASS MEMBERS

## 12.  What nonmonetary benefits does the Settlement provide?

The Settlement requires Plaid to:

- Delete certain data from Plaid systems;

- Inform Class Members of their ability to use Plaid Portal to manage the connections made between their financial accounts and chosen applications using Plaid and delete data stored in Plaid's systems;

- Continue to include certain disclosures and features in Plaid's standard Link flow;

- Enhance disclosures about Plaid's data collection practices, how Plaid uses data, and privacy controls Plaid has made available to users in Plaid's End User Privacy Policy;

- Minimize the data that Plaid stores; and

- Continue to host a dedicated webpage with detailed information about Plaid's security practices.

Most of these requirements will be implemented no more than 180 days after the Court has entered a final judgment that has come into effect (i.e., the final judgment can no longer be appealed and has not been modified or reversed on appeal), and will apply for three years in the United States.  For a full list of non-monetary benefits, including those that were implemented or finalized, in part, after this lawsuit was initially filed, see paragraphs 52-70 of the Settlement Agreement, at www.plaidsettlement.com/page.  A summary of these nonmonetary benefits of the settlement is provided below.

**Data Deletion from Plaid Systems**

As part of the Settlement, Plaid will, to the extent not already deleted, delete the following data:

- Data retrieved as part of Plaid's Transactions product, including information about account transactions, such as transaction date, amount, category, merchant, and location, for users that Plaid can reasonably determine did not connect an account to an application that requested Transactions data. This means, for example, if you used an application that did not ask Plaid to collect data about transactions you made, but Plaid accessed that data anyway, then Plaid will delete that data from its systems.

- Data for users that Plaid is aware it no longer has valid means that can be used to authenticate with the bank. This means, for example, if Plaid determines that the password it obtained for a particular bank account has changed, or that the account has been closed, Plaid will delete the data associated with that account from its systems.

- It is important to understand that Plaid is not required to delete data retrieved as part of another Plaid product for which you currently have an active connection. For example, if you connect an app that requests data from a particular Plaid product and Plaid collects that requested data for that app, such data will not be deleted even if it overlaps with other data that would otherwise be covered by this section.

**Plaid Portal**

By creating a Plaid Portal account, users, including Class Members, can view and manage the connections between financial accounts and chosen applications made using Plaid, and delete data stored in Plaid's systems Currently, the website for Plaid Portal is my.plaid.com (see Question 15).

As part of the Settlement, Plaid will provide a prominent reference to Plaid Portal on its website homepage (www.plaid.com), along with a link to Plaid Portal and a plain-language description of the user controls available through Plaid Portal. Plaid will also take reasonable commercial efforts to send periodic email reminders to Plaid Portal account holders generally describing the user controls available in Plaid Portal, including the ability to disconnect applications from their financial accounts and delete data stored in Plaid's systems.

**Clear Disclosures at the Time of Account Connection**

As part of the Settlement, Plaid has committed to ensuring that Plaid's standard Link flow includes the following:

- The credentials pane, meaning the page where users enter their financial account username and password, will continue to explain that the credentials are being "provided to Plaid."

- The background color of the credentials pane will not utilize the color scheme associated with a specific financial institution for that financial institution.

- A separate pane will continue to a) refer expressly to Plaid and explain that Plaid is used to link the user's accounts, b) include a conspicuous link to Plaid's End User Privacy Policy, and c) require the user to agree to Plaid's

End User Privacy Policy by taking clear affirmative action (e.g., by clicking "Continue").

In addition, Plaid has made the following changes that were implemented or finalized, in part, after the filing of the initial class action complaint in this litigation:

- The addition of the following language to the credentials pane of Plaid's standard Link flow for relevant products: "By providing your [financial institution name] credentials to Plaid, you're enabling Plaid to retrieve your financial data."

- The addition of a link entitled "Why is Plaid involved?" to the institution selection pane of Plaid's standard Link flow, which opens to the following text: "Plaid lets you connect your financial accounts to apps and services. This is a service provided by Plaid. The connection Plaid provides to your financial account(s) does not imply affiliation with any financial institution."

**Minimizing the Data Plaid Stores**

As part of the Settlement, Plaid will minimize the amount of information that it stores from users' financial accounts.

- With respect to data retrieved from users' financial accounts, subject to certain limitations such as for compliance with applicable law, Plaid will only store the categories of data for the Plaid product(s) that the user's application specifically requests from Plaid or that are necessary for Plaid to offer its services, unless the user has expressly consented to the retrieval of additional data.

- Plaid will use its best efforts to continue to inform the applications that use Plaid about its /item/remove endpoint, which is a means for those applications to inform Plaid that a user has terminated their account with the application, which then terminates the application's access to data from Plaid, and may lead to data deletion from Plaid's systems (if such data is not actively used by another application).

**Enhancing Disclosures about What Plaid is and Does**

As part of the Settlement, in addition to the disclosures and controls discussed above, Plaid will enhance its End User Privacy Policy (EUPP) to provide more detailed information about Plaid's data collection, storage, use, sharing, and deletion practices.  For all Plaid products, including newly launched products, the EUPP will:

- Provide more detail about the categories of personal information Plaid collects from users' financial accounts for each Plaid product, including a plain-language list of the categories of personal information Plaid collects and a plain-language statement of the general reasons the categories are collected.

- Provide more detail about how Plaid uses data, including by providing, for each category of personal information that Plaid collects about users, the

categories of sources of the personal information, the categories of uses for which Plaid collects the information, and the categories of parties, if any, with whom Plaid shares the information (for example, the developer of the user's application).

- Provide a plain-language explanation of Plaid's deletion and retention practices related to personal information.

- Provide a dedicated section explaining in plain-language terms the privacy controls Plaid has made available to users (e.g., "Privacy Control Section").

In addition, Plaid launched certain consumer education pages after this litigation was filed, which describe Plaid's data practices, such as https://plaid.com/how-we-handle-data/; https://plaid.com/why-is-plaid- involved/; and https://plaid.com/discover-apps/.

More details about the changes that Plaid has made or agreed to make as a result of the Settlement are available in Paragraphs 52-70 of the Settlement Agreement, which is available on the Settlement Website, at [＿＿＿＿＿].

## 13.  What monetary benefits does the Settlement provide?

Under the Settlement, Plaid will pay $58 million to establish a Settlement Fund.

After deducting any court-approved attorneys' fees and expenses and Service Awards for the Class Representatives, and the costs of the settlement administration, the Settlement Fund will be distributed to Class Members on a *pro rata* basis.  The amount of the payments to individual Class Members will depend on the number of valid claims that are filed. Class Members will be able to choose whether to receive their payment via PayPal, Venmo, ACH Transfer, or paper check.   Because the final payment amount cannot be calculated before all claims for compensation are received and verified, it will not be possible to provide an estimate of the payment amount before the deadline to file claims.

In the event that any PayPal, Venmo, or ACH Transfer transfers fail or any paper checks are uncashed, the Settlement Administrator will make a second *pro rata* payment based on the non-transferred funds to Class Members who filed valid claims and provided valid electronic payment information.  In the event that the number of Class Members who file valid claims would result in either an initial or secondary *pro rata* payment amount that the Parties, in consultation with the Settlement Administrator and a neutral mediator, determine is too small to economically distribute to Class Members, Class Counsel will seek Court approval to distribute the funds through a next-best alternative, to one or more non-profit organizations that have a track record of addressing consumer financial privacy and internet technology concerns, who will commit to use any funds they receive for activities intended to benefit all Class Members.   The proposed non-profit organizations, also known as the proposed "Cy Pres Recipients," are Privacy Rights Clearinghouse and Consumer Reports.

## 14.  Will all Class Members who file claims receive the same amount?

Yes.  Each Class Member who submits a valid claim for compensation will be paid one equal *pro rata* share from the Net Settlement Fund (the $58 million Settlement Fund minus any award of attorneys' fees and expenses, settlement administration costs, and Service Awards for the Class Representatives).  Each Class Member is entitled to submit only one claim for compensation from

the Net Settlement Fund regardless of the number of applications they have connected to financial accounts via Plaid, or the number of their financial accounts that have been connected to apps. Because the final payment amount cannot be calculated before all claims for compensation are received and verified, it is not possible to provide an estimate of the payment amount before the deadline to file claims.

## 15.   How do I control who has access to my data?

You can create a Plaid Portal account to view and manage the connections you've made using Plaid and delete data stored in Plaid's systems.   Currently, Plaid Portal is available at https://my.plaid.com/.  Pursuant to the Settlement, Plaid will also post a link to the Plaid Portal on its website, www.plaid.com, where you can create or access your Plaid Portal account.

After creating a Plaid Portal account, you can use the Portal to securely manage the connections between your financial accounts and chosen applications made using Plaid.  Plaid Portal allows you to see the types of data shared with each app, disconnect apps from your financial accounts any time, and delete your data stored in Plaid's systems.

# HOW TO FILE A CLAIM

## 16.   How do I file a claim for compensation?

To claim a cash payment, you need to file a claim form.  There are two options to file your claim:

> (1) <u>File Online</u>: You may fill out and submit the claim form online at www.plaidsettlement.com/page. This is the quickest way to file a claim.

> (2) <u>File by Mail</u>:  Alternatively, you can download a hard copy of the claim form (available at www.plaidsettlement.com/page), or ask the Settlement Administrator to mail a claim form to you by calling _____. Fill out your claim form, and mail it (including postage) to:  *In re Plaid, Inc. Privacy Litigation*, c/o _____.

The deadline to file a claim is _____ (this is the last day to file online and postmark deadline for mailed claims).

## 17.   Can I submit multiple claims if I have more than one Financial Account that I connected through Plaid?

No.  Each Class Member may submit only one claim, even if they own multiple Financial Accounts that they connected through Plaid.

## 18.   Can I submit multiple claims if I connected more than one app or service to my Financial Account?

No.  Each Class Member may submit only one claim, even if their Financial Account(s) were connected to multiple apps or services through Plaid.

### 19.  What happens if my claim is not accepted?

The Settlement Administrator may reject Claim Forms that are duplicates of another claim, are reasonably suspected to be fraudulent, or are submitted after the deadline. The Settlement Administrator may also reject Claim Forms submitted by individuals it reasonably determines are not members of the Class.  Before rejecting a claim, the Settlement Administrator will notify the claimant and give the claimant two weeks from the date of notice to correct any deficiency.

### 20.  When and how will I receive the benefits I claim from the Settlement?

Payments for valid claims will be made after the Settlement becomes final by the means designated on your claim form.  You may select payment via PayPal, Venmo, ACH Transfer, or paper check.  The Settlement will become final only if, and after, Final Approval is granted by the Court and any appeals to Final Approval of the Settlement are resolved.  This process may take longer than one year.  Please be patient.

### 21.  What happens if my contact information changes after I submit a Claim?

If, after you submit a claim form, you change your mailing address, email address, or the PayPal, Venmo, or ACH Transfer information provided on your claim form, it is your responsibility to inform the Settlement Administrator of your updated information.  You may do so by contacting the Settlement Administrator using the contact information in Question [[ ]].

## LEGAL RIGHTS RESOLVED THROUGH THE SETTLEMENT

### 22.  What am I giving up to stay in the Settlement Class?

If you do not exclude yourself from the Settlement Class, you will be releasing all of your legal claims relating to the allegations in the plaintiffs' complaint.  You may view the complaint on the Settlement Website at [www.plaidsettlement.com/page].

The claims you are giving up are called "Released Claims," and they are defined in paragraph 45 of the Settlement Agreement. You will be releasing the Released Claims against Plaid and any and all of its present or former predecessors, successors, assigns, parents, subsidiaries, affiliates, directors, officers, employees, agents, representatives, and attorneys, and any and all of the parents', subsidiaries', and affiliates' present and former predecessors, successors, assigns, directors, officers, employees, agents, representatives, and attorneys, in connection with the Released Claims, when the Settlement becomes final.

By releasing your legal claims, you are giving up the right to file any type of legal action against, or seek further compensation from, Plaid and the other released individuals and entities listed above based on those claims. If you are a Class Member, all of the decisions by the Court will bind you unless you exclude yourself from the Settlement (see Questions 29-31). That means you will be bound to the terms of the Settlement and accompanying Court order, and cannot bring any type of legal action, or be part of another legal action against Plaid or the other entities listed in the paragraph above regarding the allegations in Plaintiffs' complaint.

Paragraph 45 of the Settlement Agreement defines the claims that will be released by Class Members who do not exclude themselves from the Settlement. You can access the Settlement Agreement and read the details of the legal claims being released at [www.plaidsettlement.com/page]. If you have any questions about what this means, you can contact Class Counsel or the Settlement Administrator (see Question 10).

# OBJECTING TO THE SETTLEMENT

## 23.  If I don't like the Settlement, how do I tell the Court?

If you do not exclude yourself from the Settlement, you can ask the Court to deny approval by filing an objection. You can object to any aspect of the Settlement, to Class Counsel's request for attorneys' fees and expenses, or to the request for Service Awards.

Objecting to the Settlement means asking the Court to deny approval to the Settlement. You can't ask the Court to order a larger monetary payment from Plaid as part of the settlement, or to change the commitments Plaid has agreed to make under the Settlement.  The Court can only approve or reject the Settlement the parties have proposed. If the Court denies approval of the Settlement, Plaid will not be required to comply with the terms of the Settlement Agreement, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you must object.

If you chose to make an objection, it must be in writing and contain the following:

a.      The name and case number of this lawsuit (*In re Plaid Inc. Privacy Litigation*, the case number is 4:20-cv-03056);

b.      The basis for believing that you are a Class Member;

c.      Your full name and mailing address, and email address or telephone number;

d.      All reasons for your objection;

e.      Whether you intend to appear at the Final Approval Hearing, either in person or through an attorney representing you, and, if through an attorney, the attorney's name, address, and phone number;

f.      Your handwritten or electronically imaged written (*e.g.*, "DocuSign") signature. An attorney's signature, or a typed signature, is not sufficient.

To be considered by the Court, your objection must be either (1) filed at any location of the United States District Court for the Northern District of California on or before ___, or (2) mailed, postmarked no later than ___, to the following recipient:

Clerk of Court
United States District Court for the Northern District of California
1301 Clay Street
Oakland, CA 94612

## 24.  What is the difference between objecting and excluding myself?

You object to the Settlement when you disagree with some aspect of the Settlement and think the Court should not give Final Approval to the Settlement. An objection, like a comment, allows your views to be heard in Court.

Excluding yourself from the Settlement means that you are no longer a Class Member and don't want the Settlement (including monetary payments) to apply to you. Once you are excluded, you lose any right to object to any aspect of the Settlement because the case no longer affects you.

## 25.  Do I need to attend the Final Approval Hearing if I file an objection?

If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney.

## FINAL APPROVAL HEARING

## 26.  When and where will the Court decide whether to approve the Settlement?

The Court will hold the Final Approval Hearing at [__] on [Month] [Day], 2021 in Courtroom 4 (3rd Floor) of the United States Courthouse, 1301 Clay Street, Oakland, CA 94612. The hearing may be postponed to a different date or time or location without notice. The hearing may be scheduled to occur telephonically or by videoconference.  Please check [_____], or Judge Donna M. Ryu's  Calendar  (available  at  https://apps.cand.uscourts.gov/CEO/cfd.aspx?71BQ)  for  any updates about the Settlement or the Final Approval Hearing. If the date or time, or the format, of the Final Approval Hearing changes, an update to the Settlement Website or the Court's Calendar is the only way you will be informed of the change.

At the Final Approval Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them. The Court may listen to people who appear at the hearing and who have provided notice of their intent to appear at the hearing (*see* Question 23). The Court may also consider Class Counsel's application for attorneys' fees, expenses and for Service Awards. At or after the hearing, the Court will decide whether to approve the Settlement and to approve Class Counsel's application for attorneys' fees, expenses and Service Awards.

## 27.  Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you submit a written objection, you may, but you do not have to, come to Court to talk about it. As long as you submitted your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not required.

## 28.   May I speak at the hearing?

At that hearing, the Court will at its discretion hear any objections and arguments concerning the fairness of the Settlement.

You may attend the hearing, but you do not have to. As described above in response to Question 23, you may speak at the Final Approval Hearing if (a) you have mailed your written comment or objection to the Court on or before the postmark deadline, and (b) you identified in your comment or objection whether you intend to appear at the Final Approval Hearing.
You cannot speak at the hearing if you exclude yourself from the Settlement Class.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

## 29.   How do I exclude myself from the Settlement?

If you want to keep the right to sue or continue to sue Plaid or the other released entities (see Question 22) based on claims this Settlement resolves, you must exclude yourself from the Class (sometimes called "opting out").

To exclude yourself from the Settlement, you must send a letter by mail to the Settlement Administrator saying that you wish to do so. Your exclusion letter must include:

    a.      The name and case number of this lawsuit (*In re Plaid Inc. Privacy Litigation*, case number is 4:20-cv-03056);

    b.      Your full name and mailing address, email address, or telephone number;

    c.      The words "Notification of Exclusion" or a statement that you want to be excluded from the Settlement; and

    d.      Your handwritten or electronically imaged written (*e.g.*, "DocuSign") signature. An attorney's signature, or a typed signature, is not sufficient.

You must mail your exclusion letter, postmarked no later than ____, to:

*In re Plaid Inc. Privacy Litigation*
c/o _____

You cannot exclude yourself by mailing a notification to any other location or after the deadline of ____. You cannot exclude yourself by telephone or by email. Your exclusion letter must be signed by you, personally, and not your lawyer or anyone else acting on your behalf. "Mass" or "class" opt-outs made on behalf of multiple persons or classes of persons will be deemed invalid.

## 30.   If I do not exclude myself, can I sue Plaid for the same thing later?

No. Unless you exclude yourself, you give up the right to sue Plaid for the claims that this Settlement resolves.

## 31.  If I exclude myself, am I still represented by Class Counsel?

No. Class Counsel represents the members of the Settlement Class. If you exclude yourself from the Settlement Class, you are not represented by Class Counsel.

# DOING NOTHING

## 32.  What happens if I do nothing?

If you do nothing, and if the Settlement becomes final, you will be part of the Settlement Class and will receive the payments described above in Question 13.  You will give up your rights to sue Plaid (or continue to sue) or related entities (see Question 22) for claims arising out of or related to the allegations in the plaintiffs' complaint.

# GETTING MORE INFORMATION

## 33.  How do I get more information?

This notice summarizes the proposed Settlement. More details are in the Settlement Agreement itself. You can get a copy of the Settlement Agreement, view other case documents, and get additional information, updates, and answers to Frequently asked Questions, by visiting [_____].

All of the case documents that have been filed publicly in this case are also available online through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov. This case is called *In re Plaid Inc. Privacy Litigation*, and the case number is 4:20-cv-03056. You may obtain case documents by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, San Francisco Division, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

You can also get additional information or request a copy of the Settlement Agreement by calling toll-free _____ or writing to the Settlement Administrator at _____.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT**.

# EXHIBIT D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IN RE PLAID INC. PRIVACY
LITIGATION

Master Docket No.: 4:20-cv-03056-DMR

**DECLARATION OF
STEVEN WEISBROT ON BEHALF
OF ANGEION GROUP, LLC**

I, Steven Weisbrot, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am the President and Chief Innovation Officer at the class action notice and claims administration firm Angeion Group, LLC ("Angeion"). I am fully familiar with the facts contained herein based upon my personal knowledge.

2.      I have been responsible in whole or in part for the design and implementation of hundreds of court-approved notice and administration programs, including some of the largest and most complex notice plans in recent history. I have taught numerous accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Due Process Notice Programs, as well as Claims Administration, generally. I am the author of multiple articles on Class Action Notice, Claims Administration, and Notice Design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, the ABA Class Action and Derivative Section Newsletter, and I am a frequent speaker on notice issues at conferences throughout the United States and internationally.

3.      I was certified as a professional in digital media sales by the Interactive Advertising Bureau ("IAB") and I am co-author of the Digital Media section of Duke Law's *Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23* and the soon to be published George Washington Law School Best Practices Guide to Class Action Litigation.

1

4.      I have given public comment and written guidance to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, broadcast media, digital media and print publication, in effecting Due Process notice, and I have met with representatives of the Federal Judicial Center to discuss the 2018 amendments to Rule 23 and offered an educational curriculum for the judiciary concerning notice procedures.

5.      Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants, an experienced notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice.

6.      My notice work comprises a wide range of class actions that include product defect, data breach, mass disasters, false advertising, employment discrimination, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases.

7.      I have been at the forefront of infusing digital media, as well as big data and advanced targeting, into class action notice programs. Courts have repeatedly recognized my work in the design of class action notice programs. A comprehensive summary of judicial recognition Angeion has received is attached hereto as **Exhibit A**.

8.      By way of background, Angeion is an experienced class action notice and claims administration company formed by a team of executives that have had extensive tenures at five other nationally recognized claims administration companies. Collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $15 billion to class members. The executive profiles as well as the company overview are available at https://www.angeiongroup.com/our_team.php.

9.      As a class action administrator, Angeion has regularly been approved by both federal and state courts throughout the United States and abroad to provide notice of settlement and claims processing services.

### SUMMARY OF THE NOTICE PROGRAM

10.     The proposed Notice Program is the best notice that is practicable under the circumstances and fully comports with due process and Fed. R. Civ. P. 23. It provides individual direct notice to

2

all reasonably identifiable Class Members via email or mail, combined with a strategic media campaign comprised of state-of-the-art digital advertising, social media advertising, search engine marketing, sponsored listings on two leading class action settlement websites and engagement on social media. The Notice Program also includes the implementation of a dedicated website and a toll-free telephone line where Class Members can learn more about their rights and options pursuant to the terms of the Settlement.

11.     As discussed in greater detail below, the Notice Program is designed to deliver an approximate 80.40% reach with an average frequency of 3.62 times. What this means in practice is that 80.40% of our Target Audience will see a digital advertisement concerning the Settlement an average of 3.62 times each. The 80.40% reach is separate and apart from the direct notice efforts, sponsored listings, engagement on social media, dedicated website and toll-free telephone line, all of which are difficult to measure in terms of reach percentage but will nonetheless provide awareness and diffuse news of the Settlement to Class Members.

12.     The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide for Judges", at 27 (3d Ed. 2010).

## CLASS DEFINITION

13.     The Settlement Agreement defines the "Class" as "all natural persons who reside in the United States and who own or owned one or more Financial Accounts at the time such persons resided in the United States from January 1, 2013 to the date preliminary approval of the settlement is granted." The Agreement defines "Financial Account" as "a financial institution account (1) that Plaid accessed using the user's login credentials and connected to a mobile or web-based fintech application that enables payments (including ACH payments) or other money transfers or (2) for which a user provided financial account login credentials to Plaid through Plaid Link," subject to certain exclusions as defined in the Settlement Agreement.

3

14.     Angeion has been informed that it will be provided with approximately 65 million unique email addresses for certain Class Members and mailing addresses for certain other Class Members. Angeion will use the Settlement Class Member data (the "Class List") to provide direct notice to Class Members, as outlined below.

## DIRECT NOTICE

15.     The direct notice effort in this matter will consist of sending individual notice via email or mail to all potential Class Members who have been identified by the Defendant through its records and for whom contact information is included on the Class List that is provided to Angeion.

**Email Notice**

16.     The direct email notice effort in this matter will consist of sending individual email notice in the form attached hereto as **Exhibit B** to all potential Class Members for whom email addresses were provided to Angeion on the Class List.

17.     As an initial matter, Angeion designs the email notice to avoid many common "red flags" that might otherwise cause a potential Class Member's spam filter to block or identify the email notice as spam. For instance, Angeion does not include the Claim Form or Long Form Notice as an attachment to the email notice, because attachments are often interpreted by various Internet Service Providers ("ISP") as spam. Rather, in accordance with industry best practices, Angeion includes a link to all operative documents so that Class Members can easily access this information.

18.     Angeion will employ additional methods to help ensure that as many Class Members as possible receive notice via email. Specifically, prior to distributing email notice, Angeion will engage in an email updating process to help ensure the accuracy of recipient email addresses. Angeion also reviews email addresses for mis-transcribed characters and performs other hygiene, as appropriate.

19.     Angeion also accounts for the real-world reality that some emails will inevitably fail to be delivered during the initial delivery attempt. Therefore, after the initial noticing campaign is complete, Angeion, after an approximate 24-72-hour rest period, which allows any temporary block at the ISP level to expire, causes a second round of email noticing to continue to any email addresses

4

that were previously identified as soft bounces and not delivered. In our experience, this minimizes emails that may have erroneously failed to deliver due to sensitive servers and optimizes delivery.

20.     At the completion of the email campaign, Angeion will report to the Court concerning the rate of delivered emails accounting for any emails that are blocked at the ISP level. In short, the Court will possess a detailed, verified account of the success rate of the entire direct notice campaign.

21.     The Notice Program also includes a custom social media campaign utilizing Facebook[1] and Instagram[2], which are two of the leading social media platforms in North America. This strategic combination is designed to target Class Members whose email notice could not be delivered. If any of the email addresses (or phone numbers, if available) are used as the primary log-on for a Facebook or Instagram account, Angeion will be able to display ads directly to those Class Members on their timeline. This is a distinct and effective method of targeting actual known, verified Class Members. These efforts are in addition to the interest-based social media advertising, which is described in greater detail below.

**Mail Notice**

22.     As part of the Notice Program, Angeion will send a postcard notice in the form attached hereto as **Exhibit C** via first-class U.S. mail, postage pre-paid, to Class Members who did not have an email address and for whom a mailing address is included in the Class List provided to Angeion. In administering the Notice Program in this action, Angeion will employ the following best practices to increase the deliverability rate of the mailed notices.

23.     Angeion will cause the mailing address information for members of the Class to be updated utilizing the National Change of Address ("NCOA") database, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the USPS.

---

[1] In 2020, Facebook had an approximate 223 million users in the United States (https://www.statista.com/statistics/408971/number-of-us-facebook-users/).
[2] In 2020, Instagram had an approximate 112 million users in the United States (https://www.statista.com/statistics/293771/number-of-us-instagram-users/).

5

24.     Notices returned to Angeion by the USPS with a forwarding address will be re-mailed to the new address provided by the USPS and the class member database will be updated accordingly.

25.     Notices returned to Angeion by the USPS without forwarding addresses will be subjected to an address verification search (commonly referred to as "skip tracing") utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, etc., to locate updated addresses.

26.     For any Class Members where a new address is identified through the skip trace process, the class member database will be updated with the new address information and a Notice will be re-mailed to that address.

### **MEDIA NOTICE**

**Programmatic Display Advertising**

27.     Angeion will utilize a form of internet advertising known as Programmatic Display Advertising, which is the leading method of buying digital advertisements in the United States. It has been reported that U.S. advertisers spent nearly $65.74 billion on programmatic display advertising in 2020 and it is estimated that almost 86.5%, or $81.58 billion, of all U.S. digital display ad dollars will transact programmatically in 2021[3]. In laymen's terms, programmatic advertising is a method of advertising where an algorithm identifies and examines demographic profiles and uses advanced technology to place advertisements on the websites where members of the audience are most likely to visit (these websites are accessible on computers, mobile phones and tablets).

28.     The Settlement Class definition was used as the starting point to create the media notice campaign. To develop the media notice campaign and to verify its effectiveness, our media team analyzed data from 2021 comScore Multi-Platform//GfK MRI Media + Fusion to profile the class and arrive at an appropriate Target Audience based on criteria specific to this litigation.

---

[3] https://www.emarketer.com/content/us-programmatic-digital-display-advertising-outlook-2021

DECLARATION OF STEVEN WEISBROT

29.     Based on the characteristics of this settlement, Angeion estimates that the size of the Target Audience for the media notice campaign is approximately 112,417,000 individuals.  The Target Audience is based on objective syndicated data, which is routinely used by advertising agencies and experts to understand the demographics, shopping habits and attitudes of the consumers that they are seeking to reach. Using this form of objective data will allow the parties to report the reach and frequency to the court, with the confidence that the reach percentage and the number of exposure opportunities complies with due process and exceeds the Federal Judicial Center's threshold as to reasonableness in notification programs.

30.     To identify the best vehicles to deliver messaging to the Target Audience, Angeion also reviewed the media quintiles, which measure the degree to which an audience uses media relative to the general population. Here, the objective syndicated data shows that members of the Target Audience are heavy internet users.

31.     Given the strength of digital advertising, as well as our Target Audience's heavy internet use, we recommend utilizing a robust internet advertising campaign to reach Class Members. This media schedule will allow us to deliver an effective reach level and a vigorous frequency, which will provide due and proper notice to the class.

32.     Multiple targeting layers will be implemented into the programmatic campaign to help ensure delivery to the most appropriate users, inclusive of the following tactics:

- Look-a-like Modeling: This technique utilizes data methods to build a look-a-like audience against known Class Members.

- Predictive Targeting: This technique allows technology to "predict" which users will be served the advertisement about the litigation.

- Audience Targeting: This technique utilizes technology and data to serve the impressions to the intended audience based on demographics, purchase behaviors and interests.

- Site Retargeting: This technique is a targeting method used to reach potential Class Members who have already visited the dedicated case website while they browse other pages. This

7

allows Angeion to provide a potential Class Member sufficient exposure to an advertisement about the litigation.

33.     To combat the possibility of non-human viewership of the digital advertisements and to verify effective unique placements, Angeion employs Oracle's BlueKai, Adobe's Audience Manger and/or Lotame, which are demand management platforms ("DMP"). DMPs allow Angeion to learn more about the online audiences that are being reached.

34.     The internet banner notice portion will be implemented using a desktop and mobile campaign and incorporates video advertisements. The internet banner notice portion is strategically designed to notify and drive Class Members to the dedicated settlement website, where they can find more information about the Settlement and are able to submit a claim form directly via the settlement website.

**Social Media Notice**

35.     The Notice Program also includes an interest-based approach which focuses on the interests that users exhibit while on the social media platforms Facebook and Instagram. This strategic combination is designed to leverage the characteristics of our Target Audience, of which 92.89% used social media in the last month.

36.     The social media campaign will engage with the Target Audience via a mix of news feed and story units to optimize performance via the Facebook and Instagram desktop sites, mobile sites and mobile apps. Facebook image ads will appear natively in desktop newsfeeds (on Facebook.com) and mobile app newsfeeds (via the Facebook app or Facebook.com mobile site), and on desktops via right-column ads. Instagram Photo and Stories ads will appear on the desktop site (on Instagram.com) and mobile app feed (via the Instagram app or Instagram.com mobile site), and in users' story feeds.

37.     Additionally, specific tactics will be implemented to further qualify and deliver impressions to the Target Audience. We will use Facebook Marketing platform and its technology to serve ads on both Facebook and Instagram against the Target Audience. *Look-a-like modeling* allows the use of consumer characteristics to serve ads. Based on these characteristics, we can build

8

different consumer profile segments to ensure the notice plan messaging is delivered to the proper audience. *Conquesting* allows ads to be served in relevant placements to further alert prospective Class Members. The social media ads will further be geo-targeted weighted delivery based on how the Target Audience is geographically spread throughout the country.

38.     The social media campaign will run to coincide with the programmatic display advertising portion of the Notice Program. Combined, these two media tactics are designed to deliver approximately 326 million impressions.

**Paid Search Campaign**

39.     The Notice Plan also includes a paid search campaign to help drive Settlement Class Members who are actively searching for information about the Settlement to the dedicated Settlement Website. Paid search ads will complement the programmatic campaign, as search engines are frequently used to locate a specific website, rather than a person typing in the URL. Search terms would relate to not only the Settlement itself but also the subject-matter of the litigation.

**Sponsored Class Action Website Listings**

40.     Angeion will cause the Settlement to be listed and promoted through two leading class action settlement websites, www.topclassactions.com and www.classaction.org. These sites are known to create awareness of pending settlements among consumers and, while not measured in terms of the reported reach percentage, will be instrumental in seeding and disbursing news of the underlying settlement. *Top Class Actions* averages 3 million monthly visitors, has approximately 900,000 newsletter subscribers and 145,000 Facebook followers. *ClassAction.org* averages 100,000 page-views per month and has approximately 130,000 newsletter subscribers. Representative samples of listings on *Top Class Actions* and *ClassAction.org* can be viewed on their respective websites.

41.     The promotion these websites is not capable of precise reach calculations and is thus not included in the reach and frequency figures presented to the Court. Nonetheless, this mechanism will serve an important function in that they will help stimulate interest in the Settlement and drive

9

Class Members to the dedicated settlement website to read and understand their rights and options under the Settlement.

**Social Media Engagement**

42.     Angeion will monitor public Twitter traffic for discussion of the settlement and will provide information or respond to questions via Twitter on an ad hoc basis as appropriate, with advance notice to the parties before beginning any outreach on Twitter.

## RESPONSE MECHANISMS

43.     The Notice Program will also implement the creation of a case-specific website, where Class Members can easily view general information about this class action Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. The website will be designed to be user-friendly and make it easy for Class Members to find information about the case, including a customized video which will be displayed on the website. The website will also have a "Contact Us" page whereby Class Members can send an email with any additional questions to a dedicated email address. Likewise, Class Members will be able to submit a Claim Form directly via the website.

44.     A toll-free hotline devoted to this case will be implemented to further apprise Class Members of the rights and options pursuant to the terms of the Settlement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week.

## REACH AND FREQUENCY

45.     This declaration describes the reach and frequency evidence which courts systemically rely upon in reviewing class action publication notice programs for adequacy. The reach percentage and the number of exposure opportunities meet or exceed the guidelines as set forth in the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.

DECLARATION OF STEVEN WEISBROT

46.     Specifically, the digital media and social media portions of the Notice Program are designed to deliver an approximate 80.40% reach with an average frequency of 3.62 times each. The 80.40% reach is separate and apart from the direct notice efforts, sponsored listings, engagement on social media, dedicated website and toll-free telephone line, all of which are difficult to measure in terms of reach percentage but will nonetheless provide awareness and diffuse news of the Settlement to Class Members.

## PLAIN LANGUAGE NOTICE DESIGN

47.     The proposed Notice forms used in this matter are designed to be "noticed," reviewed, and by presenting the information in plain language, understood by members of the Settlement Class. The design of the notices follows the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. The notice forms contain plain-language summaries of key information about the rights and options of members of the Settlement Class pursuant to the Settlement. Consistent with normal practice, prior to being delivered and published, all notice documents will undergo a final edit for accuracy.

48.     Angeion Group maintains a strong commitment to adhering to this requirement, drawing on its experience and expertise to craft notices that effectively convey the necessary information to members of the Settlement Class in plain language.

## CONCLUSION

49.     The Notice Program outlined above includes direct notice to all reasonably identifiable Class Members via email or mail, combined with a strategic media campaign comprised of state-of-the-art digital advertising, social media advertising, search engine marketing, sponsored listings on two leading class action settlement websites and engagement on social media. The Notice Program also includes the implementation of a dedicated settlement website and toll-free hotline to further inform Class Members of their rights and options in the Settlement and is strategically designed to generate active participation of Class Members in the Settlement.

50.     In my professional opinion, the Notice Program will provide full and proper notice to Class Members before the claims, opt-out and objection deadlines. Moreover, it is my opinion that the

11

Notice Program is the best notice that is practicable under the circumstances, and that it fully comports with due process and Fed. R. Civ. P. 23. After the Notice Program has concluded, Angeion will provide a final report verifying its effective implementation.

I hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 5, 2021

STEVEN WEISBROT

12

# Exhibit A



# INNOVATION
## IT'S PART OF OUR DNA

class action | mass tort | legal noticing | litigation support



# Judicial Recognition

©  Angeion Group, LLC

# JUDICIAL RECOGNITION



### IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION
**Case No. 5:18-md-02827**

The Honorable Edward J. Davila, United States District Court, Northern District of California (March 17, 2021):  Angeion undertook a comprehensive notice campaign…The notice program was well executed, far-reaching, and exceeded both Federal Rule of Civil Procedure 23(c)(2)(B)'s requirement to provide the "best notice that is practicable under the circumstances" and Rule 23(e)(1)(B)'s requirement to provide "direct notice in a reasonable manner."

### IN RE: GOOGLE PLUS PROFILE LITIGATION
**Case No. 5:18-cv-06164**

The Honorable Edward J. Davila, United States District Court, Northern District of California (January 25, 2021):  The Court further finds that the program for disseminating notice to Settlement Class Members provided for in the Settlement, and previously approved and directed by the Court (hereinafter, the "Notice Program"), has been implemented by the Settlement Administrator and the Parties, and such Notice Program, including the approved forms of notice, is reasonable and appropriate and satisfies all applicable due process and other requirements, and constitutes best notice reasonably calculated under the circumstances to apprise Settlement Class Members…

### NELSON ET AL. v. IDAHO CENTRAL CREDIT UNION
**Case No. CV03-20-00831, CV03-20-03221**

The Honorable Robert C. Naftz, Sixth Judicial District, State of Idaho, Bannock County (January 19, 2021):  The Court finds that the Proposed Notice here is tailored to this Class and designed to ensure broad and effective reach to it…The Parties represent that the operative notice plan is the best notice practicable and is reasonably designed to reach the settlement class members. The Court agrees.

### IN RE: HANNA ANDERSSON AND SALESFORCE.COM DATA BREACH LITIGATION
**Case No. 3:20-cv-00812**

The Honorable Edward M. Chen, United States District Court, Northern District of California (December 29, 2020):  The Court finds that the Class Notice and Notice Program satisfy the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure and provide the best notice practicable under the circumstances.

### IN RE: PEANUT FARMERS ANTITRUST LITIGATION
**Case No. 2:19-cv-00463**

The Honorable Raymond A. Jackson, United States District Court, Eastern District of Virginia (December 23, 2020):  The Court finds that the Notice Program…constitutes the best notice that is practicable under the circumstances and is valid, due and sufficient notice to all persons entitled thereto and complies fully with the requirements of Rule 23(c)(2) and the due process requirements of the Constitution of the United States.

# JUDICIAL RECOGNITION



***BENTLEY ET AL. v. LG ELECTRONICS U.S.A., INC.***

**Case No. 2:19-cv-13554**

The Honorable Madeline Cox Arleo, United States District Court, District of New Jersey (December 18, 2020):  The Court finds that notice of this Settlement was given to Settlement Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Litigation, the Settlement, and the Settlement Class Members' rights to object to the Settlement or opt out of the Settlement Class, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.

***IN RE: ALLURA FIBER CEMENT SIDING PRODUCTS LIABILITY LITIGATION***

**Case No. 2:19-mn-02886**

The Honorable David C. Norton, United States District Court, District of South Carolina (December 18, 2020):  The proposed Notice provides the best notice practicable under the circumstances. It allows Settlement Class Members a full and fair opportunity to consider the proposed settlement. The proposed plan for distributing the Notice likewise is a reasonable method calculated to reach all members of the Settlement Class who would be bound by the settlement. There is no additional method of distribution that would be reasonably likely to notify Settlement Class Members who may not receive notice pursuant to the proposed distribution plan.

***ADKINS ET AL. v. FACEBOOK, INC.***

**Case No. 3:18-cv-05982**

The Honorable William Alsup, United States District Court, Northern District of California (November 15, 2020):  Notice to the class is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co., 399 U.S. 306, 314 (1650).*

***IN RE: 21ST CENTURY ONCOLOGY CUSTOMER DATA SECURITY BREACH LITIGATION***

**Case No. 8:16-md-02737**

The Honorable Mary S. Scriven, United States District Court, Middle District of Florida (November 2, 2020):  The Court finds and determines that mailing the Summary Notice  and publication of the Settlement Agreement, Long Form Notice, Summary Notice, and Claim Form on the Settlement Website, all pursuant to this Order, constitute the best notice practicable under the circumstances, constitute due and sufficient notice of the matters set forth in the notices to all persons entitled to receive such notices, and fully satisfies the of due process, Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and all other applicable laws and rules. The Court further finds that all of the notices are written in plain language and are readily understandable by Class Members.

***MARINO ET AL. v. COACH INC.***

**Case No. 1:16-cv-01122**

The Honorable Valerie Caproni, United States District Court, Southern District of New York (August 24, 2020):  The Court finds that the form, content, and method of giving notice to the Settlement Class as described in paragraph 8 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of

the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution.  The Court further finds that all of the notices are written in plain language, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

### BROWN v. DIRECTV, LLC
### Case No. 2:13-cv-01170

The Honorable Dolly M. Gee, United States District Court, Central District of California (July 23, 2020):  Given the nature and size of the class, the fact that the class has no geographical limitations, and the sheer number of calls at issue, the Court determines that these methods constitute the best and most reasonable form of notice under the circumstances.

### IN RE: SSA BONDS ANTITRUST LITIGATION
### Case No. 1:16-cv-03711

The Honorable Edgardo Ramos, United States District Court, Southern District of New York (July 15, 2020):  The Court finds that the mailing and distribution of the Notice and the publication of the Summary Notice substantially in the manner set forth below meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled to notice.

### KJESSLER ET AL. v. ZAAPPAAZ, INC. ET AL.
### Case No. 4:18-cv-00430

The Honorable Nancy F. Atlas, United States District Court, Southern District of Texas (July 14, 2020):  The Court also preliminarily approves the proposed manner of communicating the Notice and Summary Notice to the putative Settlement Class, as set out below, and finds it is the best notice practicable under the circumstances, constitutes due and sufficient notice to all persons and entities entitled to receive such notice, and fully satisfies the requirements of applicable laws, including due process and Federal Rule of Civil Procedure 23.

### HESTER ET AL. v. WALMART, INC.
### Case No. 5:18-cv-05225

The Honorable Timothy L. Brooks, United States District Court, Western District of Arkansas (July 9, 2020):  The Court finds that the Notice and Notice Plan substantially in the manner and form set forth in this Order and the Agreement meet the requirements of Federal Rule of Civil Procedure 23 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.

# JUDICIAL RECOGNITION



### CLAY ET AL. v. CYTOSPORT INC.
### Case No. 3:15-cv-00165

The Honorable M. James Lorenz, United States District Court, Southern District of California (June 17, 2020):  The Court approves the proposed Notice Plan for giving notice to the Settlement Class through publication, both print and digital, and through the establishment of a Settlement Website, as more fully described in the Agreement and the Claims Administrator's affidavits (docs. no. 222-9, 224, 224-1, and 232-3 through 232-6). The Notice Plan, in form, method, and content, complies with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.

### GROGAN v. AARON'S INC.
### Case No. 1:18-cv-02821

The Honorable J.P. Boulee, United States District Court, Northern District of Georgia (May 1, 2020): The Court finds that the Notice Plan as set forth in the Settlement Agreement meets the requirements of Fed. R. Civ. P. 23 and constitutes the best notice practicable under the circumstances, including direct individual notice by mail and email to Settlement Class Members where feasible and a nationwide publication website-based notice program, as well as establishing a Settlement Website at the web address of www.AaronsTCPASettlement.com, and satisfies fully the requirements the Federal Rules of Civil Procedure, the U.S. Constitution, and any other applicable law, such that the Settlement Agreement and Final Order and Judgment will be binding on all Settlement Class Members.

### CUMMINGS v. BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO, ET AL.
### Case No. D-202-CV-2001-00579

The Honorable Carl Butkus, Second Judicial District Court, County of Bernalillo, State of New Mexico (March 30, 2020): The Court has reviewed the Class Notice, the Plan of Allocation and Distribution and Claim Form, each of which it approves in form and substance. The Court finds that the form and methods of notice set forth in the Agreement: (i) are reasonable and the best practicable notice under the circumstances; (ii) are reasonably calculated to apprise Settlement Class Members of the pendency of the Lawsuit, of their rights to object to or opt-out of the Settlement, and of the Final Approval Hearing; (iii) constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet the requirements of the New Mexico Rules of Civil Procedure, the requirements of due process under the New Mexico and United States Constitutions, and the requirements of any other applicable rules or laws.

### SCHNEIDER, ET AL. v. CHIPOTLE MEXICAN GRILL, INC.
### Case No. 4:16-cv-02200

The Honorable Haywood S. Gilliam, Jr., United States District Court, Northern District of California (January 31, 2020):  Given that direct notice appears to be infeasible, the third-party settlement administrator will implement a digital media campaign and provide for publication notice in People magazine, a nationwide publication, and the East Bay Times. SA § IV.A, C; Dkt. No. 205-12 at ¶¶ 13–23. The publication notices will run for four consecutive weeks. Dkt. No. 205 at ¶ 23. The digital media campaign includes an internet banner notice implemented using a 60-day desktop and mobile campaign. Dkt. No. 205-12 at ¶ 18. It will rely on "Programmatic Display Advertising" to reach the "Target Audience," Dkt. No. 216-1 at ¶ 6, which is estimated to include 30,100,000 people and identified using the target definition of "Fast Food & Drive-In Restaurants Total

Restaurants Last 6 Months [Chipotle Mexican Grill]," Dkt. No. 205-12 at ¶ 13. Programmatic display advertising utilizes "search targeting," "category contextual targeting," "keyword contextual targeting," and "site targeting," to place ads. Dkt. No. 216-1 at ¶¶ 9–12. And through "learning" technology, it continues placing ads on websites where the ad is performing well. Id. ¶ 7. Put simply, prospective Class Members will see a banner ad notifying them of the settlement when they search for terms or websites that are similar to or related to Chipotle, when they browse websites that are categorically relevant to Chipotle (for example, a website related to fast casual dining or Mexican food), and when they browse websites that include a relevant keyword (for example, a fitness website with ads comparing fast casual choices). Id. ¶¶ 9–12. By using this technology, the banner notice is "designed to result in serving approximately 59,598,000 impressions." Dkt. No. 205-12 at ¶ 18.

The Court finds that the proposed notice process is "'reasonably calculated, under all the circumstances,' to apprise all class members of the proposed settlement." Roes, 944 F.3d at 1045 (citation omitted).

### HANLEY v. TAMPA BAY SPORTS AND ENTERTAINMENT LLC
### Case No. 8:19-cv-00550

The Honorable Charlene Edwards Honeywell, United States District Court, Middle District of Florida (January 7, 2020):  The Court approves the form and content of the Class notices and claim forms substantially in the forms attached as Exhibits A-D to the Settlement. The Court further finds that the Class Notice program described in the Settlement is the best practicable under the circumstances. The Class Notice program is reasonably calculated under the circumstances to inform the Settlement Class of the pendency of the Action, certification of a Settlement Class, the terms of the Settlement, Class Counsel's attorney's fees application and the request for a service award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. The Class notices and Class Notice program constitute sufficient notice to all persons entitled to notice. The Class notices and Class Notice program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of Due Process.

### CORCORAN, ET AL. v. CVS HEALTH, ET AL.
### Case No. 4:15-cv-03504

The Honorable Yvonne Gonzalez Rogers, United States District Court, Northern District of California (November 22, 2019):  Having reviewed the parties' briefings, plaintiffs' declarations regarding the selection process for a notice provider in this matter and regarding Angeion Group LLC's experience and qualifications, and in light of defendants' non-opposition, the Court APPROVES Angeion Group LLC as the notice provider. Thus, the Court GRANTS the motion for approval of class notice provider and class notice program on this basis.

Having considered the parties' revised proposed notice program, the Court agrees that the parties' proposed notice program is the "best notice that is practicable under the circumstances." The Court is satisfied with the representations made regarding Angeion Group LLC's methods for ascertaining email addresses from existing information in the possession of defendants. Rule 23 further contemplates and permits electronic notice to class members in certain situations. See Fed. R. Civ. P. 23(c)(2)(B). The Court finds, in light of the representations made by the parties, that this is a situation that permits electronic notification via email, in addition to notice via United

States Postal Service. Thus, the Court APPROVES the parties' revised proposed class notice program, and GRANTS the motion for approval of class notice provider and class notice program as to notification via email and United States Postal Service mail.

### PATORA v. TARTE, INC.
**Case No. 7:18-cv-11760**

The Honorable Kenneth M. Karas, United States District Court, Southern District of New York (October 2, 2019):  The Court finds that the form, content, and method of giving notice to the Class as described in Paragraph 9 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the Proposed Settlement, and their rights under the Proposed Settlement, including but not limited to their rights to object to or exclude themselves from the Proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clauses of the United States Constitution. The Court further finds that all of the notices are written in simple terminology, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

### CARTER, ET AL. v. GENERAL NUTRITION CENTERS, INC., and GNC HOLDINGS, INC.
**Case No. 2:16-cv-00633**

The Honorable Mark R. Hornak, United States District Court, Western District of Pennsylvania (September 9, 2019):  The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise proposed Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the proposed Settlement Class. The Court finds that the notice is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, Rule 23 of the Federal Rules of Ci vii Procedure, and any other applicable laws.

### CORZINE v. MAYTAG CORPORATION, ET AL.
**Case No. 5:15-cv-05764**

The Honorable Beth L. Freeman, United States District Court, Northern District of California (August 21, 2019):  The Court, having reviewed the proposed Summary Notice, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.

### MEDNICK v. PRECOR, INC.
**Case No. 1:14-cv-03624**

The Honorable Harry D. Leinenweber, United States District Court, Northern District of Illinois (June 12, 2019):  Notice provided to Class Members pursuant to the Preliminary Class Settlement Approval Order constitutes the best notice practicable under the circumstances, including

individual email and mail notice to all Class Members who could be identified through reasonable effort, including information provided by authorized third-party retailers of Precor. Said notice provided full and adequate notice of these proceedings and of the matter set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of F.R.C.P. Rule 23 (e) and (h) and the requirements of due process under the United States and California Constitutions.

### GONZALEZ v. TCR SPORTS BROADCASTING HOLDING LLP, ET AL.
**Case No. 1:18-cv-20048**

The Honorable Darrin P. Gayles, United States District Court, Southern District of Florida (May 24, 2019):  The Court finds that notice to the class was reasonable and the best notice practicable under the circumstances, consistent with Rule 23(e)(1) and Rule 23(c)(2)(B).

### ANDREWS ET AL. v. THE GAP, INC., ET AL.
**Case No. CGC-18-567237**

The Honorable Richard B. Ulmer Jr., Superior Court of the State of California, County of San Francisco (May 10, 2019):  The Court finds that (a) the Full Notice, Email Notice, and Publication constitute the best notice practicable under the circumstances, (b) they constitute valid, due, and sufficient notice to all members of the Class, and (c) they comply fully with the requirements of California Code of Civil Procedure section 382, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.

### COLE, ET AL. v. NIBCO, INC.
**Case No. 3:13-cv-07871**

The Honorable Freda L. Wolfson, United States District Court, District of New Jersey (April 11, 2019):  The record shows, and the Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order. The Court finds that the Notice Plan constitutes: (i) the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this..., (iii) due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Fed. R. Civ. P. 23, and any other applicable law.

### DIFRANCESCO, ET AL. v. UTZ QUALITY FOODS, INC.
**Case No. 1:14-cv-14744**

The Honorable Douglas P. Woodlock, United States District Court, District of Massachusetts (March 15, 2019):  The Court finds that the Notice plan and all forms of Notice to the Class as set forth in the Settlement Agreement and Exhibits 2 and 6 thereto, as amended (the "Notice Program"), is reasonably calculated to, under all circumstances, apprise the members of the Settlement Class of the pendency of this action, the certification of the Settlement Class, the terms of the Settlement Agreement, and the right of members to object to the settlement or to exclude themselves from the Class. The Notice Program is consistent with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.

Case 4:20-cv-02956-DMR   Document 138-1   Filed 08/06/21   Page 100 of 121



***IN RE: CHRYSLER-DODGE-JEEP ECODIESEL MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION***

**Case No. 3:17-md-02777**

The Honorable Edward M. Chen, United States District Court, Northern District of California (February 11, 2019):  Also, the parties went through a sufficiently rigorous selection process to select a settlement administrator. See Proc. Guidance for Class Action Sett. ¶ 2; see also Cabraser Decl. ¶¶ 9-10. While the settlement administration costs are significant – an estimated $1.5 million – they are adequately justified given the size of the class and the relief being provided.

In addition, the Court finds that the language of the class notices (short and long-form) is appropriate and that the means of notice – which includes mail notice, electronic notice, publication notice, and social media "marketing" – is the "best notice...practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); see also Proc. Guidance for Class Action Sett. ¶¶ 3-5, 9 (addressing class notice, opt-outs, and objections). The Court notes that the means of notice has changed somewhat, as explained in the Supplemental Weisbrot Declaration filed on February 8, 2019, so that notice will be more targeted and effective. See generally Docket No. 525 (Supp. Weisbrot Decl.) (addressing, inter alia, press release to be distributed via national newswire service, digital and social media marketing designed to enhance notice, and "reminder" first-class mail notice when AEM becomes available).

Finally, the parties have noted that the proposed settlement bears similarity to the settlement in the Volkswagen MDL. See Proc. Guidance for Class Action Sett. ¶ 11.

***RYSEWYK, ET AL. v. SEARS HOLDINGS CORPORATION and SEARS, ROEBUCK AND COMPANY***

**Case No. 1:15-cv-04519**

The Honorable Manish S. Shah, United States District Court, Northern District of Illinois (January 29, 2019):  The Court holds that the Notice and notice plan as carried out satisfy the requirements of Rule 23(e) and due process. This Court has previously held the Notice and notice plan to be reasonable and the best practicable under the circumstances in its Preliminary Approval Order dated August 6, 2018. (Dkt. 191) Based on the declaration of Steven Weisbrot, Esq. of Angeion Group (Dkt. No. 209-2), which sets forth compliance with the Notice Plan and related matters, the Court finds that the multi-pronged notice strategy as implemented has successfully reached the putative Settlement Class, thus constituting the best practicable notice and satisfying due process.

***MAYHEW, ET AL. v. KAS DIRECT, LLC, and S.C. JOHNSON & SON, INC.***

**Case No. 7:16-cv-06981**

The Honorable Vincent J. Briccetti, United States District Court, Southern District of New York (June 26, 2018):  In connection with their motion, plaintiffs provide the declaration of Steven Weisbrot, Esq., a principal at the firm Angeion Group, LLC, which will serve as the notice and settlement administrator in this case. (Doc. #101, Ex. F: Weisbrot Decl.) According to Mr. Weisbrot, he has been responsible for the design and implementation of hundreds of class action administration plans, has taught courses on class action claims administration, and has given testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, and digital media in due process notice. Mr. Weisbrot states that the internet banner advertisement campaign will be responsive to search terms relevant to "baby wipes, baby

products, baby care products, detergents, sanitizers, baby lotion, [and] diapers," and will target users who are currently browsing or recently browsed categories "such as parenting, toddlers, baby care, [and] organic products." (Weisbrot Decl. ¶ 18). According to Mr. Weisbrot, the internet banner advertising campaign will reach seventy percent of the proposed class members at least three times each. (Id. ¶ 9). Accordingly, the Court approves of the manner of notice proposed by the parties as it is reasonable and the best practicable option for confirming the class members receive notice.

### IN RE: OUTER BANKS POWER OUTAGE LITIGATION
### Case No. 4:17-cv-00141

The Honorable James C. Dever III, United States District Court, Eastern District of North Carolina (May 2, 2018):  The court has reviewed the proposed notice plan and finds that the notice plan provides the best practicable notice under the circumstances and, when completed, shall constitute fair, reasonable, and adequate notice of the settlement to all persons and entities affected by or entitled to participate in the settlement, in full compliance with the notice requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process. Thus, the court approves the proposed notice plan.

### GOLDEMBERG, ET AL. v. JOHNSON & JOHNSON CONSUMER COMPANIES, INC.
### Case No. 7:13-cv-03073

The Honorable Nelson S. Roman, United States District Court, Southern District of New York (November 1, 2017):  Notice of the pendency of the Action as a class action and of the proposed Settlement, as set forth in the Settlement Notices, was given to all Class Members who could be identified with reasonable effort, consistent with the terms of the Preliminary Approval Order. The form and method of notifying the Class of the pendency of the Action as a class action and of the terms and conditions of the proposed Settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law in the United States. Such notice constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

### HALVORSON v. TALENTBIN, INC.
### Case No. 3:15-cv-05166

The Honorable Joseph C. Spero, United States District Court, Northern District of California (July 25, 2017):  The Court finds that the Notice provided for in the Order of Preliminary Approval of Settlement has been provided to the Settlement Class, and the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances, and was in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, the United States Constitution, and any other applicable law. The Notice apprised the members of the Settlement Class of the pendency of the litigation; of all material elements of the proposed settlement, including but not limited to the relief afforded the Settlement Class under the Settlement Agreement; of the res judicata effect on members of the Settlement Class and of their opportunity to object to, comment on, or opt-out of, the Settlement; of the identity of Settlement Class Counsel and of information necessary to contact Settlement Class Counsel; and of the right to appear at the Fairness Hearing. Full opportunity has been afforded to members of the Settlement Class to participate in the Fairness Hearing. Accordingly, the Court determines that all Final Settlement Class Members are bound by this Final Judgment in accordance with the terms provided herein.



### *IN RE: ASHLEY MADISON CUSTOMER DATA SECURITY BREACH LITIGATION*
**MDL No. 2669/Case No. 4:15-md-02669**

The Honorable John A. Ross, United States District Court, Eastern District of Missouri (July 21, 2017):  The Court further finds that the method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot, Esq. on Adequacy of Notice Program, dated July 13, 2017, and the Parties' Stipulation—including an extensive and targeted publication campaign composed of both consumer magazine publications in People and Sports Illustrated, as well as serving 11,484,000 highly targeted digital banner ads to reach the prospective class members that will deliver approximately 75.3% reach with an average frequency of 3.04 —is the best method of notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and all Constitutional requirements including those of due process.

The Court further finds that the Notice fully satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; provided, that the Parties, by agreement, may revise the Notice, the Claim Form, and other exhibits to the Stipulation, in ways that are not material or ways that are appropriate to update those documents for purposes of accuracy.

### *TRAXLER, ET AL. v. PPG INDUSTRIES INC., ET AL.*
**Case No. 1:15-cv-00912**

The Honorable Dan Aaron Polster, United States District Court, Northern District of Ohio (April 27, 2017):  The Court hereby approves the form and procedure for disseminating notice of the proposed settlement to the Settlement Class as set forth in the Agreement. The Court finds that the proposed Notice Plan contemplated constitutes the best notice practicable under the circumstances and is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement or opt out of the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e). In addition, Class Notice clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified Settlement Class; (iii) the claims and issues of the Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

### *IN RE: THE HOME DEPOT, INC., CUSTOMER DATA SECURITY BREACH LITIGATION*
**Case No. 1:14-md-02583**

The Honorable Thomas W. Thrash Jr., United States District Court, Northern District of Georgia (March 10, 2017):  The Court finds that the form, content, and method of giving notice to the settlement class as described in the settlement agreement and exhibits: (a) constitute the best practicable notice to the settlement class; (b) are reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of the action, the terms of the proposed settlement, and their rights under the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements. The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by settlement class members.

# JUDICIAL RECOGNITION



***ROY v. TITEFLEX CORPORATION t/a GASTITE and WARD MANUFACTURING, LLC***
**Case No. 384003V**

The Honorable Ronald B. Rubin, Circuit Court for Montgomery County, Maryland (February 24, 2017): What is impressive to me about this settlement is that in addition to all the usual recitation of road racing litanies is that there is going to be a) public notice of a real nature and b) about a matter concerning not just money but public safety and then folks will have the knowledge to decide for themselves whether to take steps to protect themselves or not. And that's probably the best thing a government can do is to arm their citizens with knowledge and then the citizens can make decision. To me that is a key piece of this deal. ***I think the notice provisions are exquisite*** [emphasis added].

***IN RE: LG FRONT LOADING WASHING MACHINE CLASS ACTION LITIGATION***
**Case No. 2:08-cv-00051**

The Honorable Madeline Cox Arleo, United States District Court, District of New Jersey (June 17, 2016): This Court further approves the proposed methods for giving notice of the Settlement to the Members of the Settlement Class, as reflected in the Settlement Agreement and the joint motion for preliminary approval. The Court has reviewed the notices attached as exhibits to the Settlement, the plan for distributing the Summary Notices to the Settlement Class, and the plan for the Publication Notice's publication in print periodicals and on the internet, and finds that the Members of the Settlement Class will receive the best notice practicable under the circumstances. The Court specifically approves the Parties' proposal to use reasonable diligence to identify potential class members and an associated mailing and/or email address in the Company's records, and their proposal to direct the ICA to use this information to send absent class members notice both via first class mail and email. The Court further approves the plan for the Publication Notice's publication in two national print magazines and on the internet. The Court also approves payment of notice costs as provided in the Settlement. The Court finds that these procedures, carried out with reasonable diligence, will constitute the best notice practicable under the circumstances and will satisfy.

***FENLEY v. APPLIED CONSULTANTS, INC.***
**Case No. 2:15-cv-00259**

The Honorable Mark R. Hornak, United States District Court, Western District of Pennsylvania (June 16, 2016): The Court would note that it approved notice provisions of the settlement agreement in the proceedings today. That was all handled by the settlement and administrator Angeion. The notices were sent. The class list utilized the Postal Service's national change of address database along with using certain proprietary and other public resources to verify addresses. the requirements of Fed.R.Civ.P. 23(c)(2), Fed.R.Civ.P. 23(e) (l), and Due Process....

The Court finds and concludes that the mechanisms and methods of notice to the class as identified were reasonably calculated to provide all notice required by the due process clause, the applicable rules and statutory provisions, and that the results of ***the efforts of Angeion were highly successful and fulfilled all of those requirements*** [emphasis added].

### *FUENTES, ET AL. v. UNIRUSH, LLC d/b/a UNIRUSH FINANCIAL SERVICES, ET AL.*
**Case No. 1:15-cv-08372**

The Honorable J. Paul Oetken, United States District Court, Southern District of New York (May 16, 2016):  The Court approves, as to form, content, and distribution, the Claim Form attached to the Settlement Agreement as Exhibit A, the Notice Plan, and all forms of Notice to the Settlement Class as set forth in the Settlement Agreement and Exhibits B-D, thereto, and finds that such Notice is the best notice practicable under the circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure. The Court also finds that the Notice constitutes valid, due and sufficient notice to all persons entitled thereto, and meets the requirements of Due Process. The Court further finds that the Notice is reasonably calculated to, under all circumstances, reasonably apprise members of the Settlement Class of the pendency of the Actions, the terms of the Settlement Agreement, and the right to object to the settlement and to exclude themselves from the Settlement Class. The Parties, by agreement, may revise the Notices and Claim Form in ways that are not material, or in ways that are appropriate to update those documents for purposes of accuracy or formatting for publication.

### *IN RE: WHIRLPOOL CORP. FRONTLOADING WASHER PRODUCTS LIABILITY LITIGATION*
**MDL No. 2001/Case No. 1:08-wp-65000**

The Honorable Christopher A. Boyko, United States District Court, Northern District of Ohio (May 12, 2016):  The Court, having reviewed the proposed Summary Notices, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.

### *SATERIALE, ET AL. v. R.J. REYNOLDS TOBACCO CO.*
**Case No. 2:09-cv-08394**

The Honorable Christina A. Snyder, United States District Court, Central District of California (May 3, 2016):  The Court finds that the Notice provided to the Settlement Class pursuant to the Settlement Agreement and the Preliminary Approval Order has been successful, was the best notice practicable under the circumstances and (1) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, Due Process, and the rules of the Court.

### *FERRERA, ET AL. v. SNYDER'S-LANCE, INC.*
**Case No. 0:13-cv-62496**

The Honorable Joan A. Lenard, United States District Court, Southern District of Florida (February 12, 2016):  The Court approves, as to form and content, the Long-Form Notice and Short- Form Publication Notice attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits 1 and 2 to the Stipulation of Settlement. The Court also approves the procedure for disseminating notice of the proposed settlement to the Settlement Class and the Claim Form, as set forth in the Notice and Media Plan attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits G. The Court

finds that the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution.

### IN RE: POOL PRODUCTS DISTRIBUTION MARKET ANTITRUST LITIGATION
**MDL No. 2328/Case No. 2:12-md-02328**

The Honorable Sarah S. Vance, United States District Court, Eastern District of Louisiana (December 31, 2014):  To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice. The Court welcomes the inclusion of web- based forms of communication in the plan. The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process. The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement. Moreover, the plan to combine notice for the Zodiac and Hayward settlements should streamline the process and avoid confusion that might otherwise be caused by a proliferation of notices for different settlements. Therefore, the Court approves the proposed notice forms and the plan of notice.

### SOTO, ET AL. v. THE GALLUP ORGANIZATION, INC.
**Case No. 0:13-cv-61747**

The Honorable Marcia G. Cooke, United States District Court, Southern District of Florida (June 16, 2015):  The Court approves the form and substance of the notice of class action settlement described in ¶ 8 of the Agreement and attached to the Agreement as Exhibits A, C and D. The proposed form and method for notifying the Settlement Class Members of the settlement and its terms and conditions meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled to the notice. The Court finds that the proposed notice is clearly designed to advise the Settlement Class Members of their rights.

### OTT v. MORTGAGE INVESTORS CORPORATION OF OHIO, INC.
**Case No. 3:14-cv-00645**

The Honorable Janice M. Stewart, United States District Court, District of Oregon (July 20, 2015):  The Notice Plan, in form, method, and content, fully complies with the requirements of Rule 23 and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled thereto. The Court finds that the Notice Plan is reasonably calculated to, under all circumstances, reasonably apprise the persons in the Settlement Class of the pendency of this action, the terms of the Settlement Agreement, and the right to object to the Settlement and to exclude themselves from the Settlement Class.

# Exhibit B

**Sender Email:** DoNotReply@PlaidSettlement.com

**Sender Name:** Settlement Administrator

**Subject Line:** Notice of Class Action Settlement – In re Plaid Inc. Privacy Litigation

Notice ID:  [Notice ID number]
Confirmation Code:  [Confirmation code number]

### Notice of Class Action Settlement - In re Plaid Inc. Privacy Litigation

**If you connected your financial account to a mobile or web-based app that has used Plaid between January 1, 2013 and [ ] in the United States, you may be eligible for a payment from a class action settlement.**

This is a Court-approved Legal Notice. This is not an advertisement.

A Settlement has been proposed in class action litigation against Plaid Inc. ("Plaid").  Plaid enables connections between a user's financial account(s) and approximately 5,000 mobile and web-based applications ("apps").  This class action alleges Plaid took certain improper actions in connection with this process.  The allegations include that Plaid: (1) obtained more financial data than was needed by a user's app, and (2) obtained log-in credentials (username and password) through its interface, known as Plaid Link, which the litigation alleges had the look and feel of the user's own bank account login screen, when users were actually providing their login credentials directly to Plaid.  Plaid denies these allegations and any wrongdoing and maintains that it adequately disclosed and maintained transparency about its practices to consumers.

**Who is Included?**  You are a Class Member, and you are affected by this Settlement, if you own or owned one or more "Financial Accounts" between January 1, 2013 and [ ]. A "Financial Account" is any checking, savings, loan, or other account at a financial institution (1) that Plaid accessed using the user's login credentials and connected to a mobile or web-based fintech application that enables payments (including ACH payments) or other money transfers or (2) for which a user provided financial account login credentials to Plaid through Plaid Link, and you were a United States resident at the time.

**What does the settlement provide?** Under the Settlement, Plaid will pay $58 million to establish a Settlement Fund.

After deducting any court-approved attorneys' fees and expenses and Service Awards for the Class Representatives, and the costs of the settlement administration, the Settlement Fund will be distributed to Class Members on a pro rata basis.  The amount of the payments to individual Class Members will depend on the number of valid claims that are filed.

The Settlement also requires Plaid to:

•        Delete certain data from Plaid systems;

- Inform Class Members of their ability to use Plaid Portal to manage the connections made between their financial accounts and chosen applications using Plaid and delete data stored in Plaid's systems;

- Continue to include certain disclosures and features in Plaid's standard Link flow;

- Enhance disclosures about Plaid's data collection practices, how Plaid uses data, and privacy controls Plaid has made available to uses in Plaid's End User Privacy Policy;

- Minimize the data that Plaid stores; and

- Continue to host a dedicated webpage with detailed information about Plaid's security practices.

**How do I get a payment?** You must submit a valid Claim Form by [DATE]. Claim Forms may be submitted online at www.PlaidSettlement.com or printed from the website and mailed to the address on the Claim Form. Claim Forms are also available by calling XXX-XXX-XXXX or emailing [EMAIL ADDRESS].

**Do I have a lawyer in the case?** If you are a Class Member, you have a lawyer in this case. The Court appointed as "Class Counsel" the law firms Burns Charest LLP; Herrera Kennedy LLP; and Lieff Cabraser Heimann & Bernstein LLP to represent the Class Members. If you want to be represented by your own lawyer, you may hire one at your own expense.

**Your other options**. If you are included in the settlement and do nothing, your rights will be affected and you won't get a payment. If you don't want to be legally bound by the settlement, you must exclude yourself from it by [DATE]. Unless you exclude yourself, you won't be able to sue or continue to sue Plaid for any claim made in this lawsuit or released by the Settlement Agreement. If you stay in the settlement (i.e., don't exclude yourself), you may object to it or ask for permission for you or your lawyer to appear and speak at the Final Approval Hearing – at your own cost – but you don't have to. Objections and requests to appear are due by [DATE]. More information about these options is available at www.PlaidSettlement.com.

**The Court's hearing**. The Court will hold the Final Approval Hearing at [__] on [Month] [Day], 2021 in Courtroom 4 (3rd Floor) of the United States Courthouse, 1301 Clay Street, Oakland, CA 94612.  At the Final Approval Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them. The Court may listen to people who appear at the hearing and who have provided notice of their intent to appear at the hearing. The Court may also consider Class Counsel's application for attorneys' fees, expenses and for Service Awards. At or after the hearing, the Court will decide whether to approve the Settlement and to approve Class Counsel's application for attorneys' fees, expenses and Service Awards.

This notice is only a summary.

For more information visit www.PlaidSettlement.com or call XXX-XXX-XXXX.

# Exhibit C

**Notice of Class Action Settlement**
**In re Plaid Inc. Privacy Litigation**

**If you connected your financial account to a mobile or web-based app that has used Plaid between January 1, 2013 and [ ] in the United States,**
**you may be eligible for a payment from a class action settlement.**

*This is a Court-approved Legal Notice.*
*This is not an advertisement.*

*This notice is only a summary. It contains information about a class action settlement. More detailed information can be found at:*

***www.PlaidSettlement.com***
***Questions? XXX-XXX-XXXX***

Plaid Privacy Litigation
c/o Settlement Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

Forwarding Service Requested
[BARCODE]
Postal Service: Please do not mark barcode

Notice ID: XXXXXX
Confirmation Code: XXXXXX

FIRST NAME LAST NAME
ADDRESS 1
ADDRESS 2
CITY, ST ZIP

A Settlement has been proposed in this class action litigation against Plaid Inc. ("Plaid"). Plaid enables connections between a user's financial account and approximately 5,000 mobile and web-based applications ("apps"). This class action alleges Plaid took certain improper actions by (1) obtaining log-in credentials to user's financial accounts through an interface ("Plaid Link") that allegedly had the look and feel of a bank account login screen, when in fact it was Plaid itself; and (2) obtaining more financial and other data than was authorized or needed by a user's app. Plaid denies these allegations and any wrongdoing and maintains that it adequately disclosed and maintained transparency about its practices.

**Who is Included?** You may be a Class Member, and affected by this Settlement, if you are a United States resident who connected a financial account to an app between January 1, 2013 and [[_]]. More specifically, you are a Class Member if you own or owned one or more "Financial Accounts" between January 1, 2013 and [[_]]. "Financial Accounts" is any checking, savings, loan, or other account at a financial institution (1) that Plaid accessed using the user's login credentials and connected to a mobile or web-based fintech application that enables payments (including ACH payments) or other money transfers or (2) for which a user provided financial account login credentials to Plaid through Plaid Link. You are receiving this notice because records indicate you may be a Class Member. For additional information on how to confirm whether you are a Class Member, please visit www.PlaidSettlement.com.

**What does the settlement provide?** Under the Settlement, Plaid will pay $58 million to establish a Settlement Fund. After deducting any court-approved attorneys' fees and expenses, Service Awards for the Class Representatives, and the costs of the settlement administration, the Settlement Fund will be distributed to Class Members on a pro rata basis. The amount of the payments to individual Class Members will depend on the number of valid claims that are filed. The Settlement also requires Plaid to provide other non-monetary benefits. Please visit www.PlaidSettlement.com for more information.

**How do I get a payment?** You must submit a valid Claim Form submitted online or postmarked by [DATE]. Claim Forms may be submitted online at www.PlaidSettlement.com or by completing and returning a Claim Form to the Settlement Administrator. Please visit www.PlaidSettlement.com for more information.

**Do I have a lawyer in the case?** If you are a Class Member, you have a lawyer in this case. The Court appointed as "Class Counsel" the law firms Burns Charest LLP; Herrera Kennedy LLP; and Lieff Cabraser Heimann & Bernstein LLP to represent the Class Members. Their contact information is available at www.PlaidSettlement.com. If you want to be represented by your own lawyer, you may hire one at your own expense.

**Your other options.** If you are included in the settlement and do nothing, your rights will be affected and you won't get a payment. If you don't want to be legally bound by the settlement, you must exclude yourself from it by [DATE]. Unless you exclude yourself, you won't be able to sue or continue to sue Plaid for any claim made in this lawsuit or released by the Settlement Agreement. If you exclude yourself, you won't receive a payment. If you stay in the settlement (i.e., don't exclude yourself), you may object to it or ask for permission for you or your lawyer to appear and speak at the Final Approval Hearing – at your own cost – but you don't have to. Objections and requests to appear are due by [DATE]. More information about these options is available at www.PlaidSettlement.com.

**The Court's hearing.** The Court will hold the Final Approval Hearing at [__] on [Month] [Day], 2021 in Courtroom 4 (3rd Floor) of the United States Courthouse, 1301 Clay Street, Oakland, CA 94612. At the Final Approval Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may listen to people who appear at the hearing and who have provided notice of their intent to appear at the hearing. The Court may also consider Class Counsel's application for attorneys' fees, expenses, and Service Awards. At or after the hearing, the Court will decide whether to approve the Settlement and to approve Class Counsel's application for attorneys' fees, expenses, and Service Awards. The date of the Final Approval Hearing may change without further notice, and Class Members should check www.PlaidSettlement.com to confirm that the date has not been changed.

# EXHIBIT E

HERRERA KENNEDY LLP
Shawn M. Kennedy (SBN 218472)
skennedy@herrerakennedy.com
Bret D. Hembd (SBN 272826)
bhembd@herrerakennedy.com
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Tel: (949) 936-0900
Fax: (855) 969-2050

HERRERA KENNEDY LLP
Nicomedes Sy Herrera (SBN 275332)
nherrera@herrerakennedy.com
Laura E. Seidl (SBN 269891)
lseidl@herrerakennedy.com
1300 Clay Street, Suite 600
Oakland, CA 94612
Tel: (510) 422-4700
Fax: (855) 969-2050

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Rachel Geman (Pro Hac Vice)
rgeman@lchb.com
Rhea Ghosh (Pro Hac Vice)
rghosh@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel: (212) 355-9500
Fax: (212) 355-9592

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008

BURNS CHAREST LLP
Warren T. Burns (Pro Hac Vice)
wburns@burnscharest.com
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002

BURNS CHAREST LLP
Christopher J. Cormier (Pro Hac Vice)
ccormier@burnscharest.com
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 577-3977
Fax: (469) 444-5002

*Interim Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| IN RE PLAID INC. PRIVACY LITIGATION | Master Docket No.: 4:20-cv-03056-DMR |
|---|---|
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT** Hon. Donna M. Ryu Action Filed: May 4, 2020 Trial Date: None Set |

WHEREAS, Plaintiffs James Cottle and Frederick Schoeneman filed a Complaint and commenced the action entitled *Cottle et al. v. Plaid Inc.*, No. 4:20-cv-03056-DMR ("Cottle Action"), and the Court granted a stipulation to consolidate the Cottle Action with four-subsequently-filed related actions to form the action pending before the Court and entitled *In re Plaid Inc. Privacy*, No. 4:20-cv-03056-DMR (N.D. Cal.) (collectively, the "Action") (Dkt. 57);

WHEREAS, Plaintiffs Caroline Anderson, James Cottle, Rachel Curtis, David Evans, Logan Mitchell, Alexis Mullen, Jordan Sacks, Frederick Schoeneman, Gabriel Sotelo, Jeffrey Umali, and Nicholas Yeomelakis filed a Consolidated Amended Class Action Complaint (Dkt. 61) and subsequently entered into an Agreement with Defendant Plaid Inc. that, if approved, would settle the Action;

WHEREAS, Plaintiffs have moved, pursuant to Rule 23(e), for an order preliminarily approving the settlement of this Action pursuant to the terms and conditions set forth in the Parties' Agreement (the "Motion"); and

WHEREAS, the Court, having considered the Motion, the Agreement together with all exhibits and attachments thereto, the record in the Action, the parties' briefs, and arguments of counsel,

**NOW THEREFORE, THE COURT HEREBY FINDS AND ORDERS AS FOLLOWS:**

1. <u>Settlement Terms.</u>  Unless otherwise defined herein, all capitalized terms herein shall have the same definitions as set forth in the Class Action Settlement Agreement ("Agreement" or "Settlement Agreement") between Defendant Plaid Inc. ("Plaid") and Plaintiffs Caroline Anderson, James Cottle, Rachel Curtis, David Evans, Logan Mitchell, Alexis Mullen, Jordan Sacks, Frederick Schoeneman, Gabriel Sotelo, Jeffrey Umali, and Nicholas Yeomelakis ("Plaintiffs") (collectively, the "Parties").

2. <u>Jurisdiction.</u>  This Court has jurisdiction over the subject matter of the Action and all parties to the Action, including members of the Class.

3. <u>Preliminary Approval of Proposed Settlement Agreement.</u>  The Court finds that, subject to further consideration at the Final Approval Hearing, the Parties' proposed Settlement

- 1 -

Agreement is fair, reasonable, adequate, and within the range of possible final approval considering the possible damages at issue and defenses to overcome. The Court also finds that the Settlement Agreement: (a) is the result of extensive, serious, informed, non-collusive, and arm's length negotiations involving experienced counsel familiar with the legal and factual issues of this case and made with the assistance of the mediation services of Hon. Jay Gandhi (Ret.); (b) meets all applicable requirements of law, including Rule 23(e) of the Federal Rules of Civil Procedure and the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715;  (c) is likely to be certified as a class for settlement purposes pursuant to Rule 23 of the Federal Rules of Civil Procedure; and (d), has no obvious deficiencies. Therefore, the Court grants preliminary approval of the Settlement Agreement, including the terms and conditions for settlement and dismissal as set forth therein.

4.  <u>Settlement Class.</u>  The Class consists of all natural persons in the United States and who own or owned one or more Financial Accounts that:  (1) Plaid accessed using the user's login credentials and connected to a mobile or web-based fintech application that enables payments (including ACH payments) or other money transfers; or (2) for which a user provided financial account login credentials to Plaid through Plaid Link, at the time such persons resided in the United States from January 1, 2013 through the date of this Order granting preliminary approval of the Settlement. Notwithstanding the foregoing, a Financial Account does not include an account that was connected, or for which credentials were provided, exclusively through an OAuth Process or Managed OAuth Process.

5.  The following entities and individuals are not Class Members: (a) Plaid and any and all of its predecessors, successors, assigns, parents, subsidiaries, affiliates, directors, officers, employees, agents, representatives, and attorneys, and any and all of the parents', subsidiaries', and affiliates' present and former predecessors, successors, assigns, directors, officers, employees, agents, representatives, and attorneys; (b) any judicial officer presiding over the Action, or any member of his or her immediate family or of his or her judicial staff; and (c) any Excluded Class Member.

6. <u>Class Representatives.</u>  The Court appoints Plaintiffs Caroline Anderson, James Cottle, Rachel Curtis, David Evans, Logan Mitchell, Alexis Mullen, Jordan Sacks, Frederick Schoeneman, Gabriel Sotelo, Jeffrey Umali, and Nicholas Yeomelakis as Class Representatives.

7. <u>Class Counsel.</u>  The Court appoints Christopher Cormier, Burns Charest LLP; Shawn Kennedy, Herrera Kennedy LLP, and Rachel Geman, Lieff, Cabraser, Heimann & Bernstein, LLP as Class Counsel.

8. <u>Settlement Administrator.</u>  The Court hereby approves Angeion Group, LLC to act as Settlement Administrator. Angeion Group, LLC shall be required to perform all the duties of the Settlement Administrator as set forth in the Agreement and this Order.

9. <u>Qualified Settlement Fund.</u>  Angeion Group, LLC is authorized to establish the Settlement Fund under 26 C.F.R. §§ 1.468B-1 for federal tax purposes. The Settlement Fund shall be a court-approved Qualified Settlement Fund ("QSF") for federal tax purposes pursuant to Treas. Reg. § 1.468B-1. Plaid shall be the "transferor" to the QSF within the meaning of Section 1.468B-1(d)(1) of the Treasury Regulations with respect to the Settlement Fund. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations, responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Section 1.468B-2(l)(2) of the Treasury Regulations or any other applicable law on or with respect to the QSF. Plaid shall provide to the Settlement Administrator any documentation required for the Settlement Administrator to facilitate obtaining QSF status for the Settlement Fund pursuant to Treas. Reg. §1.468B-l. All taxes on income or interest generated by the Settlement Fund, if any, shall be paid out of the Settlement Fund.

10. <u>Class Notice.</u>  The Court finds that the content, format, and method of disseminating notice as set forth in the Settlement Agreement and documents in support of Plaintiffs' Motion is appropriate notice. The Court approves, as to form and content, the Notice of Class Action Settlement attached to the Settlement Agreement, the Notice Plan, the Settlement Website, and the

- 3 -

forms of notice submitted with Plaintiffs' Motion. The Court finds that dissemination of the class notice, as proposed in the Settlement Agreement and in the Notice Plan, meets the requirements of Rule 23 and due process, and further constitutes the best notice practicable under the circumstances. Accordingly, the Court hereby approves such notice and directs that such notice be disseminated in the manner set forth in the proposed Settlement Agreement under Rule 23.

11. <u>Objection and Exclusion Deadline.</u>  Class Members who wish either to object to the Settlement or to exclude themselves from the Settlement must do so by the Objection and Exclusion Deadline of _____, 2021 both of which are thirty-five (35) days after the Notice Date.

12. <u>Exclusion from Settlement Class.</u>  To submit a request for exclusion, Class Members must follow the directions in the Notice, send a compliant request to the Class Administrator at the address designated in the Class notice, and be post-marked by the Exclusion Deadline. To be valid, the request for exclusion must:  (a) be in writing and mailed; (b) contain the name and case number of this Action, *In re Plaid Inc. Privacy Litigation*, No. 4:20-cv-03056); (c) contain the full name, mailing address, and email address or telephone number of the Class member; (d) contain the words "Notification of Exclusion" or a statement that the Class member wishes to be excluded from the Settlement; and (e) contain the handwritten or electronically imaged written (*e.g.*, "DocuSign") signature of the Class member. An attorney's signature or a typed signature will not satisfy this requirement. Further, no request for exclusion may be made on behalf of a group of Class Members.

13. All Class Members who submit a timely, valid request for exclusion will be excluded from the Class and will not be bound by the terms of the Settlement Agreement or any determinations or judgments concerning the Settlement Agreement. All Class Members who do not submit a valid request for exclusion by _____, 2021 in accordance with the terms set forth in the Agreement and Notice will be bound by all determinations and judgments concerning the Agreement.

14. <u>Objections to the Settlement.</u>  Any Class member who is not an Excluded Class Member may object to the settlement. Class Members who wish to object to the settlement must make a written statement objecting to the Settlement. Such written statement must be filed at any

- 4 -

location of the United States District Court for the Northern District of California; mailed to the Clerk of Court, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612; or sent to the Settlement Administrator at the address specified in the Notice of Class Action Settlement no later than the Objection/Exclusion Deadline set by this Order.

15. Any objection must:  (a) be in writing; (b) contain the name and case number of this Action, *In re Plaid Inc. Privacy Litigation*, No. 4:20-cv-03056); (c) the objector's full name and mailing address, email address, or telephone number, and personal signature; (d) the objector's basis for believing they are a Class member; (e) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying counsel by name, address, and phone number; and (f) a clear and concise statement of the grounds for their objection.

16. The date of the postmark on the envelope containing the written statement objecting to the settlement shall be the exclusive means used to determine whether an objection and/or intention to appear has been timely submitted.  In the event a postmark is illegible, the date of mailing shall be deemed to be three (3) days prior to the date the Settlement Administrator received the written statement.

17. Class Members who fail to file and serve timely written objections in the manner specified herein and the Notice Plan shall be deemed to have waived any objections and shall be forever barred from making any objection to the Agreement and the proposed settlement by appearing at the Final Approval Hearing, appeal, collateral attack, or otherwise.

18. Objecting Class Members may appear at the Final Approval Hearing and be heard. If an objecting Class member chooses to appear at the Final Approval Hearing, a notice of intention to appear should be filed with the Court or postmarked no later than the Objection Deadline.

19. All members of the Class, except those who submit timely requests for exclusion will be bound by all determinations and judgments in this Action; whether favorable or unfavorable to the Class.

- 5 -

20. <u>Submission of Claims.</u>  To participate in the Settlement, Class Members must follow the directions in the Settlement Agreement, Notice, and submit an Approved Claim with the Claims Administrator by the Claims Deadline of _____, which is ninety (90) days after the settlement Notice Date. Class Members who do not submit a claim and those who do not submit Approved Claims will not receive a cash award, but they will be bound by the Settlement.

21. The Settlement Administrator shall review all claims to determine their validity and shall employ reasonable procedures to screen claims for abuse and fraud.  The Settlement Administrator may reject any claim that is not submitted by a Class member; is a duplicate of another claim; is reasonably suspected to be fraudulent; or is submitted after the Claims Deadline. The Settlement Administrator shall determine whether a Claim Form submitted by a Class member is an Approved Claim and shall reject Claim Forms that fail to comply in any material respect with the instructions in the Notice Plan or the terms of the Agreement.

22. <u>Schedule of Future Events.</u>  The Court adopts the Plaintiffs proposed schedule of future events as set forth below:

| Event | Date |
| --- | --- |
| Deadline to substantially complete notice pursuant to Notice Plan ("Notice Date") | 70 days after entry of the Court's Preliminary Approval Order |
| Deadline for Class Counsel's motions for final approval and for attorneys' fees, costs, and service awards. | 35 days before Objection/Exclusion Deadline |
| Objection / Exclusion Deadline | 35 days after Notice Date |
| Deadline for Parties to file a written response to any comment or objection filed by a class member | 50 days after Notice Date |
| Claims Deadline | 90 days after Notice Date |
| Final Approval Hearing | Not less than 160 days after entry of the Preliminary Approval Order, or as soon thereafter as is convenient for the Court |

23. <u>Final Approval Hearing.</u>   A Final Approval Hearing is scheduled for _____, 2021 at _____ for the Court to determine whether the proposed settlement of

- 6 -

the Action, pursuant to the terms and conditions provided in the Settlement Agreement, is fair, reasonable, and adequate to the Class and should be finally approved by the Court; whether to certify the settlement Class under Fed. R. Civ. P. 23; whether a Judgment should be entered; to determine any amount of fees, costs, and expenses that should be awarded to Class Counsel; and to determine the amount of any Service Award to Plaintiffs. The Court reserves the right to adjourn the date of the Final Approval Hearing without further notice to the Class Members, and the Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.  The Court may approve the Settlement with such modifications as may be agreed to by the settling parties, if appropriate, without further notice to the Class.

24. <u>Stay of Proceedings.</u>  On June 16, 2021, the parties filed a stipulation to stay all non-settlement proceedings in the Action, pending finalization and execution of a long form settlement agreement, which was granted on June 17, 2021. (Dkt. 132, 133) All proceedings in this Action are stayed until further ordered by this Court, except as may be necessary to implement the Settlement or comply with the terms of the Settlement Agreement. Pending final determination of whether the proposed Settlement should be approved, neither Plaintiffs nor any Class member, directly or indirectly, representatively, or in any other capacity, shall commence or prosecute against Plaid any action, or proceeding in any court or tribunal asserting any of the Plaintiffs' Released Claims.

25. If the Settlement is not approved or consummated for any reason whatsoever, the Settlement and all proceedings in connection with the Settlement will be without prejudice to the right of Plaid or the Class Representatives to assert any right or position that could have been asserted if the Agreement had never been reached or proposed to the Court, except insofar as the Agreement expressly provides to the contrary. In such an event, the certification of the Class will be deemed vacated.

26. <u>No Admission of Liability.</u>  By entering this Order, the Court does not make any determination as to the merits of this case. Preliminary approval of the Settlement Agreement is not a finding of admission or liability by Plaid. Furthermore, the Agreement and any and all negotiations, documents, and discussions associated with it will not be deemed or constructed to be an admission

- 7 -

or evidence of any violation of any statute, law, rule, regulation, or principle of common law or equity, or of any liability or wrongdoing by Plaid or any Class member, or the truth of any of the claims in this Action.

27. <u>Retention of Jurisdiction.</u>  The Court retains jurisdiction over the Action to consider all further matters arising out of, or connected to, the Settlement Agreement and the settlement process as described herein and/or permitted under applicable law.

28. The Court may approve the Settlement with such modifications as may be agreed by the Parties and approved by the Court, if appropriate, without further notice to the class.

**IT IS SO ORDERED.**

Dated: _____, 2021

_____
Hon. Donna M. Ryu
UNITED STATES MAGISTRATE JUDGE

- 8 -