UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IN RE PLAID INC. PRIVACY
LITIGATION

Master Docket No.: 4:20-cv-03056-DMR

**DECLARATION OF
STEVEN WEISBROT ON BEHALF
OF ANGEION GROUP, LLC**

I, Steven Weisbrot, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am the President and Chief Innovation Officer at the class action notice and claims administration firm Angeion Group, LLC ("Angeion"). I am fully familiar with the facts contained herein based upon my personal knowledge.

2.      I have been responsible in whole or in part for the design and implementation of hundreds of court-approved notice and administration programs, including some of the largest and most complex notice plans in recent history. I have taught numerous accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Due Process Notice Programs, as well as Claims Administration, generally. I am the author of multiple articles on Class Action Notice, Claims Administration, and Notice Design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, the ABA Class Action and Derivative Section Newsletter, and I am a frequent speaker on notice issues at conferences throughout the United States and internationally.

3.      I was certified as a professional in digital media sales by the Interactive Advertising Bureau ("IAB") and I am co-author of the Digital Media section of Duke Law's *Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23* and the soon to be published George Washington Law School Best Practices Guide to Class Action Litigation.

1

4.      I have given public comment and written guidance to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, broadcast media, digital media and print publication, in effecting Due Process notice, and I have met with representatives of the Federal Judicial Center to discuss the 2018 amendments to Rule 23 and offered an educational curriculum for the judiciary concerning notice procedures.

5.      Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants, an experienced notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice.

6.      My notice work comprises a wide range of class actions that include product defect, data breach, mass disasters, false advertising, employment discrimination, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases.

7.      I have been at the forefront of infusing digital media, as well as big data and advanced targeting, into class action notice programs. Courts have repeatedly recognized my work in the design of class action notice programs. A comprehensive summary of judicial recognition Angeion has received is attached hereto as **Exhibit A**.

8.      By way of background, Angeion is an experienced class action notice and claims administration company formed by a team of executives that have had extensive tenures at five other nationally recognized claims administration companies. Collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $15 billion to class members. The executive profiles as well as the company overview are available at https://www.angeiongroup.com/our_team.php.

9.      As a class action administrator, Angeion has regularly been approved by both federal and state courts throughout the United States and abroad to provide notice of settlement and claims processing services.

## SUMMARY OF THE NOTICE PROGRAM

10.      The proposed Notice Program is the best notice that is practicable under the circumstances and fully comports with due process and Fed. R. Civ. P. 23. It provides individual direct notice to

2

all reasonably identifiable Class Members via email or mail, combined with a strategic media campaign comprised of state-of-the-art digital advertising, social media advertising, search engine marketing, sponsored listings on two leading class action settlement websites and engagement on social media. The Notice Program also includes the implementation of a dedicated website and a toll-free telephone line where Class Members can learn more about their rights and options pursuant to the terms of the Settlement.

11.     As discussed in greater detail below, the Notice Program is designed to deliver an approximate 80.40% reach with an average frequency of 3.62 times. What this means in practice is that 80.40% of our Target Audience will see a digital advertisement concerning the Settlement an average of 3.62 times each. The 80.40% reach is separate and apart from the direct notice efforts, sponsored listings, engagement on social media, dedicated website and toll-free telephone line, all of which are difficult to measure in terms of reach percentage but will nonetheless provide awareness and diffuse news of the Settlement to Class Members.

12.     The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide for Judges", at 27 (3d Ed. 2010).

## CLASS DEFINITION

13.     The Settlement Agreement defines the "Class" as "all natural persons who reside in the United States and who own or owned one or more Financial Accounts at the time such persons resided in the United States from January 1, 2013 to the date preliminary approval of the settlement is granted." The Agreement defines "Financial Account" as "a financial institution account (1) that Plaid accessed using the user's login credentials and connected to a mobile or web-based fintech application that enables payments (including ACH payments) or other money transfers or (2) for which a user provided financial account login credentials to Plaid through Plaid Link," subject to certain exclusions as defined in the Settlement Agreement.

14.     Angeion has been informed that it will be provided with approximately 65 million unique email addresses for certain Class Members and mailing addresses for certain other Class Members. Angeion will use the Settlement Class Member data (the "Class List") to provide direct notice to Class Members, as outlined below.

### DIRECT NOTICE

15.     The direct notice effort in this matter will consist of sending individual notice via email or mail to all potential Class Members who have been identified by the Defendant through its records and for whom contact information is included on the Class List that is provided to Angeion.

**Email Notice**

16.     The direct email notice effort in this matter will consist of sending individual email notice in the form attached hereto as **Exhibit B** to all potential Class Members for whom email addresses were provided to Angeion on the Class List.

17.     As an initial matter, Angeion designs the email notice to avoid many common "red flags" that might otherwise cause a potential Class Member's spam filter to block or identify the email notice as spam. For instance, Angeion does not include the Claim Form or Long Form Notice as an attachment to the email notice, because attachments are often interpreted by various Internet Service Providers ("ISP") as spam. Rather, in accordance with industry best practices, Angeion includes a link to all operative documents so that Class Members can easily access this information.

18.     Angeion will employ additional methods to help ensure that as many Class Members as possible receive notice via email. Specifically, prior to distributing email notice, Angeion will engage in an email updating process to help ensure the accuracy of recipient email addresses. Angeion also reviews email addresses for mis-transcribed characters and performs other hygiene, as appropriate.

19.     Angeion also accounts for the real-world reality that some emails will inevitably fail to be delivered during the initial delivery attempt. Therefore, after the initial noticing campaign is complete, Angeion, after an approximate 24-72-hour rest period, which allows any temporary block at the ISP level to expire, causes a second round of email noticing to continue to any email addresses

4

that were previously identified as soft bounces and not delivered. In our experience, this minimizes emails that may have erroneously failed to deliver due to sensitive servers and optimizes delivery.

20.     At the completion of the email campaign, Angeion will report to the Court concerning the rate of delivered emails accounting for any emails that are blocked at the ISP level. In short, the Court will possess a detailed, verified account of the success rate of the entire direct notice campaign.

21.     The Notice Program also includes a custom social media campaign utilizing Facebook[1] and Instagram[2], which are two of the leading social media platforms in North America. This strategic combination is designed to target Class Members whose email notice could not be delivered. If any of the email addresses (or phone numbers, if available) are used as the primary log-on for a Facebook or Instagram account, Angeion will be able to display ads directly to those Class Members on their timeline. This is a distinct and effective method of targeting actual known, verified Class Members. These efforts are in addition to the interest-based social media advertising, which is described in greater detail below.

**Mail Notice**

22.     As part of the Notice Program, Angeion will send a postcard notice in the form attached hereto as **Exhibit C** via first-class U.S. mail, postage pre-paid, to Class Members who did not have an email address and for whom a mailing address is included in the Class List provided to Angeion. In administering the Notice Program in this action, Angeion will employ the following best practices to increase the deliverability rate of the mailed notices.

23.     Angeion will cause the mailing address information for members of the Class to be updated utilizing the National Change of Address ("NCOA") database, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the USPS.

---

[1] In 2020, Facebook had an approximate 223 million users in the United States (https://www.statista.com/statistics/408971/number-of-us-facebook-users/).
[2] In 2020, Instagram had an approximate 112 million users in the United States (https://www.statista.com/statistics/293771/number-of-us-instagram-users/).

24.     Notices returned to Angeion by the USPS with a forwarding address will be re-mailed to the new address provided by the USPS and the class member database will be updated accordingly.

25.     Notices returned to Angeion by the USPS without forwarding addresses will be subjected to an address verification search (commonly referred to as "skip tracing") utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, etc., to locate updated addresses.

26.     For any Class Members where a new address is identified through the skip trace process, the class member database will be updated with the new address information and a Notice will be re-mailed to that address.

## MEDIA NOTICE

**Programmatic Display Advertising**

27.     Angeion will utilize a form of internet advertising known as Programmatic Display Advertising, which is the leading method of buying digital advertisements in the United States. It has been reported that U.S. advertisers spent nearly $65.74 billion on programmatic display advertising in 2020 and it is estimated that almost 86.5%, or $81.58 billion, of all U.S. digital display ad dollars will transact programmatically in 2021[3]. In laymen's terms, programmatic advertising is a method of advertising where an algorithm identifies and examines demographic profiles and uses advanced technology to place advertisements on the websites where members of the audience are most likely to visit (these websites are accessible on computers, mobile phones and tablets).

28.     The Settlement Class definition was used as the starting point to create the media notice campaign. To develop the media notice campaign and to verify its effectiveness, our media team analyzed data from 2021 comScore Multi-Platform//GfK MRI Media + Fusion to profile the class and arrive at an appropriate Target Audience based on criteria specific to this litigation.

---

[3] https://www.emarketer.com/content/us-programmatic-digital-display-advertising-outlook-2021

DECLARATION OF STEVEN WEISBROT

29.     Based on the characteristics of this settlement, Angeion estimates that the size of the Target Audience for the media notice campaign is approximately 112,417,000 individuals.  The Target Audience is based on objective syndicated data, which is routinely used by advertising agencies and experts to understand the demographics, shopping habits and attitudes of the consumers that they are seeking to reach. Using this form of objective data will allow the parties to report the reach and frequency to the court, with the confidence that the reach percentage and the number of exposure opportunities complies with due process and exceeds the Federal Judicial Center's threshold as to reasonableness in notification programs.

30.     To identify the best vehicles to deliver messaging to the Target Audience, Angeion also reviewed the media quintiles, which measure the degree to which an audience uses media relative to the general population. Here, the objective syndicated data shows that members of the Target Audience are heavy internet users.

31.     Given the strength of digital advertising, as well as our Target Audience's heavy internet use, we recommend utilizing a robust internet advertising campaign to reach Class Members. This media schedule will allow us to deliver an effective reach level and a vigorous frequency, which will provide due and proper notice to the class.

32.     Multiple targeting layers will be implemented into the programmatic campaign to help ensure delivery to the most appropriate users, inclusive of the following tactics:

- Look-a-like Modeling: This technique utilizes data methods to build a look-a-like audience against known Class Members.

- Predictive Targeting: This technique allows technology to "predict" which users will be served the advertisement about the litigation.

- Audience Targeting: This technique utilizes technology and data to serve the impressions to the intended audience based on demographics, purchase behaviors and interests.

- Site Retargeting: This technique is a targeting method used to reach potential Class Members who have already visited the dedicated case website while they browse other pages. This

7

allows Angeion to provide a potential Class Member sufficient exposure to an advertisement about the litigation.

33.    To combat the possibility of non-human viewership of the digital advertisements and to verify effective unique placements, Angeion employs Oracle's BlueKai, Adobe's Audience Manger and/or Lotame, which are demand management platforms ("DMP"). DMPs allow Angeion to learn more about the online audiences that are being reached.

34.    The internet banner notice portion will be implemented using a desktop and mobile campaign and incorporates video advertisements. The internet banner notice portion is strategically designed to notify and drive Class Members to the dedicated settlement website, where they can find more information about the Settlement and are able to submit a claim form directly via the settlement website.

**Social Media Notice**

35.    The Notice Program also includes an interest-based approach which focuses on the interests that users exhibit while on the social media platforms Facebook and Instagram. This strategic combination is designed to leverage the characteristics of our Target Audience, of which 92.89% used social media in the last month.

36.    The social media campaign will engage with the Target Audience via a mix of news feed and story units to optimize performance via the Facebook and Instagram desktop sites, mobile sites and mobile apps. Facebook image ads will appear natively in desktop newsfeeds (on Facebook.com) and mobile app newsfeeds (via the Facebook app or Facebook.com mobile site), and on desktops via right-column ads. Instagram Photo and Stories ads will appear on the desktop site (on Instagram.com) and mobile app feed (via the Instagram app or Instagram.com mobile site), and in users' story feeds.

37.    Additionally, specific tactics will be implemented to further qualify and deliver impressions to the Target Audience. We will use Facebook Marketing platform and its technology to serve ads on both Facebook and Instagram against the Target Audience. *Look-a-like modeling* allows the use of consumer characteristics to serve ads. Based on these characteristics, we can build

8

different consumer profile segments to ensure the notice plan messaging is delivered to the proper audience. *Conquesting* allows ads to be served in relevant placements to further alert prospective Class Members. The social media ads will further be geo-targeted weighted delivery based on how the Target Audience is geographically spread throughout the country.

38.     The social media campaign will run to coincide with the programmatic display advertising portion of the Notice Program. Combined, these two media tactics are designed to deliver approximately 326 million impressions.

**Paid Search Campaign**

39.     The Notice Plan also includes a paid search campaign to help drive Settlement Class Members who are actively searching for information about the Settlement to the dedicated Settlement Website. Paid search ads will complement the programmatic campaign, as search engines are frequently used to locate a specific website, rather than a person typing in the URL. Search terms would relate to not only the Settlement itself but also the subject-matter of the litigation.

**Sponsored Class Action Website Listings**

40.     Angeion will cause the Settlement to be listed and promoted through two leading class action settlement websites, www.topclassactions.com and www.classaction.org. These sites are known to create awareness of pending settlements among consumers and, while not measured in terms of the reported reach percentage, will be instrumental in seeding and disbursing news of the underlying settlement. *Top Class Actions* averages 3 million monthly visitors, has approximately 900,000 newsletter subscribers and 145,000 Facebook followers. *ClassAction.org* averages 100,000 page-views per month and has approximately 130,000 newsletter subscribers. Representative samples of listings on *Top Class Actions* and *ClassAction.org* can be viewed on their respective websites.

41.     The promotion these websites is not capable of precise reach calculations and is thus not included in the reach and frequency figures presented to the Court. Nonetheless, this mechanism will serve an important function in that they will help stimulate interest in the Settlement and drive

1 Class Members to the dedicated settlement website to read and understand their rights and options

2 under the Settlement.

3 **Social Media Engagement**

4 42.     Angeion will monitor public Twitter traffic for discussion of the settlement and will provide

5 information or respond to questions via Twitter on an ad hoc basis as appropriate, with advance

6 notice to the parties before beginning any outreach on Twitter.

7 **RESPONSE MECHANISMS**

8 43.     The Notice Program will also implement the creation of a case-specific website, where Class

9 Members can easily view general information about this class action Settlement, review relevant

10 Court documents, and view important dates and deadlines pertinent to the Settlement. The website

11 will be designed to be user-friendly and make it easy for Class Members to find information about

12 the case, including a customized video which will be displayed on the website. The website will

13 also have a "Contact Us" page whereby Class Members can send an email with any additional

14 questions to a dedicated email address. Likewise, Class Members will be able to submit a Claim

15 Form directly via the website.

16 44.     A toll-free hotline devoted to this case will be implemented to further apprise Class Members

17 of the rights and options pursuant to the terms of the Settlement. The toll-free hotline will utilize an

18 interactive voice response ("IVR") system to provide Class Members with responses to frequently

19 asked questions and provide essential information regarding the Settlement. This hotline will be

20 accessible 24 hours a day, 7 days a week.

21 **REACH AND FREQUENCY**

22 45.     This declaration describes the reach and frequency evidence which courts systemically rely

23 upon in reviewing class action publication notice programs for adequacy. The reach percentage and

24 the number of exposure opportunities meet or exceed the guidelines as set forth in the Federal

25 Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language

26 Guide.

27

28

46.     Specifically, the digital media and social media portions of the Notice Program are designed to deliver an approximate 80.40% reach with an average frequency of 3.62 times each. The 80.40% reach is separate and apart from the direct notice efforts, sponsored listings, engagement on social media, dedicated website and toll-free telephone line, all of which are difficult to measure in terms of reach percentage but will nonetheless provide awareness and diffuse news of the Settlement to Class Members.

## PLAIN LANGUAGE NOTICE DESIGN

47.     The proposed Notice forms used in this matter are designed to be "noticed," reviewed, and by presenting the information in plain language, understood by members of the Settlement Class. The design of the notices follows the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. The notice forms contain plain-language summaries of key information about the rights and options of members of the Settlement Class pursuant to the Settlement. Consistent with normal practice, prior to being delivered and published, all notice documents will undergo a final edit for accuracy.

48.     Angeion Group maintains a strong commitment to adhering to this requirement, drawing on its experience and expertise to craft notices that effectively convey the necessary information to members of the Settlement Class in plain language.

## CONCLUSION

49.     The Notice Program outlined above includes direct notice to all reasonably identifiable Class Members via email or mail, combined with a strategic media campaign comprised of state-of-the-art digital advertising, social media advertising, search engine marketing, sponsored listings on two leading class action settlement websites and engagement on social media. The Notice Program also includes the implementation of a dedicated settlement website and toll-free hotline to further inform Class Members of their rights and options in the Settlement and is strategically designed to generate active participation of Class Members in the Settlement.

50.     In my professional opinion, the Notice Program will provide full and proper notice to Class Members before the claims, opt-out and objection deadlines. Moreover, it is my opinion that the

11

Notice Program is the best notice that is practicable under the circumstances, and that it fully comports with due process and Fed. R. Civ. P. 23. After the Notice Program has concluded, Angeion will provide a final report verifying its effective implementation.

I hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 5, 2021

STEVEN WEISBROT

12