# Exhibit B

TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
THEODORE MAYA (SBN 223242)
*tmaya@ahdootwolfson.com*
CHRISTOPHER STINER (SBN 276033)
*cstiner@ahdootwolfson.com*
RACHEL JOHNSON (SBN 331351)
*rjohnson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111

MARK C. MOLUMPHY (SBN 168009)
*mmolumphy@cpmlegal.com*
TYSON C. REDENBARGER (SBN 294424)
*tredenbarger@cpmlegal.com*
NOORJAHAN RAHMAN (SBN 330572)
*nrahman@cpmlegal.com*
JULIA Q. PENG (SBN 318396)
*jpeng@cpmlegal.com*
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Tel: (650) 697-6000

*Interim Co-Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ZOOM VIDEO COMMUNICATIONS, INC. PRIVACY LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | CASE NO: 5:20-cv-02155-LHK<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon.    Lucy H. Koh<br>Crtrm:  8<br>Date:    October 21, 2021<br>Time:    1:30 P.M.<br><br>[Declarations of Cameron R. Azari, Alan Butler, and Cindy Cohn, and Joint Declaration of Tina Wolfson and Mark Molumphy, filed concurrently herewith] |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on October 21, 2021 at 1:30 p.m., in Courtroom 8 of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, San Jose, California 95113, the Honorable Lucy H. Koh, presiding, Plaintiffs[1] will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule"): (i) preliminarily approving the proposed Class Action Settlement Agreement and Release dated July 30, 2021 (attached as Exhibit 1 to the Joint Declaration of Tina Wolfson and Mark Molumphy, filed concurrently herewith); (ii) finding that, for purposes of effectuating the proposed Settlement, the prerequisites for class certification under Federal Rule of Civil Procedure 23(a) are likely to be found satisfied; (iii) approving the form and manner of notice to the Settlement Class; (iv) approving the selection of the Settlement Administrator; and (iv) scheduling a Final Approval Hearing before the Court.

Plaintiffs' motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Joint Declaration of Tina Wolfson and Mark Molumphy in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement ("Joint Declaration"), the Settlement Agreement, the Declarations of Cameron R. Azari of Epiq Class Action and Claims Solutions, Inc., Alan Butler of Electronic Privacy Information Center, and Cindy Cohn of Electronic Frontier Foundation, all exhibits attached thereto, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

### STATEMENT OF ISSUES TO BE DECIDED

1. Whether the proposed Settlement warrants: (a) the Court's preliminary approval; (b) a finding that, for purposes of effectuating the proposed Settlement, the prerequisites for class certification under Federal Rule of Civil Procedure 23(a) are likely to be found satisfied; (c)

---

[1] All capitalized words and terms are defined in the Settlement Agreement (Section 1) unless otherwise defined herein.

dissemination of Notice of the Settlement's terms to Settlement Class Members; and (d) a hearing on Motions for final approval of the Settlement, and an award of Service Payments to Class Representatives, attorneys' fees, and reimbursement of expenses;

2. Whether the proposed Notice satisfies due process and adequately apprises the Settlement Class Members of the terms of the Settlement and their rights with respect to it;

3. Whether Epiq Class Action and Claims Solutions, Inc. should be appointed as Settlement Administrator;

4. Whether the proposed plan of allocation of the Settlement Fund should be preliminarily approved; and

5. Whether the Claim Form is sufficient.

Respectfully submitted,

Dated: July 31, 2021

/s/ Mark C. Molumphy
MARK C. MOLUMPHY (SBN 168009)
mmolumphy@cpmlegal.com
TYSON C. REDENBARGER (SBN 294424)
tredenbarger@cpmlegal.com
NOORJAHAN RAHMAN (SBN 330572)
nrahman@cpmlegal.com
JULIA Q. PENG (SBN 318396)
jpeng@cpmlegal.com
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Tel: (650) 697-6000

Dated: July 31, 2021

/s/ Tina Wolfson
TINA WOLFSON (SBN 174806)
twolfson@ahdootwolfson.com
THEODORE MAYA (SBN 223242)
tmaya@ahdootwolfson.com
CHRISTOPHER STINER (SBN 276033)
cstiner@ahdootwolfson.com
RACHEL JOHNSON (SBN 331351)
rjohnson@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111

*Interim Co-Lead Counsel for Plaintiffs*

- iii -

# <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ............................................................................................... 1

II. BACKGROUND ................................................................................................. 1

    A. The Litigation and Class Counsel's Efforts on Behalf of the Class ........................ 2

    B. Settlement Negotiations and Mediation ................................................... 4

III. THE PROPOSED SETTLEMENT ..................................................................... 5

    A. The Settlement Class and Release .......................................................... 5

    B. The Settlement's Monetary Benefits ...................................................... 6

    C. Injunctive Relief ................................................................................. 6

    D. The Settlement's Notice Plan ............................................................... 7

    E. Proposed Class Representative Service Payments ..................................... 8

    F. Attorneys' Fees and Expenses .............................................................. 8

    G. The Settlement Administrator .............................................................. 8

IV. ARGUMENT ..................................................................................................... 9

    A. The Legal Standards for Preliminary Approval of Settlement ...................... 9

    B. The Settlement Satisfies the Northern District's Guidance for Class Action Settlements ................................................................................... 10

        i. Guidance 1a and 1c: Differences Between Class Definitions, Claims ....... 10

        ii. Guidance 1e: Settlement Recovery Compared to Trial ........................ 11

        iii. Guidance 1f and 1g: The Settlement's Plan of Allocation Merits Approval ................................................................................. 14

        iv. Guidance 1h: Non-Reversionary Fund ........................................... 16

        v. Guidance 2: The Proposed Settlement Administrator .......................... 16

        vi. Guidance 3: The Proposed Notices to the Settlement Class are Adequate 16

        vii. Guidance 4 and 5: Opt-Outs and Objections ................................... 17

- iv -

viii.   Guidance 6: The Intended Attorneys' Fees and Expenses Request ........... 17

ix.   Guidance 7: The Proposed Settlement and Proposed Service Payments Do Not Unjustly Favor Any Class Members, Including Class Representatives ......................................................................................... 18

x.   Guidance 8: Cy Pres Awardees .................................................. 20

xi.   Guidance 9: Proposed Timeline .................................................. 20

xii.   Guidance 10: Class Action Fairness Act .................................... 21

xiii.   Guidance 11: Past Distributions ............................................... 21

C.   The Settlement Is the Product of Arms-Length Negotiations ............................... 21

i.   The Proposed Settlement Is the Product of a Mediator's Proposal and Is Supported by Experienced Counsel ............................................................. 21

ii.   The Stage of the Proceedings and the Discovery Conducted Support the Settlement ....................................................................................... 22

D.   Rule 23's Requirements for Class Certification are Met ........................................ 23

i.   Class Representatives Satisfy Rule 23(a) Prerequisites ............................. 23

ii.   Plaintiffs Satisfy Rule 23(b)(3)'s Requirements ....................................... 24

E.   The Court Should Appoint the Named Plaintiffs as Class Representatives ........... 25

F.   The Court Should Appoint Class Counsel as Settlement Class Counsel ............... 25

V.   CONCLUSION ..................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
 2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) .......................................................... 24

*Accord Noll et al. v. eBay, Inc.*,
 309 F.R.D. 593 (N.D. Cal. 2015) ............................................................................ 17

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ............................................................................................ 23, 25

*Bellinghausen v. Tractor Supply Co.*,
 306 F.R.D. 245 (N.D. Cal. 2015) ............................................................................ 18

*Briseno v. Henderson*,
 998 F.3d 1014 (9th Cir. 2021) ................................................................................. 10

*Campbell v. Facebook Inc.*,
 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ........................................................ 13

*Churchill Vill., LLC v. Gen. Elec.*,
 361 F.3d 566 (9th Cir. 2004) ..................................................................................... 9

*Cox v. Clarus Mktg. Group, LLC*,
 291 F.R.D. 473 (S.D. Cal. 2013) ............................................................................. 19

*Custom LED, LLC v. eBay, Inc.*,
 2014 WL 2916871 (N.D. Cal. June 24, 2014) ......................................................... 11

*Ebarle v. Lifelock, Inc.*,
 2016 WL 234364 (N.D. Cal. Jan. 20, 2016) ............................................................ 24

*Eddings v. Health Net, Inc.*,
 2013 WL 3013867 (C.D. Cal. June 13, 2013) ......................................................... 19

*Ellis v. Naval Air Rework Facility*,
 87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ....................... 21

*Fulford v. Logitech, Inc.*,
 2010 WL 807448 (N.D. Cal. Mar. 5, 2010) ............................................................ 19

*Hanon v. Dataproducts Corp.*,
 976 F.2d 497 (9th Cir. 1992) ................................................................................... 24

- vi -

*In re Anthem, Inc. Data Breach Litig.*,
 327 F.R.D. 299 (N.D. Cal. 2018) ................................................................. 24

*In re Apple Inc. Device Performance Litig.*,
 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ................................... 18, 21

*In re Banner Health Data Breach Litigation*,
 No. 2:16-cv-02696-PHX-SRB (D. Ariz. Dec. 5, 2019) ............................ 4

*In re Bluetooth Headset Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011) ............................................................... 10, 21

*In re Consumer Privacy Cases*,
 175 Cal. App. 4th 545 (2009) ...................................................................... 17

*In Re Experian Data Breach Litig.*,
 No. 8:15-cv-01592 (C.D. Cal.) ...................................................................... 4

*In re Google LLC St. View Elec. Commc'ns Litig.*,
 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ........................................ 13

*In re Google Plus Profile Litig.*,
 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ............................................ 14

*In re Hyundai and Kia Fuel Economy Litig.*,
 926 F.3d 539  (9th Cir. 2019) ........................................................................ 9

*In re LDK Solar Sees. Litig.* ,
 2010 U.S. Dist. LEXIS 7168 (N.D. Cal. July 29, 2010) ........................ 11

*In re Linkedin User Priv. Litig.*,
 309 F.R.D. 573 (N.D. Cal. 2015) ................................................. 14, 18, 19

*In re Magsafe Zoom Power Litig.*,
 2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ........................................... 18

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) ...................................................................... 24

*In re Netflix Privacy Litig.*,
 2012 WL 2598819 (N.D. Cal. July 5, 2012) ........................................... 10

*In re OmniVision Techs, Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................... 11

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ..................................................................... 9, 18, 19, 25

*In re Portal Software Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .................................................... 23

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 1991529 (N.D. Cal. June 30, 2007) .................................................... 19

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    2019 WL 3410382 (D. Or. July 29, 2019) ......................................................... 4

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ....................................................................................... 13

*In re Veritas Software Corp. Sec. Litig.*,
    2005 U.S. Dist. LEXIS 30880 (N.D. Cal. Nov. 15, 2005) ........................... 11, 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .................................................... 22

*In re: Vizio, Inc., Consumer Privacy Litigation*,
    No. 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) ............................... 14, 21

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ........................................................................... 25

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ............................................................................. 16

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................................. 24

*McDonald, et al. v. Kiloo A/S, et al.*,
    No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021) ............................................. 13

*McDonald, et al., v Kiloo ApS et al.*,
    No. 3:17-cv-04344-JD (N.D. Cal. Aug. 5, 2020) ............................................... 4

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................. 9

*Phillips Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................................... 25

*Radcliffe v. Experian Info. Solutions, Inc.*,
    715 F.3d 1157 (9th Cir. 2013) ...................................................................... 18, 20

- viii -

*Rosado v. Ebay Inc.*,
   2016 WL 3401987 (N.D. Cal. June 21, 2016) ....................................................... 18, 24

*Russell v. Kohl's Dept. Stores, Inc.*,
   2016 WL 6694958 (C.D. Cal. Apr. 11, 2016) ........................................................... 17

*Sandoval v. Roadlink USA Pac., Inc.*,
   2011 WL 5443777 (C.D. Cal. Oct. 9, 2011) ............................................................. 23

*Schneider v. Chipotle Mexican Grill, Inc.*,
   2020 WL 511953 (N.D. Cal. Jan. 31, 2020) ............................................................. 10

*Smith v. CRST Van Expedited, Inc.*,
   2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ............................................................. 17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................ 18, 19

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ...................................................................................... 9

*Villegas v. J.P. Morgan Chase & Co.*,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ......................................................... 22

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .................................................................................. 17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................................... 23, 24

*Williamson v. McAfee, Inc.*,
   2016 WL 4524307 (N.D. Cal. Aug. 30, 2016) ......................................................... 17

**Statutes**

28 U.S.C. § 1715 ............................................................................................................ 21

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... 23
Fed. R. Civ. P. 23(a)(1) ................................................................................................. 23
Fed. R. Civ. P. 23(a)(2) ................................................................................................. 23
Fed. R. Civ. P. 23(a)(3) ................................................................................................. 24
Fed. R. Civ. P. 23(a)(4) ................................................................................................. 24
Fed. R. Civ. P. 23(b)(3) ........................................................................................... 24, 25
Fed. R. Civ. P. 23(c) ..................................................................................................... 16
Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................... 16

- ix -

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................... 16
Fed. R. Civ. P. 23(e)(2) ...................................................................................... 9
Fed. R. Civ. P. 23(e)(5) ...................................................................................... 17
Fed. R. Civ. P. 23(g)(1) ...................................................................................... 25
Fed. R. Civ. P. 23(g)(3) ...................................................................................... 25

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.   <u>INTRODUCTION</u>

After a year and a half of hard-fought and contentious litigation, and months of concurrent settlement negotiations, the Parties present the Court with an agreement to settle Plaintiffs' claims against Zoom Video Communications, Inc. ("Zoom") on a nationwide, class basis. If approved, the Settlement will establish a non-reversionary cash fund of $85 million to pay valid claims, notice and administration costs, Service Payments to Class Representatives, and any attorneys' fees and costs awarded by the Court. The Settlement also provides comprehensive injunctive relief designed to address the issues on which Plaintiffs' claims are based. In sum, the Settlement provides an outstanding set of benefits to Class Members and merits preliminary approval.

The Settlement is the product of well-informed, arm's-length settlement negotiations—including four mediation sessions and extensive further negotiations between experienced counsel facilitated by the Honorable Jay C. Gandhi (Ret.) of JAMS—that spanned over nine months. It arrives at a critical juncture in the litigation, after extensive motion practice and discovery, but before the Plaintiffs and Class Members must face the risks of class certification and summary judgment proceedings. The Settlement presents an excellent recovery and delivers tangible and immediate benefits to the Settlement Class, particularly considering the substantial risks protracted litigation would present. The Court should grant preliminary approval.

### II.   <u>BACKGROUND</u>

Plaintiffs litigated this case diligently, through co-lead counsel Cotchett, Pitre & McCarthy, LLP and Ahdoot & Wolfson, PC (together, "Class Counsel"), by: (i) conducting a wide-ranging investigation into the Settlement Class's claims; (ii) filing three comprehensive consolidated complaints in this action (not including the earlier complaints filed in certain Plaintiffs' initial actions preceding consolidation); (iii) successfully opposing Defendant's motion to dismiss as to key theories of liability; (iv) engaging in comprehensive discovery, including motion practice before Magistrate Judge Susan van Keulen; (v) consulting with experts; (vi) preparing for class certification briefing; (vii) engaging in mediation with Defendant, including the exchange of significant information in connection with such mediation, and many other tasks. As a result,

- 1 -

Plaintiffs and Class Counsel had a thorough understanding of the relative strengths and weaknesses of the claims asserted at the time the Settlement was reached.

A.     <u>The Litigation and Class Counsel's Efforts on Behalf of the Class</u>

In early 2020, usage of Zoom's video conferencing services increased dramatically in response to the COVID-19 pandemic. *See* Dkt. No. 179, Second Amended Complaint ("SAC") ¶ 75. Shortly thereafter, reports announced that Zoom claimed to have end-to-end encryption, when in fact Zoom did not offer true end-to-end encryption. *Id.* ¶¶ 160-73. Plaintiffs alleged that Zoom improperly shared its users' data without notice or consent through the use of third party software integrations from companies such as Facebook (*id.* ¶¶ 76-89) and Google (*id.* ¶¶ 109-14). Additionally, Zoom meetings became the target of "Zoombombings"—i.e., unwanted and unauthorized interruptions of Zoom meetings which caused numerous problems and disruptions for Zoom and its users. *Id.* ¶¶ 174-80.

Between March and May 2020, 14 class action complaints were filed against Zoom alleging various state and federal claims for misrepresentations and violations of Zoom customers' security and privacy. On May 28, 2020, this Court issued an order consolidating the actions, and on June 30, 2020, appointed Tina Wolfson of Ahdoot & Wolfson, PC and Mark C. Molumphy of Cotchett, Pitre & McCarthy LLP as Interim Co-Lead Counsel. Dkt. No. 62 at 7; Dkt. No. 92 at 2. Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP, Albert Y. Chang of Bottini & Bottini, Inc., and Eric H. Gibbs of the Gibbs Law Group LLP were appointed to the Plaintiffs' Steering Committee. *Id.*

On July 30, 2020, Class Counsel filed a Consolidated Amended Complaint ("CAC"). Dkt. No. 114. On September 14, 2020, Zoom filed a motion to dismiss the CAC. Dkt. No. 120. On October 14, 2020, the parties filed a joint stipulation whereby Zoom agreed to withdraw its motion to dismiss, Plaintiffs agreed to file an amended complaint, and the parties set the briefing schedule for Zoom's motion to dismiss Plaintiffs' amended complaint. Dkt. No. 123. The Court granted the joint stipulation on October 24, 2020. Dkt No. 125.

On October 28, 2020, Plaintiffs filed their First Amended Consolidated Class Action Complaint ("FAC"), Dkt No. 126, which (1) added three California plaintiffs—Ms. Angela Doyle,

Ms. Sharon Garcia, and Mr. Peter Hirshberg; (2) alleged in greater detail the harms Plaintiffs experienced as a result of Zoom's various violations; (3) alleged additional facts regarding Zoom's failure to warn; and (4) clarified Plaintiffs' position that Zoom's disclosures to third parties are not limited to just the Facebook software development kit ("SDK"), LinkedIn Navigator, or Google Firebase Analytics. Zoom filed its Motion to Dismiss the First Amended Consolidated Class Action Complaint ("MTD") on December 2, 2020. Dkt. No. 134.

On March 11, 2021, this Court issued an Order Granting in Part and Denying Part Zoom's Motion to Dismiss ("MTD Order"). Dkt. No. 168. The Court dismissed the following claims with leave to amend:

- All "Zoombombing" claims to the extent they (1) challenge the harmfulness of content provided by another; and (2) derive from Zoom's status or conduct as a publisher or speaker of that content.

- Count 1: Invasion of privacy under California Law.

- Count 2: Negligence.

- Count 8: California's Comprehensive Data Access and Fraud Act ("CDAFA").

- Counts 6, 7, and 9: Unfair Competition Law ("UCL") claim under the "fraudulent" prong; Consumer Legal Remedies Act ("CLRA"); and California Civil Code § 1710(3) fraudulent concealment.

The Court DENIE[D] the motion to dismiss the following:

- All "Zoombombing" claims to the extent they do not either (1) challenge the harmfulness of content provided by another; or (2) derive from Zoom's status or conduct as a publisher or speaker of that content.

- Count 3: Implied contract.

- Count 4: Implied covenant of good faith and fair dealing.

- Count 6: UCL claims under the "unlawful" and "unfair" prongs.

- Count 5: Unjust enrichment/quasi contract.

*Id.* at 40.

On May 12, 2021, Plaintiffs filed the SAC, which responded to the MTD Order by bolstering the allegations supporting claims that the Court dismissed. The SAC omits the previously asserted negligence and CDAFA claims, as well as two Plaintiffs who had been named in the FAC.

The Parties engaged in extensive discovery. *See* concurrently filed Joint Declaration of Tina Wolfson and Mark C. Molumphy in Support of Preliminary Approval of Proposed Class Action

- 3 -

Settlement ("Joint Decl.") ¶ 6. Class Counsel served interrogatories and document requests, and obtained written responses and document production from Zoom. *Id.* Zoom also served written discovery and 60 document requests on each of the Class Representatives, who provided complete written responses and documents. *Id.* The Parties litigated two discovery motions before Magistrate Judge Susan van Keulen, and an appeal to this Court. Dkt. Nos. 135, 142, 152, 154, 170. The Parties also exchanged numerous additional documents and information in connection with the ongoing mediation and settlement discussions. Joint Decl. ¶ 12. Plaintiffs had sufficient information to evaluate the claims and negotiate a fair settlement. *Id.* ¶ 9.

### B. Settlement Negotiations and Mediation

The Parties engaged in extensive, arms-length negotiations over the course of many months, including four mediation sessions and numerous additional discussions facilitated by Judge Jay C. Gandhi, a former U.S. Magistrate Judge and respected mediator. Joint Decl. ¶ 8. Judge Gandhi has extensive experience in class action litigation, both from his time as a Magistrate Judge in the Central District of California and as a result of mediating many class actions, including multiple data privacy cases where a settlement was reached and subsequently approved.[2] Judge Gandhi remained highly involved throughout the lengthy negotiation process. *Id.* ¶ 11.

Ahead of the Parties' mediation sessions, the Parties exchanged and vetted information to prepare for and facilitate productive mediation sessions, in addition to extensive information already gleaned through discovery. *Id.* ¶ 9. Before any terms were negotiated, the Plaintiffs had a thorough understanding of the composition of the Settlement Class, the nature of Zoom's anticipated defenses on the merits, the likely nature of arguments that would be advanced at class certification, summary judgment, and trial, and the complex technical issues surrounding the claims and defenses, and potential injunctive relief, which Plaintiffs' counsel reviewed and analyzed with their consulting experts. *Id.*

---

[2] *See, e.g., In Re Experian Data Breach Litig.,* No. 8:15-cv-01592 (C.D. Cal.), Dkt No. 286-1 at 7; *In re Premera Blue Cross Customer Data Sec. Breach Litig.,* No. 3:15-MD-2633, 2019 WL 3410382, at *1 (D. Or. July 29, 2019); *In re Banner Health Data Breach Litigation,* No. 2:16-cv-02696-PHX-SRB (D. Ariz. Dec. 5, 2019), Dkt No. 170, at 6; *McDonald, et al., v Kiloo ApS et al.,* No. 3:17-cv-04344-JD (N.D. Cal. Aug. 5, 2020), Dkt. 363, at 2-3, 13; *see also* https://www.jamsadr.com/gandhi/ (last visited July 30, 2021).

With Judge Gandhi's guidance, the Parties commenced mediation in early November 2020, with both sides were represented by experienced counsel who fought hard for their clients. *Id.* ¶ 10. Although progress was made, the case did not settle at that time, and the Parties continued extensive negotiations with Judge Gandhi's assistance. *Id.* The Parties reached agreement on certain key terms in early April, 2021, and reported this to the Court on April 7, 2021. Dkt. No.176. However, the Parties had yet to reach agreement on many other key terms, and continued to negotiate these issues through additional mediations sessions. Joint Decl. ¶ 13. The Parties also participated in numerous video and phone conferences between counsel during which Plaintiffs successfully negotiated the significant injunctive relief promised by the Settlement, in addition to monetary relief. *Id.* ¶ 14. The injunctive relief negotiations extended for weeks, including several iterations and revisions of written proposals and counter-proposals, discussions with Zoom's in-house counsel, and consultation with experts, and a day of mediation with Judge Gandhi. *Id.* Subsequently, the Parties negotiated the details of a fair and workable distribution plan over the course of many days. Numerous drafts and redlines of the Settlement Agreement and its many exhibits were exchanged, followed by lengthy discussions between the Parties and negotiations about myriad issues. *Id.* ¶ 15.

The Parties also collaborated on the logistics and substance of the notice plan. *Id.* ¶ 16. Plaintiffs' counsel spent numerous hours obtaining and negotiating bids from three well-established, experienced, and highly regarded class action notice and administration firms. *Id.* As a result, Plaintiffs maximized the amount that would be available to the Class for payment of claims, by minimizing the notice and administration costs, while ensuring that the notice and administration plan complied with all federal rules and guidelines and due process requirements.

## III.   **THE PROPOSED SETTLEMENT**

### A.   **The Settlement Class and Release**

The proposed Settlement Class is defined as follows:

[A]ll Persons in the United States who, between March 30, 2016 and the Settlement Date, registered, used, opened, or downloaded the Zoom Meetings Application ("App") except for (i) all Persons who have only registered, used, opened, or downloaded the Zoom Meetings App through an Enterprise-Level Account or a Zoom for Government Account, (ii) Zoom and its officers and directors; and (iii)

- 5 -

1  the Judge or Magistrate Judge to whom the action is assigned and any member of
   those Judges' staffs or immediate family members.

2  Settlement Agreement ("SA") ¶ 1.40.

3      In exchange for the Settlement's benefits, Settlement Class Members ("Class Members")

4  will release any claims against Zoom based one or more of the same factual predicates alleged in

5  the action. *Id.* ¶¶ 1.32-1.34, 2-3.

6      **B.    The Settlement's Monetary Benefits**

7      The Settlement provides for a non-reversionary cash fund of $85 million. SA ¶ 2.1. All

8  Class Members are eligible for payment, regardless of whether or not they paid for a Zoom account.

9  Class Members who paid for an account will be eligible to receive 15% of the money they paid to

10 Zoom for their core Zoom Meetings subscription during that time or $25, whichever is greater

11 ("Paid Subscription Claim"). *Id.* ¶ 2.2(b). Class Members who are not eligible to submit a Paid

12 Subscription Claim may make a claim for $15 ("User Claim"). *Id.* ¶ 2.2(c). These amounts may be

13 adjusted, *pro rata,* up or down, depending on claim volume, the amount of any Fee and Expense

14 Award, Service Payments to Class Representatives, Taxes and Tax Expenses, and Settlement

15 Administration Expenses. *Id.* ¶¶ 1.20, 2.4. The Settlement is designed so that any residual funds are

16 distributed to Class Members if economically feasible. *Id.* ¶ 2.5(e). If not so feasible, however, any

17 residual funds will be distributed to the Electronic Frontier Foundation and the Electronic Privacy

18 Information Center, two Section 501(c)(3) non-profit organizations whose work relates directly to

19 the subject matter of the Action and benefits Class Members. SA ¶¶ 1.21, 2.1(c), 2.5(e).

20     **C.    Injunctive Relief**

21     Zoom has agreed to over a dozen major changes to its practices, designed to improve

22 meeting security, bolster privacy disclosures, and safeguard consumer data. *Id.* ¶ 3. For example,

23 Zoom agreed to provide in-meeting notifications to make it easier for users to understand who can

24 see, save, and share Zoom users' information and content by alerting users when a meeting host or

25 another participant uses a third-party application during a meeting. *Id.* ¶ 3.1(n). Separately, Zoom

26 will ensure that its privacy statement will disclose the ability of Zoom users to share user data with

27 third parties via integrations third party software, or otherwise to record meetings, and/or to

28

- 6 -

transcribe meetings. *Id.* ¶ 3.1(m). The Settlement also requires Zoom to (i) not reintegrate the Facebook SDK for iOS into Zoom meetings for a year and will request that Facebook delete any U.S. user data obtained from the SDK (*id.* ¶ 3.1(e),(f)); (ii) develop and maintain, for at least three years, documented protocols and procedures for admitting third party applications for dissemination to users through Zoom's "Marketplace" (*id.* ¶ 3.1(i)); (iii) develop and maintain a user-support ticket system for internal tracking of, and communication with users about reports of meeting disruptions (*id.* ¶ 3.1(c)); (iv) develop and maintain a documented process for communication with law enforcement about meeting disruptions involving illegal content, including dedicated personnel to report serial meeting disrupters to law enforcement (*id.*); (v) develop and maintain security features such as waiting rooms for attendees, the suspend meeting activities button, and blocking of users from specific countries for a minimum of three years (*id.* ¶¶ 3.1(b), 3.2). The Settlement also requires Zoom to better educate users about the security features available to protect meeting security and privacy, through dedicated space on the Zoom website and banner-type notifications. *Id.* ¶ 3.1(a). Zoom's website will also have centralized information and links for parents whose children are using school-provisioned K-12 accounts. *Id.* ¶ 3.1(p).

## D. <u>The Settlement's Notice Plan</u>

The proposed Notice forms are attached to the Settlement as Exhibits A (Claim Form), C (Long Form Notice), E (Publication Notice) and G (Summary Notice). A Summary Notice (*id.* Ex. G) will be delivered via e-mail and, failing that, by U.S. mail to billing addresses, to Class Members for whom Zoom has such information. *Id.* ¶ 5.1; Declaration of Cameron R. Azari ("Azari Decl.") ¶ 5. Notice will also be disseminated via digital and print media in a manner specifically designed to reach Class Members. (Azari Decl. ¶¶ 19-27; SA ¶¶ 5.1(c), Ex. E). The Settlement Website (www.ZoomMeetingsClassAction.com), will communicate all important information, deadlines, and the Long Form Notice. *Id.* ¶ 24. This website also will allow for electronic submission of Claim Forms and have relevant Motions, Orders, and pleadings available for download. *Id.* Additionally, a toll-free telephone number, email, and physical mailing address will be made available for Class Members to contact the Settlement Administrator or Class Counsel directly. *Id.* § 5.1(b), and Exs. C, E, and G; Azari Decl. ¶¶ 15-27. The costs of Notice will be paid out of the Settlement Fund. *Id.*

- 7 -

¶ 5.4. The Notice Plan is the best practicable notice under the circumstances and meets all due process requirements. Azari Decl. ¶¶ 15-27.

### E.    Proposed Class Representative Service Payments

Plaintiffs have been dedicated and active participants in this litigation. They assisted in the investigation of the facts, participated in the plaintiff vetting process implemented by their respective counsel, as well as Class Counsel after appointment, reviewed and approved the various complaints, kept in close contact with counsel to monitor the progress of the litigation, and communicated with counsel regarding the Settlement. Joint Decl. ¶ 18. Plaintiffs spent significant time responding to extensive and broad discovery served by Zoom, and willingly disrupted their lives to preserve and collect evidence, despite privacy concerns. The Plaintiffs put their names and reputations on the line for the sake of the Class, and took on additional significant stress of litigation during the COVID-19 pandemic. The Class recovery here would not have been possible without their efforts. In view of these efforts, Plaintiffs will petition the Court for approval of a $5,000 Service Payment each. SA ¶ 10.2. This amount is consistent with those approved in other privacy class action settlements. *See* § IV.B.ii *infra.*

### F.    Attorneys' Fees and Expenses

Plaintiffs' counsel will file a motion for an award of reasonable attorneys' fees and reimbursement of litigation costs and expenses 35 days prior to the Objection Deadline. SA ¶ 10.1. Class Counsel intend to seek up to 25% of the Settlement Fund (i.e., $21.25 million) as attorneys' fees, and no more than $200,000 as reimbursement of expenses. Joint Decl. ¶¶ 27-28; SA ¶ 10.1 and Ex. C, Long Form Notice § 14. Any approved fees and expenses will be paid by Zoom out of the Settlement Fund. SA ¶ 10(a). The Settlement is not conditioned upon the Court's approval of the full (or any) Service Payments or an Attorneys' Fee and Expense Award. SA ¶ 10.3.

### G.    The Settlement Administrator

The Parties propose that Epiq—an experienced and reputable national class action administrator—serve as Settlement Administrator to provide notice, administer the claims process, and provide other services necessary to implement the Settlement. SA ¶¶ 1.38; *see generally* Azari Decl. Settlement Administration Expenses will be paid out of the Settlement Fund. SA ¶ 10.1(a).

- 8 -

Epiq was selected after a competitive bidding process led by Class Counsel. Joint Decl. ¶ 16. Class Counsel considered proposals from two other potential administrators. *Id*. Class Counsel—each of whom have litigated hundreds of class actions to settlement—previously have worked with Epiq, the two other bidders, as wells as other professional administrators. *Id*. ¶ 16. The estimated $2,835,000 to $6,586,000 cost for settlement administration is reasonable. *Id*. ¶ 17.

## IV. ARGUMENT

### A. The Legal Standards for Preliminary Approval of Settlement

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Rule 23 requires the Court to determine whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess the fairness of a class settlement, Ninth Circuit courts consider factors including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004))."[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citation omitted). "The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id*. at 625.

Prior to class certification, class settlements must withstand a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)

- 9 -

before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *Id.* at 946-47. The Ninth Circuit has identified three "signs" of possible collusion:

> (1) "when counsel receive[s] a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.

*Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *Bluetooth*, 654 F.3d at 947).

The Northern District of California's Procedural Guidance for Class Action Settlements ("Guidance") covers most of the requirements described above. The Settlement satisfies the Guidance requirements, the *Churchill* factors, and all other requirements for preliminary approval.

### B.    The Settlement Satisfies the Northern District's Guidance for Class Action Settlements

#### i.    Guidance 1a and 1c: Differences Between Class Definitions, Claims

The proposed Settlement Class is different from that proposed in the SAC. Courts routinely approve such changes. *See, e.g.*, *In re Netflix Privacy Litig.*, 2012 WL 2598819, at *1 (N.D. Cal. July 5, 2012) (different settlement class definition than that in the complaint); *Schneider v. Chipotle Mexican Grill, Inc.*, 2020 WL 511953, at *5-6 (N.D. Cal. Jan. 31, 2020) (approving modified settlement class definition from classes certified).

The SAC defines the class as "[a]ll persons in the United States who used Zoom." SAC ¶ 195. In addition to conforming the Settlement Class definition to the four year statute of limitations, Enterprise-Level and Zoom for Government Account users are excluded from the Settlement Class, and do not release any claims. Plaintiffs learned through investigation that Enterprise-Level and Zoom for Government Account users are factually differently positioned than those of ordinary consumers because they negotiate the terms of their contracts with Zoom individually to their specific needs, often with the help of sophisticated IT departments, and do not purchase their products "off the shelf." Joint Decl. ¶ 12. Magistrate Judge van Keulen took note of this distinction and precluded Plaintiffs from obtaining further discovery related to Enterprise-Level

Account subscribers. Dkt. No. 154. Accordingly, the difference between the defined Settlement Class and the class defined in the SAC is appropriate.

The claims to be released are congruent with the claims asserted in the Complaint on behalf of the Settlement Class.

### ii. **Guidance 1e: Settlement Recovery Compared to Trial**

Plaintiffs' allegations centered on three main theories of harm: 1) misrepresentations concerning end to end encryption ("E2EE"); 2) unauthorized transfer of Plaintiffs' personal data to third parties; and 3) Zoombombing due to Zoom's inadequate security and privacy controls.

Zoom collected approximately $1.3 billion in Zoom Meetings subscriptions from Class Members who paid for the subscription. Joint Decl. ¶ 26. The time period during which this revenue was collected includes when Zoom claims to have corrected its alleged E2EE misrepresentations (in April 2020) as well as when it allegedly switched to true E2EE (October 14, 2020, after its acquisition of Keybase.[3]). Nevertheless, the Settlement Fund amount of $85 million represents approximately 6.16 % of the maximum total revenues collected based on the allegedly unlawful practices, and is reasonable in light of the significant risks of litigation. Lower percentages of maximum potential recoveries have been approved. *Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) ("[C]ourts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable when the plaintiffs face a real possibility of recovering nothing absent the settlement."); *In re OmniVision Techs, Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (6% of potential damages); *In re LDK Solar Sees. Litig.* , No. 07-5182 WHA, 2010 U.S. Dist. LEXIS 7168, at *7 (N.D. Cal. July 29, 2010) (5% of potential damages); *In re Veritas Software Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 30880, at *5 (N.D. Cal. Nov. 15, 2005) (observing that, from 1991 to 2003, the median percentage of losses paid in settlement ranged from 2.7% to 7.2%), vacated in part on other grounds, 496 F.3d 962 (9th Cir. 2007).

---

[3] *See* Max Krohn, *Zoom Rolling Out End-to-End Encryption Offering*, ZOOM BLOG, (Oct. 14, 2020), available at https://blog.zoom.us/zoom-rolling-out-to-end-to-end-encryption-offering/; Eric S. Yuan, *Zoom Acquires Keybase and Announces Goal of Developing the Most Broadly Used Enterprise End-to-End Encryption Offering*, ZOOM BLOG, May 7. 2020, available at https://blog.zoom.us/zoom-acquires-keybase-and-announces-goal-of-developing-the-most-broadly-used-enterprise-end-to-end-encryption-offering/ (last accessed July 27, 2021.)

Furthermore, the individual recoveries offered by the Settlement are reasonable. Based on consultation with damage experts, 15% of total core subscription is excellent considering that the E2EE representation was but one feature of the Zoom services among the numerous service benefits that the Paid Subscribers did receive. Joint Decl. ¶ 20. And $15 for Class Members who never paid for Zoom is within the ballpark of what consumers may be willing to receive in exchange for the type of data the SAC alleges Zoom disclosed. *Id.* Both the total amount and the proposed allocation of the Settlement are reasonable in light of the substantial risks of litigation.

The MTD Order illustrates the substantial risk that Plaintiffs would not be able to recover anything through continued litigation. For example, the Court dismissed Plaintiffs' claims to the extent that they derive from Zoom's status as a publisher or speaker, and to the extent that the claims are not content-neutral. Dkt. No. 168 ("MTD Order"), at 17-18. The Court concluded that "Section 230(c)(1) mostly immunizes Zoom from Plaintiffs' Zoombombing claims here" (*id.* at p. 18) and that the "bulk of Plaintiffs' Zoombombing claims lie against the 'Zoombombers' who shared heinous content, not Zoom itself. Zoom merely 'provid[ed] neutral tools for navigating' its service" (*id.* at p. 19). According to the Court, Plaintiffs' criticism of Zoom's default features, for example, amount to claims based on Zoom's failure to "edit or block user content," which is activity immunized by Section 230. *Id.* Thus, the Court dismissed Plaintiffs' negligence cause of action, as it pertained to emotional distress caused by Zoombombing.[4] The Court maintained, however, Plaintiffs' breach of implied contract claim, through which they allege they did not obtain the benefit of their bargain in sharing their data with Zoom in exchange for a secure videoconferencing service . *Id.* at p. 27; SAC ¶¶ 217-31.

With respect to the E2EE misrepresentation claims, the Court dismissed Plaintiffs' fraud-based misrepresentation claims under the UCL and CLRA in its MTD Order, but it denied dismissal of the non-fraud allegations. MTD Order at 34-37. Though Plaintiffs' claims based on Zoom's E2EE misrepresentations survived, Plaintiffs later would be required to demonstrate that these misrepresentations were material and consistent in order to certify them. *See, e.g.*, *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

---

[4] The Court also held the economic loss rule barred the negligence claim. MTD Order at 24.

- 12 -

The Court dismissed Plaintiffs' invasion of privacy claim, concluding Plaintiffs failed to plead Zoom shared *their* personal data through the Facebook SDK, through Zoom's android application, or through the LinkedIn Sales Navigator. MTD Order at 20. The Court required Plaintiffs to show "what information, precisely [certain] third parties have obtained,'" *Id.* at 23 (citation omitted), and held that failure to allege information such as versions of the Zoom application and operating systems used rendered Plaintiff's allegations inadequately pled. *Id.* In response, the SAC provided further allegations regarding the dates and times Plaintiffs first downloaded and used the Zoom application, and on their devices. SAC ¶¶ 17-61. While Plaintiffs are confident that the amendments cured any pleading defects, and that they would ultimately prove their case, the issues outlined by the Court would continue to present challenges going forward, including at summary judgment.

Although Plaintiffs firmly believe their liability case is strong and that class certification is warranted, it is uncertain whether the Court ultimately would grant certification, deny a motion for summary judgment filed by Zoom, or ever find that Plaintiffs are entitled to damages. Even if Plaintiffs obtained class certification, successfully opposed a motion for summary judgment, and subsequently proved liability at trial, they still would face the significant risk of recovering nothing for the Class Members because the fact and amount of damages are uncertain.

Privacy damages are particularly uncertain and numerous privacy class actions have been settled for non-monetary relief. *See, e.g., Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing class with injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data); *McDonald, et al. v. Kiloo A/S, et al.*, No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021), ECF No. 406 (granting final approval of 16 injunctive relief-only settlements in related privacy class actions accusing defendants of violating child privacy protection laws by collecting and selling PII of children).

The Settlement here compares favorably to these and other class action settlements alleging violations of privacy and security. *See e.g.*, *In re Google Plus Profile Litig.*, No. 518CV06164EJDVKD, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (settlement fund of $7.5 million for 161 million Google+ users whose personal information was exposed); *In re: Vizio, Inc., Consumer Privacy Litigation*, 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) (settlement fund of $17 million for 16 million potential claimants for unauthorized collection and disclosure of information from customers' VIZIO smart TVs, including IP addresses and device identifiers); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25 million for claims related to approximately 6.4 million LinkedIn users' stolen account passwords who were influenced by LinkedIn's statements concerning security and paid for premium subscriptions). Furthermore, Plaintiffs successfully obtained substantive and meaningful injunctive relief.

Given the anticipated disputes that would inevitably lie ahead, including class certification and summary judgment, and given Defendant's vigorous arguments as to the merits, it is not an overstatement to say that the Class Representatives faced significant risk. And, even if Class Representatives successfully proved their case at trial, the amount of recovery, if any, could vary widely depending on other factors, including the Court's discretion. Importantly, even if anything were recovered, it would take years to secure, as Zoom undoubtedly would appeal any adverse judgment. In comparison, the Settlement provides a guaranteed, immediate, and substantial cash recovery of $85 million, plus significant injunctive relief.

### iii.   Guidance 1f and 1g: The Settlement's Plan of Allocation Merits Approval

All Class Members are eligible to make claims for cash. Paid subscribers (other than Enterprise-Level or Government Accounts) will be eligible to receive the 15% of the money they paid to Zoom for their core Zoom Meetings subscription between March 30, 2016 and the Settlement Date (July 30, 2021), or $25, whichever amount is greater ("Paid Subscription Claim"). SA ¶ 2.2(b). Class Members not eligible to submit a Paid Subscription Claim—those who did not pay for the Zoom Meetings App—are eligible to make a User Claim for $15. *Id.* 2.2(c).

Class Members must submit a Claim Form (either online or physically through the mail) to receive funds. SA Ex. A.  The Claim Form is simple and easy to complete. Azari Decl. ¶ 24. Those with unique claim numbers (provided on the Summary Notice sent directly to Class Members, SA, Ex. G) need only provide their names, mailing address, email and claim number. Those without claim numbers may also file a claim by providing either an email associated with a Zoom account, a Zoom account number, or failing that, documentation and an attestation demonstrating that they are a Class Member. *Id.* The Settlement Administrator will administer the entire process, including validating the claims and calculating the Settlement Payment amounts.[5]  SA ¶¶ 2.3, 2.5.

Class Counsel anticipate more Paid Subscription Claims than User Claims, because the Settlement Payment amount for paid claims is likely to be higher than for User Claims. Data provided by Zoom indicates that on average Class Members who paid Zoom, paid approximately $250 and 15% of this amount is $37.50. Joint Decl. ¶ 21.

While it is inherently difficult to predict claims rates with precision, based on the substantial recovery, comparable settlements, and the ubiquity of Zoom's platform, Plaintiffs and Epiq expect the claims rate from paid subscribers will be between 1% and 5% and the claims rate for non-paying users to be between 1% and 2%. *Id.* ¶ 22. Assuming claims reach the high end of both estimates listed above, the recovery will still be substantial. At a 5% Paid Subscription Claims rate and 2% User Claims rate (approximately 276,000 paid and 4.32 million unpaid claims), paid subscribers would receive, on average, approximately $34, and nonpaying users would receive approximately $11.  At slightly lower claims rates (3% Paid Subscriber Claims and 2% User Claims; approximately 165,000 and 4.32 million claims, respectively), the recovery would be approximately $35 (on average) for paid subscribers and $12 for non-paying users.[6] *Id.*

---

[5] Paid Subscription and User claims are subject to *pro rata* adjustment (up or down) based on total number of Claims and on the other deductions from the Settlement Fund. SA ¶¶ 2.2, 2.4.

[6] These estimates are based on conservative class size estimate of 221.7 million —likely higher than the true number.  Zoom disclosed that the number of class members who are eligible to submit Paid Subscription Claims and User Claims, and for which they have contact information, is approximately 160 million collectively. Approximately 5.5 million of this population are paid subscribers, or those eligible to submit a Paid Subscription Claim. Joint Decl. ¶ 26. The Settlement

- 15 -

### iv.     Guidance 1h: Non-Reversionary Fund

The Settlement Fund is a non-reversionary fund. Any residual will be distributed to the Non-Profit Residual Recipients. *See* Guidance 8, *infra*; SA ¶¶ 1.21, 2.5(e).

### v.     Guidance 2: The Proposed Settlement Administrator

In connection with preliminary approval, the Parties request that the Court authorize the retention of Epiq as Settlement Administrator for the Settlement. Epiq is a nationally recognized notice and claims administration firm and has extensive experience in class actions and on notice issues. Azari Decl. ¶¶ 8-14. Epiq was selected over two other administrators after a competitive bidding process. Joint Decl. ¶ 16. Epiq estimates that the total amount of the Settlement Administration Expenses here will be between $2,835,000 to $6,586,000 depending on the volume of claims and other assumptions (such as number of inquiries, amount of postage, volume of hard vs. online claims, etc.). Azari Decl. ¶ 32.

### vi.     Guidance 3: The Proposed Notices to the Settlement Class are Adequate

Rule 23(c)(2)(B) requires that settlement notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c); *see also* Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]."). Notice "must generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (citation omitted).

The Notice Plan is well designed to reach Class Members and is the best notice practicable as Class Members will be receiving notice directly to the extent contact information is available and through digital and print media. Azari Decl. ¶¶ 15-27. The Notice forms are clear and, together with the Settlement Website, provide all the information Settlement Class Members possibly might

---

Class, as defined, consists of those who used Zoom but did not register with Zoom. SA ¶ 1.40. Zoom states that it does not have sufficient data to accurately determine the number of unregistered users who comprise this part of the Settlement Class. Joint Decl. ¶ 25. Class Counsel believes that, assuming for analysis, a class consisting of 221.7 million Class Members is a conservative estimate. *Id.*

require to make an informed decision as to how to respond. The Notice program therefore satisfies the requirements of Rule 23. *Accord Noll et al. v. eBay, Inc.*, 309 F.R.D. 593, 604-5 (N.D. Cal. 2015). Courts routinely find that comparable notice procedures meet the requirements of due process and Rule 23. *See id.*; *Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD, 2016 WL 4524307, at *7-8 (N.D. Cal. Aug. 30, 2016); *Russell v. Kohl's Dept. Stores, Inc.*, No. ED CV 15-1143 RGK (SPx), 2016 WL 6694958, at *5 (C.D. Cal. Apr. 11, 2016).

### vii.   Guidance 4 and 5: Opt-Outs and Objections

The proposed Notice complies with Rule 23(e)(5) in that it discusses the rights of Settlement Class Members. The proposed Notice includes information on a Settlement Class Member's right to: (1) request exclusion and the manner for submitting such a request; (2) object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) participate in the Settlement and instructions on how to complete and submit a Claim Form to the Settlement Administrator. SA ¶ 6.

### viii.   Guidance 6: The Intended Attorneys' Fees and Expenses Request

As set forth in the proposed Notice, Class Counsel anticipate seeking attorneys' fees up to 25% of the Settlement Fund (i.e., $21.25 million), plus out-of-pocket expenses of up to $200,000. As of July 29, 2021, Class Counsel and Executive Committee members report a lodestar of approximately $5.51 million and $145,000 in expenses. Joint Decl. ¶ 28. Though Class Counsel anticipate reporting a higher lodestar with their Fee Motion, at this amount, the maximum fee request here would represent 3.86 multiplier. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (noting multipliers of between 1.0 and 4.0 are "frequently awarded"); *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent.") (citing *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 n.13 (2009)). Class Counsel will detail their work, hours, lodestar and expenses in their fee and expense motion to be filed 35 days prior to the Objection Deadline. The work and expenses were critical to Class Counsel's success in achieving this Settlement, and are reasonable.

### ix.   Guidance 7: The Proposed Settlement and Proposed Service Payments Do Not Unjustly Favor Any Class Members, Including Class Representatives

Class Counsel intend to seek a Service Payment of $5,000 for each Class Representative. SA ¶ 10.2. Service Payments "have long been approved in the Ninth Circuit." *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 WL 1022866, at *11 (N.D. Cal. Mar. 17, 2021).

In evaluating whether the Settlement grants preferential treatment to Class Representatives, the Court may consider whether there is a "significant disparity between the incentive award[] and the payments to the rest of the class members" such that it creates a conflict of interest. *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). Important considerations are "the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). A court may also consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977; *In re Magsafe Zoom Power Litig.*, No., 2015 WL 428105, at *15 (N.D. Cal. Jan. 30, 2015). Finally, the Court must evaluate whether a conflict exists due to the incentive award being conditioned on the class representative's approval and support of the Settlement. *Radcliffe*, 715 F.3d at 1161.

The Service Payments requested here are reasonable. "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases). Courts in this District have found that a $5,000 incentive award is presumptively reasonable. *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015); *Rosado v. Ebay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *9 (N.D. Cal. June 21, 2016). And, because the Settlement is not conditioned on the Court's approval of any Service Payment, the Settlement does not grant preferential treatment to Class Representatives. SA ¶ 10.3.

While the amount requested per Class Representative is several times more than the estimated monetary benefit per Settlement Class Member, this does not rise to the level of unduly preferential treatment. Courts have approved similar or greater disparities between incentive awards

- 18 -

and individual class member payments. *See Linkedin*, 309 F.R.D. at 582 (approving a $5,000 incentive award where class members would receive approximately $14.81); *Cox v. Clarus Mktg. Group, LLC*, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (approving a $5,000 incentive award where class members would receive a maximum payment of $36); *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 WL 807448, at *3 n.1 (N.D. Cal. Mar. 5, 2010) (collecting cases awarding incentive award payments ranging from $5,000 to $40,000).

More importantly, Class Representatives seek altogether, at most, $60,000 (0.071%) of the $85 million Settlement Fund. This amount is reasonable considering how minuscule the award is in relation to the full amount of the Settlement Fund. *See Online DVD-Rental*, 779 F.3d at 947-48 (approving incentive awards that were roughly 417 times larger than $12 individual awards because the awards were reasonable, the number of representatives were relatively small, and the total amount of incentive awards "ma[d]e up a mere 0.17% of the total settlement fund"); *cf. Staton*, 327 F.3d at 976-77 (reversing approval of incentive awards that averaged $30,000 each for 29 class representatives, totaling $890,000, or roughly 6% of a potential $14.8 million settlement). Thus, the Settlement does not improperly grant preferential treatment to Class Representatives or segments of the Settlement Class. *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007).

The amount requested also is appropriate given the time and risk Class Representatives took on to participate in this Action. Class Representatives spent more than a year prosecuting this Action, and have spent many hours reviewing pleadings, responding to discovery requests, working with ESI Vendors to gather data responsive to Zoom's requests, and reviewing and producing documents. These factors further support and justify the amount requested. *See, e.g.*, *Eddings v. Health Net, Inc.*, 2013 WL 3013867, at *7 (C.D. Cal. June 13, 2013) (approving $6,000 service payment from $600,000 settlement to compensate the Class Representative for her time, effort and risk in prosecuting the action).

Class Representatives' interests do not conflict with or diverge from the interests of the Settlement Class. *Radcliffe*, 715 F.3d at 1161. Accordingly, the Court should preliminarily approve the request for Service Payments.

### x. Guidance 8: Cy Pres Awardees

Based on the manner in which payments will be made, including potentially a *pro rata* increase of payments for each Approved Claim, the Parties do not anticipate any residual funds remaining in the otherwise non-reversionary Class Settlement Amount. In the event residual funds do remain after payment of Settlement Payments to Settlement Class Members, Settlement Administrative Expenses, Taxes, Fee and Expense Award, and Service Payments, they will be distributed to the Non-Profit Residual Recipients. SA ¶¶ 1.21, 2.5(e). The Non-Profit Residual Recipients' work relates directly to the subject matter of the Action and benefits Class Members. *See generally*, concurrently filed Declarations of Alan Butler and Cindy Cohn. Class Counsel have no relationship with the Non-Profit Residual Recipients.

### xi. Guidance 9: Proposed Timeline

In connection with preliminary approval of the Settlement, the Court must also set dates for certain events. The Parties suggest a schedule based on the following intervals:

| Event / Deadline | Proposed Time for Compliance |
|---|---|
| Zoom to provide available names, emails, addresses, account numbers, *etc.* to Administrator | Five (5) business days after entry of the Preliminary Approval Order.  SA ¶5.1. |
| Administrator to complete email and/or postcard notice ("Notice Date") | Seventy-five (75) days after entry of the Preliminary Approval Order. SA ¶ 1.23. |
| Claim Deadline | Sixty (60) days after the Notice Date.  SA ¶ 1.7. |
| Objection Deadline | Sixty (60) days after the Notice Date. SA ¶ 1.25. |
| Exclusion (Opt Out) Deadline | Sixty (60) days after the Notice Date. SA ¶ 1.25. |
| Deadline to file Motions for Award of Service Payments and for Attorneys' Fees and Expenses | Thirty-Five (35) days prior to the Objection and Exclusion Deadline. SA ¶10.1. |
| Deadline to file Motion for Final Approval | Thirty-Five (35) days prior to the Objection and Exclusion Deadline |
| Deadline to file responses to Objections (if any), and other support documents | Fourteen (14) days following the Objection and Exclusion Deadline |
| Final Hearing | The Court's discretion, but no sooner than thirty (30) after the Objection and Exclusion Deadline |

- 20 -

**xii. Guidance 10: Class Action Fairness Act**

Zoom will serve the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, no later than 10 days after this filing. SA ¶ 5.7.

**xiii. Guidance 11: Past Distributions**

Per Section 11 of the Guidance, Class Counsel submits that the settlements in *In re: Apple Inc. Device Performance Litigation*, No. 5:18-md-02827-EJD (N.D. Cal.), and *In re: Vizio, Inc., Consumer Privacy Litigation*, No. 8:16-ml-02693-JLS-KES (C.D. Cal.), provide useful comparisons to this Settlement. Joint Decl. ¶ 29. As noted above, given the claims rate in other privacy related class action settlements, Defendant's name recognition, and the notice plane here, Class Counsel expect that claims rate for Paid Subscription Claims will be between 3% to 5% and User Claims between 1% and 2%. *Id.* ¶ 24.

**C. The Settlement Is the Product of Arms-Length Negotiations**

None of the signs of collusion identified by the Ninth Circuit are present here. There is no "free sailing provision" and Class Counsel will not seek fees and expenses that exceed the Ninth Circuit's 25% "benchmark." *Bluetooth*, 654 F.3d at 942; SA § 10. There is no reversion of the Settlement Fund— rather the Settlement makes every effort to distribute any residual to the Class. *See* SA § 2. Class Counsel will apply for fees from the Settlement Fund, and so had every incentive to secure the largest fund possible. There is no indication or existence of collusion or fraud in the settlement negotiations and the Settlement that is being presented to the Court.

**i. The Proposed Settlement Is the Product of a Mediator's Proposal and Is Supported by Experienced Counsel**

Courts recognize that the opinion of experienced counsel supporting settlement after arm's-length negotiations is entitled to considerable weight. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). Class Counsel conducted an extensive investigation into the alleged claims, diligently prosecuted the case, and faced an aggressive and steadfast defense mounted by a premier firm in the nation. Class Counsel also engaged in rigorous negotiations with Defense Counsel, and

fully considered and evaluated the fairness of the Settlement. The Parties' protracted and hard-fought negotiations included the determined assistance of an experienced mediator. At Judge Gandhi's direction, the Parties submitted comprehensive mediation briefs and supplemental statements. After submitting their statements, counsel for all Parties attended four mediations. The Parties gave detailed and thoughtful presentations of their respective cases, and Judge Gandhi provided reasonable assessments of the strengths and weaknesses of each side's position. It was only after several months of intense discussions, and a mediator's proposal, that the Parties ultimately reached an agreement. Even after agreement on the most salient terms was reached, additional months of further negotiations and the mediator's intervention were required.

Additionally, throughout the Action and settlement negotiations, Zoom has been vigorously represented by Cooley LLP, their advocacy being no less rigorous than Class Counsel's. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and the product of a mediator's proposal, it merits preliminary approval. *See Villegas v. J.P. Morgan Chase & Co.,* 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive").

### ii. The Stage of the Proceedings and the Discovery Conducted Support the Settlement

In a class action setting, courts also look for indications that the parties carefully investigated the claims before reaching a resolution, including propounding and reviewing discovery. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,* No. 09-00261 SBA, 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("extensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement. As such, this factor favors approving the Settlement."); *see also In re Portal Software Sec. Litig.,* 2007 WL 4171201, at *4.

As discussed above, Class Counsel (and their co-counsel) engaged in extensive investigation, research, and analysis of the Class's claims, which resulted in the Court upholding, in part, the FAC. Dkt. No. 168. Class Counsel thereafter aggressively pursued discovery through

1  multiple requests for production of documents and interrogatories, intensive meet and confers, and

2  discovery motion practice before Magistrate Judge Susan van Keulen and this Court. Dkt. Nos. 135,

3  142, 152, 154, 170. Zoom produced over 4,444 documents, equating to 26,480 pages of fact-related

4  material for review. In addition, Class Counsel consulted with experts, subpoenaed documents from

5  several non-parties, and thereafter engaged in multiple discussions concerning the subpoenas with

6  both the non-parties and Zoom. This discovery allowed Class Representatives to adequately

7  evaluate the merits of their claims.

8          **D.**      **Rule 23's Requirements for Class Certification are Met**

9          Parties seeking class certification for settlement purposes must satisfy the requirements of

10  Fed. R. Civ. P. 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "A court considering

11  such a request should give the Rule 23 certification factors 'undiluted, even heightened, attention

12  in the settlement context.'" *Sandoval v. Roadlink USA Pac., Inc.*, No. EDCV 10-00973, 2011 WL

13  5443777, at *2 (C.D. Cal. Oct. 9, 2011) (quoting *Amchem*, 521 U.S. at 621). At the preliminary

14  approval stage, "if a class has not [yet] been certified, the parties must ensure that the court has a

15  basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R.

16  Civ. P. 23, Adv. Comm. Notes to 2018 Amendment. All the requirements of Rule 23(a) must be

17  met, and "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v.*

18  *Dukes*, 564 U.S. 338, 345 (2011).

19          **i.**      **Class Representatives Satisfy Rule 23(a) Prerequisites**

20          **Numerosity—Rule 23(a)(1)**: Here, it is undisputed that millions of persons in the United

21  States have purchased and/or used the Zoom application. There can be no doubt that numerosity is

22  satisfied in this litigation.

23          **Commonality—Rule 23(a)(2)**: For purposes of Rule 23(a)(2), even a single common

24  question is satisfactory. *Wal-Mart*, 564 U.S. at 359; *see also Mazza v. Am. Honda Motor Co.*, 666

25  F.3d 581, 589 (9th Cir. 2012) (characterizing commonality as a "limited burden," which "only

26  requires a single significant question of law or fact"). At a minimum, Zoom made uniform

27  misrepresentations concerning the privacy and security of its services.

28

**Typicality—23(a)(3)**: Plaintiffs are typical of the Settlement Class they seek to represent. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Each alleges that he or she "used Zoom's services in reliance on Zoom's promises that (a) Zoom does not sell users' data; (b) Zoom takes privacy seriously and adequately protects users' personal information; and (c) Zoom's videoconferences are secured with end-to-end encryption and are protected by passwords and other security measures." SAC ¶¶ 19, 25, 28, 30, 33, 38, 46, 50, 53, 58, 62. Plaintiffs' and Class Members' claims arise from the same nucleus of facts, pertain to a common defendant, and are based on the same legal theories. As such, Plaintiffs are typical of other Settlement Class Members.

**Adequacy—Rule 23(a)(4)**: Plaintiffs have no conflicts with other class members. They and Class Counsel have prosecuted this Action vigorously on behalf of the Settlement Class, and will continue to do so. *Ebarle v. Lifelock, Inc.*, No. 15-cv-00258-HSG, 2016 WL 234364, at *4 (N.D. Cal. Jan. 20, 2016) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)).

### ii. Plaintiffs Satisfy Rule 23(b)(3)'s Requirements

Class Representatives seek conditional certification under Rule 23(b)(3), which provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class <u>predominate</u> over any questions affecting only individuals; and (2) the class action mechanism is <u>superior</u> to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *eBay*, 309 F.R.D. at 604.

**Predominance**: Here, every Settlement Class Member alleged that they were subjected to the same representations and/or conduct concerning privacy and security that caused harm to each Settlement Class Member. These common questions can be resolved for all members of the proposed Settlement Class in a single adjudication. *See, e.g., Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-CV-05486, 2018 WL 8949777, at *5 (N.D. Cal. Oct. 15, 2018); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018).

**Superiority**: Where, as here, a court is deciding the certification question in a settlement context, it need not consider manageability issues because "the proposal is that there be no trial," and hence manageability considerations are no hurdle to certification for purposes of settlement. *Amchem*, 521 U.S. at 620. Here, a class action is the only reasonable method to fairly and efficiently

- 24 -

1  adjudicate Class Members' claims against Zoom. *See, e.g.*, *Phillips Co. v. Shutts*, 472 U.S. 797,

2  809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical

3  to litigate individually . . . [In such a case,] most of the plaintiffs would have no realistic day in

4  court if a class action were not available."). Resolution of the predominant issues of fact and law

5  through individual actions is impracticable: the amount in dispute for individual class members is

6  too small, the technical issues involved are too complex, and the required expert testimony and

7  document review too costly. *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1123 (9th Cir. 2017). Fed. R.

8  Civ. P. 23(b)(3).

9        **E.**    <u>**The Court Should Appoint the Named Plaintiffs as Class Representatives**</u>

10        The Court should appoint the named Plaintiffs as Settlement Class Representatives because

11  they have no conflicts with the class and are represented by qualified counsel who will vigorously

12  prosecute the class's interests. *In re Online DVD-Rental Antitrust Litig*., 779 F.3d at 943.

13        **F.**    <u>**The Court Should Appoint Class Counsel as Settlement Class Counsel**</u>

14        Class Counsel were previously appointed interim class counsel. Dkt. No. 92. Considering

15  counsel's work in this Action, their collective expertise and experience in handling similar actions,

16  and the resources they have committed to representing the class, they should be appointed as Class

17  Counsel for the proposed settlement class under Rule 23(g)(3) and confirmed under Rule 23(g)(1).

18  *See also* Dkt. Nos. 74, 74-1 – 74-4.

19  **V.**    <u>**CONCLUSION**</u>

20        For the reasons discussed herein, Class Representatives respectfully request the Court

21  preliminarily approve the proposed Settlement, find that, for purposes of effectuating the proposed

22  Settlement, the prerequisites for class certification under Rule 23(a) are likely to be found satisfied,

23  approve Notice and the selection of the Settlement Administrator, and set a hearing for final

24  approval.

25

26

27

28

- 25 -

Respectfully submitted,

Dated: July 31, 2021              /s/ Mark C. Molumphy
                                 MARK C. MOLUMPHY (SBN 168009)
                                 mmolumphy@cpmlegal.com
                                 TYSON C. REDENBARGER (SBN 294424)
                                 tredenbarger@cpmlegal.com
                                 NOORJAHAN RAHMAN (SBN 330572)
                                 nrahman@cpmlegal.com
                                 JULIA Q. PENG (SBN 318396)
                                 jpeng@cpmlegal.com
                                 **COTCHETT, PITRE & MCCARTHY, LLP**
                                 840 Malcolm Road
                                 Burlingame, California 94010
                                 Tel: (650) 697-6000

Dated: July 31, 2021              /s/ Tina Wolfson
                                 TINA WOLFSON (SBN 174806)
                                 twolfson@ahdootwolfson.com
                                 THEODORE MAYA (SBN 223242)
                                 tmaya@ahdootwolfson.com
                                 CHRISTOPHER STINER (SBN 276033)
                                 cstiner@ahdootwolfson.com
                                 RACHEL JOHNSON (SBN 331351)
                                 rjohnson@ahdootwolfson.com
                                 **AHDOOT & WOLFSON, PC**
                                 2600 West Olive Avenue, Suite 500
                                 Burbank, California 91505
                                 Tel: (310) 474-9111

                                 *Interim Co-Lead Counsel for Plaintiffs*

- 26 -

1

**SIGNATURE ATTESTATION**

2         I am the ECF User whose identification and password are being used to file the foregoing

3  Notice of Motion and Motion for Preliminary Approval of Proposed Class Action Settlement;

4  Memorandum of Points and Authorities in Support Thereof.  Pursuant to L.R 5-1(i)(3) regarding

5  signatures, I, Tina Wolfson attest that concurrence in the filing of this document has been obtained.

6  DATED: July 31, 2021                                  _/s/ Tina Wolfson_____

7                                                        Tina Wolfson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28