1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HERRERA KENNEDY LLP
Shawn M. Kennedy (SBN 218472)
skennedy@herrerakennedy.com
Bret D. Hembd (SBN 272826)
bhembd@herrerakennedy.com
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Tel: (949) 936-0900
Fax: (855) 969-2050

HERRERA KENNEDY LLP
Nicomedes Sy Herrera (SBN 275332)
nherrera@herrerakennedy.com
Laura E. Seidl (SBN 269891)
lseidl@herrerakennedy.com
1300 Clay Street, Suite 600
Oakland, CA 94612
Tel: (510) 422-4700
Fax: (855) 969-2050

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Rachel Geman (Pro Hac Vice)
rgeman@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel: (212) 355-9500
Fax: (212) 355-9592

*Co-Lead Class Counsel*

[Additional counsel on signature page]

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Nicholas R. Hartmann (SBN 301049)
nhartmann@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008

BURNS CHAREST LLP
Christopher J. Cormier (Pro Hac Vice)
ccormier@burnscharest.com
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 577-3977
Fax: (469) 444-5002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE PLAID INC. PRIVACY LITIGATION | Master Docket No.: 4:20-cv-03056-DMR |
| | **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Date:       May 12, 2022 |
| | Time:       1:00 p.m. |
| | Courtroom:  4 |
| | Judge:      The Hon. Donna M. Ryu |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 2

I.   INTRODUCTION ................................................................................................ 2

II.  FACTUAL AND PROCEDURAL HISTORY .................................................... 3

III. SUMMARY OF SETTLEMENT TERMS .......................................................... 5

    A.   Settlement Class Definition............................................................... 5

    B.   Benefits to the Settlement Class........................................................ 5

    C.   Attorneys' Fees and Costs, and Service Awards for Class Representatives........... 7

IV.  THE NOTICE PROGRAM................................................................................. 8

V.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE.............................. 10

    A.   The Court Should Certify the Settlement Class .................................................. 10

        1.   Rule 23(a) Is Satisfied .............................................................. 10

        2.   Rule 23(b)(3) Is Satisfied. ......................................................... 12

    B.   The Settlement Is Fundamentally Fair, Reasonable, and Adequate..................... 13

        1.   Rule 23(e)(2)(A): The Class Representatives and Class Counsel Have Vigorously Represented the Class.................................... 14

        2.   Rule 23(e)(2)(B): The Settlement Was Negotiated at Arm's Length ....... 15

        3.   Rule 23(e)(2)(C): The Settlement Provides Meaningful and Substantial Relief to the Class ................................... 16

            a.   Costs, Risks, and Delay from Trial and Appeal........................... 18

            b.   The Effectiveness of Distribution to the Class........................... 19

            c.   Terms of Proposed Attorneys' Fees and Expenses ..................... 21

            d.   No Other Agreements ................................................................. 21

        4.   Rule 23(e)(2)(D): The Settlement Treats All Class Members Equitably ............... 21

        5.   All Other Factors Weigh In Favor of Approving the Settlement............. 22

VI.  CONCLUSION.................................................................................................. 23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Carlotti v. ASUS Comput. Int'l*,
No. 18-CV-03369-DMR, 2019 WL 613491 (N.D. Cal. Nov. 19, 2019) ........................... passim

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004).................................................................................................. 14

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)................................................................................................... 7

*Custom LED, LLC v. eBay, Inc.*,
No. 12-350, 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ...................................................... 7

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)............................................................................................ 10, 12

*Harris v. Vector Mktg. Corp.*,
2011 WL 162797 (N.D. Cal. Apr. 29, 2011) ........................................................................... 15

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010)..................................................................................................... 7

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)............................................................................................... 7

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011).................................................................................................... 16

*In re Google Buzz Privacy Litig.*,
No. C 10-00672, 2011 WL 746009 (N.D. Cal. June 2, 2011) .................................................. 17

*In re Google LLC Street View Elec. Comms. Litig.*,
No. 10-md-021784,  2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ........................................ 17

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019)............................................................................................. 12, 13

*In re Lenovo Adware Litig.*,
No. 15-md-02624, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019)............................................ 17

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015)............................................................................................. 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 2672, 2017 WL 672727 (N.D. Cal. Feb. 16, 2017)............................................. 8, 11, 12, 13

*Knight v. Red Door Salons, Inc.*,
2009 WL 24836 (N.D. Cal. Feb. 2, 2009) ............................................................................... 16

*Lane v. Facebook*,
696 F.3d 811 (9th Cir. 2012)......................................................................................... 6, 16, 17

*McDonald v. Bass Pro Outdoor World, LLC*,
No. 13-889, 2014 WL 3867522 (S.D. Cal. Aug. 5, 2014) ....................................................... 12

*O'Connor v. Uber Techs., Inc.*,
No. 13-03826, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019)................................................. 21

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 61 (9th Cir. 1982)...................................................................................................... 13

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Perkins v. LinkedIn Corp.*,
   No. 13-04303, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ............................................... 16, 17

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) ............................................................................................. 10

*Rodriguez* v. *W. Publi'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..................................................................................................... 19

*See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   No. 2672, 2017 WL 672727 (N.D. Cal. Feb. 16, 2017) ............................................................ 11

*Shin v. Plantronics, Inc.*,
   No. 18-CV-05626-NC, 2020 WL 193489 (N.D. Cal. Jan. 31, 2020) ....................................... 13

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ..................................................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................................................... 10

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ................................................................................................... 11

### STATUTES

Cal. Bus. & Prof. Code § 17200 ....................................................................................................... 17

Cal. Bus. & Prof. Code § 2294 ........................................................................................................... 4

Civil Code § 334 ............................................................................................................................... 17

### RULES

Fed. R. Civ. P. 23(a)(1) ..................................................................................................................... 10

Fed. R. Civ. P. 23(a)(3) ..................................................................................................................... 11

Fed. R. Civ. P. 23(a)(4) ..................................................................................................................... 11

Fed. R. Civ. P. 23(b)(3) ..................................................................................................................... 12

Fed. R. Civ. P. 23(e) ......................................................................................................................... 21

Fed. R. Civ. P. 23(e)(2) ..................................................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C)(ii) .......................................................................................................... 19

Fed. R. Civ. P. 23(g) ......................................................................................................................... 11

### OTHER AUTHORITIES

Cal. Const., art. I, § I ......................................................................................................................... 4

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO ISO MTN FOR PRELIM APP OF SETTLEMENT
CASE NO. 4:20-CV-03056-DMR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION[1]

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiffs Caroline Anderson, James Cottle, Rachel Curtis, David Evans, Logan Mitchell, Alexis Mullen, Jordan Sacks, Frederick Schoeneman, Gabriel Sotelo, Jeffrey Umali, and Nicholas Yeomelakis ("Plaintiffs") will move the Court for an order, pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), granting final approval of the proposed Class Action Settlement Agreement entered into by Plaintiffs and Defendant Plaid Inc. ("Plaid") (collectively, the "Parties"), on May 12, 2022 at 1:00 p.m., in Oakland, California, before The Honorable Donna M. Ryu, United States Magistrate Judge for the Northern District of California.  Specifically, Plaintiffs will request that the Court (1) grant final approval of the proposed Settlement as fair, reasonable, and adequate; certify the Settlement Class as defined in the Settlement; and (3) enter final judgment as to Plaid in this action.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Notice Compliance Declaration of Steven Weisbrot on Behalf of Angeion Group, LLC, filed concurrently herewith ("Angeion Decl."); the Declaration of Shawn M. Kennedy, filed in support of preliminary approval of the Settlement Agreement (Dkt. 138) ("Kennedy Decl."); the Declaration of The Honorable Jay C. Gandhi (ret.), filed in support of preliminary approval of the Settlement Agreement (Dkt. 140); the argument of counsel; all papers and records on file in this matter; and such other matters as the Court may consider.

---

[1] Unless otherwise indicated, capitalized terms in this notice and supporting memorandum have the same meanings as in the Class Action Settlement Agreement (Dkt. 138-1) (the "Agreement" or the "Settlement").

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3        Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and this Court's November

4   19, 2021 Order Granting Preliminary Approval (Dkt. 153) ("Preliminary Approval Order"),

5   Plaintiffs move for final approval of the Class Action Settlement Agreement reached with

6   Defendant Plaid.  Plaid provides a service used by various mobile and web-based applications

7   ("apps")—including apps that allow users to transfer money—to connect to app users' financial

8   accounts.  Plaintiffs allege that, in connection with this process, Plaid misled Class Members and

9   violated their privacy rights by obtaining data from their financial accounts without authorization,

10  and by obtaining their bank login information through the Plaid Link user interface, which

11  Plaintiffs allege was designed to have the look and feel of a user's own bank account login

12  screen.  After more than a year of hard-fought litigation, including significant discovery, and five

13  months of arm's-length settlement negotiations including two mediations with the Hon. Jay

14  Gandhi (ret.), Plaintiffs have resolved their class-wide claims against Plaid.

15       The proposed Settlement will provide significant and meaningful monetary and injunctive

16  relief to a nationwide Class of app users.  ***First***, Class Members will recover from a $58 million

17  Settlement Fund, which will be distributed pro rata to claimants after the deduction of

18  administrative costs, attorneys' fees, litigation expenses, and service awards.  Notably, "the size

19  of the Settlement Fund compares favorably with other settlements that have been approved in

20  privacy cases in this district."  Preliminary Approval Order at 21.  None of the Settlement Fund

21  will revert to Plaid.  ***Second***, all Class Members will benefit from robust injunctive relief that

22  addresses the complained-of conduct by ensuring users have greater transparency into use and

23  storage of their data.  The relief requires Plaid to maintain certain changes to the design of its

24  standard interface, make more fulsome disclosures to consumers, and delete transactional banking

25  data for consumers whose apps did not request that data.  This injunctive relief will ensure that

26  Class Members have informed control of their private financial data, and it will provide important

27  protections for consumers across the country who increasingly rely on "financial technology" (or

28  "fintech") apps to do business, transfer and invest funds, and otherwise manage their finances

1  electronically.  At the same time, the Settlement will eliminate the risk and uncertainty of

2  continued proceedings before this Court.

3      The notice campaign has been and continues to be successful.  Direct email and mail

4  notice was sent to nearly 60 million individuals for whom an email or mailing address was

5  available.  And a state-of-the-art digital and social media campaign is estimated to reach over 80

6  percent of likely class members.  A straightforward settlement website

7  (www.PlaidSettlement.com) and 24-hour automated hotline (1-855-645-1115) have made claims

8  easy to complete, while providing Class Members with detailed information about the litigation

9  and terms of the proposed Settlement.  Indeed, in less than a month since the notice campaign

10 commenced, approximately 679,037 claims have already been made (representing 0.7% of the

11 estimated size of the Class)—a figure not inconsistent with the administrator's prior estimates that

12 the claims rate in this matter is likely to be between 1 and 4 percent by the time all claims must be

13 submitted, on April 28, 2022.

14     For the reasons described herein and reflected in the Court's Preliminary Approval Order,

15 the proposed Settlement should be approved as fair, reasonable, and adequate.

16 **II.    FACTUAL AND PROCEDURAL HISTORY[2]**

17     On May 4, 2020, Class Counsel, on behalf of certain Plaintiffs, filed the first complaint in

18 this action.  In the ensuing months, several additional actions alleging the same conduct and

19 claims were filed against Plaid.  After the Court consolidated these actions (collectively, the

20 "Action") and appointed interim co-lead class counsel (Dkts. 51, 57), Plaintiffs filed the

21 Consolidated Amended Class Action Complaint (Dkt. 61) ("CAC" or "Complaint").  In summary,

22 the Complaint alleges that Plaid misled consumers by inducing users to provide private bank

23 login credentials through Plaid's software, which was embedded in widely used fintech apps.  *See*

24 CAC ¶¶ 3-4.  Then, without disclosing to users or obtaining their consent, Plaid allegedly used

25 the credentials to gather private financial data from their bank accounts for purposes unrelated to

26 _____

[2] A more extensive description of the factual and procedural history is included in Plaintiffs'
27 motion for preliminary approval (Dkt. 137) and the Declaration of Shawn M. Kennedy in support
thereof (Dkt. 138) ("Kennedy Decl.").  Additional detail regarding Class Counsel's work is
28 included in Plaintiffs' motion for attorney's fees, expenses, and service awards and supporting
joint declaration, filed concurrently herewith.

1    and unnecessary for the function of the apps Plaintiffs used.  *See id.* ¶ 5.

2         Plaid adamantly denied the allegations and vigorous litigation followed.  Early on,

3    Plaintiffs successfully opposed multiple attempts by Plaid to stay discovery pending a ruling on

4    its motion to dismiss.  Over a period of eight months, from October 2020 through May 2021,

5    Plaintiffs sought and received significant formal discovery from Plaid, including thousands of

6    pages of internal documents and detailed financial information.  Plaintiffs also received informal

7    discovery from Plaid during the mediation process (including confirmatory discovery after the

8    parties reached a settlement in principle), responded to Plaid's discovery requests, and

9    commenced third-party discovery.  Kennedy Decl. ¶¶ 5-9.  On April 30, 2021, the Court issued an

10   order granting in part and denying in part Plaid's motion to dismiss the Complaint.  Importantly,

11   the Court sustained Plaintiffs' primary claims for invasion of privacy/intrusion into private

12   affairs, unjust enrichment, deceit, and violations of the California Constitution (Art. I, § I) and

13   California's Anti-Phishing Act of 2005, Cal. Bus. & Prof. Code § 22948 *et seq.* ("CAPA").  Dkt.

14   125.  The Court dismissed Plaintiffs' claims for violations of the Stored Communications Act,

15   Unfair Competition Law, Computer Fraud and Abuse Act and Comprehensive Data and Access

16   Fraud Act, as well as Plaintiffs' claims for declaratory and injunctive relief.

17        Between February and July 2021, the Parties engaged in lengthy and contentious arm's-

18   length settlement negotiations, including two full-day mediation sessions with the Hon. Jay

19   Gandhi (ret.).  Kennedy Decl. ¶¶ 10-13; *see also* Dkt. 140 (Gandhi Decl.).  In connection with the

20   mediation, the parties submitted detailed mediation briefs and participated in a technology tutorial

21   session with Judge Gandhi.  Kennedy Decl. ¶ 10.  Plaintiffs also retained and worked with a

22   financial analyst to better understand Plaid's ability to pay a meaningful monetary amount.  *Id.*

23   Those efforts culminated in June 7, 2021 a mediator's proposal for a class-wide settlement of $58

24   million subject to the parties' negotiation of, and agreement to, appropriate injunctive relief.  That

25   proposal was accepted in a double-blind process on June 11, 2021.  *Id.* ¶ 14.  Following further

26   serious negotiations about the injunctive relief terms, the parties executed the final Class Action

27   Settlement Agreement (*id.*, Ex. A) on July 30, 2021.  *Id.* ¶ 14.

28        On August 6, 2021, Plaintiffs moved this Court for preliminary approval of the

MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. 4:20-CV-03056-DMR

Settlement.  Dkt. 137.  After holding a hearing on the matter and ordering submission of supplemental evidence (Dkts. 146-49), the Court granted preliminary approval of the Settlement on November 19, 2021, finding it was likely to certify the settlement Class, appointing the named Plaintiffs as Class Representatives, appointing interim co-lead class counsel as Class Counsel, appointing Angeion Group LLC ("Angeion") as notice and settlement administrator, appointing the form and manner of notice to the Class, and scheduling all remaining dates and deadlines pertaining to approval of the Settlement, including a final approval hearing.  *See* Preliminary Approval Order.

**III.    SUMMARY OF SETTLEMENT TERMS**

     **A.    Settlement Class Definition**

The Court has determined it will likely certify the following Settlement Class: "all natural persons who reside in the United States and who own or owned one or more Financial Accounts at the time such persons resided in the United States from January 1, 2013 to the date preliminary approval of the settlement is granted" (the "Class").  *See* Preliminary Approval Order at 29 (citing Agreement ¶ 19).  The term "Financial Account" is defined to mean a financial institution account (1) that Plaid accessed using the user's login credentials and connected to a mobile or web-based fintech application that enables payments (including ACH payments) or other money transfers or (2) for which a user provided financial account login credentials to Plaid through its user interface "Plaid Link."  Agreement ¶ 32.

     **B.    Benefits to the Settlement Class**

As set forth more fully in Plaintiffs' motion for preliminary approval (Dkt. 137-1 at 4-8) and the Court's ensuing order (Preliminary Approval Order at 4-8), the Settlement provides substantial and meaningful monetary and injunctive relief to the Class.  Specifically, Plaid agrees to pay $58 million to create a non-reversionary cash fund (the "Settlement Fund") for the benefit of Class Members, who will receive a claims-made pro rata payment after the deduction of costs relating to notice and claims administration, any attorneys' fee award and expense reimbursements, any service awards for Class Representatives (*i.e.*, named Plaintiffs), and any other costs approved by the Court.  Agreement ¶¶ 71-78.  Unclaimed funds, if any, will be

1    redistributed to Class Members through a second round of distribution.  *Id.* ¶ 78.  And in the

2    event any further distributions are not economically feasible, Plaintiffs propose that any

3    remaining unclaimed funds be distributed *cy pres* to (1) the Privacy Rights Clearinghouse, "a

4    nonprofit organization protecting privacy for all by empowering individuals and advocating for

5    positive change," which "strive[s] to provide clarity on complex topics by publishing extensive

6    educational materials";[3] and (2) Consumer Reports, which evaluates the privacy implications of

7    digital technologies to provide consumers with information about security and privacy risks and

8    further corporate accountability, and educates and empowers consumers and to galvanize the

9    industry to bring better, safer, products and services to market.[4]  *Id.* ¶¶ 78-79; 84-86.  The work of

10   both organizations relates to consumer and digital privacy and has the requisite nexus to this

11   Action, the goals of the laws underpinning Plaintiffs' claims, and the interests of the Settlement

12   Class.  *See Lane v. Facebook*, 696 F.3d 811, 819-20 (9th Cir. 2012).

13          In addition, Plaid agrees to implement meaningful business practice changes designed to

14   remediate alleged privacy violations, improve user control over users' private login information

15   and financial data, and safeguard user privacy going forward.  Specifically, Plaid agrees to (1)

16   delete certain user and financial data from its systems; (2) inform Class Members of their ability

17   to manage the connections made between their financial accounts and chosen applications using

18   Plaid and to delete data stored in Plaid's systems; (3) continue to include certain disclosures and

19   features in Plaid's standard Link flow; (4) minimize the data Plaid stores; (5) enhance disclosures

20   in Plaid's End User Privacy Policy about the categories of data Plaid collects, how Plaid uses

21   data, and privacy controls Plaid has made available to users; and (6) continue to host a dedicated

22   webpage with detailed information about Plaid's security practices.  Agreement ¶¶ 53-63; *see*

23   *also* Preliminary Approval Order at 6-8.  These requirements will apply for at least three years

24

25   [3] About, Privacy Rights Clearinghouse, https://privacyrights.org/about; *see also*, *e.g.*, Using Peer-
     to-Peer Payments More Safely, Privacy Rights Clearinghouse,
26   https://privacyrights.org/resources/using-peer-peer-payments-more-safely; Use of Mobile
     Financial Services by Consumers: Comments to the Consumer Financial Protection Bureau,
27   Privacy Rights Clearinghouse, https://privacyrights.org/resources/use-mobile-financial-services-
     consumers-comments-consumer-financial-protection-bureau.
28   [4] *See* Consumer Reports Digital Lab, https://digital-lab.consumerreports.org/.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. 4:20-CV-03056-DMR

1    within the United States.  Agreement ¶¶ 64-66.

2           In return for the monetary and injunctive relief described above, Class Members will

3    release "Plaid and any and all of its present or former predecessors, successors, assigns, parents,

4    subsidiaries, affiliates, directors, officers, employees, agents, representatives, and attorneys, and

5    any and all of the parents', subsidiaries', and affiliates' present and former predecessors,

6    successors, assigns, directors, officers, employees, agents, representatives, and attorneys" from

7    "any and all actions, causes of action, claims, demands, liabilities, obligations, damages

8    (including, without limitation, punitive, exemplary and multiple damages), penalties, sanctions,

9    losses, debts, contracts, agreements, attorneys' fees, costs, expenses, and rights of any nature and

10   description whatsoever, whether based on federal, state, or local statutes, common law,

11   regulations, rules or any other law of the United States or foreign jurisdiction, known or

12   unknown, fixed or contingent, suspected or unsuspected, in law or in equity, arising from or

13   related to allegations in the Action that were asserted or could have been asserted in the Action"

14   (the "Release").  Agreement ¶¶ 45-46.  The scope of the Release is consistent with governing

15   standards in this Circuit.[5]

16          **C.      Attorneys' Fees and Costs, and Service Awards for Class Representatives**

17          In accordance with the settlement terms and in a separate motion filed concurrently

18   herewith, Class Counsel request an award of attorneys' fees of $14.5 million—25% of the $58

19   million Settlement Fund—plus the reimbursement of actual, out-of-pocket litigation expenses.

20   *See* Agreement ¶ 108.  Class Counsel also seek service awards for Class Representatives, to be

21

22   [5] *See e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018)
     (approving class settlement release of claims against the relevant entities "related to or arising
23   from any of the facts alleged in any of the Actions"); *Custom LED, LLC v. eBay, Inc.*, No. 12-
     350, 2013 WL 6114379, at *4 (N.D. Cal. Nov. 20, 2013) (approving release of claims against the
24   relevant entities "arising out of or relating in any way to any of the legal, factual, or other
     allegations made in the Action, or any legal theories that could have been raised based on the
25   allegations of the Action."). *See also Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)
     (claims appropriately included in scope of release can include any claim against the relevant
26   entities "based on the identical factual predicate as that underlying the claims in the settled class
     action"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) (same, noting that
27   released claims need not have been asserted or necessarily presentable in the underlying class
     action).
28

1   paid from the Settlement Fund, in an amount of $5,000 each.  *See id.* ¶ 112.  The Agreement is

2   neither dependent nor conditioned upon the Court's approval of the aforementioned awards, or

3   the Court awarding the particular amounts sought. *See id.* ¶ 114.

4   **IV.    THE NOTICE PROGRAM**

5           Pursuant to the Court's preliminary approval order and as described below, Angeion has

6   implemented a robust notice program, providing notice to Class Members through direct and

7   indirect means (the "Notice Program").  The substance of the notice approved by the Court

8   "provide[s] a summary of the Settlement and clearly explain[s] how Class Members may object

9   to or opt out of the Settlement, as well as how Class Members may address the Court at the final

10  approval hearing." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,

11  No. 2672, 2017 WL 672727, at *20 (N.D. Cal. Feb. 16, 2017) ("Notice is satisfactory if it

12  generally describes the terms of the settlement in sufficient detail to alert those with adverse

13  viewpoints to investigate and to come forward and be heard.").

14          **Direct Notice**.  Angeion sent direct notice to 60,271,546 Class Members by email, and

15  650,669 Class Members by U.S. mail (via postcard notice)—comprising roughly two-thirds of the

16  estimated number of all Class Members).  Angeion Decl. ¶¶ 6-7, 9-10.  As of January 25, 2022,

17  Angeion is aware of approximately 647,109 email notices that could not be delivered.  *Id.* ¶ 7.  To

18  maximize the number of mailed notices that are successfully delivered, Angeion will re-mail

19  postcard notices using new addresses and forwarding information provided by the U.S. Postal

20  Service.  *Id.* ¶ 10.  In addition, for Class Members for whom an email address was provided by

21  Plaid (by Court order) and where those email addresses are used as the primary login for

22  Facebook or Instagram, display ads will be delivered directly via those social media platforms.

23  *Id.* ¶ 8.

24          **Media Notice**.  Angeion undertook a state-of-the-art, multifaceted digital and social

25  media notice program.  Using programmatic display advertising, digital banner ads were targeted

26  and placed on websites and platforms where Class Members are most likely to visit, with the goal

27  of driving them to the settlement website.  *Id.* ¶ 11.  Angeion also utilized Facebook and

28  Instagram digital and video ads to maximize exposure to Class Members through social media

platforms and drive them to the settlement website.  *Id.* ¶¶ 12-13.  Together, the digital and social media notice campaign is scheduled to run for 45 days and designed to deliver approximately 326 million impressions.  *Id.* ¶ 14.

Angeion executed several additional methods for building Class Member interest and driving individuals to the settlement website.  Angeion implemented a paid search campaign targeting Class Members who actively searched for information about the Settlement.  *Id.* ¶ 15.  Sponsored listings on two leading class action settlement websites—Top Class Actions and ClassActions.org—were implemented.  *Id.* ¶ 16.  Beginning January 26, 2022, Angeion also began monitoring public Twitter traffic for discussion of the Settlement, including historical discussions preceding that date, in order to provide information or respond to specific questions.  *Id.* ¶ 17.

**Settlement Website**.  Angeion established a settlement website (www.PlaidSettlement.com), which contains general information about the Settlement, including answers to frequently asked questions, important dates and deadlines pertinent to this matter, and copies of important documents.  *Id.* ¶ 18.  The settlement website has a "Contact Us" page whereby Class Members may submit questions regarding the Settlement to a dedicated email address: Questions@PlaidSettlement.com.  *Id.*  The settlement website also includes a claim filing portal whereby Class Members can complete and submit their claim form, or where they can download a PDF of the claim form to submit by mail.  *Id.* ¶ 19.  The claim filing portal includes a customized video providing step-by-step instructions on how to submit a claim.  *Id.* ¶ 20.  As of January 27, 2022, the settlement website has had 4,140,671 page views and 1,971,061 sessions, which represents the number of individual sessions initiated by all users.  *Id.* ¶ 21.

**Toll-Free Hotline**.  Separately, Angeion established a toll-free hotline dedicated to the Settlement of this action: 1-855-645-1115.  The hotline—accessible 24 hours a day, 7 days a week—utilizes an interactive voice response system to provide Class Members with responses to frequently asked questions, the ability to request a claim form, information about filing a claim, and important dates and deadlines.  *Id.* ¶ 22.  As of January 27, 2022, the toll-free number has

1    received approximately 8,770 calls, totaling 37,197 minutes.  *Id.* ¶ 23.

2           In addition to complying with the Court-approved Notice Plan, Plaid also complied with

3    its obligation to provide notice under the Class Action Fairness Act ("CAFA") by timely

4    notifying appropriate federal and state officials.  *See id.*  ¶ 5.

5    **V.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

6           **A.    The Court Should Certify the Settlement Class**

7           In preliminarily approving the Settlement, the Court found it will likely certify the Class

8    pursuant to Rules 23(a) and 23(b)(3).  Preliminary Approval Order at 13-17.  Since that time,

9    nothing has changed.  Certification of the Class for purposes of settlement is now warranted.

10                        **1.    Rule 23(a) Is Satisfied**

11          As the Court previously determined, Rule 23(a) is readily satisfied.  *See* Preliminary

12   Approval Order at 13-15.

13          **Numerosity**.  The numerosity requirement is satisfied when the class is "so numerous that

14   joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While there is no fixed rule,

15   numerosity is generally presumed when the potential number of class members reaches forty.  *See*

16   *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010).  Here, the Class satisfies the

17   numerosity requirement because it "includes approximately 98 million individuals."  Preliminary

18   Approval Order at 14; *see also* Kennedy Decl. ¶ 24.

19          **Commonality**.  Rule 23(a)(2) requires that there be one or more questions common to the

20   class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018 (9th Cir. 1998).  The Class shares

21   several common questions of fact and law, each of which "is capable of classwide resolution—

22   which means that determination of its truth or falsity will resolve an issue that is central to the

23   validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

24   350 (2011).  Common questions include, *inter alia*: whether Plaid invaded reasonable

25   expectations of privacy through improper, illegal, or offensive conduct; whether Plaid omitted or

26   concealed material facts from Class Members that it had a duty to disclose; whether Plaid gave

27   effective notice of its privacy policy under an objectively reasonable consumer standard; whether

28   Plaid's End User Privacy Policy discloses Plaid's alleged conduct; whether Plaid obtained

1   consent to obtain, store, and use Class Members' banking credentials or private financial

2   information; whether Plaid's software induced Class Members to provide "identifying

3   information" within the meaning of CAPA by representing itself to be a business, without the

4   authority or approval of the business; and whether Class Members were "adversely affected"

5   within the meaning of CAPA by Plaid's collection of their financial institution login credentials

6   or by Plaid's subsequent use of their login information to access, use, and provide their private

7   banking data to Plaid's clients.  Indeed, Class Members' claims arise from a common course of

8   alleged conduct—*i.e.*, Plaid obtained without permission users' confidential login information

9   through an interface designed to have the look and feel of a user's bank account login screen, and

10  Plaid obtained more financial and other data than was authorized or needed by users' apps.  *See*

11  *Volkswagen*, 2017 WL 672727, at *13.  Commonality is therefore satisfied.

12      **Typicality**.  The Plaintiffs' claims are "typical of the claims or defenses of the class."

13  Fed. R. Civ. P. 23(a)(3).  Typicality "assure[s] that the interest of the named representative aligns

14  with the interests of the class.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175

15  (9th Cir. 2010) (citation and quotations omitted).  Here, typicality is satisfied because Plaintiffs'

16  claims stem from the same course of conduct and pattern of alleged wrongdoing as the claims of

17  the other Class Members.  Plaintiffs, like all Class Members, had their confidential login

18  information collected by Plaid by means of an interface that Plaintiffs allege improperly

19  mimicked the look and feel of bank login screens, or allegedly had certain transactional

20  information and data collected by Plaid without proper permission.  As a result, Plaintiffs and all

21  Class Members are alleged to have suffered the same injury.  *See Volkswagen*, 2017 WL 672727,

22  at *13.

23      **Adequacy**.  The adequate representation requirement is satisfied when the representative

24  party is able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4);

25  *see also* Fed. R. Civ. P. 23(g).  Here, Plaintiffs and their counsel have no conflicts of interest with

26  other Class Members, and they have vigorously pursued their claims on behalf of the Class.  *See*

27  *Carlotti v. ASUS Comput. Int'l*, No. 18-CV-03369-DMR, 2019 WL 6134910, at *18 (N.D. Cal.

28  Nov. 19, 2019); *see also Hanlon*, 150 F.3d at 1021 (adequacy satisfied where "each . . . plaintiff

1   has the same problem").  Further, as the Court has determined in previously approving Class

2   Counsel's three law firms as interim class counsel (Dkt. 57), and again in finding it will likely

3   certify the Class (Dkt. 153), Class Counsel have extensive experience litigating, trying and

4   settling class actions, including consumer cases, throughout the country.  Indeed, throughout this

5   litigation, Class Counsel have zealously represented the interests of the Class and entered into

6   settlement negotiations only after developing a sufficient understanding of the strengths of

7   Plaintiffs' claims and the potential risks of further litigation.  *See* Kennedy Decl. ¶ 19.  Plaintiffs

8   and Class Counsel have fairly and adequately protected the interests of all Class Members and

9   will continue to do so.

10                    **2.      Rule 23(b)(3) Is Satisfied**

11            The Settlement Class also satisfies Rule 23(b)(3) because (1) questions of law or fact

12   common to class members predominate over questions affecting only individual members, and

13   (2) a class action is superior to other available methods for fairly and efficiently adjudicating the

14   controversy.  *See* Fed. R. Civ. P. 23(b)(3).  "Certification under Rule 23(b)(3) is appropriate

15   'whenever the actual interests of the parties can be served best by settling their differences in a

16   single action.'"  *Carlotti*, 2019 WL 6134910, at *18 (quoting  *Hanlon*, 150 F.3d at 1022).

17            **Predominance**.  As the Ninth Circuit has held, "predominance is 'readily met'" in cases

18   such as this alleging consumer fraud.  *Id.* (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926

19   F.3d 539, 559 (9th Cir. 2019)); *see also McDonald v. Bass Pro Outdoor World, LLC*, No. 13-889,

20   2014 WL 3867522, at *5 (S.D. Cal. Aug. 5, 2014) (standardized conduct and policy that violated

21   statutory privacy rights supported a finding of predominance in privacy class action).  Here,

22   common questions of the kind noted above predominate because there are few, if any,

23   individualized factual issues, and because the core facts involve Plaid's uniform conduct that

24   allegedly harmed all Class Members.  Specifically, Plaintiffs allege that Plaid utilized an interface

25   embedded in certain fintech apps to collect their and the other Class Members' private login

26   information, and this conduct uniformly injured Plaintiffs' and the other Class Members' legally

27   protected interests under CAPA and other state and federal statutes.  Plaintiffs also allege Plaid

28   uniformly injured Plaintiffs' and the other Class Members' protected privacy interests through

1    this conduct.  Thus, Plaid engaged in the same alleged illegal conduct "in the same manner

2    against all Class Members." *Volkswagen*, 2017 WL 672727, at *14.  Moreover, Class Members

3    do not have a strong interest in bringing individual cases, because the maximum amount of

4    recovery for an individual Class Member would likely be a fraction of the cost of bringing a

5    lawsuit and there are no apparent individual issues to weigh against the many common issues.

6    *See Carlotti*, 2019 WL 6134910, at *18-19.

7        **Superiority**.  A class action is the superior, efficient, and fair method for adjudicating the

8    claims here because "no realistic alternative exists."  *See Valentino v. Carter-Wallace, Inc.*, 97

9    F.3d 1227, 1234-35 (9th Cir. 1996).  Indeed, Class Members would find the cost of litigating

10   individual claims to be prohibitive, especially considering the risk factors of the case and the

11   damages amounts they could reasonably expect to recover if successful.  If individual lawsuits

12   were asserted against Plaid, each Class Member "would be required to prove the same wrongful

13   conduct to establish liability and thus would offer the same evidence."  This would also leave

14   open "the possibility of inconsistent rulings and results."  *Volkswagen*, 2017 WL 672727, at *14.

15   Accordingly, the class action procedure "reduce[s] litigation costs and promote[s] greater

16   efficiency."  *Valentino*, 97 F.3d at 1234.

17       For the reasons set forth above, this Court should certify the Class for settlement purposes.

18       **B.    The Settlement Is Fundamentally Fair, Reasonable, and Adequate**

19       The Ninth Circuit maintains a "strong judicial policy" that favors settlement, particularly

20   "where complex class action litigation is concerned."  *In re Hyundai*, 926 F.3d, at 556 (quotation

21   omitted).  In determining whether a court should grant final approval to a class action settlement,

22   "the universally applied standard is whether the settlement is fundamentally fair, adequate, and

23   reasonable." *Shin v. Plantronics, Inc*., No. 18-CV-05626-NC, 2020 WL 1934893, at *3 (N.D.

24   Cal. Jan. 31, 2020) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San*

25   *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).  Rule 23(e)(2) instructs that, in evaluating whether

26   a proposed settlement is fair, reasonable, and adequate, district courts must consider whether: (1)

27   the class representatives and class counsel have adequately represented the class, (2) the proposal

28   was negotiated at arm's length, (3) the relief provided for the class is adequate, and (4) the

1   proposal treats class members equitably relative to each other.[6]  As the Court determined in its

2   Preliminary Approval Order, each of these factors is satisfied here.

3   **1.    Rule 23(e)(2)(A): The Class Representatives and Class Counsel Have**
     **Vigorously Represented the Class**

4

5       As detailed in Section II above and in Plaintiffs' motion for preliminary approval, the

6   Settlement is the culmination of over a year of hard-fought litigation.  A substantial portion of the

7   independent investigation pertinent to the Action took place before the first complaint was filed

8   on May 4, 2020.  *See Carlotti*, 2019 WL 6134910, at *7.  In particular, Class Counsel spent

9   months investigating Plaid's software and business practices and engaged an expert to analyze

10  various aspects of Plaid's software before filing a detailed and thorough complaint.  *See* Kennedy

11  Decl. ¶ 4.  After that extensive pre-suit investigation, Plaintiffs and Class Counsel worked

12  together to prepare a comprehensive consolidated complaint.  In Plaid's subsequent attempt to

13  dismiss the complaint, this Court sustained Plaintiffs' principal claims for invasion of

14  privacy/intrusion into private affairs, unjust enrichment, deceit, and violations of the California

15  Constitution and CAPA.  Dkt. 125.

16      In discovery and during settlement discussions, Plaintiffs served and Plaid responded to

17  57 document requests, 21 interrogatories, and 51 requests for admission.  Kennedy Decl. ¶ 7.  In

18  response, Plaid produced over 12,000 pages of documents, including internal policies and

19  procedures, agreements, correspondence, investigatory materials, client lists, and detailed

20  financial information.  *Id.*  Plaintiffs also commenced third-party discovery, having subpoenaed

---

21  [6] These considerations, which were codified in the Federal Rules in 2018, reflect factors
22  developed and considered by the federal courts over several decades.  *See* Fed. R. Civ. P. 23(e)(2)
    2018 Advisory Committee Notes ("The goal of this amendment is not to displace any factor, but
23  rather to focus the court and the lawyers on the core concerns of procedure and substance that
    should guide the decision whether to approve the proposal.").  In the Ninth Circuit, courts
24  including this one consider the fairness factors set forth in *Churchill Village, L.L.C. v. Gen. Elec.*,
    361 F.3d 566, 575 (9th Cir. 2004), in determining whether to approve a class action settlement.
25  The "*Churchill* factors" include: "(1) the strength of the plaintiffs' case; (2) the risk, expense,
    complexity, and likely duration of further litigation; (3) the risk of maintaining class action status
26  throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed
    and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a
27  governmental participant; and (8) the reaction of the class members to the proposed settlement."
    *Churchill*, 361 F.3d at 575.  Because the *Churchill* factors substantially overlap with the Rule
28  23(e)(2), they will be addressed, where applicable, below.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. 4:20-CV-03056-DMR

1    and started discussions with certain banks. *Id.* A number of discovery-related disputes arose over

2    the course of the litigation. Each was highly contested, and over the span of several months,

3    through dozens of written and telephonic communications, the parties met and conferred to

4    narrow and reach agreement as to several disputes. *Id.* ¶ 8. At the same time, Class Counsel,

5    with the assistance of Plaintiffs' Steering Committee, responded to Plaid's discovery requests to

6    Plaintiffs. In anticipation of additional requests, Class Counsel also engaged a forensics

7    consultant to properly preserve and analyze the data on several Plaintiffs' personal mobile

8    devices. *Id.* ¶ 9.

9         At bottom, Plaintiffs and Class Counsel have more than adequately represented the Class,

10   as their interests are aligned with, and are not antagonistic to, the interests of Class Members.

11   Each Class Representative has cooperated fully with Class Counsel in representing the Class,

12   assisting in drafting the Complaint, staying informed about the case, searching for and providing

13   documents to Class Counsel, and providing relevant information needed to respond to formal

14   discovery. *See* Kennedy Decl. ¶ 26. Class Counsel, by the same token, have vigorously

15   represented the Class throughout the litigation and ultimately obtained significant monetary and

16   injunctive relief. *See id.* ¶ 18. Accordingly, this factor supports final approval.

17        **2.    Rule 23(e)(2)(B): The Settlement Was Negotiated at Arm's Length**

18        The Settlement was the result of months of informed, arm's-length negotiations between

19   experienced counsel in a process overseen by a highly respected mediator, the Hon. Jay C.

20   Gandhi (ret.). Kennedy Decl. ¶¶ 10-17. That process included two separate, all-day mediation

21   sessions and extended, tough negotiations following each session. *Id.* As a result, the proposed

22   Settlement is presumptively fair. *Carlotti*, 2019 WL 6134910, at *6; *see also Harris v. Vector

23   Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (finding that involvement of a

24   mediator suggested the settlement "was not the result of collusion or bad faith by the parties or

25   counsel"). Indeed, Plaintiffs and Class Counsel engaged in negotiations with a wealth of

26   information obtained through Class Counsel's pre-suit investigation and discovery in this case—

27   "enough . . . to make an informed decision about settlement." Preliminary Approval Order at 22.

28   Their understanding of the litigation, coupled with Class Counsel's knowledge and experience

1  litigating and settling similar class actions, supports Class Counsel's belief that the Settlement is

2  fair, reasonable, and adequate. *See id.* at 22-23; *Knight v. Red Door Salons, Inc.*, 2009 WL

3  248367, at *4 (N.D. Cal. Feb. 2, 2009) ("The recommendations of plaintiffs' counsel should be

4  given a presumption of reasonableness.") (citation omitted).

5        Moreover, the Settlement bears no indicia of collusion. *See In re Bluetooth Headset*

6  *Prods. Liab. Litig.*, 654 F.3d 935, 946-48 (9th Cir. 2011); *Carlotti*, 2019 WL 6134910, at *8.

7  Each Class Member who submits a valid claim form will receive pro rata compensation from the

8  Settlement Fund, and all Class Members will receive the benefit of valuable injunctive relief

9  moving forward. Class Counsel seek attorneys' fees of the Ninth Circuit's benchmark of 25

10  percent of the Settlement Fund plus reimbursement of actual, out-of-pocket expenses. There is no

11  clear sailing provision. And no amount of the Settlement Fund will revert to Plaid under any

12  circumstances. As a result, the Settlement is the "product of serious, informed, non-collusive

13  negotiations." *Carlotti*, 2019 WL 6134910, at *9 (quotation omitted).

14        **3.**      **Rule 23(e)(2)(C): The Settlement Provides Meaningful and Substantial**
                  **Relief to the Class**

15

16        The monetary and injunctive relief provided to the Class under the Settlement is more

17  than "adequate" considering (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness

of the proposed distribution of benefits to the Class; (iii) the requested award of attorney's fees;

18  and (iv) the fact that no side agreements exist. Fed. R. Civ. P. 23(e)(2)(C).

19

20        The Settlement achieves significant monetary and injunctive relief for the Class. The

21  monetary benefit alone compares very favorably to what plaintiffs have obtained in comparable

privacy class settlements. Indeed, courts frequently approve settlements providing monetary

22  relief to class members amounting to either a small fraction of the total potential damages or

23  nothing at all—particularly in cases involving rarely tested statutory damages provisions, such as

24  Plaintiffs' assertion of CAPA claims here. *See, e.g., Lane*, 696 F.3d at 823-25 (approving *cy pres*

25  settlement where class members asserting one of the statutory claims stood to recover possible

26  statutory damages of $2,000); *Perkins v. LinkedIn Corp.,* No. 13-04303, 2016 WL 613255, at *18

27  (N.D. Cal. Feb. 16, 2016) (approving settlement where each class member submitting a valid

28

1    claim form stood to receive about $20 while the available statutory damages of $750 per class

2    member could have attached); *In re Google LLC Street View Elec. Comms. Litig.*, No. 10-md-

3    02184, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (approving *cy pres* settlement where

4    each class member stood to recover up to $10,000 in statutory damages); *In re Google Buzz*

5    *Privacy Litig.*, No. C 10-00672, 2011 WL 7460099, at *5 (N.D. Cal. June 2, 2011) (approving *cy*

6    *pres* settlement where each class member stood to recover up to $10,000 in statutory damages

7    under the SCA).

8           Moreover, Class Counsel has obtained robust injunctive relief for the Class addressing

9    important privacy violations alleged in the Complaint.  For example, as set forth in more detail in

10   the Settlement (and Plaintiffs' motion for preliminary approval), Plaid has agreed to delete certain

11   data from its systems, and provide a prominent reference and link to Plaid Portal on its website;

12   by creating a Plaid Portal account, users, including Class Members, can view and manage the

13   connections that have been made between apps and their financial accounts using Plaid.  These

14   changes to Plaid's business practices provide additional substantial value to the Class.  *See, e.g.,*

15   *Lane,* 696 F.3d at 826 (in nationwide class action alleging defendant gathered class members'

16   personal information and online activities without consent in violation of the Electronic

17   Communications Privacy Act, the Computer Fraud and Abuse Act, the Video Privacy Protection

18   Act, and California's CLRA and Computer Crime Law, approving *cy pres*-only fund of $9.5

19   million and injunctive relief that ended the alleged misconduct); *Perkins*, 2016 WL 613255, at

20   *18 (in nationwide class action alleging violations of California's UCL, common law right of

21   publicity, and Civil Code § 334, approving fund of $13 million and injunctive relief terms

22   consisting of improved disclosures, provision of additional information about defendants'

23   relevant practices, and implementation of process where users could stop receiving unrequested

24   communications); *Google Street View*,  2020 WL 1288377, at *16 (in nationwide class action

25   alleging violations of the Federal Wiretap Act, California's wiretap statute, and California

26   Business and Professions Code § 17200, approving *cy pres*-only fund of $13 million and

27   injunctive relief consisting of defendant's agreement to not collect the relevant data from class

28   members without notice or consent for five years); *In re Lenovo Adware Litig.*, No. 15-md-02624,

1   2019 WL 1791420, at *10 (N.D. Cal. Apr. 24, 2019) (in nationwide class action alleging

2   violations of California's UCL, CLRA, Computer Crime Law, Invasion of Privacy Act, the

3   Computer Fraud and Abuse Act, and trespass, approving $8.3 million fund where defendant

4   separately entered into consent decree with the FTC and certain states to remedy the conduct at

5   issue); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015) (in nationwide

6   class action alleging violations of California's UCL and breach of contract, approving fund of

7   $1.25 million and injunctive relief to remedy the alleged misconduct).

8                              a.      <u>**Costs, Risks, and Delay from Trial and Appeal**</u>

9          Rule 23(e)(2)(C)(i) first directs courts to consider "the costs, risks, and delay of trial and

10  appeal."  Notwithstanding Plaintiffs' confidence in the merits of their claims, continued

11  prosecution of this Action entails genuine and potentially case-dispositive risks at each stage of

12  the litigation, from class certification and summary judgment to trial and appeal.  Compounding

13  those risks are the substantial costs and potential for delay were Plaintiffs to proceed to trial and

14  perhaps appeal.  Considering those uncertainties, there is little question that the proposed

15  Settlement provides an adequate remedy on behalf of the Class.

16         First, despite the fact that classes are routinely certified in consumer fraud cases like this

17  one, there are still risks at the class certification stage.  For instance, Plaid would have strenuously

18  opposed certification of any class based on purported differences among the apps or banks that

19  used Plaid, as well as changes to those apps' or banks' policies, practices, or privacy disclosures

20  over time.  Indeed, as the Court has recognized, even if a litigation class were certified, Plaintiffs

21  faced the real possibility that Plaid could move to decertify that class at any time.  Preliminary

22  Approval Order at 19.  Moreover, class certification—a practical, procedural decision—is not all

23  or nothing.  Thus, in addition to the risk of a denial of class certification, Plaintiffs faced the risk

24  that the Court might certify a smaller litigation class than the one sought.  By contrast, the large

25  nationwide class achieved through settlement, which affects Plaid's conduct over the entire

26  relevant period and without narrowing limitations, ensures that the extensive injunctive relief that

27  Class Counsel has obtained applies to the broadest group of affected individuals, who also benefit

28  from the certainty and continuity the Settlement brings.

1    Second, there is a risk that Plaid might prevail in motion practice on merits issues,

2    whether pretrial, at trial, or on appeal, resulting in substantial delay or no relief at all for Class

3    Members.  At summary judgment and beyond, Plaid would have raised multiple defenses on

4    liability under the relatively untested CAPA, including by arguing that the statute targets only

5    certain types of activity that do not apply to a business like Plaid, and that many or all Class

6    Members were not adversely affected by its business practices and thus lacked standing and/or

7    could not establish harm or damages because they suffered no harm.  *See generally* Dkts. 78, 111.

8    Indeed, despite CAPA's authorization of statutory damages in the amount of $5,000 per violation,

9    recovery of that full amount for the entire Class, totaling nearly half a trillion dollars, would have

10   been "outside the realm of possibility" in this Action, and in any event, Plaid would have argued

11   the statute was inapplicable to companies like Plaid.  *See* Preliminary Approval Order at 20.

12   Third, in the absence of a class-wide claim with attendant statutory damages such as

13   Plaintiffs' CAPA claim (or their now-dismissed SCA claim), the value of the Class's claims

14   would undoubtedly be impacted.  While Plaintiffs believe they would prevail in any legal

15   challenge, success would not be guaranteed.  *See Rodriguez* v. *W. Publi'g Corp.*, 563 F.3d 948,

16   966 (9th Cir. 2009) (noting that the elimination of "[r]isk, expense, complexity, and likely

17   duration of further litigation" weighed in favor of approving settlement).  In addition, the parties

18   would very likely dispute the appropriate measure of any restitutionary remedy.

19   In view of the above risks and others, which could result in the Class obtaining

20   significantly less relief, or none at all, the Settlement is more than adequate.  As the Court

21   preliminarily determined, the $58 million recovery, along with the proposed injunctive relief,

22   "represents a fair and adequate compromise"—particularly in view of the "significant risk to

23   individual and class recovery if the case were to proceed further in litigation."  Preliminary

24   Approval Order at 19-21.  This factor supports final approval.

25   ### b.  The Effectiveness of Distribution to the Class

26   Rule 23(e)(2)(C)(ii) instructs courts take into account the "effectiveness of any proposed

27   method of distributing relief to the class, including the method of processing class-member

28   claims."  Fed. R. Civ. P. 23(e)(2)(C)(ii); *see also Carlotti*, 2019 WL 6134910, at *9.

1       As provided by the terms of the Settlement, each Class Member who submits a valid

2  claim form will receive pro rata compensation from the Settlement Fund, and all Class Members

3  (regardless of whether they submit a claim) will receive the benefit of valuable injunctive relief

4  moving forward.  As the Court previously determined, the claims process is not burdensome for

5  Class Members.  Preliminary Approval Order at 26-27.  Class Members may make a claim by

6  completing a simple, straightforward claim form either through the settlement website or on a

7  paper copy to be mailed to the address listed.  The claim form allows claimants to enter a "Notice

8  ID" and "Confirmation Code," which are linked to a direct notice received by email or mail.

9  Claimants who do not have a "Notice ID" and "Confirmation Code" must provide additional,

10  easy-to-access information to substantiate their claim.  *See* Agreement Ex. A.[7]  Claimants must

11  then provide their contact information (including mailing address and email address), and to

12  select a preferred method of payment (*i.e.*, PayPal, Venmo, direct deposit or physical check).  By

13  collecting this limited information, Angeion ensures that Class Members can easily and quickly

14  make claims while also providing sufficient information with which to audit and verify claims.

15       This claims process is supported by a robust Court-approved Notice Program aimed at

16  maximizing the number of Class Members who opt to make a claim for monetary recovery.  As

17  detailed in Section IV above, Angeion has designed and executed a detailed and comprehensive

18  Notice Program that provides the best notice to Class Members that is practicable under the

19  circumstances, including by providing individual direct notice to all reasonably identifiable Class

20  Members via email or mail, combined with a strategic media campaign comprised of state-of-the-

21  art digital advertising, social media advertising, search engine marketing, sponsored listings on

22  two leading class action settlement websites, and engagement on social media.  *See also* Angeion

23  Decl. ¶¶ 6-23.

24       The Notice Program is broad in reach.  The direct notice efforts have resulted in nearly 60

25  million contacts by email or mail, while the digital and social media notice efforts are designed to

26  deliver approximately 326 million impressions, with an approximate reach of 80.40% and an

27

28  [7] *See also* Submit Claim, Plaid Inc. Privacy Litigation, https://www.plaidsettlement.com/submit-claim.php.

average frequency of 3.62.  *Id.* ¶ 14.  As Angeion previously advised, based on a variety of factors, the estimated claims rate in this matter is likely to be between 1 and 4 percent.  Dkt. 149 ¶ 14-23.  Indeed, as of January 27, 2022, with three months remaining for Class Members to submit claims, Angeion has received approximately 679,037 claim form submissions, which represents 0.7% of the estimated Class size.  *See* Angeion Decl. *Id.* ¶ 24.

### c.   Terms of Proposed Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) instructs courts to consider "the terms of any proposed attorney's fees, including the timing of payment."  In accordance with the Settlement terms, Class Counsel concurrently request attorneys' fees in the amount of $14.5 million—or 25% of the $58 million Settlement Fund—plus reimbursement of reasonable litigation expenses.  As detailed in Plaintiffs' motion for attorneys' fees, expenses, and service awards, the relief obtained for the Class is substantial by any metric, and the requested fee award is justified under this Circuit's case law.  *See O'Connor v. Uber Techs., Inc.*, No. 13-03826, 2019 WL 1437101, at *14 (N.D. Cal. Mar. 29, 2019).

### d.   No Other Agreements

Rule 23(e)(2)(C)(iv) requires consideration of "any agreement required to be identified under Rule 23(e)(3)."  This provision is aimed "at related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others."  Fed. R. Civ. P. 23(e) 2003 Advisory Committee Notes.  Plaintiffs have entered into no such agreements.[8]

Taking into account the considerations above, the relief provided by the Settlement is more than sufficient to justify final approval.

### 4.   Rule 23(e)(2)(D): The Settlement Treats All Class Members Equitably

The Settlement is designed to benefit all Class Members equally and equitably, by providing equal access to a Settlement Fund and providing meaningful injunctive relief to all Class Members, regardless of whether they make a claim for monetary relief.  Each Class

---

[8] Plaintiffs agreed to retain Angeion to serve as the Notice Administrator, consistent with the Court's preliminary approval order.  Plaintiffs do not, however, understand this type of agreement to be the subject of Rule 23(e)(3)'s disclosure requirement.

1    Member may submit only one claim for monetary relief.  Accordingly, each claimant will receive

2    the same pro rata share of the Settlement Fund.   In addition, the Settlement ensures important

3    injunctive relief, as described above.  Because this injunctive relief occurs via Plaid, the benefits

4    will not be user-specific but rather will be shared equally among all Class Members.  This factor

5    supports final approval.

6            **5.**      **All Other Factors Weigh In Favor of Approving the Settlement**

7          In support of their motion for preliminary approval, Plaintiffs submitted and the Court

8    found ample evidence to support approval of the Settlement, consistent with the Federal Rules,

9    prevailing case law, and the Northern District's Procedural Guidance for Class Action

10   Settlements.  *See* Preliminary Approval Order.  The only remaining obligation set forth under the

11   Procedural Guidance is a description of Class Members' responses.  *See* Procedural Guidance,

12   Final Approval § 1.

13         Class Counsel and Angeion are actively communicating with Class Members to respond

14   to inquiries about the litigation and the proposed Settlement.  Response from the Class has thus

15   far been overwhelmingly positive.  Indeed, as of January 27, 2022, Angeion has received

16   approximately 679,037 claim form submissions.  Angeion Decl. ¶ 24.

17         By contrast, Class Counsel are aware of only two objections, both of which were filed

18   with the Court.  *See* Dkts. 154 & 155.  In the first objection (Dkt. 154), Mr. Laven asserts that

19   Plaid, in his opinion, "did not mimic or did not have the look and feel of my bank's account login

20   screen."  Plaintiffs disagree[9]—but even if true, that would not bear on the reasonableness of the

21   Settlement or the relief it provides to Class Members.  In the second objection (Dkt. 155), Mr.

22   Soldis takes issue with certain aspects of the notice program and/or its execution.  Class Counsel

23   and Angeion have reached out to Mr. Soldis to assist in addressing the technical issues identified

24   in his letter.  Angeion Decl. ¶ 26.  In addition, contrary to Mr. Soldis' understanding, the online

25   claim form gives Class Members the option to receive their settlement payments via mailed paper

26   _____

27   [9] It is not clear from his letter when Mr. Laven examined the Plaid interface—that is, whether it
     was before or after Plaid implemented changes to its interface subsequent to the filing of this

28   lawsuit.

check rather than PayPal, Venmo, or direct deposit.[10]  Because the deadline for Class Members to submit objections or requests for exclusion is March 4, 2022, Plaintiffs anticipate submitting a more fulsome set of responses to these and any future objections by the Court-ordered deadline on March 21, 2022.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order, substantially similar to the proposed order filed and lodged herewith: (1) granting final approval of the Settlement as fair, reasonable, and adequate; (2) certifying the Settlement Class; and (3) entering final judgment as to Plaid in this Action.

---

[10] Class Members can select that option by clicking a hyperlink displayed directly beneath the other three payment methods.  Because Plaintiffs' claims concern Class Members' use of Plaid to link their financial accounts to fintech apps, however, Plaintiffs maintain that PayPal, Venmo, and direct deposit will be the most convenient and efficient methods for the vast majority of Class Members to receive payment under the Settlement.

1

2
Dated: January 28, 2022                      Respectfully submitted,

3                                            LIEFF CABRASER HEIMANN &  BERNSTEIN, LLP

4                                            By: */s/ Rachel Geman*
                                                 Rachel Geman
5
                                                 LIEFF CABRASER HEIMANN &
6                                                BERNSTEIN, LLP
                                                 Rachel Geman (*Pro Hac Vice*)
7                                                rgeman@lchb.com
                                                 250 Hudson Street, 8th Floor
8                                                New York, NY 10013-1413
                                                 Tel: (212) 355-9500
9                                                Fax: (212) 355-9592

10                                               LIEFF CABRASER HEIMANN &
                                                 BERNSTEIN, LLP
11                                               Michael W. Sobol (SBN 194857)
                                                 msobol@lchb.com
12                                               Melissa Gardner (SBN 289096)
                                                 mgardner@lchb.com
13                                               Michael K. Sheen (SBN 288284)
                                                 msheen@lchb.com
14                                               Nicholas R. Hartmann (SBN 301049)
                                                 nhartmann@lchb.com
15                                               275 Battery Street, 29th Floor
                                                 San Francisco, CA 94111-3339
16                                               Tel: (415) 956-1000
                                                 Fax: (415) 956-1008

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HERRERA KENNEDY LLP

By: */s/ Shawn Kennedy*
    Shawn M. Kennedy

HERRERA KENNEDY LLP
Shawn M. Kennedy (SBN 218472)
skennedy@herrerakennedy.com
Bret D. Hembd (SBN 272826)
bhembd@herrerakennedy.com
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Telephone: (949) 936-0900
Fax: (855) 969-2050

HERRERA KENNEDY LLP
Nicomedes Sy Herrera (SBN 275332)
nherrera@herrerakennedy.com
Laura E. Seidl (SBN 269891)
lseidl@herrerakennedy.com
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone: (510) 422-4700
Fax: (855) 969-2050

BURNS CHAREST LLP

By: */s/ Christopher Cormier*
    Christopher J. Cormier

BURNS CHAREST LLP
Christopher J. Cormier (*Pro Hac Vice*)
ccormier@burnscharest.com
4725 Wisconsin Avenue, NW
Washington, DC 20016
Tel: (202) 577-3977
Fax: (469) 444-5002

BURNS CHAREST LLP
Warren T. Burns (*Pro Hac Vice*)
wburns@burnscharest.com
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002

*Co-Lead Class Counsel*

MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. 4:20-CV-03056-DMR