HERRERA KENNEDY LLP
Shawn M. Kennedy (SBN 218472)
skennedy@herrerakennedy.com
Bret D. Hembd (SBN 272826)
bhembd@herrerakennedy.com
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Tel: (949) 936-0900
Fax: (855) 969-2050

HERRERA KENNEDY LLP
Nicomedes Sy Herrera (SBN 275332)
nherrera@herrerakennedy.com
Laura E. Seidl (SBN 269891)
lseidl@herrerakennedy.com
1300 Clay Street, Suite 600
Oakland, CA 94612
Tel: (510) 422-4700
Fax: (855) 969-2050

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Rachel Geman (Pro Hac Vice)
rgeman@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel: (212) 355-9500
Fax: (212) 355-9592

*Co-Lead Class Counsel*

[Additional counsel on signature page]

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Nicholas R. Hartmann (SBN 301049)
nhartmann@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008

BURNS CHAREST LLP
Christopher J. Cormier (Pro Hac Vice)
ccormier@burnscharest.com
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 577-3977
Fax: (469) 444-5002

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE PLAID INC. PRIVACY LITIGATION | Master Docket No.: 4:20-cv-03056-DMR |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF SERVICE AWARDS**<br><br>Date:        May 12, 2022<br>Time:        1:00 p.m.<br>Courtroom:   *Via* videoconference only<br>Judge:       The Hon. Donna M. Ryu |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................ 1

II.   BACKGROUND ............................................................................................................ 1

    A.   Pre-Litigation Investigation ................................................................................ 2

    B.   Litigation Before this Court ................................................................................. 2

    C.   Mediation and Settlement .................................................................................... 3

    D.   The Relief Obtained for the Class ........................................................................ 4

III.  ARGUMENT ................................................................................................................. 5

    A.   Class Counsel's Requested Fees are Reasonable and Appropriate ....................... 5

    B.   The Requested Reimbursement of Expenses is Reasonable and Appropriate ..... 17

    C.   The Requested Service Awards Are Reasonable and Appropriate ...................... 17

IV.   CONCLUSION ............................................................................................................ 18

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Abante Rooter & Plumbing v. Pivotal Payments*,

5

No. 3:16-cv-05486-JCS, 2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) ................................... 16

6

*Cruz v. Sky Chefs, Inc.*, No. 12-270, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014)................... 14

7

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................... 17

8

*Blum v. Stenson*, 465 U.S. 886 (1984) ....................................................................................... 15

9

*Campbell v. Facebook Inc.*,

10

No. 13-05996, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ......................................... 16

11

*Carlotti v. Asus Comput. Int'l*,

12

No. 18-CV-03369-DMR, 2020 WL 3414653 (N.D. Cal. June 22, 2020)........................... 15

13

*Congdon v. Uber Techs., Inc.*,

14

No. 16-02499, 2019 WL 2327922 (N.D. Cal. May 31, 2019)........................................... 17

15

*Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) .................................... 16

16

*de Mira v. Heartland Emp't Serv., LLC*,

17

No. 12-4092, 2014 WL 1026282 (N.D. Cal. Mar. 13, 2014)........................................... 13

18

*Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2014)............................................. 16

19

*Fowler v. Wells Fargo Bank*,

20

No. 17-02092, 2019 WL 330910 (N.D. Cal. Jan. 25, 2019).......................................... 17

21

*Garner v. State Farm Mut. Auto. Ins. Co.*,

22

No. 8-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)........................................ 6

23

*Hefler v. Wells Fargo & Co.*,

24

No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .................................. 16

25

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................. 6, 14

26

*Hopkins v. Stryker Sales Corp.*,

27

No. 11-cv-2786, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ..................................... 10

28

*In re Anthem, Inc. Data Breach Litig.*,

No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018).......................... 16, 18

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .................... 5, 6, 10, 13

*In re Capacitors Antitrust Litig.*,

    No. 3:17-md-02801-JD, 2020 WL 6544472 (N.D. Cal. Nov. 7, 2020) .................................... 15

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*,

    MDL No. 2785, 2021 WL 5369798 (D. Kan. Nov. 17, 2021) .................................................... 15

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ............................................ 5

*In re Intuit Data Litig.*,

    No. 15-CV-1778-EJD-SVK, 2019 WL 2166236 (N.D. Cal. May 15, 2019) ........................... 16

*In re Lenovo Adware Litig.*, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ................................. 13

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ......................................... 13

*In re Lithium Ion Batteries Antitrust Litig.*, 2019 WL 3856413 (N.D. Cal Aug. 16, 2019) .......... 13

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996) .................................. 17

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ............................................ 13, 18

*In re Omnivision Techs., Inc*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................. 6, 10, 12

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,

    No. 18-MD-2819 (NG) (LB), 2020 WL 6193857 (E.D.N.Y. Oct. 6, 2020) ............................. 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,

    No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ..................................... 16

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ................ 5, 10

*In re: High-tech Emp. Antitrust Litig.*,

    No. 11-2509, 2014 WL 10520478 (N.D. Cal. May 16, 2014) .................................................. 18

*Knight v. Red Door Salons, Inc.*,

    No. 8-1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...................................................... 6, 13

*Krakauer v. Dish Network, L.L.C.*,

    No. 1:14-CV-333, 2018 WL 6305785 (M.D.N.C. Dec. 3, 2018) ............................................. 16

*Linney v. Cellular Alaska P'ship*,

    No. 96-3008, 1997 WL 450064 (N.D. Cal. July 18, 1997) ........................................................ 7

**TABLE OF AUTHORITIES**
(continued)

Page

*Lusby v. GameStop Inc.*,
No. 12-3783, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ................................... 13

*Mendoza v. Hyundai Motor Co., Ltd*,
No. 15-cv-01685-BLF, 2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ......................... 5

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs.*,
No. 19-CV-07087-DMR, 2021 WL 4133860 (N.D. Cal. Sep. 10, 2021) .................. 15

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) .............................. 14, 17

*Perkins v. LinkedIn Corp.*,
No. 13-cv-04303, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ............................... 16

*Rhom v. Thumbtack, Inc.*,
No. 16-02008, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017) ................................... 18

*Rieckborn v. Velti PLC*, No. 13-3889, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ..................... 13

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................................ 17

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..................................................... 7, 17

*Steiner v. Am. Broadcasting Co.*, 248 F. App'x 780 (9th Cir. 2007) ........................................ 16

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) ................................................ 18

*Valentine v. NebuAd Inc.*.,
No. C 08-05113 TEH (LB), 2011 WL 13244509 (N.D. Cal. Nov. 21, 2011) .......................... 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .................................... passim

*Walsh v. Kindred Healthcare*,
No. 11-50, 2013 WL 6623224 (N.D. Cal. Dec. 16, 2013) ......................................... 9

*Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815 (9th Cir. 2009) ...................................... 14

**STATUTES**

18 U.S.C. § 1030 ................................................................................................ 3

18 U.S.C. §§ 2701 *et seq.* ................................................................................. 2

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ........................................................... 2

**TABLE OF AUTHORITIES**
**(continued)**

Page

Cal. Penal Code § 502 ........................................................................................................ 3

Cal. Bus. & Prof. Code § 22948 *et seq.* ........................................................................... 3

Fed. R. Civ. P. 23(h) .......................................................................................................... 7


**OTHER AUTHORITIES**

California Constitution (Article I, Section I) ..................................................................... 3

Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2004) ......................... 7

**NOTICE OF MOTION AND MOTION**[1]

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 12, 2022, at 1:00 p.m., in Oakland, California *via* videoconference only, before The Honorable Donna M. Ryu, United States Magistrate Judge for the Northern District of California, Class Counsel Herrera Kennedy LLP ("HK"), Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"), and Burns Charest LLP ("BC") will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 23(h) for an order awarding: (1) attorneys' fees to Class Counsel in the amount of $14,500,000; (2) reimbursement of litigation expenses of $115,920.21; and (3) Service Awards of $5,000 for each of the eleven Class Representatives in the Consolidated Amended Class Action Complaint ("CAC") (Dkt. 61), for a total of $55,000. As discussed in the supporting memorandum, the requested awards are fair, reasonable and justified.

This motion is brought pursuant to the Court's November 19, 2021 Order on Motion for Preliminary Approval of a Class Action Settlement ("Preliminary Approval Order") (Dkt. 153), paragraphs 22 and 108 of the Agreement, and Federal Rule of Civil Procedure 23(h). The motion is based on this Notice of Motion and the supporting Memorandum of Points and Authorities; the Joint Declaration of Shawn M. Kennedy, Rachel Geman, and Christopher J. Cormier in Support of this motion; papers filed in support of preliminary approval; papers filed in support of final approval; any oral argument by counsel at the hearing before this Court; any papers filed in reply; all other papers and records in this matter; and such other matters as the Court may consider.

---

[1] Capitalized terms in this notice and the supporting memorandum have the same meanings as in the Class Action Settlement Agreement (the "Agreement" or the "Settlement") (Dkt. 138-1).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Class Counsel negotiated a highly favorable settlement providing substantial cash relief to the Class through a $58 million Settlement Fund and extensive injunctive relief requiring Plaid to implement wide-ranging business practice changes, delete improperly-collected data, and give consumers more protection and control over their private login information and financial data. Having aggressively investigated and litigated this case on a fully contingent basis for over two years, Class Counsel now move the Court for an award of $14,500,000 in attorneys' fees, which represents 25% of the Settlement Fund and a multiplier of 3.29 on Class Counsel's lodestar. Class Counsel also respectfully move the Court to award reimbursement of $115,920.21 in litigation expenses, and Service Awards totaling $55,000 for the eleven Class Representatives, out of the Settlement Fund.

Plaintiffs' fee request is equal to the Ninth Circuit's benchmark for attorneys' fees in common fund cases:  25% of the fund created for the benefit of the Class. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–49 (9th Cir. 2002). Multiple factors strongly support the reasonableness of the request, including the excellent results achieved at day's end, Class Counsel's vigorous pursuit of novel and untested claims, and Class Counsel's willingness to shoulder substantial risks while litigating this action on a purely contingent basis. The requested fees also are squarely within the accepted range of comparable cases and are further justified by a lodestar cross-check.

For those reasons, and as discussed in detail below, Plaintiffs respectfully move the Court to grant their fee and expense request and approve the requested Service Awards.

### II.     BACKGROUND

Plaid provides a service used by a variety of mobile and web-based applications ("apps")—such as apps that allow users to transfer money—to connect to their users' financial accounts. Plaintiffs allege that, in connection with this process, Plaid misled and violated Class Members' privacy by obtaining data from their financial accounts without authorization, and by obtaining their bank login information through Plaid's user interface (known as "Plaid Link"),

which Plaintiffs allege was designed to have the look and feel of a user's own bank account login screen. (*See* CAC ¶¶ 37–40.)

The following is a brief summary of Class Counsel's considerable efforts in investigating and litigating this action on behalf of the Class, as well as the terms of the Settlement that resulted from those efforts.[2]

### A.  Pre-Litigation Investigation

Beginning in January 2020, Class Counsel undertook substantial efforts to investigate Plaid's actions and potential claims on behalf of the Class.  Over the course of several months, Class Counsel meticulously discovered and gathered information about Plaid's historical and current business practices, as well as the nature of its software and the privacy violations at issue, including by locating and reviewing numerous videos, message board posts, web pages, submissions to government regulators, podcasts, marketing materials, articles, and other publications. (August 5, 2021 Declaration of Shawn M. Kennedy ("Kennedy Decl.") ¶ 4 (Dkt. 138).) In addition, Class Counsel engaged a consultant to analyze Plaid's software and better understand the software templates provided to Plaid clients and the security issues involved in transmitting login information through Plaid Link. (*Id.*)

### B.  Litigation Before this Court

Class Counsel's investigation culminated in the original complaint filed in this action on May 4, 2020, *Cottle et al. v. Plaid Inc.*, No. 4:20-cv-03056-DMR (the "Cottle Action"). On July 29, 2020, the Court consolidated the Cottle Action with four related actions (collectively, the "Action") and appointed Class Counsel as interim class counsel. (Dkts. 51, 57.) On August 5, 2020, consolidated Plaintiffs filed the CAC in the Action. (Dkt. 61.)

On September 14, 2020, Plaid moved to dismiss the CAC. (Dkt. 78.) On April 30, 2021, the Court granted in part Plaid's motion, dismissing with prejudice Plaintiffs' claims for declaratory and injunctive relief and their claims under the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.*; Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*;

---

[2] These items are discussed in more detail in Plaintiffs' accompanying Motion for Final Approval.

1   Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and Computer Data and Access Fraud Act,

2   Cal. Penal Code § 502, and sustaining Plaintiffs' invasion of privacy/intrusion into private affairs

3   and unjust enrichment claims for a nationwide class, as well as their claims for deceit, violations

4   of California Constitution (Article I, Section I), and violations of California's Anti-Phishing Act

5   of 2005 ("CAPA"), Cal. Bus. & Prof. Code § 22948 *et seq.* for a California class. (Dkt. 125.)

6           Plaintiffs sought and received significant discovery from Plaid both before and during

7   settlement discussions. Plaintiffs then sought and received confirmatory discovery after reaching

8   agreement on settlement terms with Plaid. Class Counsel served—and Plaid responded to—57

9   document requests, 21 interrogatories, and 51 requests for admissions. (Kennedy Decl. ¶ 7.)

10  Plaintiffs also commenced third-party discovery, having subpoenaed and started discussions with

11  certain banks. (*Id.*) Discovery issues were highly contested and resulted in numerous telephonic

12  and written meet-and-confers over the course of the Action. (*Id.* ¶¶ 5–9.)

13          In response to formal and informal discovery requests, Plaid provided information,

14  internal documents, and data concerning the nature and function of Plaid's software and business

15  practices during the class period, Plaid's finances, and the size and scope of the putative class,

16  among other things. (*Id.* ¶ 6.) This allowed Class Counsel to negotiate a fully-informed settlement

17  maximizing the financial recovery available to the Class and providing important injunctive relief

18  designed to remediate the practices underlying the alleged misconduct going forward, while

19  avoiding litigation risks that were brought to light since the case began.

20          **C.      Mediation and Settlement**

21          Between February and July 2021, the Parties engaged in lengthy and contentious arm's-

22  length negotiations to resolve the claims in the Action. (Kennedy Decl. ¶ 10.) On February 16,

23  2021, the Parties engaged in a full-day mediation session with the Hon. Jay Gandhi (ret.). (*Id.*)

24  Prior to the mediation, the Parties prepared detailed mediation briefs outlining their positions on

25  the strengths and weaknesses of the case and participated in a technology tutorial session with

26  Judge Gandhi. (*Id.*) The Parties went into the mediation with substantially different positions

27  relating to appropriate settlement terms and did not resolve the Action at the initial mediation. (*Id.*

28  ¶ 11.) For the next several months, while the Parties continued to litigate, they continued to

engage in the mediation process with Judge Gandhi, who helped bridge the gap between the Parties' positions. (*Id.* ¶ 12.) These negotiations included another mediation session on April 13, 2021. (*Id.* ¶ 13.)

On June 7, 2021, Judge Gandhi made a mediator's proposal for a class-wide settlement of $58 million subject to the Parties' negotiation of, and agreement to, appropriate injunctive relief. Judge Gandhi's recommendation was accepted by all Parties in a double-blind process on June 11, 2021. (*Id.* ¶ 14.) Over the next six weeks, the Parties negotiated the terms of a long-form settlement agreement, including various types of significant injunctive relief. (*Id.*) These negotiations resulted in the Agreement, which was executed on July 30, 2021. (*Id.* ¶ 14 & Agreement.)

### D.   <u>The Relief Obtained for the Class</u>

The Settlement provides two independently valuable sources of relief to the Class:

<u>**First**</u>, the Settlement creates a non-reversionary $58 million cash fund. Class Members will receive a claims-made *pro rata* payment after the deduction of settlement-related costs, including the expenses of the settlement administrator and the costs of notice to the Class, Service Awards, attorneys' fee award and expense reimbursements, and any other costs approved by the Court. (Agreement ¶¶ 71–78.)

<u>**Second**</u>, the Agreement includes robust injunctive relief addressing the complained-of conduct. Plaid has agreed to implement meaningful business practice changes designed to remediate alleged privacy violations, improve user control, and safeguard consumer privacy, including by:  (1) deleting certain transaction data from its systems; (2) informing Class Members of their ability to manage the connections made between their financial accounts and chosen applications using Plaid and to delete their data stored in Plaid's systems; (3) continuing to include certain disclosures and features in Plaid Link; (4) minimizing the data Plaid stores; (5) enhancing disclosures in Plaid's End User Privacy Policy about the categories of data Plaid collects, how Plaid uses data, and privacy controls Plaid has made available to users; and (6) continuing to host a dedicated webpage with detailed information about Plaid's security

1    practices.[3] (Agreement ¶¶ 53–70.)

2    **III.   <u>ARGUMENT</u>**

3            Plaintiffs seek attorneys' fees for Class Counsel in the amount of 25% of the Settlement

4    Fund, reimbursement of Class Counsel's litigation expenses, and Service Awards of $5,000 for

5    each of the eleven Class Representatives. As discussed below, Plaintiffs' fee request is reasonable

6    under any applicable standard, especially given the outstanding relief obtained for the Class.

7    Similarly, Class Counsel's expenses were necessary to litigate this action, and the Service Awards

8    properly compensate the Class Representatives for their role in reaching this Settlement.

9            **A.   <u>Class Counsel's Requested Fees are Reasonable and Appropriate</u>**

10           In common fund cases such as this one, the guiding principle is "the equitable notion that

11   those who benefit from the creation of the fund should share the wealth with the lawyers whose

12   skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d

13   1291, 1300 (9th Cir. 1994). The Court has discretion to award attorneys' fees either as a

14   percentage of the common fund or based upon Class Counsel's lodestar. *In re Hyundai & Kia*

15   *Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019). In the Ninth Circuit, the benchmark for a

16   reasonable fee award as a percentage of the common fund is 25%. *In re Bluetooth Headset Prods.*

17   *Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Courts may also cross-check a fee award by using

18   both methods. *See Mendoza v. Hyundai Motor Co., Ltd*, No. 15-cv-01685-BLF, 2017 WL

19   342059, at *14 (N.D. Cal. Jan. 23, 2017).

20           Here, Class Counsel seek fees equal to the benchmark, or 25% of the $58,000,000

21   Settlement Fund, without accounting for the independent value of the Settlement's substantial

22   injunctive relief. This request is reasonable, particularly in light of Ninth Circuit law regarding

23   attorneys' fees in class cases that is designed to ensure that counsel have proper incentives to take

24   on difficult cases and pursue class members' best interests. *See Washington Pub. Power Supply*,

25   19 F.3d at 1299. Class Counsel respectfully submit that, in light of the excellent results reached

26

27   [3] *See also* Preliminary Approval Order at 6-8, 20 (describing "the robust injunctive relief that will
     benefit the class, including Plaid's deletion of Class Members' data where the connected
28   application did not request the data and for users for whom Plaid no longer has valid means to
     authenticate with the financial institution").

by Class Counsel in the Settlement, their successful work in prosecuting novel and untested claims on a pure contingency basis in this action, and the significant risks undertaken in the process, application of the benchmark percentage is eminently reasonable.

Class Counsel's fee request also is well supported by a lodestar cross-check because it represents a lodestar multiplier of 3.29 at Class Counsel's customary hourly rates, which is well within the range for such multipliers established by the Ninth Circuit. *See Vizcaino*, 290 F.3d at 1051 & n.6.

### 1. <u>The Request Is Warranted Under the Percentage-of-the-Fund Method</u>

The Ninth Circuit's benchmark fee in a common fund case is 25% of the fund created. *Vizcaino*, 290 F.3d at 1047. A court should depart from the benchmark only if there are "special circumstances" justifying the departure. *Bluetooth*, 654 F.3d at 942 (citations omitted). In fact, courts in the Ninth Circuit often award fees that exceed the 25% benchmark. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050 (affirming 28% award); *In re Omnivision Techs., Inc*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) ("[I]n most common fund cases, the award exceeds that [25%] benchmark."); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 8-1365, 2010 WL 1687832, at *18 (N.D. Cal. Apr. 22, 2010) (granting 30% award); *Knight v. Red Door Salons, Inc.*, No. 8-1520, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (same). As a result, as this Court noted, Class Counsel's request for 25% of the Settlement Fund is "presumptively reasonable." (Preliminary Approval Order at 28.)

Courts in the Ninth Circuit consider a number of factors in determining whether there is any basis to deviate from the benchmark, including:  (a) the results achieved; (b) the risks of contingency representation; (c) the complexities of the case and skill and effort required of counsel; and (d) awards in similar cases. *See Vizcaino*, 290 F.3d at 1048–50. These factors confirm that there is no basis for a downward departure from the benchmark.

### a. <u>Class Counsel Achieved an Outstanding Result</u>

The "most critical factor" in the Court's analysis is the strength of the result achieved by Class Counsel in the Settlement. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, *Manual for Complex*

1   *Litigation*, § 21.71, p. 336 (4th ed. 2004) (the "fundamental focus is the result actually achieved

2   for class members") (citing Fed. R. Civ. P. 23(h) committee note). The sizeable monetary relief

3   provided to the Class in the Settlement Fund alone is sufficient to show the strength of the result

4   achieved in the Settlement. But when the Court further considers the wide-ranging injunctive

5   relief to which Plaid is bound under the Agreement, the conclusion is clear:  the Settlement is an

6   outstanding result for the Class that amply supports the reasonableness of the requested fees.

7       **Monetary Relief**:  The Settlement requires Plaid to pay $58,000,000 into a non-

8   reversionary Settlement Fund. As this Court noted, based upon the estimated size of the Class and

9   the anticipated claims rate, Class Members stand to receive approximately $10 to $39 per person.

10  (Preliminary Approval Order at 20.) The Settlement Fund not only is objectively large for a

11  privacy class action where the Class Members had no out-of-pocket damages, but it also

12  "compares favorably with other settlements that have been approved in privacy cases in this

13  district." (*Id.* at 21 (collecting cases).)

14      **Injunctive Relief**:  The Settlement also provides robust injunctive relief that will benefit

15  the Class going forward. Where, as here, a settlement achieves significant benefits that are not

16  accounted for in the dollar value of the common settlement fund, the court "should consider the

17  value of [such] relief obtained as a 'relevant circumstance' in determining what percentage of the

18  common fund class counsel should receive as attorneys' fees." *Staton v. Boeing Co.*, 327 F.3d

19  938, 974 (9th Cir. 2003); *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award

20  where "the court found that counsel's performance generated benefits beyond the cash settlement

21  fund"); *Linney v. Cellular Alaska P'ship*, No. 96-3008, 1997 WL 450064, at *7 (N.D. Cal. July

22  18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (granting fee award of one-third of common fund

23  where settlement provided additional non-monetary relief).

24      The following injunctive relief provisions highlight the great value the Settlement

25  provides to the Class:

26  • Deletion of Data. One of the primary wrongful acts alleged was Plaid's collection of

27      highly detailed consumer banking data as a matter of course when it connected to a

28      consumer's account, regardless of whether the consumer's app needed or requested that

data. (*See* CAC ¶¶ 48–58.) The Settlement provides direct remediation for those wrongs by requiring Plaid to delete data it collected when an app did not request that data. (Agreement ¶ 63.) It also requires Plaid to delete data for users that Plaid has no means to authenticate with the bank. (*Id.*)

- <u>Data Minimization</u>. Similarly, the Settlement requires Plaid to minimize the data it collects and stores from consumers' financial accounts moving forward:  Plaid will collect and store only the data that an app specifically requests from Plaid or that is necessary for Plaid to offer its services, unless the user expressly consents to the retrieval of additional data fields. (Agreement ¶¶ 60–62.)

- <u>Enhanced Disclosures</u>. Another of the primary wrongful acts complained of in this action was Plaid's allegedly deceptive collection of consumers' private bank login information through the use of screens in its interface that mimicked bank login websites, as well as through allegedly insufficient or misleading disclosures. (*See* CAC ¶¶ 32–47.) The Settlement directly addresses those issues by requiring Plaid, among other things, to explicitly state that users' credentials are being "provided to Plaid," to refrain from using banks' color schemes on its login screens, and to include express and conspicuous disclosures about Plaid's role in the account connection process. (Agreement ¶ 56.)

- <u>Privacy Policy</u>. Similarly, the Settlement requires Plaid to enhance disclosures in its privacy policy to provide more detailed information about Plaid's data collection, storage, use, sharing, and deletion practices. (Agreement ¶ 53.)

- <u>End-User Controls</u>. The Settlement also requires Plaid to provide consumers with enhanced controls over the privacy of their banking data and login information. Plaid has agreed to provide prominent references to its Plaid Portal, through which consumers, including Class Members, can view and manage the connections that have been made between apps and their financial accounts using Plaid. Importantly, Class Members can also delete their financial data stored in Plaid's systems. (Agreement ¶¶ 58–59.)

Class members and other consumers across the country will substantially benefit from this injunctive relief, especially given the ubiquity of Plaid's software in the fintech universe.

1      If the value of these benefits were considered, it would "reduce[] the overall percentage of

2   fees" that Class Counsel is requesting. *Walsh v. Kindred Healthcare*, No. 11-50, 2013 WL

3   6623224, at *3 (N.D. Cal. Dec. 16, 2013) (approving fee request of 30% of the common fund;

4   finding that the request was effectively reduced by the "substantial injunctive relief" obtained

5   through the settlement). Class Counsel respectfully submit that the Settlement's monetary and

6   injunctive relief both provide strong support for their fee request.

7                      **b.      This Action Entailed Significant Risk**

8      As this Court concluded in preliminarily approving the Settlement, there is "significant

9   risk to individual and class recovery if the case were to proceed further in litigation," including

10   risks related to certifying a class of tens of millions of consumers who used different apps and

11   different financial institutions, where there were differences in those actors' practices and

12   disclosures over time. (Preliminary Approval Order at 18–19.) There also was significant risk that

13   Plaid would prevail on the merits at any stage of litigation, perhaps most notably in relation to

14   Plaintiffs' claim for violations of the "relatively untested" CAPA statute, which is the sole

15   remaining claim with statutory damages. (*Id.* at 19.) Class Counsel pursued claims under CAPA

16   in the absence of clear guidance on issues such as whether the statute applies to business activities

17   like Plaid's and whether Class Members were "adversely affected" by Plaid's practices within the

18   meaning of the statute.

19      This action entailed additional risk for Class Counsel because, unlike many class actions,

20   this case did not result from the public revelation of a data breach, government investigation, or

21   similar event.  In those latter scenarios, class counsel typically bear a lower risk because they do

22   not carry the burden of investigating all the facts, and because public pressure from news of the

23   event frequently provides additional incentive for the defendant to settle a parallel class action. In

24   this case, however, Class Counsel detected and investigated Plaid's actions themselves, including

25   retaining a consultant to assist with understanding various aspects of Plaid's technology. (*See*

26   Joint Declaration of Shawn M. Kennedy, Rachel Geman, and Christopher J. Cormier In Support

27   of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Plaintiff Service

28   Awards, filed concurrently herewith ("Joint Decl.") ¶¶ 6–8.) Class Counsel then came up with

1    novel claims based on the fruits of their investigation, all of which led to the filing of the Action

2    and, ultimately, the favorable Settlement. In short, this was an exceptionally risky action for Class

3    Counsel to pursue, further underscoring the reasonableness of the fee request. *See Bluetooth*, 654

4    F.3d at 942 (the "complexity and novelty of the issues presented" may enhance the

5    reasonableness of the fee request). Class Counsel also submit that in cases like this where alleged

6    wrongdoing that may have otherwise remained hidden is uncovered and remedied by counsel's

7    independent investigation, the Court should not hesitate to appropriately award counsel for

8    providing an important public service.

9                    **c.       Compensation was 100% Contingent on the Outcome**

10           The public is served by rewarding attorneys who assume representation of their interests

11   on a contingent basis with an enhanced fee to compensate them for the risk that they might be

12   paid nothing for their work. *See Washington Pub. Power Supply*, 19 F.3d at 1299 ("Contingent

13   fees that may far exceed the market value of the services if rendered on a non-contingent basis are

14   accepted in the legal profession as a legitimate way of assuring competent representation for

15   plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.");

16   *Vizcaino*, 290 F.3d at 1051. Class Counsel prosecuted this case on a purely contingent basis and

17   agreed to advance all necessary expenses, to the exclusion of other fee-generating work, knowing

18   that they would receive a fee and be reimbursed their expenses only if they obtained meaningful

19   relief on a class-wide basis. (Joint Decl. ¶ 49.) In so doing, Class Counsel faced a well-funded

20   corporate defendant who hired preeminent, experienced law firms to mount a vigorous defense.

21   This factor likewise supports Class Counsel's fee request. *See Hopkins v. Stryker Sales Corp.*, No.

22   11-cv-2786, 2013 WL 496358, at *3 (N.D. Cal. Feb. 6, 2013) (finding higher fee award justified

23   where "[t]his case was conducted on an entirely contingent fee basis against a well-represented

24   Defendant").

25                    **d.       The Skill and Quality of Work Support the Requested Fees**

26           The effort and skill displayed by Class Counsel and the complexity of the issues involved

27   are additional factors used in determining a proper fee. *Vizcaino*, 290 F.3d at 1048; *Omnivision*,

28   559 F. Supp. 2d at 1046–47. Class Counsel here consisted of a team of three law firms led by

1   highly skilled attorneys who were appointed to lead this litigation because of their qualifications,

2   experience, and commitment to the prosecution of this case. (*See* Dkts. 57 & 153.) Class

3   Counsel's vigorous advocacy on behalf of the Class involved, among other things:

4   (1) discovering the alleged misconduct; (2) investigating Plaid's business practices and the

5   Class's potential claims; (3) conducting legal research regarding and opposing Plaid's motion to

6   dismiss; (4) opposing Plaid's repeated attempts to stay discovery; (5) engaging in formal

7   discovery with Plaid, including a months-long meet and confer process that was necessary to push

8   for relevant documents and information; (5) seeking and obtaining valuable informal discovery

9   from Plaid; (6) negotiating a favorable settlement following nearly half a year of multiple

10  mediation sessions and protracted, arms-length negotiations; and (7) fulfilling Class Counsel's

11  various responsibilities under the Settlement, including to seek preliminary and final approval of

12  the Settlement, to oversee Notice administration, and to respond to Class Member inquiries. (Joint

13  Decl. ¶¶ 6–33, 36–50.)

14      Class Counsel initially demonstrated the skill and quality of their work in the investigation

15  of this case and preparation of the original complaint. Over the course of several months, they

16  analyzed voluminous, wide-ranging materials and gathered a detailed factual record of Plaid's

17  historic and current business practices, software, and disclosures. (Kennedy Decl. ¶ 4; Joint Decl.

18  ¶¶ 6–8.) Class Counsel brought to the task not only decades of experience in complex class action

19  litigation, but also extensive subject matter knowledge that allowed them to uncover the privacy

20  breaches at issue. (Dkts. 51-1, 51-2, 51-3.) That investigation resulted in an 82-page complaint

21  replete with detailed allegations and quotations drawn from a host of sources. (Dkt. 1.)

22      The skill and quality of Class Counsel's work was further borne out over the course of

23  litigating this action. This was no cookie-cutter case. As discussed above, Class Counsel were

24  required to litigate novel and untested legal issues. Through a contentious discovery process, they

25  did a deep dive into the nature and function of Plaid's software and business practices, Plaid's

26  finances, and issues related to the size and scope of the Class. (Kennedy Decl. ¶ 6; Joint Decl.

27  ¶¶ 14–24.) Plaintiffs served and Plaid responded to 57 document requests, 21 interrogatories, and

28  51 requests for admission. (Kennedy Decl. ¶ 7.) In response, Plaid produced over 12,000 pages of

1  documents, including internal policies and procedures, agreements, correspondence, investigatory

2  materials, client lists, and detailed financial information. (*Id.*) Plaintiffs also commenced third-

3  party discovery, having subpoenaed and started discussions with certain banks. (*Id.*) A number of

4  discovery-related disputes arose over the course of the litigation. Each was highly contested, and

5  over the span of several months, through dozens of written and telephonic communications, the

6  parties met and conferred to narrow and reach agreement as to several disputes. (*Id.* ¶ 8; Joint

7  Decl. ¶¶ 18–20.) At the same time, Class Counsel worked with the Plaintiffs' Steering Committee

8  to respond to Plaid's discovery requests to the named Plaintiffs. In anticipation of additional

9  requests, Class Counsel also engaged a forensics consultant to properly preserve and analyze the

10  data on Plaintiffs' personal mobile devices. (Kennedy Decl. ¶ 8.) As a result, Class Counsel were

11  able to negotiate a fully-informed settlement that both maximizes the financial recovery available

12  to the Class and includes robust injunctive relief provisions tailored to remediating the alleged

13  wrongful business practices.

14       Moreover, a high degree of competence was required to navigate and protect the critical

15  privacy issues in this case. At stake was the privacy and protection of consumers' personal bank

16  login information, as well as consumers' ability to protect and control the transactional banking

17  information that revealed the intimate details of their spending, savings, borrowing, investing, and

18  credit histories. Class Counsel's skill and expertise were pitted against a heavily-resourced

19  defendant that had powerful incentives to obtain rulings that were both favorable to its business

20  practices and position in the fintech industry, and unfavorable to the privacy rights of consumers.

21       Prosecuting and ultimately favorably resolving this case required the creativity, hard work

22  and perseverance of Class Counsel. The end result is proof positive of Class Counsel's efforts:  a

23  $58,000,000 Settlement Fund and sweeping injunctive relief. The skill and expertise reflected in

24  this outcome clearly support Class Counsel's request for benchmark fees.

25          **e.**    **Fee Awards in Comparable Cases Support the Requested Fees**

26       A review of fee awards in other common fund cases underscores the reasonableness of the

27  fees requested. Indeed, Class Counsel's requested fees are equal to or less than the fees frequently

28  awarded in class actions. *See, e.g. Omnivision*, 559 F. Supp. 2d at 1047 ("in most common fund

cases, the award exceeds that [25%] benchmark."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), *as amended* (June 19, 2000) (affirming fee award of one third of common fund); *In re Lenovo Adware Litig.*, 2019 WL 1791420, *8 (N.D. Cal. Apr. 24, 2019) (awarding fees of 30% of common fund in privacy class action, and finding "that the percentage requested is consistent with other awards in this district in comparable cases"); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 590–91 (N.D. Cal. 2015) (awarding fees to class counsel in privacy class action settlement in the amount of "the Ninth Circuit's established benchmark of 25%" even though "the Court disagrees that this action posed a substantial risk and required significant time and skill to obtain a result for the class"); *Lusby v. GameStop Inc.*, No. 12-3783, 2015 WL 1501095, at *9 (N.D. Cal. Mar. 31, 2015) (awarding fee of one-third of common fund); *de Mira v. Heartland Emp't Serv., LLC*, No. 12-4092, 2014 WL 1026282, at *4 (N.D. Cal. Mar. 13, 2014) (awarding fee of 28% of common fund); *Valentine v. NebuAd Inc.*, No. C 08-05113 TEH (LB), 2011 WL 13244509, at *2 (N.D. Cal. Nov. 21, 2011) (finding 30% of common fund award for attorneys' fees warranted in privacy and consumer data case). *Knight*, 2009 WL 248367, at *7–8 (awarding 30% of common fund).

In light of the foregoing, Class Counsel respectfully submit that their fee request is reasonable and fair under the percentage-of-the-fund method.

## 2.     Class Counsel's Fee Request Is Supported By a Lodestar Cross-Check

"Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942. Thus, "the primary basis of the fee award remains the percentage method," with the lodestar used "as a cross-check on the reasonableness of a percentage figure." *In re Lithium Ion Batteries Antitrust Litig.*, 2019 WL 3856413, at *7 (N.D. Cal Aug. 16, 2019) (quoting *Vizcaino*, 290 F.3d at 1050 & n.5). As "merely a cross-check on the reasonableness of a percentage figure," *Vizcaino*, 290 F.3d at 1050 n.5, "[t]he lodestar crosscheck need not entail either mathematical precision or bean counting." *Rieckborn v. Velti PLC*, No. 13-3889, 2015 WL 468329, at *21 (N.D. Cal. Feb. 3, 2015) (citation and internal punctuation omitted); *accord Cruz v. Sky Chefs, Inc.*, No. 12-270,

2014 WL 7247065, at *6 (N.D. Cal. Dec. 19, 2014).

The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Class Counsel's Joint Declaration sets out the hours of work and billing rates used to calculate the lodestar here, including a tabulation of the hours spent on various categories of activities related to this action. (Joint Decl. ¶¶ 3–4, 36–47, Exs. A–C.)[4] Class Counsel have devoted a total of approximately 5,626.5 hours to this litigation and have a total lodestar to date of approximately $4,394,236. (*Id.* ¶ 3.) These submitted hours do not, however, include every hour reported, even by Class Counsel. They do not include timekeepers from Class Counsel who billed less than 10 total hours. (*Id.* ¶ 48.) They also do not include time from other counsel representing named Plaintiffs, who made contributions to the Action, but collectively submitted a relatively small number of hours compared to Class Counsel. (*Id.*) The above amounts also do not include the additional time that Class Counsel will spend going forward in seeking approval of, and implementing, the Settlement, including responding to inquiries from Class Members and overseeing distribution of the Settlement Fund. (*Id.*) Based on prior experience, these responsibilities may require a significant further time commitment from Class Counsel. (*Id.*) If there are objections to the Settlement and subsequent appeals, those commitments and responsibilities may extend for several more years. (*Id.*)

The time Class Counsel dedicated to prosecuting this action is reasonable. Class Counsel were able to secure a highly favorable settlement, prosecuting the claims at issue efficiently and effectively through a hard-fought motion to dismiss, a contentious discovery process, and months of settlement negotiations. There should be no real question that the hours expended here were necessary.

---

[4] *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) ("Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.") (internal quotations omitted); *see also* Northern District of California Procedural Guidance for Class Action Settlements ("Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed.").

Furthermore, Class Counsel's hourly rates are reasonable.  Class Counsel are experienced, highly regarded members of the bar. (Joint Declaration ¶¶ 54–59, 61–70, 72–75.) They have brought to this case extensive experience in consumer class actions and complex litigation, as well as subject matter expertise in data privacy and technology. (*Id.*) The Court does not need to determine that the exact rates requested by Class Counsel are reasonable, but only that they fall within "the range of reasonableness required to use the lodestar figure as a cross check." *Moreno v. Cap. Bldg. Maint. & Cleaning Servs.*, No. 19-CV-07087-DMR, 2021 WL 4133860, at *6 (N.D. Cal. Sep. 10, 2021) (citation omitted).

In assessing the reasonableness of an attorney's hourly rate, courts consider their qualifications, as well as whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). This Court has found that similar hourly rates as those charged by Class Counsel were appropriate for firms practicing in the Northern District. *See Carlotti v. Asus Comput. Int'l*, No. 18-CV-03369-DMR, 2020 WL 3414653, at *5 (N.D. Cal. June 22, 2020) (finding that rates of $900 per hour, $950 per hour, and $1,025 per hour were reasonable in the Northern District). Courts within this District and elsewhere have approved Class Counsel's customary rates at those times. *See* Joint Declaration ¶¶ 60, 71, 76; *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.,* MDL No. 2785, 2021 WL 5369798, at *4–5 (D. Kan. Nov. 17, 2021) (granting requested attorney fees representing specified multiplier of hourly rates of Burns Charest and other co-lead counsel in class action settlement); *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2020 WL 6544472, at *1–2 (N.D. Cal. Nov. 7, 2020) (approving HK partner's fees at prior firm as part of total award of $69.6 million in fees); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-MD-2819 (NG) (LB), 2020 WL 6193857, at *5–6 (E.D.N.Y. Oct. 6, 2020) (approving HK partner's fees at prior firm as part of total award of $16.4 million in fees); *In re Intuit Data Litig.*, No. 15-CV-1778-EJD-SVK, 2019 WL 2166236, at *1 (N.D. Cal. May 15, 2019) (approving fees based on LCHB rates); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *17 (N.D. Cal. Aug. 17, 2018) (approving fees based

on LCHB rates); *Campbell v. Facebook Inc.*, No. 13-05996, 2017 WL 3581179, at \*7 (N.D. Cal. Aug. 18, 2017) (granting motion for attorneys' fees to LCHB in privacy litigation); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at \*5 (N.D. Cal. Mar. 17, 2017) (approving fees based on LCHB rates); *Perkins v. LinkedIn Corp.*, No. 13-cv-04303, 2016 WL 613255, at \*15 (N.D. Cal. Feb. 16, 2016) (approving LCHB rates and granting motion for attorneys' fees).

The final aspect of the lodestar cross-check is the risk multiplier. Here, the benchmark 25% fee requested by Class Counsel reflects a multiplier of 3.29 of Class Counsel's lodestar, which "falls within the Ninth Circuit's presumptively acceptable range of 1.0–4.0." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (citing *Vizcaino*, 290 F.3d at 1051 & n.6). Indeed, multipliers within (and even beyond) that "presumptively acceptable" range are routinely approved in the Ninth Circuit and elsewhere. *See,e.g., Vizcaino*, 290 F.3d at 1051 & n.6 (affirming a 3.65 lodestar multiplier and citing appendix of cases showing "a range of 0.6-19.6, with most . . . from 1.0-4.0 and a bare majority . . . in the 1.5-3.0 range"); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at \*13–14 (N.D. Cal. Dec. 18, 2018) (approving fee resulting in a lodestar multiplier of 3.22); *Abante Rooter & Plumbing v. Pivotal Payments*, No. 3:16-cv-05486-JCS, 2018 WL 8949777, at \*8 (N.D. Cal. Oct. 15, 2018) (affirming 2.7 lodestar multiplier as "reasonable and well within the range of average lodestars awarded in this circuit"); *see also Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 WL 6305785, at \*5–6 (M.D.N.C. Dec. 3, 2018) (approving 4.39 lodestar multiplier and citing approved multipliers ranging "from 2 to 4.5," as well as a list of "54 cases with multipliers over 3.5").

In fact, courts have approved significantly higher lodestar multipliers. *Steiner v. Am. Broadcasting Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of 6.85 was "well within the range of multipliers that courts have allowed"); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (noting "ample authority" for a multiplier of 5.2 and collecting cases with substantially higher multipliers); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.") (citing *Vizcaino*, 290 F.3d at 1052–54).

Application of the lodestar multiplier cross-check thus further supports the reasonableness of Class Counsel's requested fee.

**B.        The Requested Reimbursement of Expenses is Reasonable and Appropriate**

Class Counsel also are entitled to reimbursement of reasonable out-of-pocket costs advanced for the Class. *See* Fed. R. Civ. P. 23(h); 18 U.S.C. § 2520(b)(3); *Paul, Johnson*, 886 F.2d at 271. Class Counsel and the other law firms representing Plaintiffs in this action have incurred total out-of-pocket expenses of $115,920.21. (Joint Declaration, ¶¶ 77–78, Ex. D.) Significant costs included, *inter alia*, consultant fees, mediation charges, and other customary litigation expenses. (*Id.*, ¶ 78, Ex. D.) Payment of these expenses was necessary to advance, and ultimately, to resolve this litigation. *See also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367–72 (N.D. Cal. 1996) (costs related to retention of experts, photocopy costs, postage, telephone costs, computerized legal research fees, and filing fees are appropriate to reimburse).

**C.        The Requested Service Awards Are Reasonable and Appropriate**

Class Counsel seek Service Awards of $5,000 for each of the eleven Plaintiffs named in the CAC, for a total of $55,000. "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases"). Such awards are "intended to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action." *Id.* "The Ninth Circuit has repeatedly held that $5,000 is a reasonable amount for an incentive award." *Congdon v. Uber Techs., Inc.*, No. 16-02499, 2019 WL 2327922, at *9 (N.D. Cal. May 31, 2019) (collecting cases); *Fowler v. Wells Fargo Bank*, No. 17-02092, 2019 WL 330910, at *8 (N.D. Cal. Jan. 25, 2019) (same).

The requested Service Awards of $5,000 for each of eleven Class Representatives are reasonable and appropriate here. First, the Class Representatives have expended substantial time and effort in assisting Class Counsel with the prosecution of the Class's claims, including by describing the details of their use of various fintech apps and interaction with the Plaid Link interface; by searching for, reviewing and providing documents and information relevant to the

case; by preserving relevant documentation and evidence for discovery; and by staying abreast of events in the litigation and providing their opinions on the proposed settlement. (*See* Joint Decl., Ex. E.)

Second, the Class Representatives should be rewarded for their "public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (citation and quotation omitted). Without the Class Representatives' willingness to take on the burdens associated with filing and prosecuting this action, no recovery would have been possible. Because the Class Representatives came forward to assert rights that are common to all Class members, Plaid has committed to pay a total of $58,000,000 and agreed to injunctive relief tailored to remediate the wrongs complained of in this lawsuit, as well as to enhance the privacy protections of every member of the Class as well as users of fintech apps generally.

Third, the requested service awards are appropriate when compared to the recovery achieved. In assessing the reasonableness of a request for service awards, the Court may compare the request against the size of the settlement fund. *See, e.g.*, *Mego*, 213 F.3d at 457 (approving incentive awards of $5,000 each to two class representatives in $1.725 million settlement, which collectively comprised 0.56% of total settlement); *In re: High-tech Emp. Antitrust Litig.*, No. 11-2509, 2014 WL 10520478, at *3 (N.D. Cal. May 16, 2014) (approving "modest" service awards that represented 0.4% of recovery); *Anthem,* 2018 WL 3960068, at *31 (0.52% of recovery); *see also Rhom v. Thumbtack, Inc.*, No. 16-02008, 2017 WL 4642409, at *8 (N.D. Cal. Oct. 17, 2017) ("A $5,000 award also equals approximately 1-2% of the total settlement fund, which is consistent with other court-approved enhancements."). Here, the requested Service Awards, totaling $55,000, collectively represent 0.09% of the $58,000,000 Settlement Fund. Plaintiffs' request is reasonable and appropriate.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this motion in its entirety, and award (1) attorneys' fees to Class Counsel in the amount of $14,500,000; (2) reimbursement of litigation expenses of $115,920.21; and (3) Service Awards of

$5,000 for each of the Class Representatives, for a total of $55,000.

Dated: January 28, 2022                    Respectfully submitted,

                                           HERRERA KENNEDY LLP

                                           By: */s/ Shawn Kennedy*
                                                Shawn M. Kennedy

                                                Shawn M. Kennedy (SBN 218472)
                                                skennedy@herrerakennedy.com
                                                Bret D. Hembd (SBN 272826)
                                                bhembd@herrerakennedy.com
                                                4590 MacArthur Blvd., Suite 500
                                                Newport Beach, CA 92660
                                                Telephone: (949) 936-0900
                                                Fax: (855) 969-2050

                                                HERRERA KENNEDY LLP
                                                Nicomedes Sy Herrera (SBN 275332)
                                                nherrera@herrerakennedy.com
                                                Laura E. Seidl (SBN 269891)
                                                lseidl@herrerakennedy.com
                                                1300 Clay Street, Suite 600
                                                Oakland, CA 94612
                                                Telephone: (510) 422-4700
                                                Fax: (855) 969-2050

                                           By: */s/ Rachel Geman*
                                                Rachel Geman

                                                LIEFF CABRASER HEIMANN &
                                                BERNSTEIN, LLP
                                                Rachel Geman (*Pro Hac Vice*)
                                                rgeman@lchb.com
                                                250 Hudson Street, 8th Floor
                                                New York, NY 10013-1413
                                                Tel: (212) 355-9500
                                                Fax: (212) 355-9592

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Nicholas R. Hartmann (SBN 301049)
nhartmann@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008

BURNS CHAREST LLP

By:  */s/ Christopher Cormier*
Christopher J. Cormier

Christopher J. Cormier (*Pro Hac Vice*)
ccormier@burnscharest.com
4725 Wisconsin Avenue, NW
Washington, DC 20016
Tel: (202) 577-3977
Fax: (469) 444-5002

BURNS CHAREST LLP
Warren T. Burns (*Pro Hac Vice*)
wburns@burnscharest.com
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002

*Co-Lead Class Counsel*