| | |
|---|---|
| HERRERA KENNEDY LLP<br>Shawn M. Kennedy (SBN 218472)<br>skennedy@herrerakennedy.com<br>Bret D. Hembd (SBN 272826)<br>bhembd@herrerakennedy.com<br>4590 MacArthur Blvd., Suite 500<br>Newport Beach, CA 92660<br>Tel: (949) 936-0900<br>Fax: (855) 969-2050<br><br>HERRERA KENNEDY LLP<br>Nicomedes Sy Herrera (SBN 275332)<br>nherrera@herrerakennedy.com<br>Laura E. Seidl (SBN 269891)<br>lseidl@herrerakennedy.com<br>1300 Clay Street, Suite 600<br>Oakland, CA 94612<br>Tel: (510) 422-4700<br>Fax: (855) 969-2050<br><br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>Rachel Geman (Pro Hac Vice)<br>rgeman@lchb.com<br>250 Hudson Street, 8th Floor<br>New York, NY 10013-1413<br>Tel: (212) 355-9500<br>Fax: (212) 355-9592<br><br>*Co-Lead Class Counsel*<br><br>[Additional counsel on signature page] | LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>Michael W. Sobol (SBN 194857)<br>msobol@lchb.com<br>Melissa Gardner (SBN 289096)<br>mgardner@lchb.com<br>Michael K. Sheen (SBN 288284)<br>msheen@lchb.com<br>Nicholas R. Hartmann (SBN 301049)<br>nhartmann@lchb.com<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Tel: (415) 956-1000<br>Fax: (415) 956-1008<br><br>BURNS CHAREST LLP<br>Christopher J. Cormier (Pro Hac Vice)<br>ccormier@burnscharest.com<br>4725 Wisconsin Avenue, NW, Suite 200<br>Washington, DC 20016<br>Tel: (202) 577-3977<br>Fax: (469) 444-5002 |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE PLAID INC. PRIVACY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Master Docket No.: 4:20-cv-03056-DMR<br><br>**PLAINTIFFS' OMNIBUS RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT**<br><br>Date:   May 12, 2022<br>Time:   1:00 p.m.<br>Courtroom: 4<br>Judge:  Hon. Donna M. Ryu |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. RESPONSE TO OBJECTIONS .................................................................................... 2

    A. The Proposed Settlement Is Fair, Reasonable, and Adequate ............................... 2

    B. The Settlement Treats Class Members Equitably ................................................ 4

    C. Notice Was Properly Directed to the Class .......................................................... 5

    D. The Claims Program is Robust ............................................................................. 6

    E. The Opt-Out Procedure is Reasonable ................................................................. 8

    F. The Requested Attorneys' Fees Are Reasonable in Relation to the Settlement Fund ................................................................................................... 9

    G. Helfand's Objections Regarding Notice and Attorneys' Fees Are Meritless ....... 10

III. CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

### CASES

*Campbell v. Facebook, Inc.*,
 951 F.3d 1106 (9th Cir. 2020) .................................................................................................. 5

*Churchill Village LLC v. Gen. Elec. Corp.*,
 361 F.3d 566 (9th Cir. 2004) .................................................................................................... 2

*Collins v. Helfand*,
 No. 20-14492-J, 2020 WL 8770265 (11th Cir. Dec. 22, 2020) ............................................... 10

*Collins v. Quincy Bioscience, LLC*,
 No. 19-22864-CIV, 2020 WL 7135528 (S.D. Fla. Nov. 16, 2020) ......................................... 10

*Day v. Persels & Assocs., LLC*,
 729 F.3d 1309 (11th Cir. 2013) ............................................................................................... 12

*Fraley v. Facebook, Inc.*,
 966 F. Supp. 2d 939 (N.D. Cal. 2013) ..................................................................................... 8

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) .................................................................................................. 3

*Hughes v. Microsoft Corp.*,
 No. 98-CV-01646, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) .................................... 2

*In re Anthem, Inc. Data Breach Litig.*,
 327 F.R.D. 299 (N.D. Cal. 2018) .............................................................................................. 2

*In re Google Plus Profile Litig.*,
 No. 18-cv-06164, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ................................................ 2

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
 No. C 07-05634 CRB, 2015 WL 3396829 (N.D. Cal. May 26, 2015) ..................................... 5

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*,
 895 F.3d 597 (9th Cir. 2018) .................................................................................................... 5

*Koby v. ARS Nat'l Servs., Inc.*,
 846 F.3d 1071 (9th Cir. 2017) ................................................................................................ 11

*Lane v. Facebook, Inc.*,
 696 F.3d 811 (9th Cir. 2012) .................................................................................................... 5

*Larsen v. Trader Joe's Co.*,
 No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ................................. 1

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*,
 No. 19-cv-07087, 2021 WL 1788447 (N.D. Cal. May 5, 2021) ............................................... 8

*Norcia v. Samsung Telecomms. Am., LLC*,
 No. 14-CV-00582-JD, 2021 WL 3053018 (N.D. Cal. July 20, 2021) .................................... 10

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985) ................................................................................................................ 11

*United States v. Oregon*,
 913 F.2d 576 (9th Cir. 1990) .................................................................................................... 3

*Walsh v. Kindred Healthcare*,
 No. 11-cv-0050, 2013 WL 6623224 (N.D. Cal. Dec. 16, 2013) ............................................. 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Williams v. Gen. Elec. Cap. Auto Lease, Inc.*,
    159 F.3d 266 (7th Cir. 1998) .................................................................................................. 11, 12

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................................ 8
Fed. R. Civ. P. 23(a)(4) ................................................................................................................. 12
Fed. R. Civ. P. 23(b)(3) ................................................................................................................... 5
Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................................ 12
Fed. R. Civ. P. 23(e)(5)(A) ..................................................................................................... 3, 8, 9

**OTHER AUTHORITIES**

United States District Court for the Northern District of California,
    Procedural Guidance for Class Action Settlements ...................................................................... 8

1       Plaintiffs, through Class Counsel, respectfully submit this response to objections to the Class Action Settlement Agreement,[1] and in further support of their motions for Final Approval of Class Action Settlement (Dkt. 156) and Attorneys' Fees (Dkt. 157),[2] in light of the Class's response to the proposed Settlement.

## I.    INTRODUCTION

      As numerous courts have observed, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014) (cleaned up) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)). That presumption strongly militates in support of approval here: of the tens of millions of Class Members who stand to benefit from the Settlement, only five Objectors—Richard Laven, Joseph P. Soldis, Colin Larimer Rice, John William Grosklaus, and Steven Helfand—each proceeding *pro se*, have submitted objections.[3]

      The Objectors raise concerns regarding a number of topics, including the adequacy of the settlement, the proposed distribution plan, the notice plan, the propriety of the claims and opt-out procedures, and the requested award of attorneys' fees. As addressed herein, each objection is without basis in fact or law. Accordingly, each should be overruled. Further, no Class Member has objected to Class Counsel's request for reimbursement of reasonable litigation expenses or the granting of service awards to the Class Representatives in this case.

      Meanwhile, the response of the Class to the proposed Settlement has been overwhelmingly positive. *See* Dkt. 156 at 3. Indeed, only approximately 1,785 Class Members—

---

[1] Unless otherwise indicated, capitalized terms herein have the same meanings as in the Class Action Settlement Agreement (Dkt. 138-1) (the "Agreement" or the "Settlement").

[2] No oppositions were filed to either of these motions.

[3] *See* Dkts. 154 ("Laven Obj."), 155 ("Soldis Obj."), 158 ("Rice Obj."), 161 ("Grosklaus Obj."), 162 ("Helfand Obj."). A sixth Class Member, Jamyl Harris, submitted a letter thanking the Court for its work on the case. *See* Dkt. 160. Because Harris implies support for the proposed Settlement, their letter is not further addressed herein.

1  just 0.0015% of the estimated 98 million total Class size—have requested exclusion from the

2  Class. Dkt. 165.[4] In light of these facts, the Court should approve the Settlement (which resulted

3  from extensive negotiations between experienced and informed counsel) as fair, reasonable, and

4  adequate. In addition to robust injunctive relief, the Settlement provides for a $58 million cash

5  payment to benefit the Settlement Class—a significant achievement for class members. The five

6  objections, and the low percentage of opt-outs, do not justify a different result.

7  **II.    RESPONSE TO OBJECTIONS**

8  The objections provide no cause for the Court to depart from its well-reasoned findings

9  that the Settlement is fair, adequate, and reasonable. Dkt. 153 (Prelim. Approval Order). Instead,

10  they generally reflect misunderstandings about the Settlement, claims process, and notice

11  program, or rest on misinterpretations of Rule 23 of the Federal Rules of Civil Procedure.

12  Objector Helfand, a serial objector (and disbarred attorney) who purports to raise the most issues,

13  *endorses* approval of the Settlement. Instead, he takes issue only with aspects of the Notice and

14  Class Counsel's requested attorneys' fees. The objections should be overruled.

15  **A.    The Proposed Settlement Is Fair, Reasonable, and Adequate.**

16  As set forth in Plaintiff's Motion for Final Approval (Dkt. 156), the Settlement provides

17  significant and meaningful monetary and injunctive relief to a nationwide Class of app users.

18  Indeed, Objector Helfand urges approval of the Settlement, describing the proposed injunctive

19  relief as "exciting" and "valuable consideration." Helfand Obj. at 3. Only three objectors address

20  the substantive merits of the proposed Settlement.

---

[4] The vast majority of these requests were collected and submitted by a single law firm that appears to have engaged in a direct marketing campaign to solicit opt outs. *See* March 21, 2022 Declaration of Rachel Geman ("Geman Decl.") filed herewith, at ¶¶ 2–6. In any event, the opt-out rate in this case falls well within the range accepted by courts in this District in comparable cases. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320–21 (N.D. Cal. 2018) ("low rates of . . . opt-outs are 'indicia of the approval of the class'"; finally approving settlement where "only 406 Settlement Class Members have opted out of the Settlement (about 0.0005% of the Class)."); *In re Google Plus Profile Litig.*, No. 18-cv-06164, 2021 WL 242887, at *3 (N.D. Cal. Jan. 25, 2021) (finally approving class settlement where approximately 0.031% of the class requested exclusion); *see also Hughes v. Microsoft Corp.*, No. 98-CV-01646, 2001 WL 34089697, at *1, *8 (W.D. Wash. Mar. 26, 2001) (finally approving settlement where "less than 1%" opted out); *Churchill Village LLC v. Gen. Elec. Corp.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement approval where 500 class members—or 0.56%—opted out).

First, Objectors Rice and Grosklaus urge the court to "reject this settlement and force a new one" that "includes a reasonable amount of money (>100$ per potential claimant)." Rice Obj. at 1–2; Grosklaus Obj. at 2 (endorsing Rice's objection and requesting that Class Counsel renegotiate a settlement "that offers just and adequate compensation"). Neither individual, however, adequately explains why the relief already provided for in the Settlement is inadequate or unreasonable. *See* Fed. R. Civ. P. 23(e)(5)(A) ("The objection must . . . state with specificity the grounds for the objection."); *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (objectors bear the burden of proving any assertions they raise when challenging the reasonableness of a class action settlement). They also fail to consider the robust injunctive relief provided by the Settlement—which addresses the complained-of conduct and requires Plaid to maintain certain changes to its interface, to make more fulsome disclosures to consumers, and to delete transactional data for consumers whose apps did not request the data. That relief benefits *all* Class Members, regardless of whether they make a claim for monetary relief. These objections therefore amount to a mere wish that Plaintiffs had settled for more money. But "[s]ettlement is the offspring of compromise," and district courts must determine "not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Indeed, as this Court already found, the "settlement falls well within the range of reasonableness, particularly given the robust injunctive relief that will benefit the class." Dkt. 153 at 20. Rice's and Grosklaus's objections do not warrant a different ruling now.

Second, Objector Laven appears to oppose a settlement because, in his opinion, Plaid is not liable as it "did not mimic or did not have the look and feel of my bank's account login screen." Laven Obj. at 1. Plaintiffs disagree with Laven's characterization of the facts and note it is unclear when Laven examined the Plaid interface—that is, whether it was before or after Plaid implemented changes to its interface subsequent to the filing of this lawsuit. *See* Dkt. 61 (Cons. Am. Compl.) ¶¶ 67 & n.50, 72–73 (describing post-filing changes). Even if Laven's contentions were true, however, they would provide further cause to approve the Settlement as an eminently reasonable resolution of the claims brought on behalf of the Class.

1  In sum, objections to the terms of the Settlement are misplaced. The combination of
2  substantial monetary relief and meaningful forward-looking business practice changes provides
3  Class Members with more than adequate relief in light of the costs, risks, and delay associated
4  with continued litigation. The Settlement should be approved.

5  **B.    The Settlement Treats Class Members Equitably.**

6  Objector Grosklaus argues that the Settlement should be rejected because all Class
7  Members who submit a claim will receive the same claims-made *pro rata* disbursement, even
8  though some (including Grosklaus himself) linked multiple Financial Accounts using Plaid.
9  Grosklaus Obj. at 1–2. Grosklaus asserts this is unfair "because it does not account for the fact
10 that Class Members may have significant differences in the amount of data that was unknowingly
11 and/or unnecessarily provided to Plaid." *Id.* at 1. This argument misconstrues the factual basis
12 for Plaintiffs' claims and the nature of class settlements.

13 First, it is not the case that linking more Financial Accounts via Plaid necessarily results in
14 greater injury or damages to a Class Member. Because Plaid uses Class Members' "credentials to
15 obtain the maximum amount of data accessible" from a linked account, the quantity and quality
16 of data that Plaid collects will vary depending on the nature of that account. *See* Dkt. 61 ¶¶ 49,
17 52; *see also id.* ¶¶ 50, 56 (Plaid obtains all available transactional data, related geolocation data,
18 and even information about joint account holders and related accounts). For Class Members who
19 do substantially all of their banking through a single checking account, for example, Plaid might
20 obtain *more* (and more sensitive) data from that single account than it would for Class Members
21 who link multiple accounts. Nor is it true that Class Members' damages can be measured on a
22 linear scale based solely on the raw volume of financial data obtained—as Plaintiffs allege, the
23 value of that data is in the aggregate. *Id.* ¶ 58; *see also, e.g.*, *id.* ¶ 63 (multiple users' aggregated
24 financial data could be utilized "to forecast the revenue of companies in advance of equity
25 earnings announcements").

26 Further, the Ninth Circuit has recognized that "[i]t is an inherent feature of the class-action
27 device that individual class members will often claim differing amounts of damages—that is why
28 due process requires that individual members of a class certified under Rule 23(b)(3) be given an

1  opportunity to opt out of the settlement class to pursue their claims separately, as were the class

2  members in this case." *Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012). Thus, courts

3  must "evaluate the fairness of a settlement as a whole, rather than assessing its individual

4  components." *Id.* at 818–19; *accord Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1122 (9th Cir.

5  2020) (endorsing a "holistic assessment of the settlement's fairness"). The fact that some class

6  members *might* have won more at trial does "not cast doubt on [a] district court's conclusion as to

7  the fairness and adequacy of the overall settlement amount to the class *as a whole*." *Lane*, 696

8  F.3d at 924 (emphasis in original); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No.

9  C 07-05634 CRB, 2015 WL 3396829, at *3 (N.D. Cal. May 26, 2015), *aff'd*, 701 F. App'x 554

10  (9th Cir. 2017) (rejecting class settlement objector's argument that "the settlements

11  inappropriately treat all class members the same despite differences in the value of their claims");

12  *cf. In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, 895 F.3d 597,

13  609 & n.16 (9th Cir. 2018) ("Any settlement value based on averages will undercompensate some

14  and overcompensate others.").

### C. Notice Was Properly Directed to the Class.[5]

16  Objector Rice claims that the settlement website does not disclose the requested fee

17  award, the number of "claimants," or the predicted disbursement to Class Members. Rice Obj. at

18  1. He is mistaken. At least two documents, available through the "Important Documents" page

19  of the settlement website,[6] respond to these very topics.

20  First, the Long Form Notice discloses that Class Counsel will seek an award of attorneys'

21  fees of up to $14.5 million (representing 25 percent of the Settlement Fund) (Question 11), and

22  explains that the Settlement Fund will be distributed to Class Members *pro rata* after deduction of

23  Court-approved fees, litigation expenses, service awards and settlement administration costs

---

[5] Objector Helfand's arguments regarding the Notice's content are addressed in Section I.G, *infra*.

[6] Important Documents, Plaid Inc. Privacy Litigation, https://www.plaidsettlement.com/important-documents.php.

1  (Question 13).[7] Further, because "[t]he amount of the payments to individual Class Members will
2  depend on the number of valid claims that are filed," the Long Form Notice necessarily cannot
3  and does not include a concrete estimate for how much each Class Member will receive. The
4  contents are Long Form Notice are reproduced on the Frequently Asked Questions ("FAQs")
5  page of the settlement website.[8]

6  Second, the Court's Preliminary Approval Order (Dkt. 153), also available on the
7  settlement website, discloses additional detail regarding: (i) Class Counsel's requested fee award
8  (*id.* at 12, 20, 28); (ii) the total estimated class size (*id.* at 14, 20); (iii) the estimated number of
9  claimants (*id.* at 27); and (iv) the amount of individual payments based on the estimated claims
10 rate (*id.* at 20).[9]

11 Because these documents were readily available to all Class Members, in accordance with
12 the Court's orders, notice was proper and Rice's objections should be overruled.

13 **D.   The Claims Program is Robust.**

14 Objector Soldis makes a series of objections to the claims process. First, he asserts that
15 the e-mail Notice he received "lacks any specific link that takes the claimant to the claims form"
16 and "requires that the party cut/paste text from the e-mail and open a new page to reach the claim
17 form." Soldis Obj. at 1. In fact, the e-mail Notice contains a hyperlink to the Settlement
18 Website's homepage (www.plaidsettlement.com). Dkt. 159, Ex. B (e-mail notice).[10] On the
19 main page of the settlement website is a prominently displayed tab labeled "SUBMIT A
20 CLAIM." *See id.*, Ex. K (website). Clicking that tab prompts Class Members who received
21 personalized Notice to enter—*i.e.*, cut-and-paste—a Notice ID and Confirmation Code from the

---

[7] Notice of Class Action Settlement, https://angeion-public.s3.amazonaws.com/www.PlaidSettlement.com/docs/Long+Form+Notice.pdf.

[8] Frequently Asked Questions, Plaid Inc. Privacy Litigation, https://plaidsettlement.com/frequently-asked-questions.php.

[9] Other documents downloadable from the website likewise contain the information Rice seeks, including Plaintiffs' Motion for Preliminary Approval (Dkt. 137), Plaintiffs' Motion for Attorneys' Fees (Dkt. 157), and the Long Form Notice (Dkt. 159, Ex. J). *See* https://plaidsettlement.com/important-documents.php.

[10] Even if Soldis was unable to click or activate the hyperlink from his e-mail application, he appears to have successfully navigated to the settlement website. *See* Soldis Obj. at 6–7.

1  e-mail they received. *Id.* This exceedingly simple process satisfies Rule 23. *Cf.* Fed. R. Civ. P.
2  23 advisory committee's note to 2018 amendment (claims process should not be "unduly
3  demanding").

4  Second, Soldis asserts that "the online claim form offers only **three** methods to be paid"—
5  namely, PayPal, Venmo, or Direct Deposit. Soldis Obj. at 1 (emphasis in original). This is
6  incorrect. Immediately below those three options is the following language with link allowing
7  Class Members to elect to receive their payment by paper check: "If you prefer to receive a paper
8  check instead of a faster and more convenient option listed above, click this link."[11] *See*
9  Declaration of Angeion Group, LLC ("Angeion Decl.") filed herewith, at ¶ 6.

10  Third, Soldis asserts he was unable to submit an online claim form because he received an
11  "error" code stating that the account information he entered was invalid. Soldis Obj. at 1. Based
12  on the response from the Class to date, this does not appear to be a common problem. Angeion
13  Decl. ¶ 5. Nevertheless, because such technical issues inevitably arise, the notice and claims
14  programs were designed to be highly interactive. Class Members had several ways to ask
15  questions or seek assistance, including via the case website, a toll-free phone number, or by e-
16  mailing or calling Angeion or Class Counsel. *See* Dkt. 159, Ex. J at 4 (listing Class Counsel's
17  contact information), 14 (FAQ addressing "How do I get more information?"). Class Members
18  have not been shy about reaching out: as of January 28, 2022, Angeion's toll-free number had
19  received 8,770 calls (Dkt. 159 ¶ 22) and Class Counsel has received dozens of calls and e-mails
20  with questions about the settlement (Geman Decl. ¶¶ 7–8). In Soldis's case, Angeion reached out
21  to him directly to assist in addressing any technical issues.[12] Angeion Decl. ¶¶ 3–4; Dkt. 159
22  ¶ 26. Rule 23 does not require more. *Cf. Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 941

---

24  [11] In addition to being factually inaccurate, Soldis's contention that the claims program "denies
25  payment to those without a bank account (i.e. homeless, indigent, those who can't qualify for a
    bank account, etc)" is inapposite here. Soldis Obj. at 1–2. Because the Class is comprised of
26  individuals who linked a Financial Account to a payments app, the number of Class Members
    who are unable to accept payment via payment app or direct deposit into a financial account
27  should be exceedingly small.

28  [12] Angeion provided Soldis with a PDF claim form, but he indicated in response that he would (to
    paraphrase) "ask the Court to resolve the problem." Angeion Decl. ¶ 4.

1   (N.D. Cal. 2013), *aff'd*, 638 F. App'x 594 (9th Cir. 2016) ("[T]he question whether a settlement is
2   fundamentally fair within the meaning of Rule 23(e) is not the same as asking the reviewing court
3   if perfection has been achieved.").

### E.   The Opt-Out Procedure is Reasonable.

Objector Rice argues that the Court should reject the settlement because opting out requires Class Members to "fill out a paper letter and mail it in."  Rice Obj. at 1.  This process suggests "bias," according to Rice, because "[i]t must be as simple for a claimant to reject a settlement as to accept it"; and because it "allows lawyers to increase their fees by making it harder for claimants to remove themselves from the settlement."  *Id.*  Rice is incorrect on both points.

First, Rice offers no authority for the proposition that a class settlement must employ the same method for submitting claims and opt-outs.  *See id.*  Rule 23 has no such requirement.  *Cf.* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment (the method for opting out "should be as convenient as possible, while protecting against unauthorized opt-out notices.").[13] Indeed, this District's Procedural Guidance for Class Action Settlements[14] states that requests for exclusion *should be submitted by mail*.  *See* Procedural Guidance, Preliminary Approval § 4 (class notice "should instruct class members who wish to opt out of the settlement to send a letter . . . to the settlement administrator").  Both here and in at least one other recent case, this Court approved opt-out procedures that comply with the Guidance.  *See* Dkt. 153 at 32–33; *see also, e.g.*, *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087, 2021 WL 1788447, at *16 (N.D. Cal. May 5, 2021) (Ryu, M.J.) (quoting Procedural Guidance and

---

[13] Rice objects to the method for "exit[ing] the settlement," which Plaintiffs understand to mean exclusion from (rather than objection to) the settlement. *See* Rice Obj. at 1. It is notable, however, that Rule 23 and this District's Procedural Guidance presume that objections will be submitted in writing. *See* Fed. R. Civ. P. 23(e)(5)(A) (an objection "must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection."); Procedural Guidance, Preliminary Approval § 5 (class notice "should instruct class members who wish to opt out of the settlement to send a letter" "should instruct class members who wish to object to the settlement to *send their written objections* only to the court." (emphasis added)).

[14] *Available at* https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

preliminarily approving class settlement requiring opt-out by mail). Tellingly, Rice does not claim that mailing a letter is so onerous as to constitute a deprivation of Class Members' due process—indeed, the fact that hundreds of Class Members have opted out of proves that it is not.

Second, Rice is incorrect that fewer opt-outs results in more fees for Class Counsel. Pursuant to the Agreement, Class Counsel have moved for fees on a percent-of-the-fund basis. *See* Agreement ¶ 108 (Class Counsel to seek fees "in an amount not to exceed 25% of the Settlement Fund"); Dkt. 157 (Motion for Fees) at 1, 5 (same). The number of opt-outs does not alter the size of the fund; nor does it alter the amount Class Counsel has requested in fees. In other words, Class Counsel's requested fees are in no way tied to the number of Class Members that opt out of the settlement. In any event, this Court will provide the final word on the amount of Class Counsel's fee award. *See, e.g.*, Dkt. 153 at 25 ("The court will address the exact amount of fees to be awarded in the order for final approval."); *see also* Agreement ¶ 110 (if the Court awards less than the amount sought, the difference remains in the Settlement Fund for distribution to Class Members or *cy pres* recipients pursuant to the terms of the Agreement).

### F. The Requested Attorneys' Fees Are Reasonable in Relation to the Settlement Fund.[15]

Two Objectors raise issues broadly relating to Class Counsel's request for attorneys' fees, but neither provides good reason for the Court to depart from the benchmark. Objector Rice argues that the requested fee (which he incorrectly assumes to be 30%) "amount[s] to a usurious fraction" in light of the compensation that individual Class Members likely will receive. *See* Rice Obj. at 1–2. Objector Grosklaus echoes Rice's "concerns regarding the amount of compensation for Class Counsel relative to the expected compensation for Class Members." Grosklaus Obj. at 2. Both Objectors, however, fail to "state with specificity the grounds for the objection" to the requested fees, which is reason enough to overrule them. Fed. R. Civ. P. 23(e)(5)(A); *see also id.* advisory committee's note to 2018 amendment ("[O]bjections must provide sufficient specifics to enable the parties to respond to them and the court to evaluate them."). In any event, the

---

[15] Objector Helfand's arguments regarding the requested fee award are addressed in Section I.G, *infra*.

requested fee is plainly reasonable when measured against the total settlement fund and strong injunctive relief obtained for the Class. *See, e.g.*, Dkt. 153 (Prelim. Approval Order) at 28 ("Class Counsel's anticipated request for 25% of the common fund is presumptively reasonable"); *Walsh v. Kindred Healthcare*, No. 11-cv-0050, 2013 WL 6623224, at *3 (N.D. Cal. Dec. 16, 2013) ("[W]hen the Court considers the value of [the injunctive relief obtained], it reduces the overall percentage of fees that counsel will receive.").

### G. Helfand's Objections Regarding Notice and Attorneys' Fees Are Meritless.

The most detailed objections lodged against the proposed Settlement come from Objector Steven Helfand. Helfand is "an attorney who lost his license to practice law in California and who district court judges have described as a 'serial' objector to class action settlements." *Collins v. Quincy Bioscience, LLC*, No. 19-22864-CIV, 2020 WL 7135528, at *1, *6 (S.D. Fla. Nov. 16, 2020) ("specifically ordering Helfand . . . to not speak" at the fairness hearing), *appeal dismissed sub nom. Collins v. Helfand*, No. 20-14492-J, 2020 WL 8770265 (11th Cir. Dec. 22, 2020).[16] Indeed, Judge Donato recently denied Helfand's objections to the class settlement in another matter, joining other courts in finding that Helfand "was not a credible witness" and noting that "he has 'been involved in 50 or 60 cases . . . as an objector or as an attorney for objectors.'" *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-CV-00582-JD, 2021 WL 3053018, at *3 (N.D. Cal. July 20, 2021). Helfand's objections here are similarly lacking in credibility.

**Notice Content**. Helfand asserts that the Notice "is misleading and violates due process" because it "implies, erroneously, that the judge overseeing this case is an Article III judge." Helfand Obj. at 1. Not so. As all state court judges surely would attest, use of the honorific "Judge" without the prefix "Magistrate" simply does not "imply" appointment under Article III of the Federal Constitution—and presumably, those who care deeply about the distinction between Article III and Magistrate Judges would be the least likely to draw that inference. Further, while the fact Judge Ryu is a Federal Magistrate Judge is not material for purposes of class notice, Class

---

[16] *See also* https://apps.calbar.ca.gov/attorney/Licensee/Detail/206667 (last visited March 21, 2022; showing Helfand's license status as "Disbarred").

Members are on notice of that fact here: it is prominently disclosed in filings available on the settlement website,[17] on this case's public docket on PACER,[18] on the Northern District of California's website,[19] and via simple internet searching.[20] Helfand's publicly filed objection (and now, this response) provides additional notice of that fact. This more than satisfies the requirements of due process.[21]

In any event, Helfand's objection to the Notice is premised on a material misrepresentation of non-binding case law. The Ninth Circuit has made clear that the consent of absent class members is not required for a magistrate judge to exercise jurisdiction over a class settlement. *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017) ("We conclude that the statute requires the consent of the named plaintiffs alone."). Indeed, the Seventh Circuit case on which Helfand relies is fully in accord. *See Williams*, 159 F.3d at 269 ("[A]bsent class members are not 'parties' before the court in the sense of being able to direct the litigation. Instead, the named representative . . . is the 'party' to the lawsuit who acts on behalf of the entire class, including with regard to the decision to proceed before a magistrate judge." (citations omitted)). Perhaps for that reason, Rule 23 does not require parties to disclose whether the

---

[17] For instance, the signature block for the Preliminary Approval Order conspicuously states "United States Magistrate Judge." ECF No. 153 at 36. That Order is publicly available in the "IMPORTANT DOCUMENTS" tab of the settlement website, at https://plaidsettlement.com/important-documents.php.

[18] Question 33 on the "FAQs" tab of the settlement website ("How do I get more information?") explicitly refers and links to the PACER system and provides the case number. *See* https://plaidsettlement.com/frequently-asked-questions.php.

[19] *See* https://cand.uscourts.gov/judges/ryu-donna-m-dmr/.

[20] A Google search for "Judge Ryu," for example, produces numerous results (and a header and a sidebar) identifying Donna M. Ryu as a "Magistrate Judge."

[21] To borrow from the Supreme Court's reasoning in *Phillips Petroleum Co. v. Shutts*: "the Constitution does not require more to protect what must be the somewhat rare species of class member who is unwilling to" consent to magistrate jurisdiction, but for whom Article III "is nonetheless so important that he cannot be presumed to" have expended the bare minimum effort to determine whether the presiding judge is a magistrate. 472 U.S. 797, 813 (1985) (addressing the burden of executing an opt-out form). The *Williams* case is not to the contrary: the court stated that a class notice's disclosure of adjudication by a "Magistrate Judge" would be *sufficient* to defeat a hypothetical challenge; it did not hold that such a disclosure was *necessary*. *See Williams v. Gen. Elec. Cap. Auto Lease, Inc.*, 159 F.3d 266, 270 (7th Cir. 1998).

1 presiding judge is a magistrate judge in a notice of class settlement. *See* Fed. R. Civ. P.
2 23(c)(2)(B) (listing what must be disclosed); *see also id.* advisory committee's note to 1966
3 amendment ("[M]andatory notice pursuant to subdivision (c)(2) . . . is designed to fulfill
4 requirements of due process.").

5 Contrary to Helfand's contention, the Seventh Circuit's (non-binding) opinion in *Williams*
6 did not write such a requirement into Rule 23. Rather, *Williams* posits that an absent class
7 member who challenges magistrate judge jurisdiction must make a showing that "the decision to
8 consent [was not] made by a party who adequately represents (or represented) the absentee's
9 interests." *Williams*, 159 F.3d at 269–70; *see also* Fed. R. Civ. P. 23(a)(4) (governing class
10 representative adequacy). Here, neither Helfand nor any other objector has even attempted to
11 make such a showing.[22] Thus, by *Williams*'s own terms, this objection should be overruled in its
12 entirety.

13 **Attorneys' Fees**. Helfand's criticism of the requested fee award is similarly meritless.
14 He asserts that a 3.29 multiplier is "excessive" based upon one Class Counsel firm's utilization of
15 partners with supposedly high hourly rates instead of associates. Helfand tellingly does not take
16 issue with the total amount of fees requested, the hours expended, or the hourly rates charged by
17 attorneys with Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") and Burns Charest LLP
18 ("BC"). Rather, he speculates that Herrera Kennedy LLP ("HK")'s work was duplicative and
19 criticizes the Court's case management in appointing three firms as Class Counsel. Helfand Obj.
20 at 4–5. As Class Counsel has explained, however, "[p]rosecution of this complex litigation
21 required an enormous amount of work, effort, and expense" by each of the three Class Counsel

---

[22] In parenthetical dicta, the court in *Williams* speculated that an absent class member "may" be entitled to have her challenge to the class representatives' adequacy decided by an Article III judge. 159 F.3d at 269. Even under its most charitable interpretation, therefore, *Williams* does not fashion a novel procedural mechanism for Helfand to "specifically request that this matter be referred back to an Article III judge for evaluation of fairness under Rule 23." *See* Helfand Obj. at 3. If Helfand desired adjudication of his claims by an Article III judge, he could have opted out of the Settlement, filed his own claims against Plaid, and declined to consent to magistrate jurisdiction. *See Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1321 (11th Cir. 2013) (discussing *Williams* and holding that "the absent class members in many class actions, including this one, could opt out of a settlement and not be bound by the judgment entered by a non-Article III judge").

1  firms, who were "actively and personally involved" in litigating this case.  Dkt. 157-1 (Joint

2  Decl.) ¶¶ 2–3.  The three Class Counsel firms are united in their belief that all of "the time

3  expended in connection with this matter was necessary to ensure the success of the action and

4  reasonable in amount, particularly given the result achieved by the Settlement and the novelty and

5  complexity of the litigation."  *Id.* ¶ 2.

6  Further, HK partner and co-lead Class Counsel Shawn M. Kennedy was the first to

7  investigate the underlying privacy violations alleged in this action, facts that did not arise from a

8  public statement by Plaid, a news report, or a government investigation.  HK drew on Mr.

9  Kennedy's "extensive substantive knowledge regarding financial and other technology issues,

10  having founded technology companies in the legal and financial technology industries."  Dkt.

11  51-2 ¶ 5.[23]  All three firms—not just two—worked closely together on strategy, briefing, oral

12  argument, discovery, and settlement.[24]

13  Finally, while Helfand makes much of the fact that HK did not employ lower-billing

14  associates, he ignores the fact that Class Counsel's work on this matter was shared among three

15  firms that, from the outset, shared responsibility and divided tasks as appropriate.  The time

16  submitted by LCHB and BC shows that associates from those firms handled a great deal of

17  associate-level work for the Class Counsel team.  *See* Dkt. 157-1 (Joint Decl.), Exs. B & C.

18  **III.   CONCLUSION**

19  For the foregoing reasons, Plaintiffs respectfully request that this Court overrule the

20  objections and grant final approval of the Settlement.

---

[23] The rest of the HK team similarly have credentials that were important to the development and prosecution of this case.  For example, HK partner Nicomedes Sy Herrera has nearly 25 years of experience investigating and prosecuting a broad range of complex, high-impact class actions and *qui tam* suits each involving billions of dollars in damages, and Bret Hembd is an accomplished attorney who has litigated high-stakes consumer class actions and *qui tam* lawsuits in federal courts across the nation.  *See* Dkt. 157-1 ¶¶ 57–58.

[24] As this Court is aware, for example, Mr. Kennedy joined Ms. Geman in arguing the motion to dismiss and the motion for preliminary approval.

| | |
|---|---|
| Dated:  March 21, 2022 | Respectfully submitted, |
| | LIEFF CABRASER HEIMANN &  BERNSTEIN, LLP |
| | By: */s/ Rachel Geman*<br>     Rachel Geman |
| | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>Rachel Geman (*Pro Hac Vice*)<br>rgeman@lchb.com<br>250 Hudson Street, 8th Floor<br>New York, NY 10013-1413<br>Tel: (212) 355-9500<br>Fax: (212) 355-9592 |
| | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>Michael W. Sobol (SBN 194857)<br>msobol@lchb.com<br>Melissa Gardner (SBN 289096)<br>mgardner@lchb.com<br>Michael K. Sheen (SBN 288284)<br>msheen@lchb.com<br>Nicholas R. Hartmann (SBN 301049)<br>nhartmann@lchb.com<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Tel: (415) 956-1000<br>Fax: (415) 956-1008 |

| | |
|---|---|
| 1 | HERRERA KENNEDY LLP |
| 2 | By: */s/ Shawn Kennedy* |
| | Shawn M. Kennedy |
| 3 | |
| | HERRERA KENNEDY LLP |
| 4 | Shawn M. Kennedy (SBN 218472) |
| | skennedy@herrerakennedy.com |
| 5 | Bret D. Hembd (SBN 272826) |
| | bhembd@herrerakennedy.com |
| 6 | 4590 MacArthur Blvd., Suite 500 |
| | Newport Beach, CA 92660 |
| 7 | Telephone: (949) 936-0900 |
| | Fax: (855) 969-2050 |
| 8 | |
| | HERRERA KENNEDY LLP |
| 9 | Nicomedes Sy Herrera (SBN 275332) |
| | nherrera@herrerakennedy.com |
| 10 | Laura E. Seidl (SBN 269891) |
| | lseidl@herrerakennedy.com |
| 11 | 1300 Clay Street, Suite 600 |
| | Oakland, CA 94612 |
| 12 | Telephone: (510) 422-4700 |
| | Fax: (855) 969-2050 |
| 13 | |
| 14 | BURNS CHAREST LLP |
| 15 | By: */s/ Christopher Cormier* |
| | Christopher J. Cormier |
| 16 | |
| | BURNS CHAREST LLP |
| 17 | Christopher J. Cormier (*Pro Hac Vice*) |
| | ccormier@burnscharest.com |
| 18 | 4725 Wisconsin Avenue, NW |
| | Washington, DC 20016 |
| 19 | Tel: (202) 577-3977 |
| | Fax: (469) 444-5002 |
| 20 | |
| | BURNS CHAREST LLP |
| 21 | Warren T. Burns (*Pro Hac Vice*) |
| | wburns@burnscharest.com |
| 22 | 900 Jackson Street, Suite 500 |
| | Dallas, TX 75202 |
| 23 | Tel: (469) 904-4550 |
| | Fax: (469) 444-5002 |
| 24 | |
| | *Co-Lead Class Counsel* |
| 25 | |
| 26 | |
| 27 | |
| 28 | |