1   HERRERA KENNEDY LLP
    Shawn M. Kennedy (SBN 218472)
2   skennedy@herrerakennedy.com
    Bret D. Hembd (SBN 272826)
3   bhembd@herrerakennedy.com
    4590 MacArthur Blvd., Suite 500
4   Newport Beach, CA 92660
    Tel: (949) 936-0900
5   Fax: (855) 969-2050

6   HERRERA KENNEDY LLP
    Nicomedes Sy Herrera (SBN 275332)
7   nherrera@herrerakennedy.com
    Laura E. Seidl (SBN 269891)
8   lseidl@herrerakennedy.com
    1300 Clay Street, Suite 600
9   Oakland, CA 94612
    Tel: (510) 422-4700
10  Fax: (855) 969-2050

11  LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
12  Rachel Geman (Pro Hac Vice)
    rgeman@lchb.com
13  250 Hudson Street, 8th Floor
    New York, NY 10013-1413
14  Tel: (212) 355-9500
    Fax: (212) 355-9592

15
16  *Co-Lead Class Counsel*

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Nicholas R. Hartmann (SBN 301049)
nhartmann@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008

BURNS CHAREST LLP
Christopher J. Cormier (Pro Hac Vice)
ccormier@burnscharest.com
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 577-3977
Fax: (469) 444-5002

17      UNITED STATES DISTRICT COURT
        NORTHERN DISTRICT OF CALIFORNIA
18          OAKLAND DIVISION

19  IN RE PLAID INC. PRIVACY
    LITIGATION

20                                          Master Docket No.: 4:20-cv-03056-DMR

21                                          **SUPPLEMENTAL JOINT DECLARATION
                                            OF CHRISTOPHER J. CORMIER, SHAWN
                                            M. KENNEDY, AND RACHEL GEMAN IN
22                                          SUPPORT OF PLAINTIFFS' MOTION
                                            FOR ATTORNEYS' FEES,
23                                          REIMBURSEMENT OF EXPENSES, AND
                                            PLAINTIFF SERVICE AWARDS, AND IN
24                                          RESPONSE TO COURT'S ORDER (DKT.
                                            177)**

25

26

27

28

We, CHRISTOPHER J. CORMIER, RACHEL GEMAN, and SHAWN M. KENNEDY, hereby declare as follows:

1.      Christopher J. Cormier is a member in good standing of the District of Columbia and Colorado State Bars and a partner in the law firm of Burns Charest LLP ("Burns Charest"). Shawn Kennedy is a member in good standing of the California State Bar and a partner in the law firm of Herrera Kennedy LLP ("Herrera Kennedy"). Rachel Geman is a member in good standing of the New York State Bar and a partner in the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP ("Lieff Cabraser"). Together, Burns Charest, Herrera Kennedy, and Lieff Cabraser were appointed Co-Lead Interim Class Counsel on July 29, 2020 (Dkt. 57) and Co-Lead Class Counsel ("Class Counsel") on November 19, 2021 (Dkt. 153).

2.      We submit this Supplemental Declaration jointly in support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Plaintiff Service Awards (Dkt. 157) and in response to the Court's request for supplemental information following the Final Approval Hearing on May 12, 2022 (*see* Dkts. 177, 180).

3.      In this Supplemental Declaration, Class Counsel provide "supplemental evidence supporting the request for an award of attorneys' fees, including specifically addressing how the three firms appointed Class Counsel organized and carried out their division of labor to ensure that there was no duplication of work and/or to minimize such duplication." Dkt. 180 at 1. Each firm provides its own declaration for the firm-specific questions posed by the Court, namely, "support for the hourly rates requested as follows: Herrera Kennedy, all timekeepers; Lieff Cabraser, Danna Elmasry; and Burns Charest, all timekeepers other than Chris Cormier and Warren Burns." These are attached hereto as exhibits. *See* Section III below.

4.      Except as otherwise noted, we have personal knowledge of the statements contained in this declaration and, if called to testify, could and would testify competently to the truth of the matters stated herein.

**I.      CLASS COUNSEL HAVE IMPLEMENTED ESTABLISHED PROCEDURES TO LITIGATE THE CASE EFFECTIVELY AND EFFICIENTLY ON THE CLASS'S BEHALF.**

5.      In appointing Burns Charest, Herrera Kennedy, and Lieff Cabraser as Class Counsel, the Court granted the firms authority over various matters on behalf of all plaintiffs and the class, including "coordinating and managing all work to ensure the efficient and effective prosecution of the Consolidated Action on behalf of the Plaintiffs and the proposed Classes." *See* Dkt. 57 ("Pretrial Order") at ¶ 14.

6.      Class Counsel have managed and organized this litigation by implementing practices and procedures—informed in large part by our collective experience successfully serving as lead counsel in other complex class actions—that have enabled the effective and efficient prosecution of the case on the class' behalf.

7.      First, Class Counsel utilized a lean core leadership structure, comprised of one senior lawyer from each firm, to organize and manage the duties the Court entrusted to Class Counsel. Second, Class Counsel regularly communicated with each other to promote the orderly and efficient management of the case and to prevent duplicative work. Third, Class Counsel assigned specific tasks to specific Class Counsel firms in a manner that ensured the tasks were performed properly and efficiently while reasonably utilizing Class Counsel's collective experience, insight, and input. Fourth, Class Counsel involved other plaintiffs' counsel for specific assignments as appropriate and in a manner that ensured those tasks were performed properly and efficiently. Fifth, Class Counsel implemented and adhered to reporting protocols that have helped ensure that all counsel's time and expenses were appropriate and instituted and maintained a litigation fund that has helped ensure sufficient funding for the prosecution of the case on the class's behalf. Each of these practices is discussed in greater detail below.

**A.      The Core Team, Consisting of One Senior Lawyer From Each Class Counsel Firm, Managed All Aspects of the Case.**

8.      Since the inception of this matter, and months before the first complaint was filed, one senior lawyer from each Class Counsel firm has served as that firm's point person to manage

their own firm's staffing and workload as well as to more broadly run the case in coordination with their counterparts on the class' behalf.

9.      This core team was formed to prosecute the case in an efficient and orderly manner within and among the eventual Court-appointed Class Counsel firms and, if necessary, any additional class counsel firms that filed complaints and became involved in the litigation.

10.      The core leadership team in this case is comprised of Shawn M. Kennedy of Herrera Kennedy LLP; Rachel Geman of Lieff Cabraser Heimann & Bernstein, LLP; and Christopher J. Cormier of Burns Charest LLP.

**B.      Class Counsel Regularly Communicated to Ensure All Specific Tasks and Broader Strategic Goals Were Handled and Implemented Properly.**

11.      A key part of Class Counsel's approach to case management has been regular communication. Experience has taught us that frequent and purposeful communication is necessary to ensure that all deadlines and milestone are met, that all assignments are performed well and on time, and that all important strategic matters are thoroughly considered and ultimately decided.

12.      With this tenet in mind, the core Class Counsel team communicated regularly and frequently since day one through Zoom meetings, telephone calls, and email exchanges. These communications, through one form or another, typically have occurred once per week, although during particularly busy times, they occurred multiple times per week.

13.      As the needs of the litigation shifted and expanded in scope, the core team also often convened meetings or calls with a broader group of attorneys and staff from the Class Counsel firms as appropriate to discuss various strategy and case management issues, including the allocation of, and progress on, various litigation and settlement-related tasks. Class Counsel ensured that strategy discussions were limited to senior attorneys and personnel responsible for handling the tasks being discussed. Sometimes having additional attorneys on these calls ensured that the relevant strategies, issues, and assignments could be discussed clearly and efficiently, and it offered the opportunity for members of the broader leadership team to ask questions and provide insight on a given issue that may not otherwise have been raised or considered.

1   Participation by the broader group also greatly minimized if not eliminated the amount of time

2   and energy that otherwise would have been spent summarizing call content and repeating

3   instructions to individuals at each firm.

4          14.     Accordingly, such Class Counsel calls and other communications benefitted the

5   class. *See MacDonald v. Ford Motor Co.*, No. 13-cv-02988-JST, 2016 WL 3055643, at *4 (N.D.

6   Cal. May 31, 2016) (recognizing that "some number of intra-office conferences are not only to be

7   expected, but will often result in a savings of attorney time by ensuring that all attorneys on a

8   team are kept apprised of important information about the case as it becomes available"); *PSM*

9   *Holding Corp. v. Nat'l Farm Fin. Corp.*, 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010) ("Multiple

10  attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law.").

11         **C.      Each Class Counsel Firm Spearheaded Specific Assignments While**
                      **Contributing to the Overall Management and Direction of the Case.**
12

13         15.     Class Counsel predominantly allocated among their firms the various tasks that

14  arose during the case's lifespan in a sensible and non-duplicative manner. Under this allocation

15  method, one attorney at one Class Counsel firm was assigned to take the lead on a specific task,

16  while in the case of larger projects warranting more time and attention, multiple attorneys would

17  take lead roles, dividing the work among them in a reasonable way. Illustrative examples of Class

18  Counsel's approach are provided in Section III below.

19         16.     No more than one attorney or firm assigned to complete the same task (though

20  obviously counsel collaborated and assisted each other when needed in analyzing important legal

21  issues where there the right answer or strategy presented no clear answer). Such duplicative work

22  would not have benefitted either the class or its counsel. Such work would take money out of the

23  pockets of the class, and force counsel to spend unnecessary time and effort performing redundant

24  and needless work when their time could have been better spend handling other tasks that needed

25  to get done.

26         17.     However, once a lead attorney completed and circulated their assigned work

27  product—particularly when the work product involved significant or important litigation tasks,

28  such as briefs to be filed with the Court, written discovery requests or responses, or a settlement

1  demand with detailed proposed terms—the broader Class Counsel team generally reviewed and

2  provided input on the work product before it was finalized. The reason for this is explained by the

3  desired result:  to present the best product possible on behalf of the class by utilizing the diverse

4  talents and skill sets of the larger team.

5         18.    Broader team involvement of this nature has thus benefitted the class. As courts in

6  the Ninth Circuit have recognized, "multiple attorneys may be essential for planning strategy,

7  eliciting testimony or evaluating facts or law." *PSM Holding Corp.*, 743 F. Supp. 2d at 1157. And

8  "participation of more than one attorney does not necessarily constitute an unnecessary

9  duplication of effort." *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989) (finding

10  participation by more than one attorney a "reasonable necessity, given the complexity of legal

11  issues and the breadth of factual evidence involved"). *Accord Ridgeway v. Wal-Mart Stores Inc.*,

12  269 F. Supp. 3d 975, 990-91 (N.D. Cal. 2017) (recognizing that some duplication of effort "is

13  inherent in the process of litigating over time") (quoting *Moreno v. City of Sacramento*, 534 F.3d

14  1106, 1112 (9th Cir. 2008)). This case was no exception given the novelty and complexity of the

15  factual and legal issues at hand and given the sophisticated, highly regarded law firms that

16  aggressively and vigorously have represented Defendant's interests here.

17      **D.**    **Class Counsel Delegated and Oversaw Assignments to Additional Class Counsel Firms as Appropriate.**

19         19.    Mindful of their obligation to litigate the case in an efficient and cost-effective

20  manner while appreciative of their unique knowledge of the relevant factual and legal issues,

21  Class Counsel handled the substantial majority of the work themselves.

22         20.    At the same time, Class Counsel chose to involve other plaintiffs' counsel in

23  specific tasks when it made sense to do so (with sufficient oversight) to ensure the assignments

24  were performed in a timely, professional, and efficient manner.

25         21.    For example, Class Counsel tasked other plaintiffs' counsel firms with liaising

26  with their respective clients, *i.e.*, the named Plaintiffs, on defensive discovery, including working

27  with the ESI vendor to identify and take mirror image copies of all relevant ESI in their

28  possession, custody or control, and providing substantive responses when appropriate to

Defendants' discovery requests. They also tasked these firms with reviewing and discussing the terms of the proposed settlement agreement with their respective named Plaintiff clients and, ultimately, receiving approval and securing corresponding declarations from those clients.

22.     Class Counsel also assigned certain Plaintiffs Steering Committee ("PSC") firms specific tasks concerning researching and analyzing the relevant caselaw and providing recommendations on potential plans of allocation of the net settlement fund among class members. Class Counsel considered these firms' non-duplicative work in making their ultimate decision on a proposed plan of allocation.

**E.     Class Counsel Oversaw and Maintained Time and Expense Records and Provided Necessary Funding of Litigation Expenses for the Class's Benefit.**

23.     Finally, Class Counsel have implemented and followed systems to ensure that counsel appropriately billed the class for their time and expenses and that counsel appropriately funded the case by contributing to a joint litigation fund so that the class could avail itself of the third-party administrator and consultant services needed to properly represent the class' interests.

24.     Soon after the Court appointed leadership, Burns Charest, on behalf of Class Counsel, sent a letter to all plaintiffs' counsel setting forth a time and expense reporting protocol that everyone was required to follow. This letter detailed the reporting process and requirements and contained templates that detailed the categories of information the firms had to track and report on a monthly basis. Throughout the case, Class Counsel have overseen this reporting to ensure that counsels' time was reported timely and appropriately and that their reported expenses reflected properly incurred costs. (Class Counsel are prepared to submit to the Court *in camera* their detailed time and expense reports if the Court so desires.)

25.     In addition, Lieff Cabraser, on behalf of Class Counsel, has maintained and periodically assessed and collected contributions (solely from Class Counsel) to the litigation fund. This fund was used to pay common case-related expenses like ESI vendors, expert consultants, and settlement administrators. Through the initiation and management of the litigation fund, Class Counsel have ensured that the class has had sufficient cash on hand to pay the expenses commonly needed in this type of case to properly represent their interests.

26.     In sum, Class Counsel have managed this novel and important class action and organized the corresponding legal work with the goals of delivering significant benefits to the class while ensuring that no unnecessary duplication of work or wasted effort occurred.

## II.     CLASS COUNSEL HAVE EFFICIENTLY COORDINATED AND HANDLED WORK ON THE CLASS'S BEHALF

27.     As explained in Section I.C above, in managing this litigation, Class Counsel divided and assigned specific tasks to ensure that work was performed in an efficient and appropriate manner.

28.     **Factual Investigation:** This litigation was not precipitated by any governmental investigation or whistleblower lawsuit, in contrast to many other meritorious and high-profile class actions. Rather, this case and the ensuing settlement resulted from the hard and extensive work of Class Counsel. This case was developed and investigated in the first instance by Herrera Kennedy. Specifically, Shawn Kennedy identified and spearheaded the investigation into Plaid's practices, drawing upon his particular knowledge and experience as a former executive in the financial technology industry. Herrera Kennedy attorneys broadly handled the initial factual investigative efforts, including the identification and review of numerous videos, message board posts, websites, submissions to government regulators, podcasts, marketing materials, "hacker threads," articles, and other sources. Herrera Kennedy's extensive efforts also involved delving into the history and evolution of Plaid's business. Once Burns Charest and Lieff Cabraser became involved in the months before the filing of the initial complaint, the contours of the factual investigation broadened in scope to include, for example, analysis of relevant data and related forensics and research and analysis of additional potential legal claims focusing on certain privacy laws and the regulatory backdrop for them. The work performed in this extensive pre-filing investigation phase was collaborative but not duplicative.

29.     **Complaints:** Herrera Kennedy drafted much of the factual portions of the initial complaint (which were also in the consolidated amended complaint). Burns Charest and Lieff Cabraser drafted much of those complaints' sections focusing on the legal claims, causes of action, and class-related allegations. Lieff Cabraser largely oversaw the process for selecting class

representatives in the consolidated amended complaint and finalizing that pleading. As with Class
Counsel's pre-filing investigation efforts, their work in drafting the initial and consolidated
amended complaints was collaborative but not duplicative.

30.     **Motion Practice:** As an example of the efficient work allocation approach
discussed above, the firms often focused throughout different projects, including motions and
briefs filed with and argued before the Court, on substantive topics. Lieff Cabraser was most
focused at the complaint stage and motion to dismiss briefing stages on privacy and dignitary
torts, other common-law claims, and on the California Anti-Phishing Act Claim. Thus, it was
efficient for Lieff Cabraser to handle both drafting, briefing, and oral argument about those
claims, and it did so.  Herrera Kennedy focused on the other statutory claims, and the firm
therefore took the lead in both briefing and presenting oral argument on those claims. Burns
Charest also participated in drafting and briefing of deceit-related claims, and given its familiarity
with the issues addressed in the complaints and motion to dismiss briefing, Mr. Cormier prepared
for and led Plaintiffs' moot argument that helped prepare Ms. Geman and Mr. Kennedy for their
subsequent argument before the Court on Defendant's motion to dismiss. And while assignments
on the larger briefs were allocated among the different firms in a sensible and non-duplicative
manner, smaller and more discrete research and writing assignments were handled by just one
firm as a matter of course. These assignments were driven by a singular purpose of delivering
superior work product that benefited from a diverse range of talents efficiently. There was no
divvying of assignments among multiple firms for its own sake.

31.     **Organizing Plaintiffs' Counsel:**  As other complaints were filed, the core lead
counsel team spoke with and organized the other plaintiffs' counsel into a leadership structure
that Class Counsel proposed and that the Court ultimately endorsed. The work Class Counsel
allocated to other plaintiffs' counsel, including the PSC, was addressed above.

32.     **Discovery:**  In seeking discovery from Plaid and third parties, each of the three
Class Counsel firms focused on discrete areas of discovery, while at the same time ensuring that
important goals, topics and follow-up items did not fall through the cracks. For example, one firm
drafted each set of discovery requests (Herrera Kennedy as to the document requests and

1    interrogatories, and Burns Charest on the requests for admission), one firm (Lieff Cabraser)

2    drafted third party subpoenas, and one firm (Burns Charest) handled Plaintiffs' responses to

3    Plaid's discovery requests. Relatedly, Burns Charest managed Plaintiffs' defensive discovery

4    program, including engaging and working with Plaintiffs' third-party ESI vendor, scheduling and

5    managing the ESI vendor's retention of the named Plaintiffs' relevant ESI, working with the

6    named Plaintiffs and their respective counsel on drafting Plaintiffs' objections and responses to

7    Defendant's document production requests and interrogatories, and leading related meet and

8    confers with Defendant. For each set of written discovery requests or responses, a designated

9    attorney from an assigned firm took the lead in drafting and circulating work product to others on

10   the team for feedback. And that assigned attorney handled the subsequent meet-and-confers and

11   negotiations for the respective set of discovery requests or responses (and reported back to the

12   broader Class Counsel team and receiving direction and guidance as appropriate). In addition, a

13   small group of attorneys from the Class Counsel firms conducted a high-level review of Plaid's

14   initial document production, which was used both to further guide Plaintiffs' discovery strategy

15   and to further inform their strategy on settlement.

16            33.    **Mediation**:  While all three Class Counsel firms (and particularly the core

17   leadership team members) were involved throughout the mediation process and participated in the

18   mediations before the Hon. Jay Gandhi (ret.), there was considerable yet non-duplicative

19   preparatory work that occurred before, between, and after each mediation session. For example,

20   Lieff Cabraser (Ms. Geman) was the point person for direct one-on-one communications with the

21   mediator, and handled the first draft of the mediators' eyes only brief. Herrera Kennedy (Mr.

22   Kennedy) handled the first draft of the exchanged brief. Burns Charest (Mr. Cormier) handled the

23   research, analysis and recommendations on (a) insurance coverage available from Plaid's primary

24   and excess insurers to help fund a settlement, and (b) Plaid's ability to self-fund a settlement, in

25   coordination with analysis provided by a retained financial consultant who reviewed Plaid's

26   financial statements and other available data. Burns Charest (Mr. Cormier) also worked with the

27   named Plaintiffs and their counsel to provide certain informal discovery requested of them by

28   Plaid as part of the mediation process.

34.     **Settlement**:  As a further example of the efficient work division, the Class
Counsel firms divided work in a sensible, non-duplicative way on the various settlement-related
tasks that arose once the parties had agreed in principle to settle the case following the final
mediation. For example, Burns Charest handled selecting and retaining the escrow agent and
negotiating the corresponding agreement, working with the named Plaintiffs and their individual
counsel to answer questions that arose and to obtain client approval and corresponding
declarations, and participating in the drafting of the settlement agreement, corresponding approval
papers, and allocation discussions. Lieff Cabraser worked more closely with the claims
administrator and handled first drafts of multiple settlement documents, such as the injunctive
relief and notice documents. Lieff Cabraser also developed the framework for, and participated
in, the allocation discussions. Herrera Kennedy was responsible for creating the draft of the
motion for preliminary settlement approval, reviewing and revising discrete portions of the
settlement documents, honing the settlement class definition in light of technical information
obtained from Plaid, and handling myriad issues relating to the technical capacity for
identification of class members. After preliminary approval (the argument of which, as in other
oral arguments in the case, was handled by at most two firms), the firms all addressed class
member inquiries in a non-duplicative and organized fashion. Since commencement of the notice
program, the three Class Counsel firms have also worked to ensure class member inquiries that
were made directly to counsel received timely and consistent responses. In particular, the firms
kept a central database of inquiries to track and assign responsibility for individual inquiries and
ensure no duplication. Lieff Cabraser handled first drafts of final approval briefing and addressing
objectors; Herrera Kennedy handled the first draft of fee briefing. All three Class Counsel firms
worked to design and oversee execution of the initial notice campaign, and Burns Charest
prompted the second reminder notice campaign.

35.     **Administration:**  Throughout the course of the litigation, due primarily to the
location of its primary office in San Francisco, Lieff Cabraser assumed a form of liaison counsel
role among Class Counsel, providing procedural and administrative support on most major case
filings—including, for example, the consolidated amended complaint and Plaintiffs' settlement-

1   related motions. As noted above, Burns Charest oversaw the reporting and collection of all firms'

2   time and litigation expenses, and Lieff Cabraser maintained the cost fund.

3   **III.      SUPPORT FOR CLASS COUNSEL'S HOURLY RATES**

4          36.      In response to the Court's request for additional evidentiary support for the hourly

5   rates of several timekeepers from Class Counsel's firms, Class Counsel firm submits the

6   following declarations.

7          37.      Attached hereto as **Exhibit 1** is a true and correct copy of the Declaration of

8   Christopher J. Cormier.

9          38.      Attached hereto as **Exhibit 2** is a true and correct copy of the Declaration of

10  Shawn M. Kennedy.

11         39.      Attached hereto as **Exhibit 3** is a true and correct copy of the Declaration of

12  Rachel Geman.

13  **IV.      LODESTAR MULTIPLIER**

14         40.      At the original hourly rates requested in Class Counsel's moving papers, Class

15  Counsel's request for the benchmark 25% of the Settlement represented a 3.29 multiplier. (Dkt.

16  157, at page 8 of 27.) After recalculating Herrera Kennedy's lodestar contribution as discussed in

17  the accompanying Declaration of Shawn M. Kennedy—solely for the purpose of demonstrating a

18  lodestar crosscheck—to reduce Ms. Seidl's time to $675 per hour and Mr. Hembd's to $625 per

19  hour, the lodestar decreases by a total of $66,355, resulting in a multiplier of 3.35. And, for

20  illustration, subtracting both that total and the lodestar for Ms. Elmasry from Lieff Cabraser as

21  discussed in the accompanying Declaration of Rachel Geman, the multiplier would increase

22  only to 3.36. In either event, the multiplier would still be well within the acceptable range. *See*

23  Dkt. 157 at 16 (citing cases with much higher lodestar multipliers).

24                              *      *      *

25         I declare under penalty of perjury that the foregoing is true and correct as to all matters of

26  which I have personal knowledge. Executed this 19th day of May, 2022, in New York, New

27  York.

                                        */s/ Rachel Geman*
                                        Rachel Geman

28

- 11 -                  SUPPLEMENTAL DECL ISO MOT. FOR ATTORNEYS'
                                                           FEES, EXPENSES, AND SERVICE AWARDS
                                                           CASE NO. 4:20-CV-03056-DMR

1    I declare under penalty of perjury that the foregoing is true and correct as to all matters of

2    which I have personal knowledge. Executed this 19th day of May, 2022, in Washington, D.C.

3                                                   */s/ Christopher J. Cormier*
                                                   Christopher J. Cormier

4

5    I declare under penalty of perjury that the foregoing is true and correct as to all matters of

6    which I have personal knowledge. Executed this 19th day of May, 2022, in Rancho Santa

7    Margarita, California.

8                                                   */s/ Shawn M. Kennedy*
                                                   Shawn M. Kennedy

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28