HERRERA KENNEDY LLP
Shawn M. Kennedy (SBN 218472)
skennedy@herrerakennedy.com
Bret D. Hembd (SBN 272826)
bhembd@herrerakennedy.com
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Tel: (949) 936-0900
Fax: (855) 969-2050

HERRERA KENNEDY LLP
Nicomedes Sy Herrera (SBN 275332)
nherrera@herrerakennedy.com
Laura E. Seidl (SBN 269891)
lseidl@herrerakennedy.com
1300 Clay Street, Suite 600
Oakland, CA 94612
Tel: (510) 422-4700
Fax: (855) 969-2050

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Rachel Geman (Pro Hac Vice)
rgeman@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel: (212) 355-9500
Fax: (212) 355-9592

*Co-Lead Class Counsel*

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Nicholas R. Hartmann (SBN 301049)
nhartmann@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008

BURNS CHAREST LLP
Christopher J. Cormier (Pro Hac Vice)
ccormier@burnscharest.com
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 577-3977
Fax: (469) 444-5002

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE PLAID INC. PRIVACY LITIGATION | Master Docket No.: 4:20-cv-03056-DMR<br><br>**POST-DISTRIBUTION ACCOUNTING** |

1        Pursuant to the Court's July 20, 2022 Order Granting Final Approval of Class Action

2    Settlement (Dkt. 184 at 23), Class Counsel's March 1, 2023 Status Report Regarding Settlement

3    Fund Distribution (Dkt. 190), and this District's Procedural Guidance for Class Action

4    Settlements, Plaintiffs respectfully submit the following post-distribution accounting and

5    supporting Declarations of Denise Earle on behalf of Angeion Group, LLC, the Court-appointed

6    Settlement Administrator ("Angeion Decl."); of Melissa Gardner on behalf of Class Counsel

7    ("Gardner Decl."); and of Sheila Jambekar, Chief Privacy Officer of Plaid Inc. (Gardner Decl. Ex.

8    1, "Jambekar Decl.").

9    **I.**       **Post-Distribution Accounting**

10        The following is the post-distribution accounting for this matter, as set forth in the

11    District's Procedural Guidance for Class Action Settlements.

| Settlement Details | |
| --- | --- |
| Total Settlement Fund | $58,000,000 |
| Approximate number of Class Members | 98,000,000 |

| Notice Details | |
| --- | --- |
| Methods of notice to Class Members | E-mail, post card, custom social media, digital and social media, paid search campaign, sponsored class action website listings |
| Number of Class Members to whom e-mail notice was sent | 60,271,546 |
| Number of Class Members to whom e-mail notice was sent and not returned as undeliverable | 58,787,099 |
| Number of Class Members to whom post card notice was sent | 650,669 |
| Number of post cards re-mailed to forwarding address | 44,749 |
| Number of Class Members to whom post card notice was sent and not returned as undeliverable | 633,219 |
| Number of clicks-through on all digital noticing ads in initial campaign + reminder campaign | 334,516 |

| Claim Forms, Exclusions, and Objections | | |
|---|---|---|
| Number and Percentage of Valid Claims | #: 1,198,327 | %: 1.22 |
| Number and Percentage of Opt Outs | #: 1,774 | %: 0.0018 |
| Number and Percentage of Objections | #: 5 | %: 0.000005 |

| Settlement Payment Details | |
|---|---|
| Recovery per claimant (pro rata share of Net Settlement Fund) | $35.97 |
| Methods of payment to Class Members | Direct deposit, PayPal, Venmo, and Mailed Check via USPS |
| Number of successful digital payments distributed | 965,863 |
| Value of successful digital payments | $34,742,092.11 |
| Number of physical checks distributed | 232,363 |
| Number of checks cashed | 187,744 |
| Value of cashed checks | $6,753,151.68 |
| Number of checks uncashed | 44,619 |
| Value of checks uncashed | $1,604,945.43 |
| Maximum court-approved administrative costs | $5,500,000.00 |
| Total administrative costs | $3,935,528.56 |
| Total court-approved service awards to Class Representatives | $55,000 ($5,000 per Class Representative) |
| Court-awarded costs and expenses | $115,920.21 |
| Court-awarded attorneys' fees | $11,000,000 |
| Court-awarded attorneys' fees as a percentage of the Settlement Fund | 19% |
| Counsel's adjusted lodestar at Final Approval | $4,127,531.00 |
| Counsel's updated adjusted lodestar total (through Aug. 4, 2023) | $4,564,688.00 |
| Lodestar multiplier at Final Approval | 2.66 |
| Updated lodestar multiplier | 2.41 |
| Amount remaining in Settlement Fund (as of August 21, 2023) | $1,516,834.18 |

*See* Angeion Decl. ¶¶ 3–4; Gardner Decl. ¶¶ 3–4; Dkt. No. 184 at 20–21.

## II.    **Non-Monetary Relief**

        In addition to the monetary relief set forth in the above accounting, the Settlement

includes injunctive relief that the Court rightly described as "significant" (Dkt. 184 at 15),

"robust" (*id.* at 20), and "a meaningful benefit to Class Members and consumers going forward"

1    (*id.* at 16). That relief has conferred, and will continue to confer, the following benefits to Class

2    Members.

3        **A.      Data Deletion from Plaid Systems**

4        Plaid has deleted the data it retrieved by its "Transactions" product—which can include

5    information about financial account activity, such as the amount, time, and place of deposits,

6    withdrawals, transfers, or purchases—for users that connected their financial account(s) to an

7    application (or applications) that did not ask Plaid to collect Transactions data. Settlement

8    ¶¶ 63(a); Jambekar Decl. ¶ 10.

9        Separately, Plaid has deleted data from its systems for users that Plaid is aware it has no

10   valid means to authenticate with the bank. Settlement ¶ 63(b); Jambekar Decl. ¶ 10. This means,

11   for example, that if the password Plaid obtained for a particular bank account has changed or the

12   account is closed, Plaid has deleted the associated account data from its systems.

13       Plaid will maintain these data deletion practices for at least the next three years.

14   Settlement ¶¶ 64–66; Jambekar Decl. ¶¶ 10–11.

15       **B.      User Control Over Data Through Plaid Portal**

16       Plaid's website (plaid.com) now includes prominent references and links to Plaid Portal

17   (my.plaid.com) on its website homepage along with a plain-language description of the user

18   controls available through the Plaid Portal. Settlement ¶ 54(a); Jambekar Decl. ¶ 3. By creating a

19   Plaid Portal account, users (including Class Members) can view and manage the connections that

20   have been made between apps and their financial accounts using Plaid. Class Members can also

21   delete their financial data stored in Plaid's systems. Settlement ¶ 58.

22       Plaid makes reasonable commercial efforts to send periodic e-mail reminders to Plaid

23   Portal account holders generally describing the user controls available in Plaid Portal, including,

24   to the extent technically feasible, the ability to disconnect applications from financial accounts,

25   and delete financial data stored in Plaid's systems. Settlement ¶ 59; Jambekar Decl. ¶ 7.

26

27

28

### C.      Clear Disclosures at the Time of Account Connection

To ensure clarity on Plaid's role in the financial account connection process, and to ensure that users (including Class Members) clearly understand who they are sharing their information with and for what purposes, Plaid's Link flow includes:

- The credentials pane, meaning the pane where users enter their financial account username and password, explains that the user's credentials are being "provided to Plaid."

- The background color of the credential pane will not utilize the color scheme associated with a specific financial institution for that financial institution.

- The consent pane, meaning the pane where users agree to Plaid's End User Privacy Policy and that Plaid will connect their application to their financial institution, continues to (a) refer expressly to Plaid and explain that Plaid is used to link the user's accounts; (b) include a conspicuous link to Plaid's End User Privacy Policy; and (c) require the user to agree to Plaid's End User Privacy Policy by taking clear affirmative action (*e.g.*, by clicking "Continue").

Settlement ¶ 56; Jambekar Decl. ¶ 5.

Plaid makes reasonable commercial efforts to ensure that its customers using the standard Link flow continue to comply with these parameters, with certain limited exceptions. Settlement ¶ 57; Jambekar Decl. ¶ 6.

### D.      Minimizing the Data Plaid Stores

Plaid is implementing changes to minimize the data it stores from users' financial accounts as follows:

- With respect to data retrieved from users' financial accounts, subject to certain limitations such as for compliance with applicable law, Plaid will only store the categories of data for the Plaid product(s) that the user's application specifically requests from Plaid or that are necessary for Plaid to offer its services, unless the user has expressly consented to the retrieval of additional data fields.

- Plaid uses its best efforts to continue to inform the applications that use Plaid about its "/item/remove endpoint," which is a means for those applications to inform Plaid that a user has terminated their account with the application, which then terminates the application's access to data from Plaid and may lead to data deletion from Plaid's systems (if such data is not actively used by another application).

Settlement ¶¶ 60–62; Jambekar Decl. ¶¶ 8–9.

### E. Enhancing Disclosures About What Plaid Is and Does

In addition to the disclosures and controls discussed above, on February 22, 2023, Plaid updated its End User Privacy Policy ("EUPP") to provide more detail about Plaid's data collection, storage, use, sharing, and deletion practices. *See* Jambekar Decl. ¶ 2. Per the Settlement, the updated EUPP:

- Provides more detail about the categories of personal information Plaid collects from users' financial accounts for each Plaid generally available product, including a plain-language list of the category or categories of personal information Plaid collects and a plain-language statement of the general reasons it is collected.

- Provides more detail about how Plaid uses data, including by providing, for each category of personal information that Plaid collects about users, the categories of uses for which Plaid collects the information and the categories of parties with whom Plaid shares personal information (if any) (e.g., the developer of the user's application).

- Provides a plain-language explanation of Plaid's deletion and retention practices related to personal information collected from users' financial accounts.

- Provides a dedicated section explaining in plain-language terms the privacy controls Plaid has made available to users (e.g., "Privacy Control Section"), regardless of whether those controls are guaranteed by any legal right.

Settlement ¶ 53; Jambekar Decl. ¶ 2.

### III. *Cy Pres* Distribution

As reported by the Settlement Administrator, $1,516,834.18, including earned interest, remains in the Settlement Fund following the deduction of all expenses, including outstanding expenses for administration, tax liabilities, distributions to the Class and the expiration of all mailed checks. Angeion Decl. ¶ 4. Pursuant to ¶ 78(b)(iv) of the Settlement, if a secondary *pro rata* distribution of these funds to Authorized Claimants (or a subset thereof) is not economically feasible, the Parties may direct the Settlement Administrator to distribute them *pro rata* to the Cy Pres Recipients(s) approved by the Court within forty-five (45) days after settlement checks have expired.

Pursuant to ¶ 84 of the Settlement, Class Counsel proposed Cy Pres Recipients in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. Specifically, Class Counsel proposed the Privacy Rights Clearinghouse ("PRC") and Consumer Reports ("CR").

1    Dkt. 137-1 at 4; *see also* Dkt. 153 (Prelim. Approval Order) at 5.

2            Class counsel have conferred with the Settlement Administrator and with counsel for

3    Plaid, and have determined that a secondary distribution to Authorized Claimants in this action is

4    not economically feasible. Angeion Decl. ¶ 5; Gardner Decl. ¶ 5. Class Counsel therefore intend

5    to authorize the Settlement Administrator to distribute the remaining funds to PRC and CR. Each

6    of PRC and CR will report to the Parties how it has used those funds pursuant to Settlement ¶ 85.

7    Pursuant to Settlement ¶ 86, Plaid will not exercise any control or influence over PRC's and CR's

8    expenditure of *cy pres* funds.

9

10   Dated:  August 21, 2023                    Respectfully submitted,

11                                              LIEFF CABRASER HEIMANN &  BERNSTEIN, LLP

12                                              By: */s/ Rachel Geman*
                                                    Rachel Geman

13
                                                LIEFF CABRASER HEIMANN &
14                                              BERNSTEIN, LLP
                                                Rachel Geman (*Pro Hac Vice*)
15                                              rgeman@lchb.com
                                                250 Hudson Street, 8th Floor
16                                              New York, NY 10013-1413
                                                Tel: (212) 355-9500
17                                              Fax: (212) 355-9592

18                                              LIEFF CABRASER HEIMANN &
                                                BERNSTEIN, LLP
19                                              Michael W. Sobol (SBN 194857)
                                                msobol@lchb.com
20                                              Melissa Gardner (SBN 289096)
                                                mgardner@lchb.com
21                                              Michael K. Sheen (SBN 288284)
                                                msheen@lchb.com
22                                              Nicholas R. Hartmann (SBN 301049)
                                                nhartmann@lchb.com
23                                              275 Battery Street, 29th Floor
                                                San Francisco, CA 94111-3339
24                                              Tel: (415) 956-1000
                                                Fax: (415) 956-1008

25

26

27

28

2749446.7                              -6-              POST-DISTRIBUTION ACCOUNTING
                                                        CASE NO. 4:20-CV-03056-DMR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HERRERA KENNEDY LLP

By: */s/ Shawn Kennedy*
     Shawn M. Kennedy

HERRERA KENNEDY LLP
Shawn M. Kennedy (SBN 218472)
skennedy@herrerakennedy.com
Bret D. Hembd (SBN 272826)
bhembd@herrerakennedy.com
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Telephone: (949) 936-0900
Fax: (855) 969-2050

HERRERA KENNEDY LLP
Nicomedes Sy Herrera (SBN 275332)
nherrera@herrerakennedy.com
Laura E. Seidl (SBN 269891)
lseidl@herrerakennedy.com
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone: (510) 422-4700
Fax: (855) 969-2050

BURNS CHAREST LLP

By: */s/ Christopher Cormier*
     Christopher J. Cormier

BURNS CHAREST LLP
Christopher J. Cormier (*Pro Hac Vice*)
ccormier@burnscharest.com
4725 Wisconsin Avenue, NW
Washington, DC 20016
Tel: (202) 577-3977
Fax: (469) 444-5002

BURNS CHAREST LLP
Warren T. Burns (*Pro Hac Vice*)
wburns@burnscharest.com
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002

*Co-Lead Class Counsel*

1

## __ATTESTATION__

2

        Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this

3

document has been obtained from the above signatories.

4

Dated:  August 21, 2023                              By: _/s/ Melissa Gardner_

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28